IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TARGUS INTERNATIONAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-464 (RGA) |
| | ) | |
| VICTORINOX SWISS ARMY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF'S OPENING BRIEF IN SUPPORT OF MOTION TO DISMISS
COUNTERCLAIMS AND TO STRIKE THIRD DEFENSE**

OF COUNSEL:

Michelle E. Armond
Forrest M. McClellen
ARMOND WILSON LLP
895 Dove Street, Suite 300
Newport Beach, CA  92660
(949) 932-0778

Douglas R. Wilson
ARMOND WILSON LLP
9442 Capital of Texas Highway North
Plaza One, Suite 500
Austin, TX  78759
(512) 267-1663

June 26, 2020

Jack B. Blumenfeld (#1014)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
araucci@mnat.com
*Attorneys for Plaintiff
Targus International LLC*

## TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................... ii

I.      NATURE AND STAGE OF THE PROCEEDINGS .......................................... 1

II.     SUMMARY OF ARGUMENT ......................................................................... 1

III.    ARGUMENT .................................................................................................... 2

        1.      Legal Standards.................................................................................... 2

        2.      Victorinox's Inequitable Conduct Counterclaim Should Be
                Dismissed For Failing To Plead Required Facts That The TSA RFI
                Was Material Prior Art And Intentionally Withheld ................................. 3

                a.      Counterclaim III Fails To Plead Facts Supporting
                        Materiality.................................................................................. 3

                b.      Counterclaim III Fails To Plead Facts Supporting Intent ................ 7

        3.      Victorinox's Third Defense Alleging Inequitable Conduct Should
                Be Stricken.......................................................................................... 9

        4.      Victorinox's Attempted Monopolization Counterclaim Should Be
                Dismissed............................................................................................ 9

                a.      Counterclaim IV Is Exclusively Premised On Victorinox's
                        Insufficient Inequitable Conduct Claim....................................... 9

                b.      Counterclaim IV Also Fails To Plead Required Facts To
                        Support A Dangerous Probability Of Success .............................. 10

IV.     CONCLUSION.................................................................................................. 13

TABLE OF AUTHORITIES

Page(s)

**Cases**

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009)....................................................................................................2, 3, 4, 5

*Barr Labs., Inc. v. Abbott Labs.,*
  978 F.2d 98 (Fed. Cir. 1992)..................................................................................................3, 10

*Bayer Cropscience AG v. Dow Agrosciences LLC,*
  C.A. No. 10-1045, 2012 WL 1253047 (D. Del. Apr. 12, 2012).......................................2, 8, 9

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007)....................................................................................................................2, 9

*Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.,*
  159 F.3d 129 (3d Cir. 1998)..............................................................................................3, 12, 13

*Delano Farms Co. v. California Table Grape Comm'n,*
  655 F.3d 1337 (Fed. Cir. 2011)................................................................................10, 11, 12, 13

*Exergen Corp. v. Wal-Mart Stores Inc.,*
  575 F.3d 1312 (Fed. Cir. 2009)................................................................................2, 3, 5, 6

*Kranos IP Corp. v. Riddell, Inc.,*
  334 F. Supp. 3d 907 (N.D. Ill. 2018) ................................................................................5, 8, 9

*Schuylkill Energy Res. v. Pennsylvania Power & Light Co.,*
  113 F.3d 405 (3d Cir. 1997).........................................................................................................3

*Sun Microsystems, Inc. v. Versata Enterprises, Inc.,*
  630 F. Supp. 2d 395 (D. Del. 2009)......................................................................10, 12, 13

*Therasense, Inc. v. Becton, Dickinson & Co.,*
  649 F.3d 1276 (Fed. Cir. 2011).................................................................................................4

*Wyeth Holdings Corp. v. Sandoz, Inc.,*
  C.A. No. 09-955-LPS-CJB, 2012 WL 600715 (D. Del. Feb. 3, 2012)......................................9

*XpertUniverse, Inc. v. Cisco Sys., Inc.,*
  868 F. Supp. 2d 376 (D. Del. 2012)..........................................................................................5

**Other Authorities**

U.S. Patent No. 8,567,578........................................................................................... *passim*

**Rules and Statutes**

35 U.S.C. § 102(a) ..................................................................................................................3

Federal Rule of Civil Procedure 12(b)(6) ......................................................................2, 13

Rule 8(a)(2) .......................................................................................................................4, 5

Rule 9(b) .......................................................................................................................1, 2, 5

Rule 12(f) .........................................................................................................................9, 13

Sherman Act .........................................................................................................................12

Sherman Act § 2 ...............................................................................................................1, 9

Plaintiff Targus International LLC ("Targus") hereby moves to dismiss Counterclaims III and IV and to strike the related Third Defense of Defendant Victorinox Swiss Army, Inc. ("Victorinox").

## I.  NATURE AND STAGE OF THE PROCEEDINGS

Targus filed its Complaint (D.I. 1) on April 2, 2020 asserting that Victorinox is infringing U.S. Patent No. 8,567,578 through its making and distribution of checkpoint-friendly products that permit a laptop computer to remain in a bag when passing through a TSA security checkpoint. *E.g.*, D.I. 1 ¶¶ 10, 17.  On June 8, 2020, Victorinox filed its Answer, Affirmative Defenses, and Counterclaims.  D.I. 11.  In addition to counterclaims for non-infringement and invalidity of the '578 Patent (Counts I and II), Victorinox asserted counterclaims for unenforceability of the '578 Patent (Count III) and attempted monopolization under Section 2 of the Sherman Act (Count IV). Victorinox asserted its Third Defense of inequitable conduct and unclean hands based on the same facts alleged in Counterclaim III.  *Id.* at 9, 13-26.

## II.  SUMMARY OF ARGUMENT

Victorinox's counterclaims of inequitable conduct and attempted monopolization each fail to satisfy its burden to plead claims with particularity.

The inequitable conduct claim is premised on Targus's alleged deliberate concealment of Transportation Security Administration guidelines (referred to by Victorinox as "TSA RFI") that Targus purportedly learned about four days before filing a patent application in the Patent Office. The counterclaim concludes, without supporting factual allegations required under the heightened pleading standard of Rule 9(b), that the TSA RFI "was the impetus of and motivation for the alleged invention" and was deliberately withheld to deceive the PTO. D.I. 11 ¶¶ 40, 42, 47. Victorinox's theory is so far-fetched that it asserts that Targus sought to conceal TSA bag screening guidelines that its own pleading acknowledges Targus disclosed to the Patent Office in

the patent application.  *Id*. ¶ 40.  What is more plausible under the sparsely pled facts is that Targus had already conceived of the invention, and the TSA RFI is therefore not prior art, and was not deliberately concealed from the Patent Office.  Victorinox's counterclaim should be dismissed, and the corresponding Third Defense which relies on it should be stricken.

Victorinox's attempted monopolization claim should be dismissed because it is entirely premised on Victorinox's flawed inequitable conduct claim.  In addition, Victorinox failed to plead required facts showing market power:  establishing the relevant market, Targus's market share, or Targus's power therein.  For either reason, the attempted monopolization claim is insufficiently pled.

## III.  ARGUMENT

### 1.  Legal Standards

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the complaint must include "enough facts to state a claim to relief that is plausible on its face."  *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (reversing denial of dismissal where the plaintiffs "have not nudged their claims across the line from conceivable to plausible").  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions."  *Id.*

"[A] pleading of inequitable conduct under Rule 9(b) must include sufficient allegations of underlying facts from which a court may reasonably infer that a specific individual (1) knew of the withheld material information or of the falsity of the material misrepresentation, and (2) withheld or misrepresented this information with a specific intent to deceive the PTO."  *Exergen Corp. v. Wal-Mart Stores Inc.*, 575 F.3d 1312, 1328-29 (Fed. Cir. 2009); *Bayer Cropscience AG*

*v. Dow Agrosciences LLC*, C.A. No. 10-1045, 2012 WL 1253047, at *2 (D. Del. Apr. 12, 2012).

"To state a claim for attempted monopolization, a plaintiff must allege '(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" *Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*, 159 F.3d 129, 141 (3d Cir. 1998) (quoting *Schuylkill Energy Res. v. Pennsylvania Power & Light Co.*, 113 F.3d 405, 413 (3d Cir. 1997)); *see also Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 112 (Fed. Cir. 1992).

### 2. Victorinox's Inequitable Conduct Counterclaim Should Be Dismissed For Failing To Plead Required Facts That The TSA RFI Was Material Prior Art And Intentionally Withheld

Counterclaim III fails to plead any facts from which the Court could conclude that the TSA RFI is material or that there was deceptive intent in not disclosing the TSA RFI during prosecution of the '578 Patent, both of which are required to plead a claim of inequitable conduct. *Exergen*, 575 F.3d at 1328-29. On both counts, Counterclaim III rests on mere conclusory statements without any allegation of underlying facts that could support those conclusions.

### a. Counterclaim III Fails To Plead Facts Supporting Materiality

Victorinox failed to plead any facts that would establish that the TSA RFI is material prior art. The counterclaim asserts that the TSA RFI is prior art under 35 U.S.C. § 102(a) "because the purported invention of the '578 Patent, or material aspects of it, was known by persons at TSA and described in the TSA RFI, which is a printed publication in the United States, before the purported invention thereof by the named inventors on the '578 Patent." D.I. 11 ¶ 42. But no underlying facts are provided to support that legal conclusion, which need not be accepted as true. *Iqbal*, 556 U.S. at 678. Paragraph 44 asserts: "But for Cuong, Gormick, Shortt,

and prosecuting attorney Thompson's failure to disclose at least this material information to the United States Patent and Trademark Office ('PTO'), the '578 Patent would not have issued." But without the TSA RFI qualifying as prior art, the TSA RFI could not have prevented issuance of the '578 Patent and could not have been material to the prosecution of the '578 Patent. *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1291 (Fed. Cir. 2011) (requiring "but-for materiality" for inequitable conduct).  Victorinox failed to allege any invention date for the '578 Patent or any ***facts*** that would indicate that the invention date was after issuance of the TSA RFI.  If, for example, the  inventors conceived of their invention prior to March 3, 2008, the TSA RFI was not prior art and therefore could not support an inequitable conduct claim.

Counterclaim III asserts that the TSA RFI was published on March 3, 2008.  D.I. 11 ¶ 28. It further asserts that "[o]n information and belief, [inventors] Cuong, Gormick, and Shortt were aware of the TSA RFI no later than March 6, 2008 …."  *Id.* ¶ 35.  However, Counterclaim III then asserts that "[t]he TSA RFI issued seven (7) days prior to applicants' initial provisional patent application referenced in the '578 Patent."  *Id.* ¶ 47.  Taking these facts as true, the inventors filed their first provisional patent application only four days after they became aware of the TSA RFI and only seven days after it issued.  Thus, Victorinox asks this Court to find it plausible that a document that the inventors purportedly became aware of only four days before they filed their initial patent application is prior art.  No other facts are alleged that bear on whether the TSA RFI qualifies as prior art.  What is a far more plausible interpretation of these very few facts is that the inventors had already conceived of their invention and that the TSA RFI was not prior art to their invention.  The pleaded facts do not ***show*** that the TSA RFI is prior art.  *Iqbal*, 556 U.S. at 679 (holding under the more lenient standard of Rule 8(a)(2) that "where the well-pleaded facts do not permit the court to infer more than the mere possibility of

- 4 -

misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.' Fed. Rule Civ. Proc. 8(a)(2)"); *see also XpertUniverse, Inc. v. Cisco Sys., Inc.*, 868 F. Supp. 2d 376, 379 (D. Del. 2012).

The counterclaim also asserts repeatedly that "[t]he TSA RFI was the impetus of and motivation for the alleged invention."   D.I. 11 ¶¶ 35, 40, 47.   But that is a mere conclusion without any underlying facts to support it and cannot satisfy Victorinox's pleading requirement. *Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").   The counterclaim provides no facts that would plausibly suggest that conclusion.

In paragraph 47, Victorinox makes the same bare allegation "on information and belief." D.I. 11 ¶ 47.   But, as the Federal Circuit has explained, "Pleading on 'information and belief' is permitted under Rule 9(b) when essential information lies uniquely within another party's control, ***but only if the pleading sets forth the specific facts upon which the belief is reasonably based***."   *Exergen*, 575 F.3d at 1330 (emphasis added).   The counterclaim here provides no facts upon which this belief is based other than the timing of the TSA RFI and the initial and subsequent applications, which do not plausibly show that the TSA RFI was the impetus for the claimed invention.   If timing alone were sufficient, then any reference of which the inventors were aware, even if they learned of it after their invention, would plausibly show that the inventors derived their invention from that reference.   The law requires more.   *See Kranos IP Corp. v. Riddell, Inc.*, 334 F. Supp. 3d 907, 916 (N.D. Ill. 2018) ("If the Court were to accept such a truism as a basis from which deliberate intent to deceive the PTO could properly be inferred, 'inequitable conduct [would] devolve into a magic incantation to be asserted against every patentee[,] its allegation established upon a mere showing that art or information having

- 5 -

some degree of materiality was not disclosed.'" (quoting *Exergen*, 575 F.3d at 1331)).

      The counterclaim also refers to three other items as "information [that] was material to the patentability" of the '578 Patent.  D.I. 11 ¶ 43.  The three items are: (1) the inventors' participation in a collaboration with TSA "to conceive of, design, and develop the subject matter claimed in the '578 Patent," (2) TSA's specific guidelines, requirements, and restrictions for checkpoint-friendly laptop bags, which are contained in the TSA RFI (*id.* ¶¶ 28-29), and (3) TSA's contributions to the laptop bag designs that are covered by the '578 Patent, which are also ascribed to the TSA RFI in the counterclaim (*id.* ¶ 29).  *Id.* ¶ 43.

      That leaves only the alleged collaborations with TSA as something other than the TSA RFI that was allegedly undisclosed that is asserted to have been material.  But to the extent the counterclaim ever identifies any date for any collaborations, they occurred ***after*** the filing of the first provisional application, which allegedly occurred only four days after the inventors became aware of the TSA RFI as discussed above.  *Id.* ¶¶ 32 (citing August 5, 2008 statement describing "several months" of alleged collaboration), 33 (describing testing bags to ensure compliance with the March 2008 guidelines and specifications), 36 (describing alleged discussions and meetings in June 2008), 37 (describing alleged "conference calls" without any dates), 38 (describing meeting with TSA representatives at a pilot airport site, which would be those described in ¶ 33 to ensure compliance with the March 2008 guidelines and specifications), 39 (stating "the TSA RFI and the ***subsequent*** collaboration with TSA" (emphasis added)).  Any material contained in the provisional application filed in March 2008 could not have been gleaned from the alleged collaborations with the TSA according to the counterclaim's allegations, and in any event, the counterclaim has not plausibly alleged that the March 2008 provisional application contains any material from such collaborations.

Moreover, the counterclaim does not identify any subject matter that was added to the application filed in February 2009 that was not in the March 2008 provisional application to which that February 2009 application claimed priority that was gleaned from the alleged collaborations. *See id.* ¶ 35 (asserting the inventors and the prosecuting attorney "all participated in the filing of two provisional applications referenced in the application filed on February 13, 2009"). Thus, taking the counterclaims' alleged facts as true, the counterclaim has failed to plead any facts showing materiality for the alleged collaborations.

Finally, the counterclaim refers to a statement in the Background section of the '578 Patent referring to TSA's policy requiring removal of a laptop from a bag when passing through a security checkpoint as a misrepresentation. D.I. 11 ¶ 47. But everyone who has traveled knows that the TSA has such a policy. It *is* the policy of the TSA to require laptops to be removed from bags when going through security. The counterclaim does not allege otherwise. Instead, it alleges that this statement "is a misrepresentation in view of TSA's public pronouncement that it would allow laptop computers to remain in bags during screening as part of the program announced in the TSA RFI." *Id.* But an additional program providing an exception to the general policy does not make a reference to the general policy a misrepresentation, much less a material misrepresentation. The counterclaim fails to explain how this representation could possibly be false, much less material.

### b.    <u>Counterclaim III Fails To Plead Facts Supporting Intent</u>

Counterclaim III's reference to the intent requirement fares no better. Paragraph 47 summarily states,

> On information and belief, Cuong, Gormick, and Shortt, and prosecuting attorney Thompson, knowingly withheld this material information with the specific intent to deceive the PTO, because they failed to disclose to the PTO the TSA RFI, and Cuong, Gormick, Shortt, and Plaintiff's collaboration with TSA in designing and

developing the subject matter of the '578 Patent.

D.I. 11 ¶ 47.  But it pleads no facts that would plausibly infer that any information was withheld with an intent to deceive the PTO.  As discussed above, the counterclaim itself alleges that the March 2008 provisional application was filed before any of the alleged collaboration with the TSA occurred.  *See, e.g.*, *id.* ¶¶ 36 (referencing meetings in June 2008), 47 (describing filing of the provisional application "seven (7) days" after issuance of the TSA RFI on March 3, 2008). The counterclaim does not even allege what material was allegedly derived from collaboration with the TSA.  In paragraph 45, which purports to explain materiality, the entire paragraph only ever refers to the TSA RFI, not to the collaboration or other items referenced as material in paragraph 43.  More is required to properly plead specific intent to deceive the PTO.  *Kranos IP*, 334 F. Supp. 3d at 915 ("Cases finding factual allegations sufficient to infer that a specific individual knew omitted information was material require far more than Riddell has alleged here.").

Moreover, Victorinox's own pleading contains facts that show its assertion of intent is implausible.  In paragraph 40, the counterclaim alleges that "the patent application makes reference to 'the policy under the Transportation Security Administration (TSA),' 'screening policies of the TSA,' and 'expedited procedures' to 'allow screening of the case 700 using the scanning device 750 without requiring the user to unpack the case 700' …."  It is implausible that an applicant attempting to hide TSA's contribution would refer to the TSA's screening procedures in the application itself.  *Bayer Cropscience*, 2012 WL 1253047, at *5 ("The Court agrees with Bayer's argument that 'DAS offers no reasonable explanation why Dr. Timmis would tell the whole world in a later publication something he didn't want the PTO to know.'"). These inconsistent allegations do not permit a reasonable inference that the inventors or the prosecuting attorney acted with intent to deceive the PTO.  Taking all facts alleged as true, it is

more plausible that the TSA RFI was not material, and there was no deceptive intent.  *Bell Atlantic*, 550 U.S. at 570 ("Because the plaintiffs here have not nudged their claims across the line from conceivable to plausible, their complaint must be dismissed."); *see also Bayer Cropscience*, 2012 WL 1253047, at *5 (finding no reasonable inference that the accused had specific intent to deceive); *Kranos IP*, 334 F. Supp. 3d at 914-16 (same).   Accordingly, Counterclaim III should be dismissed.

### 3.     Victorinox's Third Defense Alleging Inequitable Conduct Should Be Stricken

Under Rule 12(f), Victorinox's Third Defense of "Inequitable Conduct/Unclean Hands" should be stricken because it rests entirely on "[t]he allegations of Paragraphs 24 through 49 of the Counterclaim," which is Counterclaim III discussed above.  D.I. 11 at 9.  Because those allegations cannot survive a motion to dismiss, Victorinox's Third Defense also fails and should be stricken under Rule 12(f).  *Wyeth Holdings Corp. v. Sandoz, Inc.*, C.A. No. 09-955-LPS-CJB, 2012 WL 600715, at *4 (D. Del. Feb. 3, 2012) ("This rule has been used in this jurisdiction to strike affirmative defenses where a party has failed to state a corresponding claim upon which relief can be granted.").

### 4.     Victorinox's Attempted Monopolization Counterclaim Should Be Dismissed

Counterclaim IV fails to plead any facts from which the Court could conclude that Targus has engaged in attempted monopolization in violation of Section 2 of the Sherman Act and should be dismissed.  The counterclaim relies on an insufficiently pled inequitable conduct claim and fails to plead required facts supporting a dangerous probability of success, both of which require dismissal.

#### a.     Counterclaim IV Is Exclusively Premised On Victorinox's Insufficient Inequitable Conduct Claim

Because Counterclaim IV is premised on *Walker Process* fraud and inequitable conduct

(D.I. 11 ¶¶ 54-59), it must be dismissed if the inequitable conduct claim in Counterclaim III is dismissed because asserting patent infringement alone is not actionable under the antitrust laws. *See Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1351 (Fed. Cir. 2011) ("A patent owner or assignee that enforces a patent that was procured by fraud on the PTO loses the exemption from antitrust liability that ordinarily protects a patent holder in its enforcement efforts."); *Sun Microsystems, Inc. v. Versata Enterprises, Inc.*, 630 F. Supp. 2d 395, 402-03 (D. Del. 2009).

> **b.    Counterclaim IV Also Fails To Plead Required Facts To Support A Dangerous Probability Of Success**

Additionally, Counterclaim IV should be dismissed because it fails to adequately plead that Targus possessed sufficient market power to come dangerously close to succeeding in monopolization.   "[A]ttempted monopolization … requires the plaintiff to establish that 'the defendant (1) had specific intent to monopolize the relevant market, (2) engaged in anti-competitive or exclusionary conduct, and (3) possessed sufficient market power to come dangerously close to success.'" *Id.* at 403 (quoting *Barr Labs*, 978 F.2d at 112).   Because Victorinox failed to plead facts supporting the third element of an attempted monopolization claim, Counterclaim IV should be dismissed for this independent reason.

Victorinox's few allegations are insufficient to meet the exacting pleading standard for an antitrust claim.   *See Sun Microsystems*, 630 F. Supp. 2d at 403 ("[T]he Court concludes that Versata has not adequately alleged the boundaries of the relevant market or that Sun possessed sufficient power within that market to come dangerously close to monopolization.").   Counterclaim IV's allegations pertinent to the third element of attempted monopolization are contained in paragraphs 60-62 and 65-66.

None of these paragraphs sufficiently pleads Victorinox's attempted monopolization

- 10 -

claim.  Paragraph 60 states that the "relevant product market at issue in this case is checkpoint-friendly (TSA compliant) laptop bags and cases sold to end-user consumers."  In conclusory fashion, paragraph 60 also states, "For consumers, laptop bags and cases without a TSA compliant mechanism for a consumer to pass a security checkpoint without removing his or her laptop computer are not readily interchangeable with TSA compliant checkpoint-friendly laptop bags or cases."  No facts are pled to support that conclusion.  Paragraph 61 defines the "relevant geographic market" as "the United States."  And paragraph 62 identifies a single barrier to entry into the checkpoint-friendly laptop bags and cases market—the '578 Patent.  Paragraph 65 does nothing more than state the legal conclusion that if Targus's allegedly anticompetitive conduct is not stopped, Targus "will monopolize, or will have a dangerous probability of success in monopolizing, the U.S. market for checkpoint-friendly laptop bags and cases."  Paragraph 66 asserts that "Targus currently controls a significant portion of this market."  The only fact alleged in support of that assertion is that "Targus has either already eliminated or is currently attempting to eliminate competitors through various lawsuits asserting the '578 Patent and by asserting a scope of patent claim coverage that would result in driving other competitors out of the market." D.I. 11 ¶ 66.  These allegations do not plead a plausible claim that there is a checkpoint-friendly bag market, or that Targus possessed sufficient market power in that market to come dangerously close to monopolization.

First, Victorinox's definition of the market as "checkpoint-friendly (TSA compliant) laptop bags and cases sold to end-user consumers" has no facts pled to support it.  The bare assertion that non-checkpoint-friendly laptop bags and cases "are not readily interchangeable with TSA compliant checkpoint-friendly laptop bags or cases" (D.I. 11 ¶ 60) is insufficient to plead a proper relevant market.  *Delano Farms*, 655 F.3d at 1351 ("Delano cannot rely on the

naked assertion that non-infringing goods are not an adequate substitute for a patented product, especially when it is undisputed that other vines possess at least some of the relevant characteristics.").  Here, it is undisputed that there are other laptop bags and cases on the market. D.I. 11 ¶ 60 (referencing "laptop bags and cases without a TSA compliant mechanism for a consumer to pass a security checkpoint without removing his or her laptop computer").  To support a relevant market for antitrust purposes, Victorinox "needed to make some allegation that, if proved, would define the market or the submarket with reference to consumer demand for the product and consumer demand for its reasonable substitutes."  *Delano Farms*, 655 F.3d at 1352; *see also id.* ("[T]he aspects of an invention that may have led the PTO to issue a patent are not *per se* coterminous with the features of the patented product that may lead consumers to select that product over other similar ones.").  That Victorinox has not done.  No such allegation exists in Counterclaim IV.

Second, even if Counterclaim IV sufficiently pled a relevant market, "[a]lleging market share alone is not sufficient to state a claim under the Sherman Act."  *Crossroads*, 159 F.3d at 141; *Sun Microsystems*, 630 F. Supp. 2d at 404 ("[E]ven under the pre-*Twombly* standard articulated in *Crossroads*, alleging market share alone was not enough to state an antitrust claim.").  Victorinox's assertion that Targus has "significant" market share is not even an allegation of any specific market share and thus cannot meet the requisite standard.  *Sun Microsystems*, 630 F. Supp. 2d at 403 ("The only reference Versata makes to Sun's specific market share is when it asserts, hypothetically, that if Sun is not enjoined, Sun will control '100% of the relevant product and geographic markets.'" (citation omitted)).  Moreover, "threatened monopolization requires something more, which may include 'the strength of competition, probable development of the industry, the barriers to entry, the nature of the

anticompetitive conduct, and the elasticity of consumer demand.'" *Id.* (quoting *Crossroads Cogeneration Corp*, 159 F.3d at 141). Counterclaim IV provides none of these other than asserting that Targus is attempting to enforce its '578 Patent, which says nothing about the market or Targus's position within it.

Even Victorinox's assertion that Targus is suing competitors in its alleged relevant market is insufficient. *See* D.I. 11 ¶ 66. It says nothing about the number of participants in the market, how many participants there are relative to those Targus has sued, or how close Targus is to achieving monopoly power in the inadequately pled checkpoint-friendly laptop bag and case market. Moreover, it rests on the assumption that the market is defined by the '578 Patent, which is improper in the absence of additional supporting facts. *Delano Farms*, 655 F.3d at 1352. Without facts to support a relevant market or Targus's power within that hypothetical market, Counterclaim IV should be dismissed. *See Sun Microsystems*, 630 F. Supp. 2d at 403 ("[T]he Court concludes that Versata has not adequately alleged the boundaries of the relevant market or that Sun possessed sufficient power within that market to come dangerously close to monopolization.").

## IV. <u>CONCLUSION</u>

For the foregoing reasons, Targus respectfully requests that the Court dismiss Counterclaims III and IV under Rule 12(b)(6) and strike the Third Defense of Victorinox under Rule 12(f).

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____

Jack B. Blumenfeld (#1014)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@mnat.com
araucci@mnat.com

*Attorneys for Plaintiff*
*Targus International LLC*

OF COUNSEL:

Michelle E. Armond
Forrest M. McClellen
ARMOND WILSON LLP
895 Dove Street, Suite 300
Newport Beach, CA  92660
(949) 932-0778

Douglas R. Wilson
ARMOND WILSON LLP
9442 Capital of Texas Highway North
Plaza One, Suite 500
Austin, TX  78759
(512) 267-1663

June 26, 2020

- 14 -

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 26, 2020, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on June 26, 2020, upon the following in the manner indicated:

Francis DiGiovanni, Esquire                                     *VIA ELECTRONIC MAIL*
Thatcher A. Rahmeier, Esquire
FAEGRE DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE  19801
*Attorneys for Defendant*

Elizabeth M.C. Scheibel, Esquire                               *VIA ELECTRONIC MAIL*
FAEGRE DRINKER BIDDLE &REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
*Attorneys for Defendant*

*/s/ Anthony D. Raucci*
_____
Anthony D. Raucci (#5948)