IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TARGUS INTERNATIONAL, LLC,       )
                                 )
                Plaintiff,       )
                                 )
        v.                       )       C.A. No. 20-464-RGA
                                 )
VICTORINOX SWISS ARMY, INC.,     )
                                 )
                Defendant.       )
                                 )

**DEFENDANT VICTORINOX SWISS ARMY, INC.'S ANSWERING BRIEF IN
OPPOSITION TO PLAINTIFF TARGUS INTERNATIONAL LLC'S MOTION TO
DISMISS COUNTERCLAIMS AND TO STRIKE THIRD DEFENSE (D.I. 16)**

Francis DiGiovanni (No. 3189)
Thatcher A. Rahmeier (No. 5222)
FAEGRE DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

*Attorneys for Defendant/Counterclaim Plaintiff
Victorinox Swiss Army, Inc.*

Dated:  July 17, 2020

# TABLE OF CONTENTS

**Page**

I.      NATURE AND STAGE OF THE PROCEEDINGS ................................................ 1

II.     SUMMARY OF ARGUMENT ............................................................................... 1

III.    CONCISE STATEMENT OF FACTS .................................................................... 2

    A.    Targus's Inequitable Conduct ............................................................................... 2

    B.    Targus's Attempt to Monopolize the TSA Compliant Checkpoint-Friendly Bag Market ............................................................................................................ 4

IV.    ARGUMENT ......................................................................................................... 5

    A.    Legal Standards .................................................................................................... 5

         1.    Motion to Dismiss and Strike .................................................................. 5

         2.    Pleading Inequitable Conduct .................................................................. 6

         3.    Pleading Attempted Monopolization ........................................................ 6

    B.    Victorinox Adequately Pleaded Its Inequitable Conduct Counterclaim and Defense. ............................................................................................................... 7

         1.    Victorinox Sufficiently Pleaded Facts Supporting Materiality. ................ 7

         2.    Victorinox Sufficiently Pleaded Facts Supporting Intent. ....................... 11

         3.    Victorinox Sufficiently Pleaded Its Third Defense. ................................ 13

    C.    Victorinox Adequately Pleaded Its Attempted Monopolization Counterclaim. ...................................................................................................... 13

         1.    Victorinox's Sufficiently Pleaded Inequitable Conduct Claim Satisfies the First Element of Its Walker Process Counterclaim. ........... 14

         2.    Victorinox Sufficiently Pleaded Facts Supporting a Dangerous Probability of Achieving Market Power. ................................................. 14

             a.    Victorinox Adequately Pleaded a Relevant Market. ................... 15

             b.    Victorinox Adequately Pleaded Targus's Dangerous Probability to Monopolize the Market. ....................................... 18

V.     CONCLUSION .................................................................................................... 20

## TABLE OF AUTHORITIES

**Cases**                                                                     **Page(s)**

*Anderson News, L.L.C. v. Am. Media, Inc.*,
  680 F.3d 162 (2d Cir. 2012)........................................................................................8

*Andrulis Pharms. Corp. v. Celgene Corp.*,
  No. 13-1644-RGA, 2015 WL 436618 (D. Del. Jul 16, 2015) ...............................13

*Barr Labs., Inc. v. Abbott Labs.*,
  978 F.2d 98 (3d Cir. 1992)........................................................................................18

*Bayer Cropscience AG v. Dow Agrosiences LLC*,
  C.A. No. 10-1045 (RMB/JS), 2012 WL 1253047 (D. Del. Apr. 12, 2012)............12

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)........................................................................................6, 18, 20

*Boydstun Equip. Mfg., LLC v. Cottrell, Inc.*,
  No. 3:16-cv-790-SI, 2017 WL 4803938 (D. Or. Oct. 24, 2017) ............................10

*Brader v. Allegheny Gen. Hosp.*,
  64 F.3d 869 (3d Cir. 1995)...............................................................................15, 20

*Broadcom Corp. v. Qualcomm Inc.*,
  501 F.3d 297 (3d Cir. 2007)............................................................................ *passim*

*Brown Shoe Co. v. United States*,
  370 U.S. 294 (1962)..................................................................................................15

*Cornell Univ. v. Illumina, Inc.*,
  No. 10-433-LPS-MPT, 2016 WL 3046258 (D. Del. May 27, 2016)........................8

*Cot'n Wash, Inc. v. Henkel Corp.*,
  56 F. Supp. 3d 613 (D. Del. 2014) ..........................................................................8

*Courtesy Prods. L.L.C. v. Hamilton Beach Brands, Inc.*,
  No. 13-2012-SLR-SRF 2015 WL 6159113 (D. Del. Oct. 20, 2015)...............11, 12

*Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*,
  159 F.3d 129 (3d Cir. 1998)...............................................................................7, 14, 15

*Deere & Co. v. AGCO Corp.*,
  No. 18-827-CFC, 2019 WL 668492 (D. Del. Feb. 19, 2019)...................................8

*Delano Farms Co. v. California Table Grape Comm'n*,
  655 F.3d 1337 (Fed. Cir. 2011)..................................................................11, 17, 18

*Dippin' Dots, Inc. v. Mosey*,
    476 F.3d 1337 (Fed. Cir. 2007)..................................................................................14

*Exergen Corp. v. Wal-Mart Stores, Inc.*,
    575 F.3d 1312 (Fed. Cir. 2009)....................................................................................6

*Fesnak & Assocs., LLP v. U.S. Bank Nat. Ass'n*,
    722 F. Supp. 2d 496 (D. Del. 2010)..............................................................................6

*Fowler v. UPMC Shadyside*,
    578 F.3d 203 (3d Cir. 2009).....................................................................................5, 6

*Grier v. Klem*,
    591 F.3d 672 (3d Cir. 2010)..........................................................................................8

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*,
    125 F.3d 1195 (9th Cir. 1997) ....................................................................................19

*Intellectual Ventures I LLC v. Capital One Fin. Corp.*,
    99 F. Supp. 3d 610 (D. Md. 2015) ..............................................................................19

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
    No. 18-452-WCB, 2019 WL 2121395 (D. Del. 2019) ...............................................13

*Kranos IP Corp. v. Riddell, Inc.*,
    334 F. Supp. 3d 907 (N.D. Ill. 2018) ..........................................................................10

*In re Lipitor Antitrust Litig.*,
    855 F.3d 126 (3d Cir. 2017)........................................................................................14

*NRT Tech. Corp. v. Everi Holdings Inc.*,
    No. 19-804-MN-JLH, 2020 WL 3403091 (D. Del. June 19, 2020) .......................16, 17

*PepsiCo, Inc. v. Coca–Cola Co.*,
    No. 98-3282, 1998 WL 547088 (S.D.N.Y. Aug. 27, 1998)........................................16

*Philadelphia Taxi Ass'n v. Uber Techs., Inc.*,
    886 F.3d 332 (3d Cir. 2018).......................................................................................16

*PowerOasis, Inc. v. T-Mobile USA, Inc.*,
    522 F.3d 1299 (Fed. Cir. 2008)....................................................................................9

*Sanders v. The Mosaic Co.*,
    418 F. App'x 914 (Fed. Cir. 2011) ................................................................................6

*Southco, Inc. v. Penn Eng'g & Mfg. Corp.*,
    768 F. Supp. 2d 715 (D. Del. 2011)............................................................................10

*Sun Microsystems, Inc. v. Versata Enters., Inc.*,
  630 F. Supp. 2d 395 (D. Del. 2009).................................................................19

*SunPower Corp. v. PaneClaw, Inc.*,
  No 12-1633-MPT, 2016 WL 5107029 (D. Del. Sept. 19, 2016) ...............................8

*Targus Grp. Int'l, Inc. v. CODi, Inc.*,
  No. SACV 15-00353-CJC(Ex), 2015 WL 12696220 (C.D. Cal. Sept. 17,
  2015) .....................................................................................................10, 12

*Therasense, Inc. v. Becton, Dickinson & Co.*,
  649 F.3d 1276 (Fed. Cir. 2011)......................................................................11

*TransWeb, LLC v. 3M Innovative Properties Co.*,
  812 F.3d 1295 (Fed. Cir. 2016).....................................................................7, 14

*United States v. E.I. du Pont de Nemours & Co.*,
  351 U.S. 377 (1956).....................................................................................15

*Wyeth Holdings Corp. v. Sandoz, Inc.*,
  No. 09-955-LPS-CJB, 2012 WL 600715 (D. Del. Feb. 3, 2012) .........................9, 11

*Zadro Prods., Inc. v. SDI Techs., Inc.*,
  No. 17-1406 (WCB), 2019 WL 1100470 (D. Del. Mar. 8, 2019) ..........................11

## STATUTES, RULES & REGULATIONS

Fed. R. Civ. P. 8(a)(2)........................................................................................7

Fed. R. Civ. P. 9(b) ...........................................................................................6

Fed. R. Civ. P. 12(b)(6).....................................................................................5, 8

Fed. R. Civ. P. 12(f)..........................................................................................6, 13

Defendant Victorinox Swiss Army, Inc. ("Victorinox") hereby submits this Answering Brief in opposition to Plaintiff Targus International LLC's ("Targus") Motion to Dismiss Counterclaims and to Strike Third Defense (D.I. 16).

## I.      NATURE AND STAGE OF THE PROCEEDINGS

On April 2, 2020, Targus filed its Complaint alleging that Victorinox infringes U.S. Patent No. 8,567,578 ("the '578 patent").   D.I. 1.   On June 8, 2020, Victorinox filed its Answer, Affirmative Defenses, and Counterclaims asserting, among other things, that the '578 patent is unenforceable because of inequitable conduct (Third Defense and Count III) and attempted monopolization under Section 2 of the Sherman Act (Count IV).  D.I. 11 at 9, 15-26.  On June 26, 2020, Targus filed its Motion to Dismiss Counterclaims and to Strike Third Defense ("Targus's Motion").  D.I. 16.  Victorinox now files its answering brief in opposition to that Motion.

## II.     SUMMARY OF ARGUMENT

1.      Victorinox's allegations of inequitable conduct, including its allegations regarding materiality and specific intent, meet or exceed the standard for pleading inequitable conduct. Victorinox has pleaded sufficient facts for one to reasonably infer that the named inventors and prosecuting attorney knew the materiality of the prior art disclosures and that they knowingly withheld those prior art disclosures with specific intent to deceive the United States Patent and Trademark Office ("PTO").  Targus's attempt to create a factual dispute rings hollow as the Court must accept the facts in the Counterclaim as true.  When the Court accepts the facts as true, they are sufficient to support a claim of inequitable conduct.

2.      Victorinox's allegations of *Walker Process* fraud and attempted monopolization in violation of the Sherman Act meet or exceed the pleading standard for that cause of action. Victorinox's detailed pleading of inequitable conduct sufficiently pleads Targus's fraud. Victorinox also sufficiently pleads the market that Targus is attempting to monopolize—TSA

compliant checkpoint friendly bags—and pleads facts to show that Targus has a dangerous probability of achieving monopoly power due to its current market power, the significant barriers to entry to the market (including the dual threat of Targus's patent and the TSA standard that it embodies), and Targus's aggressive litigation campaign against competitors.

III.    **CONCISE STATEMENT OF FACTS**

    A.    **Targus's Inequitable Conduct**

On March 3, 2008, the Transportation Security Administration of the United States Department of Homeland Security ("TSA") announced plans to implement security procedures allowing travelers to pass through security checkpoints without being required to remove laptop computers from their bags, including releasing guidelines and specifications for a laptop bag to be TSA compliant or checkpoint friendly.  D.I. 11 ¶¶ 27-28.  Specifically, TSA published the TSA RFI, "Request for Information Checkpoint Friendly Laptop Bag," on March 3, 2008.  *Id.*  The TSA RFI provided "illustrative examples" of TSA compliant bags, including "[a] bag that would open completely so that each side of the bag would lie horizontally on the x-ray belt.  One side of the bag would be designed to hold the laptop and nothing else," as well as "[a] bag that would contain the laptop in a separate compartment from other equipment like chargers and cables.  The accessories would be in a separate compartment."  *Id.* ¶ 29.  The TSA RFI also allowed for responders to the RFI to submit sample/prototype bags and designs to the TSA to evaluate whether those bags could be considered TSA complaint, and over the next few months, TSA collaborated with laptop bag manufacturers to design and develop bags that comply with the guidelines and specifications.  *Id.* ¶¶ 31-32.  This included establishing three pilot airport sites where bag manufacturers made appointments to test bags and receive direct feedback from TSA to refine and modify bag designs to comply with the March 2008 guidelines.  *Id.* ¶ 33.

Targus employees, including the named inventors of the '578 patent, Bui Phu Cuong, Todd Gormick, and Robert Shortt, were aware of the TSA RFI no later than March 6, 2008. *Id.* ¶¶ 34-35. Further, the named inventors received guidance from and participated in discussions and meetings with representatives from TSA, including in June 2008, in designing, developing, and refining the laptop bags that are encompassed by the claims of the '578 patent. *Id.* ¶¶ 36-37.

On March 13, 2008 and May 15, 2008, attorney John R. Thompson filed provisional applications on behalf of the inventors for a portable computer case. *Id.* 40; D.I. 1 Ex. A. On February 13, 2009, Mr. Thompson filed the utility patent application on behalf of the inventors that issued as the '578 patent on October 29, 2013. D.I. 11 ¶ 39. The '578 patent purports to claim priority to the provisional applications. D.I. 1 Ex. A at 1:6-13. Mr. Thompson was also aware of the TSA RFI no later than February 13, 2009, based upon the widespread reporting of the TSA RFI and the named inventors' knowledge of the TSA RFI. D.I. 11 ¶ 40. Thus, at least the named inventors were aware of the TSA RFI before the filing of the provisional applications, and Mr. Thompson and the named inventors were aware of the TSA RFI and Targus's work with the TSA prior to filing of the utility application. *Id.* ¶¶ 35, 40.

As discussed at length in Victorinox's Counterclaim, the TSA RFI and Targus's collaboration with the TSA were material to the patentability of the subject matter claimed in the application that resulted in the issuance of the '578 patent, and but for the failure of the named inventors and Mr. Thompson to disclose this information to the United States Patent Office ("PTO"), the '578 patent would not have issued. *Id.* ¶¶ 42-45. Additionally, the named inventors and Mr. Thompson knowingly withheld this material information with the specific intent to deceive the PTO. *Id.* ¶ 47.

**B.      Targus's Attempt to Monopolize the TSA Compliant Checkpoint Friendly Bag Market**

The TSA RFI—the concealment of which is a basis of Targus's inequitable conduct—revealed TSA's performance criteria, examples, and possible solutions for TSA compliant checkpoint friendly laptop bags, becoming the standard for such bags.  *Id*. ¶¶ 29-30.  The TSA RFI provided a "standard" (as conceded by Targus) for allowing laptop computers to remain within bags during airport screening and provided examples of such bags that included material characteristics that were subsequently included by the '578 Patent applicants in claims.  *Id*. ¶ 30, 47.

By fraudulently obtaining a patent claiming material portions of TSA's "standard" for TSA compliant checkpoint friendly laptop bags, and by bringing multiple lawsuits against competitors allegedly practicing the standard, there is a dangerous probability that Targus will achieve monopoly power in the market for TSA compliant checkpoint friendly laptop bags.  *See id*. ¶ 65.

The relevant product market that Targus is attempting to monopolize is TSA compliant checkpoint friendly laptop bags and cases sold to end-user consumers.  *Id*. ¶ 60.  TSA compliant checkpoint friendly laptop bags and cases are purchased by consumers who wish to pass through airport security checkpoints without removing their laptop computers from their bags.  *Id*.  For these consumers, non-TSA compliant laptop bags and cases, which require consumers to remove their laptop computers when passing security checkpoints, are not readily interchangeable with TSA compliant checkpoint friendly laptop bags or cases.  *Id*.  Both Targus and Victorinox sell TSA compliant checkpoint friendly laptop bags.  *Id*. ¶¶ 51, 60.

The relevant geographic market is the United States.  *Id*. ¶ 61.  Targus sells and has sold its TSA compliant checkpoint-friendly laptop bags and cases in interstate commerce throughout the United States.  *Id*.

There are significant barriers to entry into the market for TSA compliant checkpoint friendly laptop bags and cases that would allow Targus to achieve market power. *Id.* ¶ 62. Such barriers include Targus's enforcement of the fraudulently-obtained claims of the '578 Patent (which encompass TSA RFI standards), and the limited design options for TSA compliant checkpoint friendly laptop bags and cases that do not infringe the '578 Patent under Targus's asserted scope of the '578 Patent's claims. *Id.*; *see also id.* ¶ 47. Another barrier is Targus's enforcement campaign against its competitors: Targus has enforced its fraudulently-obtained '578 Patent in at least seven patent infringement lawsuits. *Id.* ¶¶ 64, 68.

Targus currently controls a significant portion of this market. *Id.* ¶ 66. Targus has either already eliminated or is attempting to eliminate competitors through its various lawsuits asserting the '578 Patent. *Id.* Targus also asserts a scope of patent claim coverage that would result in driving other competitors out of the market. *Id.* This lawsuit is part of that effort and is designed to eliminate Victorinox as a competitor, use the '578 Patent as a barrier to competition, and monopolize the market for TSA compliant checkpoint friendly laptop bags and cases. *Id.*

## IV.   ARGUMENT

### A.   Legal Standards

#### 1.   Motion to Dismiss and Strike

Rule 12(b)(6) allows a party to move to dismiss allegations for failure to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). A court conducts a two-part analysis when reviewing a motion to dismiss for failure to state a claim. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009). First, the court must accept all of the complaint's or counterclaim's well-pleaded facts as true. *Id.* at 210-11. Then, the court determines whether the facts alleged in the complaint or counterclaim are sufficient to make a "plausible claim for relief." *Id.* at 211. In doing so, the court must "construe the complaint in the light most favorable to the [claimant], and

determine whether, under any reasonable reading of the complaint, the [claimant] may be entitled to relief." *Id.* at 210.  A well-pleaded complaint or counterclaim may not be dismissed "even if it strikes a savvy judge that actual proof of [the alleged] facts is improbable, and that a recovery is very remote and unlikely." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007) (internal quotation omitted).

Federal Rule of Civil Procedure 12(f) states, in relevant part, that "[a] court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Such motions are disfavored.  *Fesnak & Assocs., LLP v. U.S. Bank Nat. Ass'n*, 722 F. Supp. 2d 496, 502 (D. Del. 2010) (citing *Seidel v. Lee*, 954 F. Supp. 810, 812 (D. Del. 1996)).

### 2.      Pleading Inequitable Conduct

"Whether inequitable conduct has been pleaded with particularity under Rule 9(b) is a question governed by Federal Circuit law." *Exergen Corp. v. Wal-Mart Stores, Inc.*, 575 F.3d 1312, 1318 (Fed. Cir. 2009).  In order to plead inequitable conduct, "the pleading must identify the specific who, what, when, where, and how of the material misrepresentation or omission committed before the PTO." *Id.* at 1328.  "At the pleading stage the proponent of the inequitable conduct theory need only plead facts supporting a reasonable inference that a specific individual knew of the misrepresentation and had the specific intent to deceive the PTO." *Micron Tech., Inc. v. Rambus Inc.*, 917 F. Supp. 2d 300, 322 n.22 (D. Del. 2013) (quoting *Sanders v. The Mosaic Co.*, 418 F. App'x 914, 919 (Fed. Cir. 2011)).  "A reasonable inference is one that is plausible and that flows logically from the facts alleged . . . ." *Exergen*, 575 F.3d at 1329 n.5.

### 3.      Pleading Attempted Monopolization

To prevail on a *Walker Process* claim, in addition to showing that the patent was fraudulently obtained—a "nearly identical" showing as inequitable conduct—and enforced against

claimant, the claimant must show the "other elements" of a Sherman Act monopolization claim. *TransWeb, LLC v. 3M Innovative Properties Co.*, 812 F.3d 1295, 1306 (Fed. Cir. 2016). At the pleading stage, to state an attempted monopolization claim, the claimant "must allege '(1) that the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving monopoly power.'" *Broadcom Corp. v. Qualcomm Inc.*, 501 F.3d 297, 317 (3d Cir. 2007) (quoting *Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*, 159 F.3d 129, 141 (3d Cir. 1998)). Attempted monopolization claims "are subject to the notice-pleading standard of Federal Rule of Civil Procedure 8(a)(2), which requires only a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* (internal quotation omitted).

### B. Victorinox Adequately Pleaded Its Inequitable Conduct Counterclaim and Defense.

Notably, Targus has not disputed that Victorinox has sufficiently pleaded that the named inventors and attorney Mr. Thompson had knowledge of the TSA RFI and Targus's collaboration with the TSA, and that neither the named inventors nor Mr. Thompson disclosed this information to the PTO during prosecution of the '578 patent. Instead, Targus only contends that the Victorinox's inequitable conduct allegations are deficient as to materiality and intent. However, Victorinox alleged more than sufficient facts for the Court to reasonably infer that the non-disclosed TSA RFI and Targus's collaboration with the TSA was material to the patentability of the '578 patent and that the named inventors and Mr. Thompson had the specific intent to deceive the PTO by withholding this information. Thus, Targus's Motion should be dismissed.

### 1. Victorinox Sufficiently Pleaded Facts Supporting Materiality.

The crux of Targus's argument is that Victorinox's allegations as to materiality are insufficient because of a possibility that the inventors conceived of their invention prior to March

3, 2008, the date that the TSA was published.  D.I. 17 at 4.  Targus thus does not contest that *substantively*, the TSA RFI is material, but instead argues that it is "more plausible" that its inventors can antedate the TSA prior art.  D.I. 17 at 2, 4, 9.  This argument is simply an attempt to litigate the merits of the claim based on facts outside the four corners of Victorinox's Counterclaim.  Courts "do not inquire whether a plaintiff will ultimately prevail when considering a motion to dismiss, only whether the plaintiff is entitled to offer evidence to support his or her claims."  *Grier v. Klem*, 591 F.3d 672, 673 (3d Cir. 2010).  "A court ruling on [a Rule 12(b)(6)] motion may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible."  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 185 (2d Cir. 2012); *see also Deere & Co. v. AGCO Corp.*, No. 18-827-CFC, 2019 WL 668492, at *5 (D. Del. Feb. 19, 2019) ("[T]he fact that an innocuous or even exculpatory inference can also plausibly be drawn from a complaint's alleged facts does not warrant dismissal.").

Further, any factual disputes that are conjured up by Targus based on facts outside of the Counterclaim are irrelevant to the inquiry prompted by the filing of a Rule 12(b)(6) motion.  *See SunPower Corp. v. PaneClaw, Inc.*, No 12-1633-MPT, 2016 WL 5107029, at *13 (D. Del. Sept. 19, 2016) (finding plaintiff's arguments "go to the merits of defendant's allegations, a determination the court may not make at the pleading stage"); *Cornell Univ. v. Illumina, Inc.*, No. 10-433-LPS-MPT, 2016 WL 3046258, at *9 (D. Del. May 27, 2016) ("At the pleadings stage, plaintiffs' evidence is irrelevant and the court can not address the merits of that evidence."); *Cot'n Wash, Inc. v. Henkel Corp.*, 56 F. Supp. 3d 613, 626 (D. Del. 2014) ("The fact that plaintiffs disagree with the factual representations made by [the defendant] is irrelevant as the court is not required to judge the merits of the parties' respective positions at this stage of the proceedings.").

"Instead, a court assessing the sufficiency of a pleading looks only to a narrow category of materials (the pleading and any attached exhibits) provided only by one side (the party or parties asserting the inequitable conduct claim)." *Wyeth Holdings Corp. v. Sandoz, Inc.*, No. 09-955-LPS-CJB, 2012 WL 600715, at *7 (D. Del. Feb. 3, 2012).

Thus, the question is not whether Victorinox's interpretation of facts is the *most* plausible, but whether it is plausible. Victorinox's allegations regarding materiality of the TSA RFI and Targus's collaboration with the TSA are more than sufficient to survive the pleading stage. Victorinox specifically alleges that the TSA RFI is prior art under 35 U.S.C. § 102(a) because it was publicly available prior to the purported date of invention. D.I. 11 ¶ 42. Victorinox also alleges that the '578 patent claims priority to two provisional patent applications that were referenced in the application filed on February 13, 2009. *Id.* ¶ 35.[1] The actual date of invention will be subject to inquiry, discovery, and vigorous litigation, but there is no dispute that the TSA RFI was publicly available prior to the filing of the first provisional application. *Id.* ¶ 47.

As for Targus's collaboration with the TSA, there is no dispute that the collaboration occurred prior to the date that the utility application was filed. *Id.* ¶¶ 32, 35. It is Targus's burden to show that it is entitled to the earlier priority date, *PowerOasis, Inc. v. T-Mobile USA, Inc.*, 522 F.3d 1299, 1305-06 (Fed. Cir. 2008), and to the extent Targus cannot do so, then there is no dispute that the collaboration is a prior disclosure. Even if Targus is able to show an earlier priority date, the TSA collaboration could be information material to the PTO's decision given Victorinox's

---

[1] Targus argues that Victorinox did not "allege any invention date for the '578 Patent." D.I. 17 at 4. Victorinox can only know the publicly available presumptive invention date, and alleged it by repeatedly referencing the filing date of the non-provisional application (February 13, 2009) (D.I. 11 at 35, 39, 40), and further alleged that the issuance of the TSA RFI occurred on March 3, 2008, prior to the Targus non-provisional application or the initial Targus provisional application (D.I. 11 at 27, 28, 42, 47).

allegation that the named inventors knew that they were not the first to invent the technology for which they sought a patent. *See Boydstun Equip. Mfg., LLC v. Cottrell, Inc.*, No. 3:16-cv-790-SI, 2017 WL 4803938, at *12 (D. Or. Oct. 24, 2017) ("But if [patentee] knew, as [plaintiff] alleges, that [patentee] was not in fact the first to invent the technology for which it sought a patent, that would be information material to the PTO's decision of whether to grant a patent to [patentee]— *regardless of whether [plaintiff's] patent application came before or after [patentee's]*.").

Further, although they are ignored by Targus, Victorinox provides detailed allegations related to the but-for materiality of the TSA RFI and Targus's collaboration with TSA. Victorinox outlined the prosecution history of the '578 patent, including the amendments that the applicants made to overcome the rejections. D.I. 11 ¶¶ 43-45. Victorinox describes that the prior disclosures disclosed the same elements included in the claim amendments. *Id.* ¶ 45. This is more than enough to show materiality at the pleading stage. *See, e.g., Southco, Inc. v. Penn Eng'g & Mfg. Corp.*, 768 F. Supp. 2d 715, 721 (D. Del. 2011) (finding sufficient allegation that if the examiner knew about the prior art product, the examiner would not have allowed the patent). Further, similar allegations of inequitable conduct by the named inventors and Mr. Thompson as to the '578 patent were found to be sufficient to survive a motion to dismiss in an earlier action brought by Targus against another laptop bag manufacturer. *Targus Grp. Int'l, Inc. v. CODi, Inc.*, No. SACV 15-00353-CJC(Ex), 2015 WL 12696220, at *2 (C.D. Cal. Sept. 17, 2015).

Targus cites *Kranos IP Corp. v. Riddell, Inc.*, 334 F. Supp. 3d 907 (N.D. Ill. 2018), but that decision is inapposite. The portion of *Kranos* cited by Targus relates to pleading the intent prong, not the materiality prong, of inequitable conduct. D.I. 17 at 5 (citing *Kranos IP*, 334 F. Supp. 3d at 916). Additionally, while Targus states that Victorinox relies only upon the timing of the TSA RFI and the patent applications, as discussed above, Victorinox's allegations go well beyond just

the timing.  Thus, Victorinox's materiality allegations are sufficient, and the Motion should be denied.

### 2. Victorinox Sufficiently Pleaded Facts Supporting Intent.

"In this district, an inequitable conduct claim is rarely disallowed at the pleading stage due to the failure to adequately allege scienter." *Zadro Prods., Inc. v. SDI Techs., Inc.*, No. 17-1406 (WCB), 2019 WL 1100470, at *5 (D. Del. Mar. 8, 2019).  "Because direct evidence of deceptive intent is rare, a district court may infer intent from indirect and circumstantial evidence." *Therasense, Inc. v. Becton, Dickinson & Co.*, 649 F.3d 1276, 1290 (Fed. Cir. 2011).  While ultimately a defendant must show that a specific intent to deceive is "the single most reasonable inference drawn from the evidence" to prevail at trial on a claim of inequitable conduct, at the pleading stage, a defendant must merely show that it is reasonable to infer a specific intent to deceive.  *Delano Farms Co. v. California Table Grape Comm'n*, 655 F.3d 1337, 1350 (Fed. Cir. 2011); *Wyeth*, 2012 WL 600715, at *7.  This is because, at the pleading stage, "a court does not (and cannot) review 'all of the circumstances' at play in a case, as the *Therasense* 'single most reasonable inference' inquiry requires."  *Wyeth*, 2012 WL 600715, at *7 (quoting *Therasense*, 649 F.3d at 1290); *see also Courtesy Prods. L.L.C. v. Hamilton Beach Brands, Inc.*, No. 13-2012-SLR-SRF, 2015 WL 6159113, at *7 (D. Del. Oct. 20, 2015) ("The inquiry regarding specific intent often turns on facts that cannot be gleaned from public documents, and discovery is helpful to shed light on the reasoning behind decisions to make allegedly material omissions or misrepresentations.").

Victorinox's allegations are more than enough to support a reasonable inference that the named inventors and Mr. Thompson knowingly withheld material with the specific intent to deceive the PTO.  While Targus cherry-picks the first sentence of paragraph 47 and implies that it

is the totality of Victorinox's specific intent allegations (D.I. 17 at 7-8), Victorinox provides further allegations to support the inference of specific intent to deceive, including that the TSA RFI issued shortly before the first provisional patent application was submitted and that the TSA RFI was the material impetus for the purported invention because the TSA RFI provided the standard for checkpoint friendly laptop bags, as admitted by Targus.  D.I. 11 ¶¶ 47-48.  Such facts are more than enough to meet the pleading standard for specific intent.  *See, e.g., Courtesy Prods.*, 2015 WL 6159113, at *7 (holding that an allegation that a misrepresentation was made with the specific intent to deceive in conjunction with allegations that the applicant knew that statements to the PTO were false was sufficient to satisfy the specific intent requirement at the pleading stage).  As noted above, similar allegations were found to be sufficient in an earlier action brought by Targus against another laptop bag manufacturer.  *Targus Grp. Int'l, Inc. v. CODi, Inc.*, 2015 WL 12696220, at *2.

The decision in *Bayer Cropscience AG v. Dow Agrosiences LLC*, C.A. No. 10-1045 (RMB/JS), 2012 WL 1253047 (D. Del. Apr. 12, 2012), cited by Targus, is distinguishable.  In *Bayer*, the defendant alleged that during prosecution of the patent-in-suit, a named inventor was one of the authors of an article that described the tfdA gene as a dioxygenase, yet the patent-in-suit claimed the tfdA gene was a monoxygenase.  *Id.* at *1.  As a secondary reason for rejecting the sufficiency of the specific intent allegations, the court noted that the fact that the named inventor published an article with this information during prosecution of the patent was at odds with the allegation that the named inventor deliberately withheld the information with specific intent to deceive the PTO.  *Id.* at *5.  By contrast, here, the references to the TSA screening process in the '578 patent, cited by Targus, do not indicate that the purported invention resulted from review of the TSA RFI or Targus's collaboration with the TSA.  Instead, they indicate that the

12

named inventors included the claimed features in the hopes that those features would allow a user to move more quickly through the TSA screening process without removing the laptop, *as if the named inventors developed this concept*.  *See* D.I. 1 Ex. A at 7:38-59.  Thus, unlike in *Bayer*, the named inventors and Mr. Thompson did not tell the world (and the PTO) that the TSA RFI or Targus's collaboration with the TSA existed and was the impetus for the invention.  Instead, the inventors took credit for the prior art.  This further supports the inference that the applicants withheld the information with the specific intent to deceive the PTO.

Given that Victorinox's allegations provide a reasonable inference of the named inventors' and Mr. Thompson's specific intent to deceive the PTO, the allegations are sufficient and the Motion should be denied.

### 3.    Victorinox Sufficiently Pleaded Its Third Defense.

Targus's only argument to strike Victorinox's Third Defense is that they rest entirely on Victorinox's Counterclaim III, as discussed above.  D.I. 17 at 9.  Because Victorinox's Counterclaim is sufficiently pleaded, Victorinox's Third Defense is also sufficiently pleaded and should not be stricken under Rule 12(f).  *See IOENGINE, LLC v. PayPal Holdings, Inc.,* No. 18-452-WCB, 2019 WL 2121395, at *8 (D. Del. 2019); *Andrulis Pharms. Corp. v. Celgene Corp.*, No. 13-1644-RGA, 2015 WL 4366118, at *6 (D. Del. Jul 16, 2015).

### C.    Victorinox Adequately Pleaded Its Attempted Monopolization Counterclaim.

Victorinox has adequately pleaded inequitable conduct, which comprises Targus's fraud. Victorinox has also adequately pleaded the dangerous probability that Targus will attain a monopoly in the market of TSA compliant checkpoint-friendly bags if its patent infringement action prevails.  For these reasons, the Court should deny Targus's motion to dismiss Victorinox's well-pled attempted monopolization counterclaim.

### 1. Victorinox's Sufficiently Pleaded Inequitable Conduct Claim Satisfies the First Element of Its *Walker Process* Counterclaim.

So long as Victorinox adequately pled its inequitable conduct claim, it has thereby also satisfied the first element of a *Walker Process* claim. "[T]he showing required for proving inequitable conduct and the showing required for proving the fraud component of *Walker Process* liability may be nearly identical." *TransWeb*, 812 F.3d at 1307. Here, Victorinox has adequately pleaded a claim for inequitable conduct. *See* Section IV.B, *supra*. In addition, Victorinox alleged that Targus is enforcing its fraudulently obtained patent against Victorinox with knowledge of the fraudulent procurement, D.I. 11 ¶¶ 52-55. *See TransWeb*, 812 F.3d at 1307. Accordingly, the first element of Victorinox's *Walker Process* counterclaim has been adequately alleged.

### 2. Victorinox Sufficiently Pleaded Facts Supporting a Dangerous Probability of Achieving Market Power.

Victorinox has also adequately pleaded the elements of a Sherman Act attempted monopolization claim. Specifically, Victorinox has sufficiently alleged that Targus violated the Sherman Act by attempting to monopolize the market for TSA compliant checkpoint friendly laptop bags.

Liability for an attempted monopolization under Section 2 of the Sherman Act arises when "(1) [ ] the defendant has engaged in predatory or anticompetitive conduct with (2) a specific intent to monopolize and (3) a dangerous probability of achieving market power." *Broadcom*, 501 F.3d at 317 (internal citations and quotation marks omitted) (*quoting Crossroads Cogeneration Corp. v. Orange & Rockland Utils., Inc.*, 159 F.3d 129, 141 (3d Cir. 1998)).[2] "[W]hether a defendant

---

[2] Although Federal Circuit would have jurisdiction over any appeal in this case, Third Circuit law applies to issues of antitrust law. *See TransWeb*, 812 F.3d at 1307. Once fraud on the PTO is established, a *Walker Process* claimant must "show the basic elements of an antitrust violation defined by the regional circuit's law, including that the patentee's behavior was directed to a relevant product market." *Dippin' Dots, Inc. v. Mosey*, 476 F.3d 1337, 1348 (Fed. Cir. 2007); *see*

has a 'dangerous probability' of successful monopolization is a fact-sensitive inquiry, in which market share is simply one factor." *Broadcom*, 501 F.3d at 319.   A claim for attempted monopolization "must allege 'something more' than mere market share, such as 'the strength of competition, probable development of the industry, the barriers to entry, the nature of the anticompetitive conduct, and the elasticity of consumer demand.'" *Id.* (quoting *Crossroads*, 159 F.3d at 141).

In attacking Victorinox's antitrust allegations, Targus focuses on Victorinox's pleading of the "dangerous probability" that Targus will succeed in monopolizing the market for TSA compliant checkpoint friendly laptop bags.  D.I. 17 at 10.  "Courts typically should not resolve this question at the pleading stage 'unless it is clear on the face of the complaint that the 'dangerous probability' standard cannot be met as a matter of law.'"  *Broadcom*, 501 F.3d at 318 (quoting *Brader v. Allegheny Gen. Hosp.*, 64 F.3d 869, 877 (3d Cir. 1995)).

More specifically, Targus argues that Victorinox did not adequately plead a relevant market, and that Victorinox did not adequately plead sufficient power within that market to come dangerously close to monopolization.  D.I. 17 at 11.

For the reasons explained below, Victorinox has more than satisfied its pleading requirement, and the Court should accordingly deny Targus's Motion.

### a.    Victorinox Adequately Pleaded a Relevant Market.

Competing products are in the same market if "they are readily substitutable for one another; a market's outer boundaries are determined by the reasonable interchangeability of use between a product and its substitute, or by their cross-elasticity of demand."  *Broadcom*, 501 F.3d

---

*also In re Lipitor Antitrust Litig.*, 855 F.3d 126, 148 (3d Cir. 2017) (noting that Third Circuit jurisprudence applies to antitrust elements).

at 307; *see also Brown Shoe Co. v. United States*, 370 U.S. 294, 325 (1962) (same).  The relevant product market consists of all products that are "reasonably interchangeable by consumers for the same purposes." *United States v. E.I. du Pont de Nemours & Co.*, 351 U.S. 377, 395 (1956).  "[I]n general, the determination of a relevant market is a 'complex and fact-intensive inquiry.'  Accordingly, courts should deny motions to dismiss unless 'the alleged market makes "no economic sense under any set of facts."'" *NRT Tech. Corp. v. Everi Holdings Inc.*, No. 19-804-MN-JLH, 2020 WL 3403091, at *9 n.30 (D. Del. June 19, 2020) (quoting *Philadelphia Taxi Ass'n v. Uber Techs., Inc.*, 886 F.3d 332, 341-42 (3d Cir. 2018); *PepsiCo, Inc. v. Coca–Cola Co.*, No. 98-3282, 1998 WL 547088, at *6 (S.D.N.Y. Aug. 27, 1998)).

In *Broadcom*, the Third Circuit held that the Broadcom had adequately pleaded the contours of a market where it alleged that the technology in question—covered by a patent—was "not interchangeable with or substitutable for other technologies." 501 F.3d at 315.  The defendant objected to Broadcom's definition because it was "congruent with the scope" of the patents and therefore "would result in every patent holder being condemned as a monopolist." *Id.*  The court rejected that argument, holding that "[t]his objection misconstrues Broadcom's theory.  It is the incorporation of a patent into a standard—not the mere issuance of a patent—that makes the scope of the relevant market congruent with that of the patent." *Id.*

Such is the case here, as alleged by Victorinox in its Counterclaims.  The TSA RFI set a "standard" for TSA compliant checkpoint friendly bags. *Id.* ¶¶ 30, 47.  "[I]it provided a 'standard' (as conceded by Targus) for allowing laptop computers to remain within bags during airport screening and provided examples of such bags that included material characteristics that were subsequently included by the '578 Patent applicants in claims . . . ." *Id.*  Moreover, there are

16

"limited design options for checkpoint-friendly laptop bags and cases that do not infringe the '578 Patent under Targus's asserted scope of the '578 Patent's claims." *Id*. ¶ 62.

Here, as in *Broadcom*, Victorinox alleged facts plausibly showing that TSA compliant checkpoint friendly laptop bags are a unique market because they are not substitutable with other products. According to the Counterclaim, TSA compliant "[c]heckpoint friendly laptop bags and cases are purchased by consumers who wish to pass through airport security checkpoints without being required to remove their laptop computers from their bags." D.I. 11 ¶ 60. As a result, "[f]or consumers, laptop bags and cases without a TSA compliant mechanism for a consumer to pass a security checkpoint without removing his or her laptop computer are not readily interchangeable with TSA compliant checkpoint-friendly laptop bags or cases." *Id*. It is certainly not the case that "the alleged market makes 'no economic sense under any set of facts,'" and thus the Court "should deny [the] motion[] to dismiss." *NRT Tech.*, 2020 WL 3403091, at *9 n.30.

Victorinox alleges the relevant geographic market is the United States, which is well supported throughout the counterclaim given that compliance with the requirements of the TSA—a U.S. federal agency with nationwide jurisdiction in airports—dictates whether a laptop bag is "checkpoint friendly." These are precisely the sort of allegations that, "if proved, would define the market or the submarket with reference to consumer demand for the product and consumer demand for its reasonable substitutes." *Delano Farms*, 655 F.3d at 1352.

Targus brushes over these allegations without seriously engaging them. As a result, and like the defendant in *Broadcom*, Targus has "misconstrued" Victorinox's market definition allegations. Victorinox has not merely alleged that "the aspects of [the] invention that may have led the PTO to issue a patent are . . . *per se* conterminous with the features of the patented product that may lead consumers to select that product over other similar ones." *Delano Farms*, 655 F.3d

at 1352. Rather, Victorinox alleges in specific detail that there is a market for laptop bags that will enable consumers to avoid lengthy TSA inspections. D.I. 11 ¶ 60. Victorinox also alleges that there are "limited design options for checkpoint friendly laptop bags and cases that do not infringe the '578 Patent under Targus's asserted scope of the '578 Patent's claims." *Id*. ¶ 62. In other words, Victorinox defined the market as checkpoint-friendly bags compliant with the TSA standard, and, due to Targus's actions in improperly procuring and asserting its patent, Targus is now able to monopolize this market due to the lack of other design options.

These allegations satisfy the notice pleading standards of the Federal Rules of Civil Procedure applicable to the attempted monopolization claim, which require only a short and plain statement of the claim showing that the pleader is entitled to relief, combined with facts sufficient to raise a right to relief above the speculative level. *Broadcom*, 501 F.3d at 317 (*quoting Twombly*, 550 U.S. 544).[3]

### b. Victorinox Adequately Pleaded Targus's Dangerous Probability to Monopolize the Market.

"[A]lthough the size of a defendant's market share is a significant determinant of whether a defendant has a dangerous probability of successfully monopolizing the relevant market, it is not exclusive." *Barr Labs., Inc. v. Abbott Labs.*, 978 F.2d 98, 112 (3d Cir. 1992). Likewise, "determining whether a defendant has a 'dangerous probability' of successful monopolization is a fact-intensive inquiry, in which market share is simply one factor," and other issues "such as

---

[3] Targus cites *Delano Farms*, 655 F.3d 1337, to support its argument that Victorinox has not adequately pled a relevant market. However, in that case the counterclaim plaintiff alleged that one particular variety of grapevine was a distinct submarket because the grapes it produces are "uniquely valuable and distinct from other grapevine plant materials" and thus other grapevines were not reasonable substitutes. *Id*. at 1351. The counterclaim plaintiff failed to explain why those characteristics were more valuable nor why other grapes were inadequate substitutes, as Victorinox does in view of Targus's patent, the TSA standard that it sought to patent, and consumers' limited design choices.

significant market share coupled with anticompetitive practices, barriers to entry, the strength of competition, the probable development of the industry, and the elasticity of consumer demand may be considered." *Broadcom*, 501 F.3d at 318-19.

Targus criticizes Victorinox's allegation that Targus "controls a significant portion" of the U.S. market for checkpoint-friendly computer bags. D.I. 11 ¶ 66; *see also* D.I. 17 at 12-13. Taking Victorinox's allegations as true, this criticism fails. Victorinox's has pleaded much more than market share, including facts relevant to "anticompetitive practices" and "barriers to entry" that couple with market share to demonstrate a dangerous probability of control of the market. *See Broadcom*, 501 F.3d at 318.

Victorinox pleaded with particularity that Targus has "significant market share." D.I. 11 ¶ 66. Victorinox also pleaded that "[t]here are significant barriers to entry into the market for checkpoint-friendly laptop bags and cases that would allow Targus to achieve market power." *Id.* ¶ 62. The barriers include "Targus's enforcement of the fraudulently-obtained claims of the '578 Patent and the limited design options for checkpoint friendly laptop bags and cases that do not infringe the '578 Patent under Targus's asserted scope of the '578 Patent's claims." *Id.* Patents are recognized as "[c]ommon entry barriers" for antitrust purposes. *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1208 (9th Cir. 1997); *see also Intellectual Ventures I LLC v. Capital One Fin. Corp.*, 99 F. Supp. 3d 610, 624-25 (D. Md. 2015). This is especially the case when the patent is tied to a standard such as the TSA RFI.

Targus cites *Sun Microsystems, Inc. v. Versata Enterprises, Inc.*, 630 F. Supp. 2d 395, 403-04 (D. Del. 2009), for the proposition that Victorinox was required, and failed, to plead *specific* market share. However, in *Sun Microsystems*, the plaintiff failed to allege any facts whatsoever to support an allegation that Sun had a dangerous probability of success. Instead, the plaintiff

made a conclusory allegation that by its conduct Sun "has achieved, or has a dangerous probability of achieving monopoly power" and that there was a "dangerous probability of Sun achieving monopoly power." *Id*. at 403 (quoting underlying complaint). As described above, Victorinox has alleged facts supporting that conclusion.

Relatedly, Targus also incorrectly argues that Victorinox was required to plead the number of participants in the relevant market, how many there are relative to Targus, or how close Targus is to achieving monopoly power. Targus does not cite any case law in support of these points. It also ignores Victorinox's allegation that Targus has filed "at least . . . seven lawsuits alleging infringement of the '578 Patent," D.I. 11 ¶¶ 64, 68, which is indicative of the number of other participants in the relevant market.

In sum, Victorinox has alleged that Targus has significant market share and is seeking to enforce its patent—which was improperly acquired so as to monopolize the TSA's standard for checkpoint friendly bags—against multiple competitors within the relevant market. This is more than sufficient to show a dangerous probability that Targus will monopolize the relevant market, and raises Victorinox's right to relief above a speculative level. *See Broadcom*, 501 F.3d at 317 (quoting *Twombly*, 550 U.S. at 555). Just as in *Broadcom*, "it is by no means 'clear on the face of the complaint that the 'dangerous probability standard cannot be met as a matter of law.'" *Broadcom*, 501 F.3d at 320 (quoting *Brader*, 64 F.3d at 877). As a result, the Court should deny Targus's motion to dismiss Victorinox's attempted monopolization counterclaim.

## V.     CONCLUSION

For the foregoing reasons, Victorinox respectfully requests that the Court deny Plaintiff's Motion to Dismiss Counterclaims and to Strike Third Defense (D.I. 16).

Dated:  July 17, 2020
/s/ Francis DiGiovanni
Francis DiGiovanni (No. 31189)
Thatcher A. Rahmeier (No. 5222)
FAEGRE DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

*Attorneys for Defendant / Counterclaim
Plaintiff Victorinox Swiss Army, Inc.*

21

## <u>CERTIFICATE OF SERVICE</u>

I, Francis DiGiovanni, hereby certify that on July 17, 2020, this document (including its attachments) were electronically filed with the Clerk of the Court using CM/ECF, which will send notification to the registered attorney(s) of record that the document has been filed.  I further certify that on the same day, a copy of this document (including its attachments) were electronically mailed to the registered attorney(s) of record.

Dated:  July 17, 2020

*/s/ Francis DiGiovanni*
Francis DiGiovanni (No. 3189)
FAEGRE DRINKER BIDDLE &
REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE  19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
