IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TARGUS INTERNATIONAL, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-464-RGA |
| | ) | |
| VICTORINOX SWISS ARMY, INC., | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| Defendant. | ) | |
| | ) | |

**DEFENDANT VICTORINOX SWISS ARMY, INC.'S AMENDED
ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant Victorinox Swiss Army, Inc. ("Victorinox" or "Defendant") hereby files its

Amended Answer and Counterclaims to Plaintiff Targus International, LLC's ("Targus's" or

"Plaintiff's") Complaint (D.I. 1).

**AMENDED ANSWER**

As set forth below, Victorinox answers the allegations in Plaintiff's Complaint (D.I. 1) by

reproducing each of the pertinent headings therein and the corresponding paragraph numbering,

if any, with the text of each of the pertinent paragraphs within the Complaint, immediately

followed by Victorinox's answer(s) thereto.  Victorinox's reproduction herein of any material set

forth in Plaintiff's Complaint is solely for the purpose of convenience and is not, and should not

be construed as, an admission by Victorinox that any allegations or other statements in

Complaint, whether explicit or implied, are true, correct, or admitted by Victorinox.  All

allegations in Plaintiff's Complaint that Victorinox does not expressly admit or deny, below, are

hereby denied.

## PARTIES

1.      **Targus is a limited liability company under the laws of the state of Delaware with its principal address being 1211 N. Miller Street, Anaheim, California 92806.**

**ANSWER:**      Defendant lacks sufficient knowledge to form a belief as to the truth or

falsity of the allegations in Paragraph 1 and therefore denies them.

2.      **On information and belief, Defendant Victorinox Swiss Army, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 7 Victorinox Dr., Monroe, Connecticut 06468, and operates and owns the website located at wenger.ch.**

**ANSWER:**      Defendant admits that it is a corporation organized and existing under the

laws of the State of Delaware. Defendant denies that its principal place of business is at 7

Victorinox Dr., Monroe, Connecticut 06468 but admits that it has place of business at 7 Victoria

Dr., Monroe, Connecticut 06468. Defendant denies that it operates and owns the website located

at wenger.ch.

## JURISDICTION AND VENUE

3.      **This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§101, et seq.**

**ANSWER:**      Defendant admits that the Complaint purports to allege claims for patent

infringement arising under 35 U.S.C. § 101, *et seq.*, but expressly denies any liability for patent

infringement.  The question of subject matter jurisdiction is a conclusion of law, rather than a

statement of fact, to which no response is required.  To the extent that a response is required,

Defendant admits that the Court has subject matter jurisdiction over Plaintiff's Patent Act claims,

for the purposes of this action only; however, Defendant denies any liability for patent

infringement related in any way to Plaintiff's claims.  Defendant denies any remaining allegations

in Paragraph 3.

4.      The Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).

**ANSWER:**      The question of subject matter jurisdiction is a conclusion of law, rather than a statement of fact, to which no response is required.  To the extent that a response is required, Defendant admits that the Court has subject matter jurisdiction over Plaintiff's Patent Act claims, for the purposes of this action only; however, Defendant denies any liability for patent infringement related in any way to Plaintiff's claims.  Defendant denies any remaining allegations in Paragraph 4.

5.      The Court has personal jurisdiction over Defendant because: (1) Defendant is incorporated in Delaware; (2) Defendant regularly and continuously conducts business in this District and throughout Delaware, including by providing, selling, and offering to sell products, including the Accused Products described below, to residents of this District; and (3) Defendant has committed, and continues to commit, acts of patent infringement in this District and throughout this State.

**ANSWER:**      The question of personal jurisdiction is a conclusion of law, rather than a statement of fact, to which no response is required.  To the extent a response is required, Defendant admits that the Court has personal jurisdiction over it for purposes of this action only, but Defendant denies the merit and validity of any of Plaintiff's infringement allegations for which personal jurisdiction may be had.  Defendant admits that it is a corporation organized and existing under the laws of the State of Delaware.  Except as expressly admitted herein, Defendant denies the remaining allegations in Paragraph 5.

6.      Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400 (b), because Defendant resides in this District, and, upon information and belief, has committed acts of infringement in this District.

**ANSWER:**      The question of venue is a conclusion of law, rather than a statement of fact, to which no response is required.  To the extent a response is required, Defendant admits that venue is proper in this judicial district, except that Defendant denies the merit and validity of any of Plaintiff's infringement allegations for which venue may be had.  Defendant denies that it

has committed any "acts of infringement." Except as expressly admitted herein, Defendant denies

any remaining allegations in Paragraph 6.

## FACTUAL BACKGROUND

### The '578 Patent

7.     **For more than three decades, the Targus group of companies, headquartered in Anaheim, has been internationally recognized as an innovative creator and distributor of quality laptop bags and cases.  Targus has developed and introduced highly successful laptop bags and cases, including "checkpoint friendly" laptop bags and cases designed to allow travelers to pass through security checkpoints without removing their laptops from the case.   For example, Targus offers numerous travel briefcases and backpacks that are checkpoint friendly, including the Checkpoint-Friendly Air Traveler Backpack (model TBB012US), Corporate Traveler Briefcases (model CUCT02UA15S, CUCT02UA14S), Spruce™ EcoSmart® Checkpoint-Friendly Backpacks (model TBB013Us, TBB019US), Revolution Checkpoint-Friendly Backpacks (model TEB005US, TEB012US), Mobile ViP Checkpoint-Friendly Backpack (model PSB862), Blacktop Deluxe Checkpoint-Friendly Briefcase (model TBT275), and many others.  Targus and Defendant are competitors in the market for checkpoint friendly bags, backpacks, and cases.  Targus has successfully obtained patent protection for its innovations.**

**ANSWER:**     Defendant lacks sufficient knowledge to form a belief as to the truth or

falsity of the allegations in Paragraph 7 and therefore denies them.

8.     **Targus is the legal owner by assignment of U.S. Patent No. 8,567,578 entitled "Portable Computer Case" ("the '578 patent"), which the U.S. Patent and Trademark Office lawfully and duly issued on October 29, 2013.  A true and correct copy of the '578 patent is attached hereto as Exhibit A.   The '578 patent relates to "checkpoint-friendly" bags and cases.**

**ANSWER:**     Defendant admits that the '578 patent is entitled "Portable Computer

Case" and states that it was issued on October 29, 2013.  Defendant admits that what purports to

be a copy of the '578 Patent is attached as Exhibit A to the Complaint.  Defendant lacks sufficient

knowledge to form a belief as to the truth or falsity of the remaining allegations in Paragraph 8

and therefore denies them.

9.     **Targus has complied with the provisions of 35 U.S.C. § 287, for example, by selling checkpoint friendly travel products with packaging listing the '578 patent and/or referring consumers to its website, which lists the '578 patent as covering its checkpoint friendly products.**

**ANSWER:**     Defendant denies the allegations in Paragraph 9.

**Defendant's [Allegedly] Infringing Products**

10.     Defendant markets or has marketed numerous products as checkpoint friendly, including those shown in the chart below and others that contain the same claimed features as those listed below, that infringe the claims of the '578 patent ("Accused Products"). The Accused Products are non-limiting examples identified based on publicly available information.

| Accused Product Name | Item No. |
|---|---|
| Wenger Legacy 16 Briefcase | 67652140 |
| Wenger Legacy 17 Slimcase | 67444140 |
| Wenger Algorithm Backpack | 604972 |
| Wenger Buffer Backpack | 604970 |
| Wenger Cyberwork Backpack | 604969 |
| Wenger Flywalk Backpack | 601204 |
| Wenger Legacy 16 Backpack | 67329140 |
| Wenger Odyssey Pro-Check 17" Computer Backpack | - |
| Wenger Pro-Check 17" Computer Backpack | - |

**ANSWER:**     Defendant denies the allegations in Paragraph 10.

11.     As just one non-limiting example, a description of how Defendant's representative checkpoint friendly Legacy 17 Slimcase (Item No. 67444140) infringes exemplary claim 1 of the '578 patent is set forth below. Claim language is indicated by italics. This description is based on publicly available information, and the exemplary infringement description is based on publicly available information, and the exemplary infringement description is not exhaustive of the ways in which the Legacy 17 Slimcase infringes claim 1 or of the claims that it infringes.

[purported exemplary infringement description omitted]

**ANSWER:**     Defendant denies the allegations in Paragraph 11.

12.     On information and belief, Defendant makes, uses, sells, offers for sale, and/or imports the Accused Products. Wenger's website, wenger.ch, that sells the Accused

Products identifies that the "Responsible legal entity for the United States [is] Victorinox Swiss Army, Inc."

**ANSWER:**     Defendant denies that it makes the Accused Products. Defendant admits that it uses, sells, offers for sale, and/or imports the Accused Products.  Defendant admits only that the website at wenger.ch speaks for itself and denies the allegations to the extent they misquote or misrepresent the website. However, Defendant denies any infringement allegations based on its conduct.  Defendant denies any remaining allegations in Paragraph 12.

**13.     On information and belief, Defendant has infringed, is currently infringing, and/or unless enjoined will continue to infringe, various claims of the '578 patent in this District and elsewhere in the United States by making, using, selling, offering for sale and/or importing the Accused Products.**

**ANSWER:**     Defendant denies the allegations in Paragraph 13.

**14.     On information and belief, Defendant sells and has sold the Accused Products directly to consumers via its Internet website, <u>wenger.ch</u>, and through various third-party distributors including, for example, <u>amazon.com</u>, <u>officedepot.com</u>, and <u>staples.com</u>.**

**ANSWER:**     Defendant denies that the website wenger.ch is "its" Internet website and that it sells and has sold Accused Products via wenger.ch. Defendant admits that it sells and has sold at least some of the Accused Products directly to consumers via wenger.ch/US and through various third-party distributors including, for example, amazon.com, officedepot.com, and staples.com. Defendant denies any remaining allegations in Paragraph 14.

**Defendant's [Alleged] Willful Infringement**

**15.     Defendant was aware of the '578 patent at least by March 23, 2020 when Targus sent a letter to Defendant notifying it that Defendant's "checkpoint friendly" products infringed the '578 patent and requesting a prompt response.  The March 23, 2020 letter specifically identified the following Wenger "checkpoint friendly" products names in this Complaint as infringing the '578 patent: Wenger Legacy 16 Briefcase (Item No. 67652140), Wenger Legacy 17 Slimcase (Item No. 67444140), Wenger Algorithm Backpack (Item No. 604972), Wenger Buffer Backpack (Item No. 604970), Wenger Legacy 16 Backpack (Item No. 67329140), Wenger Odyssey Pro-Check 17" Computer Backpack, and Wenger Pro-Check 17" Computer Backpack.  To date, Defendant has not responded. Despite its actual knowledge of the '578 patent and its infringement since at least 2020,**

Defendant nonetheless kept its products on the market and has continued to willfully and deliberately infringe that '578 patent, and encouraged others, including its distributors, to infringe. Defendant's conduct was egregious in the face of its actual notice of the '578 patent, especially considering Defendant's conduct showed a disregard for Targus' patent rights as a direct competitor.

**ANSWER:** Defendant admits that it received a letter from Targus dated March 23, 2020; the contents of the letter speak for themselves. Defendant denies the remaining allegations in Paragraph 15.

## CAUSE OF ACTION
### ([Alleged] Infringement of U.S. Patent No. 8,567,578)

16. Plaintiff realleges and incorporates herein by reference the allegations states in paragraphs 1-Error! Reference source not found. [sic] of this Complaint as if fully set forth herein.

**ANSWER:** Defendant incorporates by reference herein its response to paragraphs 1 through 15, above.

17. Defendant has directly infringed and is directly infringing, either literally or under the doctrine of equivalents, the '578 patent under 35 U.S.C. § 271 *et seq.*, by making, using, selling, offering for sale, and/or importing into the United States the Accused Products, that infringe at least claims 1-3, 12-14, 42, and 47 of the '578 patent. Defendant has directly infringed and is directly infringing at least claim 42 by making, using, selling, offering for sale, and/or importing into the United States the Accused Products that are made by a patented process under 35 U.S.C. § 271 (g).

**ANSWER:** Defendant denies the allegations in paragraph 17.

18. On information and belief, Defendant has induced infringement and continues to induce infringement of one or more claims of the '578 patent by its distributors. Defendant had actual knowledge of the '578 patent and its applicability to its products, and nonetheless intentionally actively induced direct infringement by third parties, including its distributors of the Accused Products, and knew or should have known that these third parties would directly infringe one or more of the claims of the '578 patent. Defendant has and continues to actively induce third parties, including its distributors, of the Accused Products, to make, use, sell, offer, for sale, and/or import into the United States the Accused Products in violation of 35 U.S.C. § 271(b). For example, on information and belief, Defendant encouraged and instructed its distributors to sell or offer for sale the Accused Products in the United States that directly infringe at least claim 1-3, 12-14, 42 and 47 of the '578 patent, and to sell or offer for sale the Accused Products that mare made by patented process that infringes at least claim 42.

**ANSWER:**     Defendant denies the allegations in paragraph 18.

**19.     Targus has sustained and will continue to sustain damages as a result of Defendant's infringement of the '578 patent.**

**ANSWER:**     Defendant denies the allegations in paragraph 19.

**20.     Targus is entitled to recover damages sustained as a result of Defendant's infringement in an amount to be proven at trial.**

**ANSWER:**     Defendant denies the allegations in paragraph 20.

**21.     Unless Defendant is enjoined, Targus has also suffered and will continue to suffer irreparable injury for which Targus has non adequate remedy at law.**

**ANSWER:**     Defendant denies the allegations in paragraph 21.

**22.     Defendant has willfully infringed and continues to willfully infringe the '578 patent despite its pre-suit, actual knowledge of the '578 patent.**

**ANSWER:**     Defendant denies the allegations in paragraph 22.

## GENERAL DENIAL

Defendant denies each and every allegation, express or implied, contained in Plaintiff's Complaint that is not specifically admitted.

## RESPONSE TO RELIEF REQUESTED

The paragraphs in Plaintiff's Complaint titled "Prayer for Relief" do not require a response.  To the extent that these paragraphs do require a response, Defendant denies them and denies that Plaintiff is entitled to any relief whatsoever, including, without limitation, the relief listed in its Prayer for Relief.

## DEFENSES

In support of the following defenses, Defendant incorporates all of its Answers listed above, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein.  Defendant reserves all other

defenses at law or in equity that may exist now or in the future based upon discovery and further factual investigation in this case.

## First Defense:  Noninfringement

Defendant does not infringe, and has never infringed, in any way, any valid claim of the '578 patent, whether literally, directly, indirectly, jointly with any other person or entity, contributorily, by inducement, under the doctrine of equivalents, or otherwise under any section of 35 U.S.C. § 271, and, as such, is without any liability to Plaintiff.

## Second Defense:  Invalidity

All claims of the '578 patent are invalid for failure to meet and/or comply with one or more of the conditions and requirements of the patent laws and regulations, including, but not limited to, the conditions and requirements set forth in 35 U.S.C. §§ 101, 102, 103, and 112; and 37 C.F.R. §§ 1.1 *et seq.*

## Third Defense:  Inequitable Conduct/Unclean Hands

For the reasons set forth in Defendant's Counterclaim Count III for Declaratory Judgment of Unenforceability of the '578 Patent, Plaintiff's claims for relief are barred, in whole or in part, because all claims of the '578 patent are unenforceable based on the doctrines of inequitable conduct and unclean hands.  The allegations of Paragraphs 24 through ~~49~~70 of the Counterclaim are repeated, re-alleged, and incorporated herein by reference.

## Fourth Defense:  Invalidity Due to Derivation

All claims of the '578 patent are invalid under pre-AIA 35 U.S.C. § 102(f) because the named inventors of the '578 patent, Cuong, Gormick, and Shortt, did not invent the subject matter claimed in the patent, but instead derived the alleged inventions from others.  As set forth in Defendant's Counterclaim Count III for Declaratory Judgment of Unenforceability of the '578 Patent, person(s) at the Transportation Security Administration of the United States Department

of Homeland Security whose inventions are described in the TSA RFI published on March 3, 2008, are the true inventors.  The allegations of Paragraphs 24 through 49 of the Counterclaim are repeated, re-alleged, and incorporated herein by reference.

### Fifth Defense:  Limitation on Damages

Some or all of Plaintiff's claims for relief concerning the '578 patent are limited or barred as a consequence of failing to comply with the requirements of 35 U.S.C. §§ 286, 287, and/or 288. Included within this defense is the limitation on damages imposed by 35 U.S.C. § 287 due to Plaintiff's failure to provide notice by patent marking of bi-fold cases alleged by Targus to be encompassed by one or more claims of the '578 patent.

### Sixth Defense:  Equitable Defenses

Some or all of Plaintiff's claims for relief concerning the '578 patent are barred, in whole or in part, under the principles of equity, including, without limitation, misconduct, unclean hands, patent misuse, and/or other equitable defenses.

### Seventh Defense:  Failure to State a Claim

Plaintiff has failed to state any claim upon which relief can be granted.

### Eighth Defense:  Unavailability of Injunctive Relief

Plaintiff is not entitled to injunctive relief or any other equitable relief at least because any alleged injury to Plaintiff is not irreparable and because, had Plaintiff been injured, it would have an adequate remedy at law.

### Ninth Defense:  Disclaimer/Disavowal of Claim Scope

By virtue of statements, arguments, and/or amendments made, or positions taken, during the prosecution of one or more of the applications for the '578 patent, and/or by virtue of statements made within one or more of the specifications thereof, Plaintiff has disclaimed and/or disavowed the full scope of any allegedly infringed claim of the '578 patent and, as such, is

estopped from construing any such claim to cover or include, either literally or under the doctrine of equivalents, any product, system, or service of, or any method performed in whole or in part by, Defendant.

### Tenth Defense:  Prosecution History Estoppel

By virtue of statements, arguments, and/or amendments made, or positions taken, during the prosecution of one or more of the applications for the '578 patent, Plaintiff is estopped, under the doctrine of prosecution history estoppel, from construing any allegedly infringed claim of the '578 patent to cover or include under the doctrine of equivalents any product, system, or service of, or any method performed in whole or in part by, Defendant.

### Eleventh Defense:  No Willful Infringement

Plaintiff is not entitled to enhanced or increased damages for willful infringement because Defendant has not engaged in any conduct that meets the applicable standard for willful infringement.

### Twelfth Defense:  No Exceptional Case

Plaintiff is not entitled to relief pursuant to 35 U.S.C. § 285 because Defendant has not engaged in any conduct that meets the applicable standard to render this case exceptional.

### JURY DEMAND

Defendant hereby respectfully requests a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedures, on all issues so triable.

### VICTORINOX SWISS ARMY, INC.'S AMENDED COUNTERCLAIMS

Pursuant to Federal Rule of Civil Procedure 13, Victorinox Swiss Army, Inc. ("Victorinox" or "Counterclaimant") asserts the following Amended Counterclaims against Targus Group International LLC ("Targus" or Counterclaim-Defendant) as follows:

## PARTIES

1.      Counterclaimant Victorinox is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 7 Victoria Dr., Monroe, Connecticut 06468.

2.      Upon information and belief, Counterclaim-Defendant Targus is a limited liability company under the laws of the state of Delaware with its principal address being 1211 N. Miller Street, Anaheim, California 92806.

## JURISDICTION AND VENUE

3.      Targus has consented to personal jurisdiction in this district by filing the Complaint in this action in this Court.

4.      Counts I through III of these Counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. The Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, and 2201-2202.

5.      As to Counts I through III of these Counterclaims, venue is based on 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b).  Targus has consented to venue in this Court by bringing this action against Victorinox and thus venue for Victorinox's Counterclaims may be proper in this district, although a different venue may be more convenient to hear this dispute.

6.      Count IV of these Counterclaims arises under the antitrust laws of the United States, 15 U.S.C. §§ 2 and 15.  The Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 4.

7.      As to Count IV of these Counterclaims, venue is based on 15 U.S.C. §§ 15 and 22 and 28 U.S.C. § 1391(b) and 1391(c).

## BACKGROUND

8.      Targus has filed suit alleging that Victorinox infringes or has infringed U.S. Patent No. 8,567,578 ("the '578 Patent").

9.      Victorinox has denied that it infringes or has infringed any valid claim of the '578 Patent and has asserted that the '578 Patent is invalid.

10.     Based on the foregoing, there is an actual, immediate, and justiciable controversy between Targus and Victorinox as to the infringement, validity, and enforceability of the '578 Patent.

## COUNTERCLAIM COUNT I
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '578 PATENT

11.     Victorinox incorporates by reference the allegations contained in Paragraphs 1 to 10 of its Counterclaims.

12.     An actual controversy exists with respect to the alleged infringement of the '578 Patent.

13.     Although Targus alleges in its Complaint that Victorinox has infringed the claims of the '578 Patent, Victorinox has not infringed and does not infringe any valid claim of the '578 Patent.

14.     Victorinox does not infringe any valid claim of the '578 Patent at least because none of the products or methods Targus has accused of infringement contain, and/or Victorinox does not "remove[] from interfering with a scanner," "an object in the first storage section" as claimed in the '578 Patent.

15.     Victorinox does not infringe, either directly or indirectly, any valid claim of the '578 Patent at least because none of the products Targus has accused of infringement contain "a hinge" as claimed in the '578 Patent.

16.     A judicial determination of the respective rights of the parties with respect to the infringement of the claims of the '578 Patent is now necessary and appropriate under 28 U.S.C. § 2201.

**COUNTERCLAIM COUNT II**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE '578 PATENT**

17.     Victorinox incorporates by reference the allegations contained in Paragraphs 1 to 16 of its Counterclaims.

18.     An actual controversy exists with respect to the invalidity of the '578 Patent.

19.     Although Targus alleges in its Complaint that the '578 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code, each and every claim of the '578 patent is invalid because they fail to satisfy one or more conditions for patentability set forth in 35 U.S.C. § 101 *et seq.*, including but not limited to Sections 102, 103, and 112.

20.     Further, by way of example, one or more of the following references in combination with the skill of one of ordinary skill in the art at the time of the alleged invention of the '578 Patent render the '578 Patent obvious under 35 U.S.C. § 103:

- "Request for Information Checkpoint Friendly Laptop Bag" ("the TSA RFI," attached hereto as Exhibit A), published on March 3, 2008 under Solicitation Number HSTS04-08-RFI-MC;

- U.S. Patent No. 5,706,992;

- EVERKI Ascend Guru Laptop Backpack; and

- Samsonite L35 Notebook Case, which was on sale more than one year prior to the priority date of the '578 patent.

21.    Further, the claims of the '578 Patent are invalid under 35 U.S.C. § 112 because they are indefinite in that they purport to claim both an apparatus and a method or use (or manufacture and a method of use).  By way of example, the limitation of claim 1 that provides for "wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section" renders the claim invalid under 35 U.S.C. § 112 because it results in a claim that purports to claim both an apparatus and a method of use.

22.    Victorinox ~~will serve~~served detailed contentions regarding invalidity of the '578 Patent after receiving detailed contentions from Targus regarding how Victorinox's products allegedly infringe the claims of the '578 Patent in accordance with the Court's standard scheduling order for patent cases.  Victorinox reserves the right to supplement its invalidity contentions as discovery progresses.

23.    A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the '578 Patent is now necessary and appropriate under 28 U.S.C. § 2201.

## COUNTERCLAIM COUNT III
## DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE '578 PATENT

24.    Victorinox incorporates by reference the allegations contained in Paragraphs 1 to 23 of its Counterclaims.

25.     Although Targus alleges in its Complaint that the '578 Patent was duly issued by the U.S. Patent and Trademark Office ("PTO"), an actual controversy exists with respect to the enforceability of the '578 Patent.  A judicial determination of the respective rights of the parties with respect to the unenforceability of the '578 Patent is now necessary and appropriate under 28 U.S.C. § 2201 for at least the following reasons.

26.     In particular, the '578 Patent is unenforceable due to inequitable conduct committed by the applicant and named inventors, Bui Phu Cuong, Todd Gormick, and Robert Shortt, and/or their representatives involved in the prosecution of these patents before the PTO. By committing fraud during prosecution of the '578 Patent, Cuong, Gormick, Shortt, and/or their representatives violated the duty of good faith, candor, and disclosure they owed to the PTO, rendering this patent unenforceable.  The specific facts supporting this defense are as follows.

27.     On March 3, 2008, the Transportation Security Administration of the United States Department of Homeland Security ("TSA") announced plans to implement security procedures allowing travelers to pass through airport security checkpoints without being required to remove laptop computers from their bags.

28.     On March 3, 2008, TSA also announced guidelines and specifications for a laptop bag to be TSA compliant or checkpoint friendly.  Specifically, TSA published the TSA RFI, "Request for Information Checkpoint Friendly Laptop Bag," on March 3, 2008, under Solicitation Number HSTS04-08-RFI-MC.[1]  Ex. A hereto.

29.     The TSA RFI described "performance criteria" and provided "illustrative examples of possible solutions" for "bag designs that would allow passengers to not remove their laptops from carry-on bags for security screening."  One exemplary solution disclosed in the TSA RFI

---

[1] The TSA RFI is available at https://beta.sam.gov/opp/cf201053453821c8191e436af111d9b0/view?keywords=HSTS04-08-RFI-MC (last visited May 22, 2020).

was:  "A bag that would open completely so that each side of the bag would lie horizontally on the x-ray belt.  One side of the bag would be designed to hold the laptop and nothing else."  The TSA RFI further disclosed:  "A bag that would contain the laptop in a separate compartment from other equipment like chargers and cables.  The accessories would be in a separate compartment."

30.   Targus employees were aware of the TSA RFI no later than March 6, 2008.  On or about March 6, 2008, Targus's head of marketing Al Giazzon referred to the TSA RFI as setting "the standard" for travelers' bags.  Ex. B hereto.

31.   The TSA RFI stated that "[r]esponders to this RFI will submit sample/prototype bags and designs to TSA.  TSA will then review the sample/prototype bags and designs and use the submittals to evaluate whether it can eliminate the requirement to remove laptops from bags for certain types of bags."

32.   Over the course of several months, TSA collaborated with laptop bag manufacturers, including Targus, to design and develop laptop bags that comply with TSA guidelines and specifications, such as:  (1) a laptop-only section; (2) bag sections, including the laptop-only section, that each lie flat on an X-ray belt; (3) no straps, zippers, pockets, handles, or closures that interfere with an X-ray image of the laptop; and (4) no items packed in the laptop-only section such that an X-ray image of the laptop is interfered with.[2]

33.   TSA established three pilot airport sites, Austin, Texas (AUS), Washington Dulles area (IAD), and Ontario, California (ONT), where bag manufacturers, including Plaintiff, made appointments to test bags and receive direct feedback from TSA to refine and modify bag designs to comply with the March 2008 TSA guidelines and specifications for checkpoint friendly laptop bags.

---

[2] Press Release, TSA, *TSA ready for 'checkpoint friendly' laptop bags* (Aug. 5, 2008), https://www.tsa.gov/news/press/releases/2008/08/05/tsa-ready-checkpoint-friendly-laptop-bags

34.     On information and belief, named inventors of the '578 Patent Bui Phu Cuong, Todd Gormick, and Robert Shortt were Targus employees in at least 2008.

35.     On information and belief, Cuong, Gormick, and Shortt were aware of the TSA RFI no later than March 6, 2008 and prior to February 13, 2009. The TSA RFI was the impetus of and motivation for the alleged invention; the TSA RFI was published and was widely reported; Targus, the inventors, and Thompson all participated in the filing of two provisional applications referenced in the application filed on February 13, 2009; the patent application makes reference to "the policy under the Transportation Security Administration (TSA)," "screening policies of the TSA," and "expedited procedures" to "allow screening of the case 700 using the scanning device 750 without requiring the user to unpack the case 700"; and Targus participated in TSA's program related to the TSA RFI for nearly a year prior to the filing of the provisional application on February 13, 2009.

36.     On information and belief, during the collaboration with TSA, Plaintiff Targus employees and named inventors of the '578 Patent received guidance and participated in discussions and meetings with representatives from TSA, including on June 11, 2008 and June 13, 2008, in designing, developing, and refining laptop bags that are encompassed by the claims of the '578 Patent.

37.     On information and belief, Cuong, Gormick, and Shortt participated in conference calls with TSA representatives in which TSA provided further guidance regarding acceptable checkpoint friendly laptop bag designs, including specific bag features, materials, fasteners, and enclosures required to be qualified as checkpoint friendly.

38.     Further, on information and belief, Cuong, Gormick, and Shortt met with TSA representatives at a pilot airport site to receive input and feedback from TSA regarding specific

laptop bag designs that are covered by the subject matter of the '578 Patent.

39.    On February 13, 2009, attorney John R. Thompson filed a U.S. patent application on behalf of Plaintiff Targus seeking to cover subject matter resulting from the disclosure by TSA in the TSA RFI and the subsequent collaboration with TSA, naming Cuong, Gormick, and Shortt as inventors.

40.    On information and belief, attorney Thompson was aware of the TSA RFI no later than February 13, 2009. The TSA RFI was the impetus of and motivation for the alleged invention; the TSA RFI was published and was widely reported; Targus, the inventors, and Thompson all participated in the filing of two provisional applications referenced in the application filed on February 13, 2009; the patent application makes reference to "the policy under the Transportation Security Administration (TSA)," "screening policies of the TSA," and "expedited procedures" to "allow screening of the case 700 using the scanning device 750 without requiring the user to unpack the case 700"; and Targus participated in TSA's program related to the TSA RFI for nearly a year prior to the filing of the provisional application on February 13, 2009.

41.    The application filed by attorney Thompson on behalf of Targus issued as the '578 Patent on October 29, 2013.

42.    The TSA RFI is prior art under pre-AIA 35 U.S.C. § 102(a) because the purported invention of the '578 Patent, or material aspects of it, was known by persons at TSA and described in the TSA RFI, which is a printed publication in the United States, before the purported invention thereof by the named inventors on the '578 Patent.

43.    At least the following information was material to the patentability of the subject matter claimed in the application that resulted in the issuance of the '578 Patent, and the issued

claims of the '578 Patent:  (1) the disclosures of the TSA RFI, including:  "A bag that would open completely so that each side of the bag would lie horizontally on the x-ray belt.  One side of the bag would be designed to hold the laptop and nothing else.  . . .  A bag that would contain the laptop in a separate compartment from other equipment like chargers and cables.   The accessories would be in a separate compartment."; (2) Cuong, Gormick, and Shortt's participation in a collaboration with TSA to conceive of, design, and develop the subject matter claimed in the '578 Patent; (3) TSA's specific guidelines, requirements, and restrictions for checkpoint friendly laptop bags; and (4) TSA's contributions to the laptop bag designs that are covered by the '578 Patent.

44.     But for Cuong, Gormick, Shortt, and prosecuting attorney Thompson's failure to disclose at least this material information to the United States Patent and Trademark Office ("PTO"), the '578 Patent would not have issued.

45.     The materiality of these disclosures is demonstrated by the claims of the '578 Patent and supported by the prosecution history of the '578 Patent.  The applicants, for the purpose of patentability and to overcome a rejection made by the examiner, amended the application's claims to add the limitation that "the second storage section" has a pouch having "a computer disposed therein" that is "configured without an additional pouch."  Ex. C hereto, at 6.  Additionally, the applicants, for the for the purpose of patentability and to overcome a rejection made by the examiner, amended the application's claims to add the limitation that "wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section."  *Id*. at 7.  The applicants

distinguished prior art cited by the patent examiner by stating that "the purpose" of the design of the purported invention of the '578 Patent "is to isolate the computer in the second storage section to facilitate scanning." *Id*. at 25; *see also id.* at 32.  The applicants distinguished additional prior art cited by the patent examiner because the prior art was purportedly "not concerned with isolating a computer to facilitate scanning," and distinguished additional prior art cited by the patent examiner because it purportedly had "additional components [that] provide obstructions to scanning a computer in a storage section and defeat the purpose of isolating the computer." *Id*. at 25, 32.  The applicants further distinguished additional prior art by representing:  "The claim limitations reflect the purpose of the pending application which is to isolate a computer in the second storage section to facilitate scanning." *Id*. at 65; *see also id.* at 68.  Yet, applicants withheld the prior art disclosures made by TSA, including in the TSA RFI, that disclosed a bag design that isolated the computer in a storage section, and that was to be opened and laid horizontally during screening so as to allow uninhibited screening of a computer.

46.     Further, this withholding constituted egregious misconduct.

47.     On information and belief, Cuong, Gormick, and Shortt, and prosecuting attorney Thompson, knowingly withheld this material information with the specific intent to deceive the PTO, because they failed to disclose to the PTO the TSA RFI, and Cuong, Gormick, Shortt, and Plaintiff's collaboration with TSA in designing and developing the subject matter of the '578 Patent.  The TSA RFI issued seven (7) days prior to applicants' initial provisional patent application referenced in the '578 Patent, and on information and belief was the material impetus for the purported invention claimed in the '578 Patent in that it provided a "standard" (as conceded by Targus) for allowing laptop computers to remain within bags during airport screening and provided examples of such bags that included material characteristics that were

subsequently included by the '578 Patent applicants in claims and arguments to the PTO.  Yet, the '578 Patent applicants represented to the PTO that "[w]hen traveling through airport security, it is the policy under the Transportation Security Administration (TSA) to remove portable computers from luggage, cases, and the like" ('578 Patent at 2:16-18), which is a misrepresentation in view of TSA's public pronouncement that it would allow laptop computers to remain in bags during screening as part of the program announced in the TSA RFI.

48.     Targus itself stated, in a press release, that:   "The [Targus] Zip-Thru case is designed to meet guidelines established by Transportation Security Administration (TSA), which focus on the screeners' ability to get a clear image of the laptop when properly secured in the bag. In developing the Zip-Thru case, Targus worked in conjunction with TSA authorities to test the product through an actual airport screening device." Ex. D hereto.

49.     In addition to knowingly withholding the TSA RFI, Targus intentionally withheld from the PTO its prior art products that anticipate one or more claims of the '578 Patent and are otherwise material prior art references that, had any of them been known by the Patent Office, would have resulted in the Patent Office rejecting one or more claims of the patent as unpatenable.

50.     Specifically, Targus withheld from the PTO its products model numbers (1) CCB1, (2) CDB1, and (3) CFP3 (collectively, the "Targus Material Prior Art Products").

**CCB1:**



UNFOLDED CONFIGURATION

FOLDED CONFIGURATION

**CDB1:**



UNFOLDED CONFIGURATION

FOLDED CONFIGURATION

**CFP3:**



UNFOLDED CONFIGURATION

FOLDED CONFIGURATION

51.     Targus has admitted that it began selling each of the Targus Material Prior Art Products in the United States in 1999, and thus each qualifies as prior art under 35 U.S.C. § 102(b).

52.     Each of the Targus Material Prior Art Products teaches a bifold computer case that isolates the computer on one side of the case, and permits a user to lay the case flat on a scanner such that the computer can be scanned without interference from an object in the other side of the case.  For at least that reason, each of the Targus Material Prior Art Products is a material prior art reference.

53.     The materiality of each of the Targus Material Prior Art Products is demonstrated in the claim charts attached hereto as Exs. E, F, and G for the CCB1, CDB1, and CFP3, respectively.  These charts demonstrate that the Targus Material Prior Art Products anticipate multiple claims of the '578 Patent and are otherwise material because they form a substantial part of obvious combinations of prior art that invalidate multiple claims of the '578 Patent.  The Targus Material Prior Art Products are not cumulative to the prior art considered by the Patent Office during prosecution.  But for the withholding of these prior art references from the Patent Office, the Patent Office would have held multiple claims of the '578 Patent unpatentable under 35 U.S.C. § 102 based on these withheld prior art references and under 35 U.S.C. § 103 based on these withheld prior art references in combination with other prior art.

54.     Todd Gormick had knowledge of each of the Targus Material Prior Art Products.

55.     Todd Gormick was the Director Product Management for the Soft Goods/Bags department from 2002-2011, and thus would be aware of each of the products developed and sold within his department during that time, including the Targus Material Prior Art Products.

56.     In addition, during the time when the '578 Patent was in prosecution, Todd

Gormick possessed documents and/or emails specifically listing each of the Targus Material Prior Art Products, and thus had actual knowledge of each of them.

57.     Todd Gormick withheld the Targus Material Prior Art Products from the PTO.

58.     Robert Shortt had actual knowledge of each of the Targus Material Prior Art Products.

59.     Robert Shortt was a senior executive in sales and product development at Targus from 2007-2015, and thus would be aware of each of the products developed and sold within his department during that time, including the Targus Material Prior Art Products.

60.     In addition, during the time when the '578 Patent was in prosecution, Robert Shortt possessed documents and/or emails specifically listing each of the Targus Material Prior Art Products, and thus had actual knowledge of each of them.

61.     Robert Shortt withheld the Targus Material Prior Art Products from the PTO.

62.     Bui Cuong had knowledge of at least the CDB1.

63.     Bui Cuong was the Director of Cut and Sew (Soft Goods), Product Management beginning in 2007, and thus would be aware of products developed and sold within his department during that time, including at least the CDB1.

64.     In addition, during the time when the '578 Patent was in prosecution, Bui Cuong possessed documents and/or emails specifically listing the CDB1, and thus had actual knowledge of it.

65.     Bui Cuong withheld at least the CDB1 from the PTO.

66.     But for Gormick, Shortt, and Cuong's failure to disclose at least the Targus Material Prior Art Products to the PTO, the '578 Patent would not have issued.

67.     The materiality of the Targus Material Prior Art Products is further demonstrated

by the claims of the '578 Patent and supported by the prosecution history of the '578 Patent.  The applicants, for the purpose of patentability and to overcome a rejection made by the examiner, amended the application's claims to add the limitation that "the second storage section" has a pouch having "a computer disposed therein" that is "configured without an additional pouch." Ex. C hereto, at 6.   Additionally, the applicants, for the for the purpose of patentability and to overcome a rejection made by the examiner, amended the application's claims to add the limitation that "wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section." *Id*. at 7.  The applicants distinguished prior art cited by the patent examiner by stating that "the purpose" of the design of the purported invention of the '578 Patent "is to isolate the computer in the second storage section to facilitate scanning." *Id*. at 25; *see also id.* at 32.  The applicants distinguished additional prior art cited by the patent examiner because the prior art was purportedly "not concerned with isolating a computer to facilitate scanning," and distinguished additional prior art cited by the patent examiner because it purportedly had "additional components [that] provide obstructions to scanning a computer in a storage section and defeat the purpose of isolating the computer." *Id*. at 25, 32.   The applicants further distinguished additional prior art by representing:  "The claim limitations reflect the purpose of the pending application which is to isolate a computer in the second storage section to facilitate scanning." *Id*. at 65; *see also id.* at 68.  Yet, applicants withheld the Targus Material Prior Art Products, which were computer bags that isolated the computer in a storage section, and that can be opened and laid horizontally during screening so as to allow uninhibited screening of a

computer.

68.     Further, this withholding constituted egregious misconduct.

69.     On information and belief, Cuong, Gormick, and Shortt, knowingly withheld this material information with the specific intent to deceive the PTO, because they failed to disclose to the PTO the Targus Material Prior Art Products, which were computer bags that isolated the computer in a storage section, and that was to be opened and laid horizontally during screening so as to allow uninhibited screening of a computer.  Because the examiner was not informed of this highly material prior art, the examiner examined the patent application that led to the '578 Patent using references not even directed to computer bags.  *See, e.g.*, Ex. C hereto at 25 (noting that Schell "does not even consider a portable computer as this technology did not exist at this time"), 65 (noting that Cline "does not even consider a portable computer as this technology did not exist at the time").  Had the examiner been apprised of the Targus Material Prior Art Products, the examiner would not have allowed the '578 Patent.  Each of Cuong, Gormick, and Shortt possessed documents and/or emails listing the Targus Material Prior Art Products during the prosecution of the patent application that led to the '578 Patent, but did not disclose them to the PTO.  Upon information and belief, each of Cuong, Gormick, and Shortt knew that the withheld Targus Material Prior Art Products were material and made a deliberate decision to withhold it from the Patent Office.

70.     49. For at least these reasons, the claims of the '578 Patent are rendered unenforceable under the doctrines of inequitable conduct and unclean hands.

## COUNTERCLAIM COUNT IV
*Walker Process* **Fraud and Attempted Monopolization in Violation of the Sherman Act, 15 U.S.C. § 2**

71.     50. Victorinox incorporates by reference the allegations contained in Paragraphs 1 to 49 70 of its Counterclaims.

72. ~~51.~~ Plaintiff and Counterclaim-Defendant Targus makes and sells laptop bags and cases, including "checkpoint friendly" laptop bags and cases that allow travelers to pass through security checkpoints without removing their laptops from the case.  (D.I. 1 at ¶¶ 7, 9).

73. ~~52.~~ On April 2, 2020, Targus filed its Complaint (D.I. 1) against Victorinox for patent infringement.

74. ~~53.~~ In its Complaint, Targus accuses Victorinox of infringing various claims of the '578 Patent, allegedly arising due to the manufacture, use, sale, offer for sale, or importation of several of Victorinox's products that Targus describes as "checkpoint friendly."

75. ~~54.~~ Targus knew that the '578 Patent was unenforceable before filing its patent infringement claims against Victorinox. The unenforceability and Targus's knowledge of the unenforceability is demonstrated by, inter alia, *Targus Group International, Inc. v. CODi, Inc.*, No. SACV 15-00353-CJC(Ex), ECF Nos. 32, 39 (Sept. 17, 2015 C.D. Cal.).

76. ~~55.~~ Targus filed its lawsuit against Victorinox because Targus recognized the competitive threat posed by Victorinox's products to Targus's market position.  Targus filed and has continued to maintain baseless patent infringement claims against Victorinox in an effort to prevent and/or hinder Victorinox's market entry and growth, and thereby reduce competition.

77. ~~56.~~ Targus's fraudulent conduct has harmed Victorinox and competition, in violation of antitrust laws, and, pursuant to the Clayton Antitrust Act, Victorinox is entitled to injunctive relief, damages, treble damages, and its attorneys' fees.

78. ~~57.~~ As fully set forth in Count III of Victorinox's Counterclaims (Paragraphs ~~22~~24-~~41~~70), which are incorporated by reference as though fully set forth herein, Targus[3] and

---

[3] On information and belief, the Plaintiff and Counterclaim Defendant Targus is the successor-in-interest to the assignee on the face of the '578 Patent, Targus Group International, Inc. For the purpose of these Counterclaims and Victorinox's defenses, "Targus" shall include both Targus International, LLC and Targus Group International, Inc.

named inventors, Bui Phu Cuong, Todd Gormick, and Robert Shortt, and/or their counsel made material misrepresentations and omissions in procuring the '578 Patent. These misrepresentations and omissions were made with the intent of misleading the PTO into issuing a patent that, but for the misrepresentations and omissions, would not have been issued. Targus's, the inventors', and/or attorney Thompson's fraudulent acts before the PTO constitute inequitable conduct that renders the '578 Patent unenforceable.

79. 58. Targus filed this action knowing that the '578 Patent is invalid and unenforceable and continues to maintain its patent infringement claims against Victorinox despite clear evidence establishing the invalidity and unenforceability of the '578 Patent.

80. 59. By fraudulently procuring the '578 Patent through deliberate misrepresentations and material omissions to the PTO, Cuong, Gormick, Shortt, and Targus have harmed competition in the relevant product market for checkpoint-friendly laptop bags and cases as described below. As a participant in the relevant market, Victorinox is directly affected by Targus's violations and has suffered direct antitrust injury as a result of these acts. The net result of Targus's anticompetitive actions is injury to both competition and consumers.

81. 60. The relevant product market at issue in this case is checkpoint-friendly (TSA compliant) laptop bags and cases sold to end-user consumers. Checkpoint-friendly laptop bags and cases are purchased by consumers who wish to pass through airport security checkpoints without being required to remove their laptop computers from their bags. For consumers, laptop bags and cases without a TSA compliant mechanism for a consumer to pass a security checkpoint without removing his or her laptop computer are not readily interchangeable with TSA compliant checkpoint-friendly laptop bags or cases.

82.   61. The relevant geographic market is the United States.  Targus sells and has sold its checkpoint-friendly laptop bags and cases in interstate commerce throughout the United States.  (*See* D.I. 1 at ¶¶ 7, 9.)

83.   62. There are significant barriers to entry into the market for checkpoint-friendly laptop bags and cases that would allow Targus to achieve market power.  Such barriers include Targus's enforcement of the fraudulently-obtained claims of the '578 Patent and the limited design options for checkpoint-friendly laptop bags and cases that do not infringe the '578 Patent under Targus's asserted scope of the '578 Patent's claims.

84.   63. As demonstrated by its unlawful conduct described above in Count III, Targus has the specific intent to monopolize the market for checkpoint-friendly laptop bags and cases, through, inter alia, Targus's enforcement of the fraudulently-obtained '578 Patent, which is directed to a computer case that can be scanned at an airport security checkpoint without removing a computer from the case and methods of using and manufacturing such a bag.

85.   64. Targus's enforcement of the fraudulently-obtained '578 Patent includes, at least, filing seven lawsuits alleging infringement of the '578 Patent.

86.   65. Unless Targus's predatory and anticompetitive conduct is stopped, Targus will continue to maintain and enforce its predatory, exclusionary and unfairly anti-competitive practices that are intended to and, if not checked, will monopolize, or will have a dangerous probability of success in monopolizing, the U.S. market for checkpoint-friendly laptop bags and cases.

87.   66. On information and belief, Targus currently controls a significant portion of this market.  Targus has either already eliminated or is currently attempting to eliminate competitors through various lawsuits asserting the '578 Patent and by asserting a scope of patent

claim coverage that would result in driving other competitors out of the market. This current lawsuit is part of this same effort and is designed to eliminate Victorinox as a competitor, use the '578 Patent as a barrier to competition, and monopolize the market for checkpoint-friendly laptop bags and cases.

88. 67. Targus's anticompetitive conduct amounts to unlawful attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

89. 68. Targus's unlawful conduct, as set forth in Count III of these Counterclaims and in the allegations above in this Count IV, has harmed competition in the market for checkpoint-friendly laptop bags and cases by, inter alia, Targus's prior and current assertions of the '578 Patent and/or the stipulated injunctions entered in prior litigation. *See Targus Int'l LLC v. SwissDigital USA Co., Ltd.*, 8-20-cv-00782 (C.D. Cal. filed Apr. 22, 2020) (pending); *Targus Int'l LLC v. Everki USA, Inc.*, 8-20-cv-00641 (C.D. Cal. filed Apr. 2, 2020) (pending); *Targus Int'l LLC v. Grp. III Int'l, Inc.*, 1-20-cv-21435 (S.D. Fla. filed Apr. 2, 2020) (pending); *Targus Grp. Int'l, Inc v. Timbuk2 Designs, Inc*, 8-17-cv-00972 (C.D. Cal. dismissed Se. 25, 2018) (dismissed pursuant to settlement agreement); *Targus Grp. Int'l, Inc. v. CODi, Inc.*, No. SACV 15-00353-CJC-RNB, ECF No. 51 (Feb. 13, 2017 C.D. Cal.) (stipulated injunction entered); *Targus Grp. Int'l, Inc. v. Fairhaven Grp., Inc.*, 8-15-cv-00465-CJC-JCG, ECF No. 29 (Jan. 6, 2016 C.D. Cal.) (stipulated injunction entered). Targus's unlawful conduct has caused Victorinox to suffer injury by impeding and/or slowing, and/or attempting to impede or slow, Victorinox's participation in the same market, thereby causing it lost sales and profits, and by forcing it to incur significant costs to defend Targus's meritless lawsuit.

90.   69. Victorinox has been directly harmed by Targus's misconduct in violation of the antitrust laws and is entitled to injunctive relief, damages, treble damages and attorneys' fees under 15 U.S.C. § 15.

## PRAYER FOR RELIEF

WHEREFORE, Defendant and Counterclaimant Victorinox prays for the following relief:

A.      That Targus's claims against Victorinox be dismissed with prejudice and that Targus take nothing by way of its Complaint;

B.      That judgment be rendered in favor of Victorinox;

C.      For a declaration that Victorinox has not infringed any claim of the '578 Patent, either directly, indirectly, or willfully;

D.      For a declaration that each and every claim of the '578 Patent is invalid;

E.      For a declaration that the '578 Patent is unenforceable due to inequitable conduct;

F.      That Victorinox's damages be trebled in accordance with the antitrust laws, including an award of any other remedy provided by 15 U.S.C. § 15;

G.      For an order finding this case exceptional pursuant to 35 U.S.C. § 285 and awarding Victorinox its reasonable attorneys' fees;

H.      That Victorinox be awarded its actual damages, including pre- and post-judgment interest as permitted by law;

I.      That Victorinox be awarded its reasonable attorneys' fees and costs of suit as allowed by law; and

J.      For such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Defendant and Counterclaimant Victorinox hereby respectfully demands a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all issues so triable.

Dated:   ~~June 8, 2020~~January 15, 2021

*/s/ Francis DiGiovanni*

Francis DiGiovanni (No. 3189)
Thatcher A. Rahmeier (No. 5222)
FAEGRE DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE  19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

~~Elizabeth M.C. Scheibel~~
Kelly J. Fermoyle
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 766-7000
~~elizabeth.scheibel@faegredrinker.com~~kelly.fermoyle@faegredrinker.com

*Attorneys for Defendant / Counterclaim Plaintiff*