IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TARGUS INTERNATIONAL LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 20-464-RGA |
| | ) | |
| VICTORINOX SWISS ARMY, INC., | ) | |
| | ) | |
| Defendant. | ) | |

### JOINT CLAIM CONSTRUCTION BRIEF

Jack B. Blumenfeld (#1014)
Anthony D. Raucci (#5948)
MORRIS, NICHOLS, ARSHT & TUNNELL LLP
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
araucci@morrisnichols.com

Michelle E. Armond
Forrest M. McClellen
ARMOND WILSON LLP
895 Dove Street, Suite 300
Newport Beach, CA 92660
(949) 932-0778

Douglas R. Wilson
ARMOND WILSON LLP
9442 Capital of Texas Highway North
Plaza One, Suite 500
Austin, TX 78759
(512) 267-1663

*Attorneys for Plaintiff*
*Targus International LLC*

February 17, 2021

Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
FAEGRE DRINKER BIDDLE & REATH LLP
222 Delaware Ave., Ste. 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

Kelly J. Fermoyle
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
kelly.fermoyle@faegredrinker.com

*Attorneys for Defendant/Counterclaim*
*Plaintiff Victorinox Swiss Army, Inc.*

TABLE OF CONTENTS

Page

I.    REPRESENTATIVE CLAIMS ..............................................................................1

      A.    Claim 1 ....................................................................................................1

      B.    Claim 4 ....................................................................................................2

      C.    Claim 13 ..................................................................................................2

      D.    Claim 17 ..................................................................................................2

      E.    Claim 22 ..................................................................................................3

      F.    Claim 27 ..................................................................................................4

      G.    Claim 28 ..................................................................................................4

      H.    Claim 42 ..................................................................................................5

      I.    Claim 57 ..................................................................................................6

II.   AGREED-UPON CONSTRUCTIONS ...............................................................7

III.  INTRODUCTION ...............................................................................................8

      A.    Targus' Introduction ...............................................................................8

      B.    Victorinox's Introduction .......................................................................8

IV.   DISPUTED CLAIM TERMS .............................................................................9

      A.    Term 1: "a hinge" (Claims 1, 17, 21, 22, 28, 42, 45, 50, 54, 57)...........9

            1.    Targus' Opening Position ............................................................9

            2.    Victorinox's Opening Position ..................................................11

            3.    Targus' Reply Position ..............................................................14

            4.    Victorinox's Sur-Reply Position................................................17

      B.    Term 7: "pouch" (Claims 1, 4, 5, 6, 17, 21, 22, 27, 28, 32, 42, 47, 48, 49,
            50, 52, 54, 57) .......................................................................................19

            1.    Targus' Opening Position ..........................................................19

            2.    Victorinox's Opening Position ..................................................21

3. Targus' Reply Position ........................................................24

4. Victorinox's Sur-Reply Position ...........................................26

C. Term 2: "configured to enable a scanning device to scan through" (Claims 1, 17, 21, 22, 28, 42, 47, 50, 54, 57) ................................................27

1. Targus' Opening Position ....................................................27

2. Victorinox's Opening Position ............................................29

3. Targus' Reply Position ........................................................30

4. Victorinox's Sur-Reply Position ...........................................30

D. Term 3: "a second pouch fastener configured to substantially enclose only the second pouch and thereby retain a computer therein" (Claim 1) ....................30

1. Targus' Opening Position ....................................................30

2. Victorinox's Opening Position ............................................31

3. Targus' Reply Position ........................................................31

4. Victorinox's Sur-Reply Position ...........................................31

E. Term 6: "second pouch configured to receive a computer" (Claims 1, 17, 21, 22, 28, 42, 50, 54, 57) ................................................................32

1. Targus' Opening Position ....................................................32

2. Victorinox's Opening Position ............................................32

3. Targus' Reply Position ........................................................34

4. Victorinox's Sur-Reply Position ...........................................34

F. Term 4: "a first inner side" (Claims 1, 17, 21, 22, 28, 42, 50, 54, 57) .................35

1. Targus' Opening Position ....................................................35

2. Victorinox's Opening Position ............................................37

3. Targus' Reply Position ........................................................38

4. Victorinox's Sur-Reply Position ...........................................38

G. Term 8: "the first inner side [of the first storage panel/section] is approximated to the second inner side [of the second storage panel/section]" (Claims 17, 21, 22, 28, 42, 57) ................................................38

1. Targus' Opening Position ....................................................39

2. Victorinox's Opening Position ............................................39

ii

3.      Targus' Reply Position ...........................................................40

4.      Victorinox's Sur-Reply Position .............................................41

H.      Term 5: "indicia indicat[es/ing] [that] the [computer] case complies with a standard of a scanning authority" (Claims 13, 23, 38) ...........................41

1.      Targus' Opening Position .......................................................42

2.      Victorinox's Opening Position ...............................................43

3.      Targus' Reply Position ...........................................................45

4.      Victorinox's Sur-Reply Position .............................................46

V.      INDEFINITENESS ...................................................................................47

A.      Term 1: "an object in the first [storage] [section/panel] is removed from interfering with a scanner" (Claims 1, 17, 21, 22, 28, 42, 50, 54, 57) ...................47

1.      Targus' Opening Position .......................................................47

2.      Victorinox's Opening Position ...............................................48

3.      Targus' Reply Position ...........................................................52

4.      Victorinox's Sur-Reply Position .............................................55

B.      Term 2: "in communication with" (Claim 57) ...................................56

1.      Targus' Opening Position .......................................................56

2.      Victorinox's Opening Position ...............................................57

3.      Targus' Reply Position ...........................................................57

4.      Victorinox's Sur-Reply Position .............................................58

C.      Term 8: "foldably [attaching/joining]" (Claims 28, 42) .......................58

1.      Targus' Opening Position .......................................................58

2.      Victorinox's Opening Position ...............................................58

3.      Targus' Reply Position ...........................................................59

4.      Victorinox's Sur-Reply Position .............................................59

D.      Term 11: "[pouch] opening[s] [is/are]…oriented in a direction substantially parallel to the planar surface" (Claims 21, 22, 28, 51, 55, 57) ...........................60

1.      Targus' Opening Position .......................................................60

2.      Victorinox's Opening Position ...............................................60

3.  Targus' Reply Position ........................................................................61

4.  Victorinox's Sur-Reply Position ......................................................63

E.  Term 12: "uninhibited scanning" (Claims 1, 17, 21, 22, 28, 42, 50, 54, 57).........63

1.  Targus' Opening Position .................................................................64

2.  Victorinox's Opening Position .......................................................65

3.  Targus' Reply Position ....................................................................66

4.  Victorinox's Sur-Reply Position ...................................................68

F.  Terms 3, 4, 5, 6, 7, 9, and 10: Dispute Over Indefiniteness Due To Alleged Lack Of Antecedent Basis ........................................................69

1.  Targus' Position ................................................................................69

2.  Victorinox's Position .......................................................................69

3.  Term 3: "the inner side of the second pouch" (Claims 4, 5, 6, 32)............69

a)  Targus' Opening Position ...........................................................70

b)  Victorinox's Opening Position .................................................71

c)  Targus' Reply Position ..............................................................71

d)  Victorinox's Sur-Reply Position..............................................72

4.  Term 4: "the inner side of the first storage section" (Claims 12, 21, 28, 57) ...............................................................73

a)  Targus' Opening Position ...........................................................73

b)  Victorinox's Opening Position .................................................73

c)  Targus' Reply Position ..............................................................74

d)  Victorinox's Sur-Reply Position..............................................74

5.  Term 5: "the inner side of the [first/second] section" (Claim 22) ............74

a)  Targus' Opening Position ...........................................................74

b)  Victorinox's Opening Position .................................................75

c)  Targus' Reply Position ..............................................................75

d)  Victorinox's Sur-Reply Position..............................................75

6.  Term 6: "the folded configuration" (Claims 1, 2, 17, 21, 28, 29,  42, 46, 48, 49, 50, 54, 57) ...............................................................75

|   | a) | Targus' Opening Position ................................................................. 75 |
|   | b) | Victorinox's Opening Position ........................................................ 76 |
|   | c) | Targus' Reply Position ................................................................... 76 |
|   | d) | Victorinox's Sur-Reply Position .................................................... 77 |
| 7. | Term 9: "the foldable computer case" (Claims 21, 57) ........................... 77 |
|   | a) | Targus' Opening Position ................................................................. 77 |
|   | b) | Victorinox's Opening Position ........................................................ 77 |
|   | c) | Targus' Reply Position ................................................................... 77 |
|   | d) | Victorinox's Sur-Reply Position .................................................... 78 |
| 8. | Term 7: "the [first/second] storage panel" (Claim 57) ........................... 78 |
|   | a) | Targus' Opening Position ................................................................. 78 |
|   | b) | Victorinox's Opening Position ........................................................ 79 |
|   | c) | Targus' Reply Position ................................................................... 80 |
|   | d) | Victorinox's Sur-Reply Position .................................................... 81 |
| 9. | Term 10: "the computer secured within the second pouch" (Claim 28) ................................................................................................. 81 |
|   | a) | Targus' Opening Position ................................................................. 81 |
|   | b) | Victorinox's Opening Position ........................................................ 82 |
|   | c) | Targus' Reply Position ................................................................... 82 |
|   | d) | Victorinox's Sur-Reply Position .................................................... 82 |

TABLE OF AUTHORITIES

Page(s)

**Cases**

*01 Communique Lab., Inc. v. LogMeln, Inc.*,
    687 F.3d 1292 (Fed. Cir. 2012)..................................................................................67

*Acceleration Bay LLC v. Activision Blizzard, Inc.*,
    C.A. Nos. 16–453– RGA, 16-454-RGA, 16-455-RGA, 2017 WL 6508715 (D.
    Del. Dec. 20, 2017)........................................................................................48, 49

*Acorn Semi, LLC v. Samsung Elecs. Co.*,
    2020 WL 6136847 (E.D. Tex. Oct. 16, 2020) ..................................................33, 34

*Amazon.com, Inc. v. Barnesandnoble.com, Inc.*,
    239 F.3d 1343 (Fed. Cir. 2001)................................................................................35

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242 (1986)................................................................................................46

*AstraZeneca LP v. Apotex, Inc.*,
    633 F.3d 1042 (Fed. Cir. 2010)................................................................................45

*Aventis Pharma S.A. v. Hospira, Inc.*,
    743 F. Supp. 2d 305 (D. Del. 2010), *aff'd*, 675 F.3d 1324 (Fed. Cir. 2012) ...................49, 53

*Bayer Pharma AG v. Watson Labs., Inc.*,
    C.A. No. 12-1726-LPS-CJB, 2014 WL 4954617 (D. Del. Sept. 30, 2014)......................49, 53

*Biosig Instr. v. Nautilus*,
    783 F.3d 1374 (Fed. Cir. 2015)................................................................................47

*Bradford Co. v. Afco Mfg.*,
    2006 WL 3500009 (S.D. Ohio Dec. 5, 2006), *rev'd in part sub nom. Bradford*
    *Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262 (Fed. Cir. 2010) ..........................33, 34

*Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*,
    813 F. App'x 522 (Fed. Cir. 2020) ..........................................................................69

*CBT Flint Partners v. Return Path*,
    654 F.3d 1353 (Fed. Cir. 2011)................................................................................79

*Chef Am., Inc. v. Lamb-Weston, Inc.*,
    358 F.3d 1371 (Fed. Cir. 2004)................................................................................59

*Chimie v. PPG Indus., Inc.*,
    402 F.3d 1371 (Fed. Cir. 2005)........................................................................37

*Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*,
    958 F.3d 1348 (Fed. Cir. 2020)...............................................................33, 34

*Computer Docking Station v. Dell, Inc.*,
    519 F.3d 1366 (Fed. Cir. 2008)........................................................................72

*Courtesy Products, LLC. v. Hamilton Beach Brands, Inc.*,
    C.A. No. 13-2012-SLR, 2015 WL 7295436 (D. Del. Nov. 18, 2005)...............49, 53

*CR Bard Inc. v. AngioDynamics, Inc.*,
    979 F.3d 1372 (Fed. Cir. 2020).................................................43, 44, 45, 46

*Digital Biometrics, Inc. v. Identix, Inc.*,
    149 F.3d 1335 (Fed. Cir. 1998)...............................................................37, 38

*Edgewell Pers. Care Brands, LLC v. Albaad Massuot Yitzhak, Ltd.*,
    C.A. No. 15-1188-RGA, 2017 WL 1900736 (D. Del. May 9, 2017) ...............49, 53

*Energizer Holdings v. Int'l Trade Comm'n*,
    435 F.3d 1366 (Fed. Cir. 2006).........................................................69, 75, 78

*Eon Corp. v. Silver Springs Networks*,
    815 F.3d 1314 (Fed. Cir. 2016)...............................................................30, 32

*Flexuspine, Inc. v. Globus Med., Inc.*,
    2016 WL 4161887 (E.D. Tex. Aug. 5, 2016) .............................................32, 34

*Gonzalez v. Infostream Group, Inc.*,
    No. 2:14-cv-906-JRG-RSP, 2015 WL 5604448 (E.D. Tex. Sept. 21, 2015)...................15, 18

*IBSA Institut Biochimique, S.A. v. Teva Pharm. USA, Inc.*,
    966 F.3d 1374 (Fed. Cir. 2020)..........................................................11, 12, 16, 18

*In re DiStefano*,
    808 F.3d 845 (Fed. Cir. 2015).................................................................43, 45

*In re Ngai*,
    367 F.3d 1336 (Fed. Cir. 2004)...............................................................43, 45

*Intermec Techs. Corp. v. Palm Inc.*,
    738 F. Supp. 2d 522 (D. Del. 2010).................................................................56

*IPXL Holdings, L.L.C. v. Amazon.com, Inc.*,
    430 F.3d 1377 (Fed. Cir. 2005)................................................................ *passim*

*Kaneka Corp. v. Xiamen Kingdomway Grp.*,
   790 F.3d 1298 (Fed. Cir. 2015)............................................................................14

*King Pharm., Inc. v. Eon Labs, Inc.*,
   616 F.3d 1267 (Fed. Cir. 2010)............................................................................45

*Kustom Signals, Inc. v. Applied Concepts, Inc.*,
   264 F.3d 1326 (Fed. Cir. 2001)............................................................................11

*Lecat's Ventriloscope v. MT Tool & Mfg.*,
   351 F. Supp. 3d 1100 (N.D. Ill. 2018) .................................................................51

*LifeNet Health v. LifeCell Corp.*,
   837 F.3d 1316 (2016)...................................................................................50, 54, 56

*Markman v. Westview Instruments*,
   52 F.3d 967 (Fed. Cir. 1995)................................................................................14

*Mastermine Software, Inc. v. Microsoft Corp.*,
   874 F.3d 1307 (Fed. Cir. 2017)............................................................................49

*Meetrix IP, LLC v. CitrixSys., Inc.*,
   2017 WL 5986191 (W.D. Tex. Dec. 1, 2017) ......................................................51

*Merck & Co., Inc. v. Teva Pharm. USA, Inc.*,
   395 F.3d 1364 (Fed. Cir. 2005)............................................................................65

*Nautilus v. Biosig Instr.*,
   572 U.S. 898 (2014)...................................................................................... 47, 69

*Nellcor Puritan Bennett, Inc. v. Masimo Corp.*,
   402 F.3d 1364 (Fed. Cir. 2005)......................................................................13, 17

*Norix Group v. Correctional Techs.*,
   No. 17-cv-07914, 2020 WL 1157369 (N.D. Ill. Mar. 10, 2020) ......................10, 11

*Novo Indus., L.P. v. Micro Molds Corp.*,
   350 F.3d 1348 (Fed. Cir. 2003)............................................................................79

*Nox Med. EHF v. Natus Neurology Inc.*,
   C.A. No. 15-709-RGA, 2018 WL 845635 (D. Del. Feb. 13, 2018) .................33, 34

*O2 Micro Int'l v. Beyond Innovation Tech. Co.*,
   521 F.3d 1351 (Fed. Cir. 2008)............................................................................16

*Pause Tech. v. TiVo, Inc.*,
   419 F.3d 1326 (Fed. Cir. 2005)......................................................................15, 18

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005)..................................................................................14, 41, 52

*Power Integrations, Inc. v. ON Semiconductor Corp.*,
    2018 WL 5603631 (N.D. Cal. Oct. 26, 2018)........................................................................52

*Praxair Distribution, Inc. v. Mallinckrodt Hosp. Prods. IP Ltd.*,
    890 F.3d 1024 (Fed. Cir. 2018)........................................................................................43, 46

*RetailMeNot, Inc. v. Honey Sci. Corp.*,
    C.A. No. 18- 937-CFC-MPT, 2019 WL 6337719 (D. Del. Nov. 27, 2019)................69, 70, 71

*SkinMedica, Inc. v. Histogen Inc.*,
    727 F.3d 1187 (Fed. Cir. 2013)........................................................................................11, 16

*Solocron Media, LLC v. Verizon Commc'ns Inc.*,
    2015 WL 1011310 (E.D. Tex. Mar. 5, 2015) ....................................................................32, 34

*Thorner v. Sony Comp. Entm't*,
    669 F.3d 1362 (Fed. Cir. 2012)..................................................................................10, 16, 42

*TQ Delta, LLC v. 2WIRE, Inc.*,
    C.A. No. 13-1835-RGA, 2017 WL 6435334 (D. Del. Dec. 18, 2017) ........................... *passim*

*Truinject Corp. v. Galderma, S.A.*,
    C.A. No. 19-592-LPS-JLH, 2020 WL 3287047 (D. Del. June 18, 2020) ...................... *passim*

*Trusted Knight Corp. v. Int'l Bus. Machines Corp.*,
    681 F. App'x 898 (Fed. Cir. 2017) ......................................................................................79

*Vitronics Corp. v. Conceptronic*,
    90 F.3d 1576 (Fed. Cir. 1996)........................................................................................10, 17

*Wang Labs., Inc. v. America Online, Inc.*,
    197 F.3d 1377 (Fed. Cir. 1999)............................................................................................23

**Rules and Statutes**

35 U.S.C. § 101................................................................................................................43, 52

35 U.S.C. § 112................................................................................................................23, 51

Fed. R. Civ. P. 56(a) ..............................................................................................................46

## I.    REPRESENTATIVE CLAIMS

### A.    Claim 1

A bi-fold case to allow for convenient security screening of a computer, comprising:

a first storage section comprising a first outer side, *a first inner side*, a first proximal end, and a first distal end opposite the first proximal end, the first outer side, first inner side, first proximal end, and first distal end defining a first *pouch* with a first *pouch* opening and a first *pouch* fastener coupled to the first *pouch* opening and configured to only secure the first *pouch* opening, wherein the first outer and inner sides are *configured to enable a scanning device to scan through* the first outer and inner sides and scan an interior of the first *pouch*, wherein the first storage section further comprises a third *pouch* including a third *pouch* opening, independent of the first *pouch* opening, and a third fastener to only secure the third *pouch* opening; and

a second storage section comprising a second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a second proximal end, and a second distal end opposite the second proximal end, the second storage section comprising, a second *pouch* and the second storage section configured without an additional *pouch*, the *second pouch configured to receive a computer*, wherein the second storage section and the second outer and inner sides are *configured to enable a scanning device to scan through* the second outer and inner sides and scan an interior of the second *pouch* and a computer disposed therein, and

*a second pouch fastener configured to substantially enclose only the second pouch and thereby retain a computer therein*,

the second storage section *foldably joined* at the second proximal end to the first proximal end of the first storage section such that the second proximal end and the first proximal end are coupled adjacent one another to form *a hinge configured to enable a scanning device to scan through* the hinge,

wherein the first and second inner sides are disposed adjacent one another in *the folded configuration* and separated in an unfolded configuration,

wherein the first and second distal ends are disposed adjacent one another in *the folded configuration* and separated from one another in the unfolded configuration, wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, *an object in the first storage section is removed from interfering with a scanner* positioned above and below the second storage section to enable *uninhibited scanning* of a computer in the second *pouch* of the second storage section.[1]

---

[1]    All emphasis is added and all internal citations and quotation marks are omitted unless otherwise indicated.

### B.    Claim 4

The case of claim 1, wherein *the inner side of the second pouch* is configured to allow for visual inspection of a computer disposed within the second *pouch* of the second storage section when second storage section is in the unfolded configuration.

### C.    Claim 13

The case of claim 1, further comprising *indicia indicating the case complies with a standard of a scanning authority*.

### D.    Claim 17

A bi-fold computer case to allow for convenient security screening of a computer disposed therein, the bi-fold computer case having a folded and an unfolded configuration, the bi-fold computer case comprising:

a first storage section comprising a first outer side, *a first inner side*, a first proximal end, and a first distal end opposite the first proximal end, the first outer side, first inner side, first proximal end, and first distal end defining a first *pouch* with a first *pouch* opening and a first *pouch* fastener coupled to the first *pouch* opening and configured to only secure the first *pouch* opening, wherein the first outer and inner sides are *configured to enable a scanning device to scan through* the first outer and inner sides and scan an interior of the first *pouch*, wherein the first storage section further comprises a third *pouch* coupled to the first outer side, the third *pouch* including a third *pouch* opening, independent of the first *pouch* opening, and a third fastener to only secure the third *pouch* opening;

a second storage section comprising a second outer side, a second inner side, a second proximal end, and a second distal end opposite the second proximal end, the second section comprising a *second pouch configured to receive a computer*, the second storage section configured without an additional *pouch*, wherein the second storage section and the second outer and inner sides are *configured to enable a scanning device to scan through* the second outer and inner sides and scan an interior of the second *pouch* and a computer disposed therein, the second storage section *foldably joined* at the second proximal end to the first proximal end of the first storage section such that the first and second proximal ends are coupled adjacent one another, the first and second proximal ends forming *a hinge configured to enable a scanning device to scan through* the hinge,

wherein in *the folded configuration, the first inner side is approximated to the second inner side*, and

wherein the first and second distal ends are disposed adjacent one another in *the folded configuration* and separated from one another in the unfolded configuration;

a fastener to selectively maintain the computer case in *the folded configuration*,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, *an object in the first storage section is removed from interfering with a scanner* positioned above and below the second storage section to enable *uninhibited scanning* of a computer in the second *pouch* of the second storage section.

### E.    Claim 22

A bi-fold computer case, comprising:

a first section comprising *a first inner side*, a first outer side, a first proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first *pouch*, the first distal end including a first *pouch* opening, wherein the first outer and inner sides are *configured to enable a scanning device to scan through* the first outer and inner sides and scan an interior of the first *pouch*;

a second section comprising a second inner side having a surface area approximately equal to a surface area of the first inner side, a second outer side, a second proximal end, a second distal end opposite the second proximal end, a first sidewall coupled to the second inner side and the second outer side, a second sidewall extending substantially parallel to the first sidewall and coupled to the second inner side and the second outer side, a top wall disposed on the second distal end, a second *pouch* and the second section configured without an additional *pouch*, and a second *pouch* opening extending along the top wall and partially extending along the first and second sidewalls, the *second pouch configured to receive a computer*, wherein the second section and the second outer and inner sides are *configured to enable a scanning device to scan through* the second outer and inner sides and scan an interior of the second *pouch* and a computer disposed therein,

the first proximal end of the first section *foldably joined* to the second proximal end of the second section such that the first and second proximal ends are coupled adjacent one another, to form *a hinge configured to enable a scanning device to scan through* the hinge,

wherein in a folded configuration of the bi-fold computer case, *the inner side of the first section is approximated to the inner side of the second section*,

wherein the first and second distal ends are disposed adjacent one another in *the folded configuration* and separated from one another in an unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second sections laid flat upon a same planar surface, *an object in the first section is removed from interfering with a scanner* positioned above and below the second section to enable *uninhibited scanning* of a computer in the second *pouch* of the second section,

wherein the first *pouch* opening is disposed on the first section and the second *pouch* opening is disposed on the second section such that when the case is in the unfolded configuration with the outer sides of both the first and second sections laid flat upon the

3

same planar surface, the first and second *pouch openings are both oriented in a direction substantially parallel to the planar surface*.

### F.   Claim 27

The computer case of claim 22, wherein the second storage section comprises a retention member configured to secure the computer within the second *pouch*.

### G.   Claim 28

A method for providing a bi-fold computer case, comprising:

providing a first storage section including *a first inner side*, a first outer side, a proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first *pouch* including a first *pouch* opening and a first fastener to secure the first *pouch* opening, wherein the first outer and inner sides are *configured to enable a scanning device to scan through* the first outer and inner sides and scan an interior of the first *pouch*;

providing a second storage section having a surface area approximately equal to a surface area of the first storage section and including a second inner side, a second outer side, a second proximal end, and a second distal end opposite the second proximal end, the second storage section comprising a second *pouch*, the second distal end including a sidewall with a second *pouch* opening disposed substantially in the center of the sidewall and the second storage section configured without an additional *pouch*, the *second pouch configured to receive a computer*, wherein the second storage section and the second outer and inner sides are *configured to enable a scanning device to scan through* the second outer and inner sides and scan an interior of the second *pouch* and a computer disposed therein;

*foldably joining* the first storage section to the second storage section at the first and second proximal ends to form *a hinge configured to enable a scanning device to scan through* the hinge such that the first and second proximal ends remain adjacent one another in both folded and unfolded configurations, wherein the second inner and outer sides are configured to allow the computer secured within the second *pouch* to be scanned by a scanning device without removing the computer from the second *pouch*,

wherein in *the folded configuration* of the bi-fold computer case, *the inner side of the first storage section is approximated to the inner side of the second storage section*,

wherein the first and second distal ends are disposed adjacent one another in *the folded configuration* and separated from one another in the unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, *an object in the first storage section is removed from interfering with a scanner* positioned above and below the second storage

4

section to enable **uninhibited scanning** of a computer in the second **pouch** of the second storage section,

wherein the first **pouch** opening is disposed on the first storage section and the second **pouch** opening is disposed on the second storage section such that when the case is in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon the same planar surface, the first and second **pouch openings are both oriented in a direction substantially parallel to the planar surface**.

### H.    Claim 42

A method for manufacturing a bi-fold computer case, comprising:

providing a first storage section including **a first inner side**, a first outer side, a proximal end, and a first distal end opposite the first proximal end, the **first inner side**, first outer side, first proximal end, and first distal end defining a first **pouch** including a first pouch opening and a first fastener to secure the first pouch opening, wherein the first outer and inner sides are **configured to enable a scanning device to scan through** the first outer and inner sides and scan an interior of the first **pouch**, wherein the first storage section further comprises a third **pouch** including a third pouch opening, independent of the first pouch opening, and a third fastener to only secure the third pouch opening;

providing a second storage section including a second inner side, a second outer side, a second proximal end, and a second distal end opposite the second proximal end, the second storage section comprising a second **pouch** and the second storage section configured without an additional **pouch**, the **second pouch configured to receive a computer**, wherein the second storage section and the second outer and inner sides are **configured to enable a scanning device to scan through** the second outer and inner sides and scan an interior of the second **pouch** and a computer disposed therein,

**foldably attaching** the first proximal end of the first storage section to the second proximal end of the second storage section to form **a hinge configured to enable a scanning device to scan through** the **hinge**,

wherein in a folded configuration of the bi-fold computer case, **the inner side of the first storage section is approximated to the inner side of the second storage section**,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in an unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, **an object in the first storage section is removed from interfering with a scanner** positioned above and below the second storage section to enable **uninhibited scanning** of a computer in the second **pouch** of the second storage section.

I.      **Claim 57**

A bi-fold computer case to allow for convenient security screening of a computer and having a folded configuration and an unfolded configuration, the computer case comprising:

a first storage section comprising,
    *a first inner side*,
    a first outer side,
    a first proximal end,
    a first distal end opposite the first proximal end,
    a first *pouch*, and
    a first *pouch* opening disposed on the first distal end and *in communication with* **the first** *pouch*,

wherein the first outer and inner sides are *configured to enable a scanning device to scan through* the first outer and inner sides and scan an interior of the first *pouch*;

a second storage section comprising,
    a second inner side,
    a second outer side,
    second proximal end,
    a second distal end opposite the second proximal end,
    a *second pouch configured to receive a computer* and *the second storage panel* configured without an additional *pouch*, and
    a second *pouch* opening at least partially disposed on the second distal end and in communication with the second *pouch*,

wherein *the second storage panel* and the second outer and inner sides are *configured to enable a scanning device to scan through* the second outer and inner sides and scan an interior of the second *pouch* and a computer disposed therein, *the second storage panel foldably joined* at the second proximal end to the first proximal end of *the first storage panel* such that the first and second proximal ends are coupled adjacent one another to form *a hinge configured to enable a scanning device to scan through* the hinge,

wherein the first and second distal ends are disposed adjacent one another in *the folded configuration* and separated from one another in the unfolded configuration,

wherein in *the folded configuration* **of** *the foldable computer case*, *the inner side of the first storage section is approximated to the inner side of the second storage section* and the first *pouch* opening and the second *pouch* opening are configured to be accessible to a user,

wherein in the unfolded configuration with the outer sides of both *the first and second storage panels* laid flat upon a same planar surface, *an object in the first storage panel is removed from interfering with a scanner* positioned above and **below** *the second storage*

*panel* **to enable** *uninhibited scanning* of a computer in the second *pouch* **of** *the second storage panel*,

wherein the first *pouch* opening is disposed on *the first storage panel* and the second *pouch* opening is disposed on *the second storage panel* such that when the case is in the unfolded configuration with the outer sides of both *the first and second storage panels* laid flat upon the same planar surface, the first and second *pouch openings are both oriented in a direction substantially parallel to the planar surface*.

## II.   AGREED-UPON CONSTRUCTIONS

The parties have agreed to the following constructions:

| Term/Phrase | Agreed Construction |
|---|---|
| "accessible to a user [in the folded configuration]" <br><br>Claims 48, 49, 57 | "user can retrieve items from the first pouch and second pouch while the bi-fold case is in the folded configuration" |
| "defining a first pouch" <br><br>Claims: 1, 17, 21, 22, 28, 42 | "delineating the boundaries of a first pouch" |
| "distal end" <br><br>Claims: 1, 17, 21, 22, 28, 42, 46, 50, 54, 57 | "the end that is farthest away from the hinge" |
| "disposed adjacent" <br><br>Claims: 1, 17, 21, 22, 28, 42, 46, 50, 54, 57 | "touching, or next to" |
| "proximal end" <br><br>Claims:  1, 17, 21, 22, 28, 42, 50, 54, 57 | "the end that is closest to the hinge" |
| "without an additional pouch" <br><br>Claims: 1, 17, 21, 22, 28, 42, 50, 54, 57 | No construction necessary. |
| "the outer sides of both the first and second storage [sections/panels] laid flat upon [a/the] same planar surface" <br><br>Claims: 1, 17, 21, 22, 28, 42, 50, 51, 54, 55, 57 | No construction necessary. |
| "handle" <br><br>Claim: 46 | No construction necessary. |
| "sidewall" <br><br>Claims: 21, 22, 28 | No construction necessary. |

III.   **INTRODUCTION**

A.     **Targus' Introduction**

U.S. Patent No. 8,567,578 ("'578 Patent") describes and claims an innovative computer

case designed to pass through screening at security checkpoints without removing the computer

from the case.   It teaches a bifold case for holding objects in a first storage section and a computer

in a separate, second storage section.  '578 Patent, Abstract.  When the case unfolds, objects in the

first storage section do not overlap the computer in the second storage section, as shown below in

annotated Figure 10D:



The claimed bag design is straightforward, is easily understood by a lay jury, and does not

require the multitude of complex constructions sought by Defendant.

B.     **Victorinox's Introduction**

Victorinox proposes reasonable constructions that are based on the intrinsic and extrinsic

evidence and that are consistent with Federal Circuit law and a POSITA's understanding.[2] This

starkly contrasts with Targus's approach—reading out limitations with an eye toward asserting

---

[2]     A POSITA with regard to the '578 patent would have a Bachelor's degree in Industrial
Design or a similar degree and at least two years of experience in the design of consumer products
such as luggage, apparel, or outdoor gear or would have a Bachelor's degree or Associate's degree
and at least four years of such experience.

infringement, ignoring claimed embodiments, and avoiding patent law canons such as the printed matter doctrine, the "disjunctive list" presumption, and indefiniteness. As set forth below, the claims of the '578 patent have fatal flaws, including *IPXL* indefiniteness and numerous antecedent basis issues, and require construction to coherently delineate the bounds of the bi-fold case allowed by the Patent Office.

## IV.    DISPUTED CLAIM TERMS

### A.    Term 1: "a hinge" (Claims 1, 17, 21, 22, 28, 42, 45, 50, 54, 57)

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary | "a structure made only of rigid, non-metallic components, which cannot be defined as (a) 'foldable material,' (b) 'deformable material or fabric,' or (c) 'straps,' the structure allowing two sections of a case to fold or pivotally join to each other" |

#### 1.    Targus' Opening Position

"Hinge" does not require construction because the jury will have no difficulty understanding it.  The parties do not dispute that the plain meaning of "hinge" includes a flexible material.  Contemporary dictionaries define hinge as including a "jointed device or *flexible* piece." *See* Ex. 3 (Amer. Heritage), 613; Ex. 4 (Webster's Unabridged), 905.  This understanding is confirmed by Victorinox's own invalidity references, proving that a skilled artisan would understand "hinge" to encompass flexible or foldable materials.  *See* Ex. 5 (Godshaw ref.), 6:6-13 (claiming a backpack with a "second front panel *flexibly hinged* to the base panel"); Ex. 6 (Hollingsworth ref.), 7:38-40 (describing pads that are "hingedly connected to one another by *a flexible hinge* segment of webbing or plastic").

Consistent with that plain meaning, the claims use "hinge" to describe a foldable joint: "the second storage section [is] foldably joined at the second proximal end to the first proximal end of

the first storage section… to form a hinge." *E.g.*, '578 Patent, 20:39-43 (Claim 1); *see also id.*, 21:67-22:5 (Claim 17), 22:62-66 (Claim 21), 23:53-56 (Claim 22), 24:50-52 (Claim 28), 26:18-20 (Claim 42), 27:33-37 (Claim 50), 28:27-31 (Claim 54), 29:19-22 (Claim 57).  All the independent claims, therefore, expressly require "hinge" to encompass foldable materials.  Consistent with the claim language, the specification describes embodiments with "foldably" joined storage sections. *Id.*, 5:40-42, 9:16-19, 11:25-28, 13:10-12, 15:13-16.  Victorinox's negative limitations would thus improperly exclude embodiments expressly disclosed in the specification.  *Vitronics Corp. v. Conceptronic*, 90 F.3d 1576, 1583 (Fed. Cir. 1996) (construction that excludes preferred embodiment "is rarely, if ever, correct").

Victorinox cannot establish Targus "clear[ly] and unmistakabl[y] disclaim[ed]" flexible hinges.  *Thorner v. Sony Comp. Entm't*, 669 F.3d 1362, 1367 (Fed. Cir. 2012).  Victorinox's sole basis for excluding flexible hinges is a statement in the specification listing "hinge," "foldable material," "deformable material," "fabric," and "straps" separated by the conjunction "or."  *See, e.g.,* '578 Patent, 9:14-19 ("The first storage section 1004 may be pivotably and/or foldably joined to the second storage section 1008 by a deformable material, a hinge, straps, or the like."); *see also id.*, 4:56-58, 5:40-44, 11:25-28, 13:10-12, 15:13-16, 16:58-17:2.  Embodiments should not be construed as exclusive simply because of the use of "or," especially where the plain meaning of the terms overlaps.  *See, e.g.*, *B-50.com v. Infosync Servs.*, No. 3:10-cv-1994-D, 2014 WL 285096, at *6 (N.D. Tex. Jan. 27, 2014) ("Although 'or' is used in both senses in common usage, '[t]he meaning of *or* is usually inclusive.'")); *Norix Group v. Correctional Techs.*, No. 17-cv-07914, 2020 WL 1157369, at *4 (N.D. Ill. Mar. 10, 2020) ("[C]ourts typically consider 'or' exclusive only when combined with 'either,' which is not present here.").

10

The Court should also reject Victorinox's construction because it is confusing. Victorinox's definition expands "a hinge" from two words to thirty-seven words, adds three subsections, introduces new terminology, and is internally inconsistent, permitting the case to "fold" but not be made of a "foldable material."

### 2.   **Victorinox's Opening Position**

As used in the '578 Patent, "hinge" cannot be "foldable material," "deformable material or fabric," or "straps" because the specification clearly lists those as *alternatives* to "hinge," yet the claims only recite a "hinge."   Moreover, the hinge must be non-metallic in view of the claim language.

The specification of the '578 Patent uses the word "hinge" seven times, and in each of the seven instances, "hinge" is one item of a disjunctive list that also includes "material," "straps," "or the like."   '578 Patent at 4:58, 5:42, 9:19, 11:28, 13:12, 15:15, 17:1.   For example, the specification states that "[t]he first storage section **1004** may be pivotably and/or foldably joined to the second storage section **1008** by *a deformable material*, *a hinge*, *straps*, *or the like*."   *Id.* at 9:16-19 (emphasis added). The six other passages with "hinge" use similar language and include a form of "material," "straps," and are separated by commas and an "or."   *Id.* at 4:58, 5:42, 9:19, 11:28, 13:12, 15:15, 17:1.   The Federal Circuit has repeatedly held that "[t]he disjunctive 'or' plainly designates that a series describes alternatives."   *See, e.g., SkinMedica, Inc. v. Histogen Inc.*, 727 F.3d 1187, 1199 (Fed. Cir. 2013) (citing *Kustom Signals, Inc. v. Applied Concepts, Inc.*, 264 F.3d 1326, 1331 (Fed. Cir. 2001)).   In its most recent case addressing a disclosed disjunctive list of alternatives, the Federal Circuit, in affirming this Court, determined that the claim term "half-liquid" was "an *alternative*" to the other forms that the specification listed in disjunctive format. *IBSA Institut Biochimique, S.A. v. Teva Pharm. USA, Inc.*, 966 F.3d 1374, 1379 (Fed. Cir. 2020) (emphasis added).   There, as in the instant case, the specification listed the alternatives separated

by commas and using the disjunctive "or."  The court found that "[t]hese disjunctive lists designate that a 'half-liquid' is an alternative to the other members of the list, including pastes and gels."  The Federal Circuit rejected the plaintiff's proposed construction, which would have included "pastes and gels" (the unclaimed alternatives) within its scope.  "Such inclusion is at odds with the above passages and creates uncertainty as to the boundaries of a 'half-liquid.'"  *Id.*

Here, the '578 Patent lists "hinge" alongside alternatives "foldable material," "deformable material or fabric," or "straps" in each of seven references to "hinge" in the specification.  '578 Patent at 4:58, 5:42, 9:19, 11:28, 13:12, 15:15, 17:1.  However, the independent claims recite only "hinge," thereby not claiming, and excluding, the alternatives of the disjunctive lists.  *See IBSA*, 966 F.3d at 1379.  Accordingly, the Court should construe "hinge" as structure that is not "foldable material," "deformable material or fabric," or "straps."

This conclusion is supported by the prosecution history.  After the examiner rejected the independent claims based on the Schell patent, the applicants argued that Schell does not have a scannable hinge as recited in the independent claims.  Ex. 2 ('578 File History) at TCP0028447.  The applicants referenced the Figures set forth in Schell, which disclose, *inter alia*, a case having leather panels that open via a supporting metal hinge.  Ex. 9 (U.S. Patent No. 2,554,215) ("Schell"), Figs. 1-7.  The applicants specifically identified the metal hinge mechanism as the "hinge": "Schell teaches the use of a metal strip or plate 19 and 37 in a back portion which ***functions as the hinge*** for the panels."  Ex. 2 at TCP0028447 (emphasis added).  Figures 4 and  5 of Schell show element 19, which is one of the hinges:



Ex. 9 at Figs. 4 and 5 (annotated); *see also id.* at Fig. 7 (showing element 37, the other hinge in Schell).  The applicants identified these elements to distinguish their invention from Schell, stating that "[t] metal strip or plate obstructs a scanning device's ability to scan through and view objects." Ex. 2 at TCP0028447.  This prosecution history passage shows that the applicants differentiated the mechanical "hinge" element from the panel material, and considered the mechanical "hinge" element the "hinge."  The claims require a "hinge" that is consistent with this nomenclature.

Targus argues that Victorinox's construction would "improperly exclude embodiments disclosed in the specification."  JBr. at 10.  This argument fails for two reasons.  First, no embodiments are excluded. The embodiments are disclosed as having a "hinge," "foldable material," "deformable material or fabric," *or* "straps."  By claiming "hinge," one of the alternatives of each embodiment was claimed by the applicants.  Second, Targus mischaracterizes the law: claims that fail to encompass *all* embodiments are disfavored.  *See Nellcor Puritan Bennett, Inc. v. Masimo Corp.*, 402 F.3d 1364, 1368 (Fed. Cir. 2005).  That is certainly not the case here.

Finally, the "hinge" must be made of only non-metallic components because each of the claims requires the "hinge" to be "configured to enable a scanning device to scan through the hinge." *See* Claims 1, 17, 21, 22, 28, 42, 50, 51, 57.  Considering the '578 Patent refers to scanning

13

by an "X-ray Scanner or the like," *see* '578 Patent, 2:21-25, the "hinge" must be non- metallic to permit scanning through.  This is confirmed by the Prosecution History at TCP0028447 as discussed above.

### 3.   Targus' Reply Position

Victorinox does not dispute the ordinary meaning of "hinge."  Instead, Victorinox seeks to rewrite the claims to exclude foldable materials and the like.  Victorinox pointedly ignores that every independent claim uses "hinge" to describe a foldable joint.  JBr. 11-13.  Claim 1 requires the storage sections are "foldably joined… to form a hinge," and all the other claims contain the same requirement.  '578 Patent, 20:39-43; JBr. 10 (collecting cites).  Because Victorinox's construction conflicts with the claim language itself, it should be rejected.  *See, e.g.*, *Kaneka Corp. v. Xiamen Kingdomway Grp.*, 790 F.3d 1298, 1304 (Fed. Cir. 2015) ("Claim construction begins with the language of the claims." (citing *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312-14 (Fed. Cir. 2005)).

Victorinox argues the Court should reject the ordinary meaning and limit the claims because the specification mentions "hinge" in lists separated by the conjunction "or."  JBr. 11. This is problematic on many levels.  As a threshold matter, the Federal Circuit has instructed that "the specification itself does not delimit the right to exclude."  *Markman v. Westview Instruments*, 52 F.3d 967, 980 (Fed. Cir. 1995).  The claims are only limited by the specification in the rare circumstance where the inventor has either acted as a lexicographer and specially defined the term or intentionally disclaimed or disavowed claim scope.  *Phillips*, 415 F.3d at 1316.  But Victorinox has not established any lexicography or disclaimer meriting departure from the undisputed ordinary meaning.

Instead, Victorinox asserts "[t]he Federal Circuit has repeatedly held that 'the disjunctive "or" plainly designates that a series describes alternatives.'" JBr. 11. To support that contention, Victorinox misreads the specification and Federal Circuit caselaw.

First, Victorinox incorrectly jumps to the conclusion that the "alternatives" listed in the specification are necessarily mutually exclusive. Instead, "[c]ourts have noted that 'or' may be used to denote an inclusive list—it is not restricted, as Defendants posit to denoting an exclusive list." *Gonzalez v. Infostream Group, Inc.*, No. 2:14-cv-906-JRG-RSP, 2015 WL 5604448, at *18 (E.D. Tex. Sept. 21, 2015). Indeed, the Federal Circuit has held that using "or" in the specification can refer to examples of the same concept, not mutually exclusive alternatives. *See, e.g.*, *Pause Tech. v. TiVo, Inc.*, 419 F.3d 1326, 1334-35 (Fed. Cir. 2005) (rejecting argument "that because the phrase 'fixed duration or "time window"' is in the disjunctive, the written description indicates that a time window is an alternative to a fixed duration").

Here, the specification instead provides an *inclusive* list of solutions for foldably joining the storage sections because each of the seven specification passages Victorinox relies upon includes "or the like." '578 Patent, 4:56-58, 5:40-44, 9:14-19, 11:25-28, 13:10-12, 15:13-16, 16:58-17:2. If the "or" meant that the listed items were mutually exclusive, use of "or the like" would be nonsensical. JBr. 11-12. Additionally, if "a material, hinge, straps, or the like" were exclusive, then the hinge could not be made of "a material," which is plainly incorrect because a hinge must be made from something. '578 Patent, 4:56-58. Likewise, if "a deformable material, a hinge, straps, or the like" were exclusive as Victorinox proposes, then the "straps" could not deform. '578 Patent, 9:18-19. Moreover, the '578 Patent includes other "or the like" exemplary lists, such as one for locking mechanisms ("a lock, a piezo alarm, a TSA approved luggage lock, or the like") which are plainly inclusive. *Id.*, 5:48-49.

Second, Victorinox's cited cases do not elevate the word "or" in the specification to defeat all other intrinsic and extrinsic evidence.  In *SkinMedica*, the specification included numerous statements defining and distinguishing cell cultures arranged "in monolayer; beads (i.e., two-dimensions) or; preferably, in three-dimensions."  727 F.3d at 1199.  The court observed, "In *Thorner*, we recognized that the 'use of two terms as alternatives' functions as a redefinition of a term ***if that redefinition is 'so clear that it equates to an explicit one***.'"  *Id.* at 1200 (quoting *Thorner v. Sony Computer Entm't Am. LLC*, 669 F.3d 1362, 1368 (Fed. Cir. 2012)).  Here, the '578 Patent does not clearly define hinge, and Victorinox has not pointed to any definition.  *IBSA* also does not help Victorinox on claim construction, but instead addresses indefiniteness.  The decision rejected a proposed construction of "half-liquid" that included pastes and gels because there was no ordinary meaning of "half-liquid" and the proposed construction was at odds with the only evidence on its scope available, the phrase "a liquid, a half-liquid, a paste, a gel, an emulsion or a suspension."  *IBSA*, 966 F.3d at 1378.  There is no dispute over indefiniteness here.

Victorinox also attempts to transform a prosecution history statement for a different claim limitation—"configured to enable a scanning device to scan through"—into a statement regarding "hinge."  JBr. 12-13.  But, as Victorinox acknowledges, JBr. 13, applicant simply stated that a metal hinge in Schell would not enable a scanning device to scan through the hinge:  "Schell teaches the use of a metal strip or plate 19 and 37 in a back portion which functions as the hinge for the panels. ***The metal strip or plate obstructs a scanning device's ability to scan through and view objects***."  '578 File History, TCP0028447.  This statement does not disclaim claim scope as to "hinge."  Scanning is already accounted for in the parties' construction of the "configured" limitation (Term 2), where the parties agree the bag is "made of materials that do not interfere with a scanning device," JBr. 27; JBr. 29, and need not be addressed for "hinge."  *O2 Micro Int'l v.*

*Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1362 (Fed. Cir. 2008) ("Claim construction is not an obligatory exercise in redundancy.").  Contrary to Victorinox's assertion, the file history never distinguishes "panel material" from a "hinge," let alone disclaims claim scope.

Next, Victorinox argues its flawed construction would not exclude any embodiments.  JBr. 13.  But all embodiments use flexible or foldable materials, and Victorinox points to no embodiments otherwise.  *See* '578 Patent, 5:40-42, 9:16-19, 11:25-28, 13:10-12, 15:13-16 & Figs. 10C, 11A, and 12A (depicting bags with flexible hinges, below).



Victorinox argues that "claims that fail to encompass ***all*** embodiments are disfavored." JBr. 13 (citing *Nellcor*, 402 F.3d at 1368) (emphasis in original).  First, that is exactly what Victorinox's construction does.  Second, excluding ***any*** preferred embodiment triggers the presumption disfavoring a construction.  *Vitronics*, 90 F.3d at 1583.

Victorinox has not carried its burden to show that Targus clearly and unmistakably disclaimed flexible hinges.  The Court need not construe hinge.

### 4.      Victorinox's Sur-Reply Position

Victorinox's proposed construction is compelled by the claim language.  Targus argues that the claim language describes a "hinge" as a "foldable joint" (JBr. at 14), but that is exactly what Victorinox's construction describes: "structure allowing two sections of a case to fold or pivotally join to each other."  Nothing in the claim language suggests that "hinge" is comprised of

foldable material, deformable material or fabric, or straps. Instead, the "foldable joint" is a "structure … allowing two sections of a case to fold," as Victorinox proposed.

Targus cites *Pause Technology* and *Gonzalez* to argue that the list may "denote an inclusive list," but these cases do not say that much. In *Pause Technology*, the Federal Circuit construed the phrase "a *fixed duration or 'time window*,'" 419 F.3d at 1334, and determined that "the use of the quotation marks and the context of the surrounding text shows that this phrase does not specify two alternative time intervals but simply describes in different words the same interval." *Id.* at 1335. Thus, it was the clear language and context that rendered the phrase not disjunctive. There is no such language or context in the specification's seven instances of "hinge." And in *Gonzalez*, Magistrate Judge Payne construed "internet search engine or internet browser program or service," wherein the defendant argued indefiniteness based on a disjunctive interpretation. 2015 WL 5604448, at *18. Magistrate Judge Payne concluded that the defendant had not met its burden to show that the claim was indefinite "by clear and convincing evidence." *Id.* at *17.[3] Moreover, that list was not separated by commas and one "or" as here, but was separated merely by "or" between terms. *Id.*

Here, the use of the disjunctive is clear because the inclusive "and/or" is used in a different part of the ***same sentence***:

> The first storage section **1004** may be pivotally ***and/or*** foldably joined to the second storage section **1008** by a deformable material, a hinge, straps, ***or*** the like.

'578 Patent, 9:16-19 (emphasis added); *see also id.* 11:25-28 (same), 13:10-12 (same), 16:66-17:2 (twice). If the "hinge" list were inclusive, the specification would have similarly used "and/or."

---

[3]     To the extent *Gonzalez* conflicts with the Federal Circuit's decision in *ISBA*, only *ISBA* is binding. The Federal Circuit was clear in *ISBA* that disjunctive lists in the specification designate "an alternative to the other members of the list." 966 F.3d at 1379. That *ISBA* addressed indefiniteness does not diminish its significance in construing disjunctive lists.

**B.    Term 7: "pouch" (Claims 1, 4, 5, 6, 17, 21, 22, 27, 28, 32, 42, 47, 48, 49, 50, 52, 54, 57)**

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary<br><br>or<br><br>"receptacle resembling a bag in shape" | "a part of a case that can retain an object on at least the bottom and the sides of an object" |

### 1.    Targus' Opening Position

"Pouch" does not merit construction because everyone knows what a pouch is.  The '578 Patent uses "pouch" according to its plain and ordinary meaning.  For example, the specification includes Figure 3B and states: "[t]he case 300 includes a ***pouch 302*** that receives, supports, protects, and at least partially covers a portable computer 304."



'578 Patent, 3:37-39, Fig. 3B (annotated).  A jury would readily understand the term "pouch."

If the Court construes "pouch," it should construe it as a "receptacle resembling a bag in shape" consistent with the '578 Patent's usage.  *See* Webster's Unabridged, 1515 (pouch: "1. a bag, sack, or similar receptacle ..." and "5. something shaped like or ***resembling a bag*** or pocket"); Amer. Heritage, 970 (pouch: "2. a small or medium-sized ***bag*** of flexible material used for holding or carrying various things ...").

The Court should reject Victorinox's attempt to expand "pouch" to encompass trays. Victorinox has asserted as prior art bags that lack pouches but have trays. For example, below is an image of alleged prior art from Victorinox's invalidity contentions in which it labeled a tray as a "SECOND POUCH":



Ex. 7 (Def. Invalid. Cont.) at Ex. 2 at 7.

Victorinox identified two items of intrinsic evidence in support of its construction, neither of which do so. First, Victorinox identified Figure 13B:



*See* D.I. 68 (Jt. Chart), Ex. A at 3. The specification describes Figure 13B's tray as a "recess," not a pouch: "The inner side 1309 of the second computer storage section 1308 may comprise a ***recess***

20

*1306* ….'' '578 Patent, 16:31-34.  The specification discloses covering Figure 13B's recess with

a cover, which would form a pouch, but Figure 13B does not depict the cover.  *Id.*, 16:36 ("a cover

(not shown)").  Figure 13B is thus not relevant to the appropriate construction of pouch.

    Second, Victorinox identified a page of the file history.  *See* D.I. 68 (Jt. Chart), Ex. A at 3.

That page discusses a reference, Jackson, that taught "two zippered side pouches 214, 216" on

either side of a computer section, (Ex. 2 ('578 File History), TCP0028383), shown below:



Fig. 2

Ex. 8 (Jackson ref.), Fig. 2 (annotated).  This page does not support Victorinox's construction.

Victorinox's attempt to expand "pouch" to include trays should be rejected.

### 2.    **Victorinox's Opening Position**

    A "pouch," as used in the claims of the '578 Patent, means "a part of a case that can retain

an object on at least the bottom and the sides of an object."  A pouch need not fully encapsulate its

contents nor form the shape of a "bag," as Targus would have it, because such a construction would

contravene the intrinsic evidence.

The claimed second pouch (*i.e.*, the computer pouch) is exemplified in Figures 5 and 13. Targus embraces these Figures in its opening brief. *See* JBr. at 42, 48, 64.  Both Figure 5 and Figure 13 show a second pouch (a computer pouch) that can retain an object on only the bottom and the sides of an object:



Figure 13 is particularly revealing. It depicts element 1330 as a "retention member." '578 Patent, 16:34-35.  The Figure 13 type of pouch is claimed in claim 27, which depends from claim 22 and requires that "the second storage section comprises a ***retention member*** configured to secure the computer ***within the second pouch***."  Claim 27 (emphasis added).  Claim 27 only makes sense if "the second pouch" is the type of computer pouch depicted in Figure 13—one that can retain an object on only the bottom and the sides of an object. Claim 27's use of the term "retention member" in conjunction with the term "second pouch" indicates that a retention member—as opposed to a top cover or a wall—is sufficient for a computer compartment to be a "pouch" in the patent's vernacular.  *See also* Ex. 2 at TCP0028446 (the prosecution history shows that while claim 27 (application claim 29, requiring "a retention member") was pending, the applicant represented to the Patent Office that "[t]he application teaches a second storage section is limited to only having a second pouch").

Claim 1 also independently supports Victorinox's construction.  Claim 1 requires a second pouch fastener: "a second pouch fastener configured to substantially enclose only the second pouch

and thereby retain a computer therein."  The only such pouch fastener disclosed in the patent is the strap in Figures 13A-B. Thus, Figure 13 depicts a "pouch" for the computer, otherwise the strap could not be a "pouch fastener."  Figure 13 depicts a pouch that retains the computer on the bottom and sides and makes use of a strap to secure the computer. Indeed, if the strap in Figure 13 is not a second pouch fastener, then there is no support for the limitation "second pouch fastener," which was added via amendment, in the patent specification, thus claim 1 would be invalid under 35 U.S.C. § 112.  *See Wang Labs., Inc. v. America Online, Inc.*, 197 F.3d 1377, 1383 (Fed. Cir. 1999) (noting that "claims should be construed, when feasible, to sustain their validity").

Targus's construction and arguments would contravene this intrinsic evidence.  Indeed, Targus uses a photograph of a prior art computer bag to make clear that its position would exclude a pouch that retains the computer on the bottom and sides and makes use of a retention member to secure the computer.  *See* JBr. at 20.   Yet, Targus's construction would exclude the Figures 5 and 13 embodiments and render claim 27 (which claims the Figure 13 embodiment) nonsensical and illogical.

Moreover, Targus's construction would apparently require that the "pouch" fully cover the computer, which directly contravenes with the specification's acknowledgment that a "pouch" may only provide ***partial*** covering. *See* '578 Patent, 3:37-39 ("the case 300 includes  a pouch 302 that receives, supports, protects, and at least ***partially*** covers a portable computer 304") (emphasis added).  Targus's proposed "resembling a bag in shape" phrase would seemingly contradict this, as well as introduce the confusing concept of bag resemblance.

Finally, Targus unpersuasively argues that the specification's use of the term "recess" when describing Figure 13B supports its position.  *See* JBr. at 20-21. To the contrary, the specification merely refers to the bottom ***side*** of a pouch as a recess.  *See* '578 Patent, 16:31-34 ("[t]he inner

side 1309 of the second computer storage section 1308 may comprise a recess 1306"). Thus, the specification never calls Figure 13B's pouch a "recess," but refers to the bottom of it as a recess, and the patent confirms in claim 29 that when it is paired with a retention member, it forms a "pouch."

### 3.   Targus' Reply Position

Victorinox relies on Figures 5B and 13B as evidence for broadening "pouch" to encompass trays. JBr. 22. As previously explained, these figures instead depict trays formed from recesses 506 and 1306:



'578 Patent, Figs. 5B, 13B (annotated); *id.*, 5:3-4 ("recess"), 16:32-34 ("recess"). Victorinox claims "the specification merely refers to the bottom **side** of a pouch as a recess." JBr. 23 (emphasis original). But that is wrong: the specification states the inner side of Figure 13B's "**second, computer storage section 1308** may comprise a recess 1306," *id.*, 16:31-32, and with respect to Figure 5, states, "**the computer section 502** includes a recess 506," *id.*, 4:54-55. The specification never describes these uncovered recesses as pouches.

Victorinox fails to address how Figure 5B depicts a pouch but argues that Figure 13B depicts a pouch. JBr. 22. Figure 13B, however, does not depict a pouch.

First, Victorinox argues Figure 13B shows a second pouch because the specification labels element 1330 a "retention member" and Claim 27 also references a "retention member." *Id.* Victorinox argues Claim 27 "only makes sense" if Figure 13B depicts a pouch. *Id.* This argument

fails because Claim 27 depends from Claim 22, which already includes a "pouch" and requires "a top wall disposed on the second distal end," and a second pouch opening "extending along the top wall and partially extending along the first and second sidewalls. '578 Patent, 23:42-47. Indeed, one of Victorinox's bags with these structures is shown below:



Ex. 12 (Inf. Cont.), Ex. A at 18. Claim 27 specifies this type of opening and thus covers a conventional pouch rather than Figure 13B's recess.

Second, Victorinox argues Figure 13B depicts a pouch because Claim 1 requires a fastener that substantially encloses the computer pouch and "[t]he only such pouch fastener disclosed in the patent is the straps in Figures 13A-B." JBr. 22. This is inaccurate. The specification provides: "[w]hen the portable computer 304 is disposed within the pouch 302, the fastener 306 may extend over the computer 304 and secure the computer 304 within the pouch." '578 Pat., 3:42-45. The specification states, "[a]ll such embodiments may include one or more of the features disclosed above," meaning a person of ordinary skill would know to combine the fastener 306 with other bifold case embodiments. *Id.*, 19:56-58.

Finally, Victorinox resorts to a strawman that Targus' construction requires a pouch to "fully cover" a computer when the specification only requires partial covering. JBr. 23. That is not Targus' proposed construction. For example, below is Victorinox's backpack with a "pouch" that would partially, but not fully, cover a computer:



Ex. 12 (Inf. Cont.), Ex. B at 15. Moreover, Victorinox's assertion that the specification requires partial covering contradicts its own proposed construction, which, like its tray examples in Figures 5B and 13B, does not cover the computer at all.

The evidence does not support defining "pouch" to encompass trays. Neither "pouch" nor the "concept of bag resemblance" is confusing. The Court need not construe pouch, but if it does, it should adopt Targus' construction.

### 4. Victorinox's Sur-Reply Position

Targus now seeks to disclaim Figures 5 and 13. JBr. at 24. This is improper in that not only has Targus embraced those embodiments in its claim construction briefing (see Term 5 and Indefiniteness Term 1), but it embraced them during prosecution. The Targus applicants represented to the Patent Office, while every pending claim required a "second pouch configured to receive a computer," that "the presently pending claims are directed to bi-fold embodiments,

such as those represented in Figures *5A*, *5B*, 10D, 10E, 11A-D, 12A-12D, *13A*, and *13B*."  Ex. 2 at TCP0028383.

Targus attempts to avoid Claim 27 and its "retention member configured to secure the computer within the second pouch" (i.e., what Figure 13 depicts) by arguing that claim 22's top wall and side walls are somehow inconsistent with Claim 27 and Figure 13.  However, it is not inconsistent because the pouch depicted in Figure 13 can meet those limitations, and Claim 27's "retention member" serves to retain the computer in the pouch as in Figure 13.

Targus also tries to downplay the criticality of the pouch fastener disclosed in Figures 13A and 13B, which is the only "second pouch fastener configured to ***substantially enclose*** only the second pouch and thereby retain a computer therein."  Claim 1 (emphasis added).  Targus points to the fastener of Figure 3A (specifically, element 306), but that is a mere latch fastener and does not "***substantially enclose*** only the second pouch."

### C.  Term 2: "configured to enable a scanning device to scan through" (Claims 1, 17, 21, 22, 28, 42, 47, 50, 54, 57)

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| "made of materials that do not interfere with a scanning device" | "having a structure, design, arrangement, shape, and made of materials that enable a scanning device to scan through" |

### 1.  Targus' Opening Position

"[C]onfigured to enable a scanning device to scan through" refers to the materials that form the inner and outer sides of the storage section, *e.g.*, '578 Patent, 20:15-17, 20:31-33, and the hinge between those sections, *e.g.*, *id.*, 20:41-44.  Both parties' constructions essentially agree that the travel bag must be "made of materials" that do not interfere with scanning.  Victorinox, however, seeks to add a second requirement for "configured" that it also have "a structure, design,

arrangement, [and] shape." Victorinox's construction is confusing, does not resolve any disputes, and would only improperly add a limitation.

Targus' construction is consistent with the intrinsic evidence and should be adopted. The claims refer to scanning "through" the hinge and inner and outer sides. The shapes of the hinge and inner and outer sides do not affect whether an x-ray machine can scan through them; an x-ray passes through a circle as easily as a triangle. By contrast, x-rays pass through fabric but not some metals. "Configured," as used here, refers to materials because that is what affects whether a scanning device can scan through the hinge and inner and outer sides.

The specification provides further support, stating with respect to a cover that forms the inner side of the second storage section:

> The cover 1209 may be adapted to allow the computer 1206 disposed in the case 1200 to be scanned by a scanning device (not shown) without removing the computer 1206 from the second storage section 1208 and/or without removing the cover 1209. ***Accordingly the cover 1209 (as well as the rest of the materials comprising the case 1200) may be comprised of materials configured to allow the computer 1206 and the other contents of the case 1200 to be scanned by a scanning device (e.g., the materials may be configured to avoid interfering with the operation of a scanning device).***

'578 Patent, 13:48-57; *see also id.*, 5:6-9, 5:65-6:4, 8:5-10, 9:2-6, 11:58-67. The specification uses similar language with respect to the first storage section, *id.*, 16:50-57, other structures, *id.*, 6:35-42, 6:62-7:7, 7:21-31, 12:31-38, 14:35-40, and every part of the case, *id.* at 17:28-33, Abstract. In this context, "configured" refers to materials.

Victorinox's proposal to replace "configured to" with "having a structure, design, arrangement, [and] shape" simply adds words without providing clarity. It relies on two citations, neither of which supports it. *See* D.I. 68 (Jt. Chart), Ex. A at 1. Victorinox first cited to the file history at TCP0028447, in which Targus distinguished a reference that used "a metal strip or plate 19 and 37 in a back portion which functions as the hinge ...." '578 File History, TCP0028447.

There, Targus distinguished the reference's metal hinge because metal would have presented a "substantial obstruction to scanning …." *Id.* Victorinox's citation supports Targus's construction and confirms that "configured to enable a scanning device to scan through" refers to the hinge's materials, not to its "structure, design, arrangement, [and] shape."

Victorinox's second citation does not even relate to the limitation at issue. Victorinox cited the file history at TCP0028685, where Targus distinguished a reference that taught panels with pouches that folded over a computer. *See* D.I. 68 (Jt. Chart), Ex. A at 1. It's irrelevant.

## 2.   <u>Victorinox's Opening Position</u>

Victorinox's construction construes the phrase "configured to" to mean "that has a structure, design, arrangement, shape, and made of materials that." This term also appears in Term 6 below, and the argument set forth below with respect to claim term 6 applies equally here, with one addition: here, the additional phrase "and made of materials" is appropriate because the specification explains that the "materials" from which the case elements are made are an important basis for allowing the scanning of the bag without interference:

> Accordingly, the cover 1109 (as well as the rest of the materials comprising the case 1100) may be ***comprised of materials*** configured to allow the computer 1106 and/or the other contents of the case 1100 to be scanned by a scanning device (e.g., ***the materials*** may be configured to avoid interfering with the operation of the scanning device).

'578 Patent, 11:62-67; *see also* Abstract; 5:6-9; 6:1-4; 7:1-6; 8:5-10; 8:29-34; 9:2-6; 9:57-60; 13:52-57; 16:50-54; 17:25-28; 17:38-44. Importantly, while the "materials" that make up the element is critical, the materials are also required (per the specification) to be "configured" in a way that achieves a result, and this is done via the structure, design, arrangement, and shape of the materials.

### 3.   Targus' Reply Position

Victorinox's answer confirms the sole dispute is whether the Court should also construe "configured" as "a structure, design, arrangement, shape." JBr. 29. The Court should reject that construction because it is inaccurate: "configured" in this context refers to the bag's materials, not its structure. JBr. 27-29. Like Victorinox, Targus incorporates its reply argument for Term 6. *See* Section IV.E.

### 4.   Victorinox's Sur-Reply Position

Victorinox relies on its arguments regarding "configured" set forth below pertaining to Term 6.

### D.   Term 3: "a second pouch fastener configured to substantially enclose only the second pouch and thereby retain a computer therein" (Claim 1)

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary | "a second pouch fastener that has a structure, design, arrangement or shape that substantially encloses only the second pouch and thereby retain a computer therein" |

### 1.   Targus' Opening Position

The Court does not need to construe this term because there is no dispute about its scope. *See Eon Corp. v. Silver Springs Networks*, 815 F.3d 1314, 1318-19 (Fed. Cir. 2016). The sole dispute is whether to replace "configured" with the eight-word phrase "that has a structure, design, arrangement or shape." Victorinox's construction does not resolve any disputes, would only confuse the jury, and should be rejected.

A jury would readily understand that "configured" refers to the fastener's structure enclosing one specific part of the case—the second pouch. The specification confirms this by describing an embodiment in which a fastener's **structure** allows it to secure the computer in a pouch: "[w]hen the portable computer 304 is disposed within the pouch 302, the fastener 306 may

extend over the computer 304 and secure the computer 304 within the pouch."  '578 Patent, 3:42-45.



*Id.*, Fig. 3A (annotated).  Injecting the phrase "structure, design, arrangement or shape" in place of "configured" does not clarify anything for the jury and would only sow confusion.

### 2.    **Victorinox's Opening Position**

Victorinox's construction construes the phrase "configured to" to mean "that has a structure, design, arrangement or shape that."  This term also appears in Term 6 below, and the argument set forth below with respect to claim term 6 applies equally here.

### 3.    **Targus' Reply Position**

Like Victorinox, Targus incorporates its reply argument for Term 6.  *See* Section IV.E.

### 4.    **Victorinox's Sur-Reply Position**

Victorinox relies on its arguments regarding "configured" set forth below pertaining to Term 6.

**E.      Term 6: "second pouch configured to receive a computer" (Claims 1, 17, 21, 22, 28, 42, 50, 54, 57)**

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary<br><br>*See* construction of "pouch" (Disputed Term 7) | "a second pouch (as defined herein) having a structure, design, arrangement, or shape that enables it to receive a laptop computer, a notebook computer, a tablet computer, or the like" |

**1.      Targus' Opening Position**

The Court need not construe this term because the parties do not dispute its scope.  *See Eon Corp.*, 815 F.3d at 1318-19.  "Computer" does not require the construction Victorinox proposes.  Victorinox's proposed substitution only adds words without assisting the jury.  Victorinox again seeks to replace "configured" with "having a structure, design, arrangement, or shape," but this would only introduce confusion.  *See* Section IV.D.  Telling the jury that a pouch is "designed" or "structured" or "arranged" to receive a computer provides no more clarity than saying it is "configured" to receive a computer.

**2.      Victorinox's Opening Position**

This term incorporates "pouch" and thus the definition of "pouch" (above) applies.  In fact, it is the ***second*** pouch (which holds the computer) that drives the definition of pouch.

The term "configured to" also requires construction as part of this term.  Specifically, as courts have recognized, "configured to" can be misunderstood by a jury to have an "intent" or *mens rea* requirement, thus a construction or instruction is proper to prevent that.  *See Flexuspine, Inc. v. Globus Med., Inc.*, 2016 WL 4161887, at *7 (E.D. Tex. Aug. 5, 2016) (construing "configured to" as having its plain and ordinary meaning but adding that "[t]he Court's construction prohibits Defendant from arguing to the jury that the accused products do not infringe because they were not designed to perform the recited function"); *Solocron Media, LLC v. Verizon*

*Commc'ns Inc.*, 2015 WL 1011310, at *12 (E.D. Tex. Mar. 5, 2015) (rejecting a construction of "configured to" that suggested that "the intent of a designer must be established").  The Federal Circuit recently held that phrases such as "configured to" do not connote the intent of a designer of a product:

> To the extent that Cochlear is suggesting that the language requires a particular intent or objective of a hearing-aid designer or manufacturer, we reject the suggestion. We have previously held that the claim term 'adapted to' generally means 'made to,' 'designed to,' or 'configured to' perform the stated function, and we have not introduced a subjective element into the construction of the phrase.

*Cochlear Bone Anchored Sols. AB v. Oticon Med. AB*, 958 F.3d 1348, 1356 (Fed. Cir. 2020); *see also Acorn Semi, LLC v. Samsung Elecs. Co.*, 2020 WL 6136847, at *16 (E.D. Tex. Oct. 16, 2020) ("The Federal Circuit has further instructed that 'configured to' does not include a 'subjective element' such as the designer's intent.") (*citing Cochlear Bone*, 958 F.3d at 1356).  Decisions of this Court are in accord.  *See, e.g., Nox Med. EHF v. Natus Neurology Inc.*, C.A.  No. 15-709-RGA, 2018 WL 845635, at *4 (D. Del. Feb. 13, 2018) (construing a claim that used the phrase "being configured to function as a female snap button fastener for receiving and fastening" as meaning that the element "***must be able to*** receive and fasten") (emphasis added).

Following the reasoning of those decisions, Victorinox proposes that "configured to" in the at-issue phrase be construed as "having a structure, design, arrangement, or shape that enables it to."  This eliminates the implication that the designer's intent to achieve a result is required.  *See, e.g., Bradford Co. v. Afco Mfg.*, 2006 WL 3500009, at *16 (S.D. Ohio Dec. 5, 2006), *rev'd in part sub nom. Bradford Co. v. Conteyor N. Am., Inc.*, 603 F.3d 1262 (Fed. Cir. 2010) ("configured for being manipulated into" construed as "having a structure, design, arrangement, or shape that can be manipulated into").

Finally, "computer" should be construed to clarify that a computer can take the form of "a laptop computer, a notebook computer, a tablet computer, or the like."  This comes directly from

the patent specification.  *See* '578 Patent, 9:50-53 ("The second storage section 1008 may be adapted to receive a portable computer (not shown), such as a laptop computer, a notebook computer, a tablet computer, or the like.").  Without this construction, a juror may not understand that a tablet computer or the like is encompassed within the term "computer."

### 3.    Targus' Reply Position

Victorinox never explains how this term is in dispute and therefore requires construction.  JBr. 32-34.  Victorinox's argument that a jury might decide, *sua sponte*, to add an intent requirement to "configured to" is not credible and could in any event be addressed via jury instruction if needed.  JBr. 32.

Victorinox's caselaw does not support its argument.  JBr. 32-34.  The first three district court opinions Victorinox cites held "configured to" should have its plain and ordinary meaning.  *Flexuspine*, 2016 WL 4161887, at *7; *Solocron*, 2015 WL 1011310, at *12; *Acorn Semi*, 2020 WL 6136847, at *16.  The fourth, by this Court, replaced "configured to function" with "must be able to," which was its plain and ordinary meaning.  *Nox Medical*, 2018 WL 845635, at *4-5.  The fifth is irrelevant because the parties had agreed "configured to" should be construed as "having a structure, design, arrangement, or shape."  *Bradford Co.*, 2006 WL 3500009, at *9.  The Federal Circuit case is also irrelevant because it does not relate to whether a jury would *sua sponte* add an intent requirement to "configured to."  *Cochlear Bone*, 958 F.3d at 1356.  This Court should decline to construe "configured to."

### 4.    Victorinox's Sur-Reply Position

Targus concedes Victorinox's first concern (that "configured" cannot have an intent requirement) and ignores Victorinox's second (that "computer" should be given its meaning from the specification).

As for ensuring that a jury does not impose an intent requirement upon "configured," Targus does not object to doing so but suggests that it can be addressed via jury instruction. JBr. at 34. The better practice—and one that would avoid inconsistency and reduce ambiguity—would be to make this clear in the claim construction. *See, e.g., Amazon.com, Inc. v. Barnesandnoble.com, Inc.*, 239 F.3d 1343, 1353 (Fed. Cir. 2001) ("We are not prepared to assign a meaning to a patent claim that depends on the state of mind of the accused infringer."). Victorinox's proposal of replacing "configured to receive" (which a jury might erroneously believe has an intent requirement, namely that the pouch must have been intended to be used to receive a computer) with the objective phrase "having a structure, design, arrangement, or shape that enables it to receive" avoids intent and ambiguity.

As for "computer," Targus is silent, thus Victorinox continues to rely on the specification's definition of computer for specificity and clarity. *See* JBr. at 33-34.

**F.      Term 4: "a first inner side" (Claims 1, 17, 21, 22, 28, 42, 50, 54, 57)**

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary<br><br>or<br><br>"first interior side" | "a side of the first storage section that faces the second storage section when the case is in the folded position" |

**1.      Targus' Opening Position**

The Court need not construe this term because a jury would have no difficulty understanding what "a first inner side" of a bag is.  For example, the '578 Patent describes sections of the bag as having inner and outer sides in the text and figures reproduced below:

> As shown in FIG. 10A-10E, the storage sections 1004 and 1008 may comprise a respective inner side and outer side.  The outer sides of the storage sections 1004 and 1008 may be exposed when the case 1000 is in the closed, folded configuration (as shown in FIGS. 10A-10C).  The ***inner sides 1005 and 1009*** of the storage

sections 1004 and 1008 may be exposed when the case 1000 is in the open, unfolded configuration (as shown in FIGS. 10D and 10E).



'578 Patent, 9:28-35, Figs. 10A, 10D (annotated).  This is not confusing.

Victorinox's construction would only cause unnecessary confusion.  Victorinox incorrectly seeks to read the outer side and inner side on the same structure to encompass its asserted prior art.  For example, Victorinox's construction of "first inner side" would include an outer side because the inner face of the outer side would face the second storage section when the bag is in the folded configuration as shown in Figure 10A above.  That construction is plainly inconsistent with the '578 Patent's teaching that the inner side is meant to be an interior side, not simply a surface that faces the interior when the bag is folded.

The specification further contradicts Victorinox's construction when it states: "When in the folded configuration, the inner side 1005 of the first storage section 1004 may be approximated to the inner side 1009 of the second storage section 1008."  *Id.*, 10:23-26; *see also id.*, 11:49-52, 13:39-42.  Approximated means the two inner sides are near, not that they face each other.  *See* Amer. Heritage, 122 (approximated: "3. Close together; near."); Webster's Unabridged, 104 (approximated: "3. near; close together").

Victorinox's reliance on a single page of the file history is misplaced because that page merely restates that "in the folded configuration, the first inner side is approximated to the second

inner side." '578 File History, TCP0028451.   As explained above, that language contradicts Victorinox's construction.

If the Court believes this term requires construction, the Court should construe it as a "first interior side" because that construction agrees with the intrinsic evidence.

## 2.   Victorinox's Opening Position

Victorinox's construction is supported by the claim language and should be adopted.

"[L]ooking first to the claim language itself," *Chimie v. PPG Indus., Inc.*, 402 F.3d 1371, 1377 (Fed. Cir. 2005), the claim requires that "a first inner side" be a side of the "first storage section." *E.g.*, Claim 1 ("a first storage section comprising … a first inner side").   Additionally, the claim language in several independent claims requires that "a first inner side" be "disposed adjacent" to the "second inner side" (the inner side on the second storage section) when the case is folded.[4] *Id.* at Claims 1, 50, 54 ("wherein the first and second inner sides are disposed  adjacent one another in the folded configuration").   The parties agreed that "disposed adjacent" means "touching, or next to," *supra* Agreed-Upon Constructions, so when the case is in the folded position, "a first inner side" must be touching or next to the inner side of the second storage section. This supports Victorinox's proposed construction that a first inner side must "face[] the second storage section when the case is in the folded position."   *See Digital Biometrics, Inc. v. Identix, Inc.*, 149 F.3d 1335, 1344 (Fed. Cir. 1998) ("The actual words of the claim are the controlling focus.").

---

[4]      Each of the independent claims without "disposed adjacent" states that the "first inner side … is approximated to the second inner side," which Victorinox similarly contends means the sides are "brought together" as discussed in Term 8.

### 3.      Targus' Reply Position

Victorinox asserts an illogical argument that "when the case is in the folded position, 'a first inner side' must be touching or next to the inner side of the second storage section.  This supports Victorinox's proposed construction that a first inner side must 'face[] the second storage section [sic] when the case is in the folded position."  JBr. 37.  First, Victorinox is wrong that the separately recited limitations "disposed adjacent" and "approximated to" support its assertion that the first inner side must face the second inner side.  *Id.*  Sides can be adjacent without facing each other and can face each other without being adjacent.  Second, if "disposed adjacent" and "approximated to" were really what Victorinox was trying to capture, those are separate limitations already recited in the claims that need not be imported into "first inner side."  *See, e.g.*, '578 Patent, 20:45-50, 22:7-8.

### 4.      Victorinox's Sur-Reply Position

Targus criticizes Victorinox's argument as "illogical," but then fails to explain how "[s]ides can be adjacent without facing each other."  Targus's proposed construction as "first interior side" conflicts with the claim language because "interior" refers to the interior of a pouch. *See, e.g.*, '578 Patent, claim 1 ("scan an interior of the first pouch").  The term "a first inner side" is "inner" with respect to the case, not a "pouch."

### G.      Term 8: "the first inner side [of the first storage panel/section] is approximated to the second inner side [of the second storage panel/section]" (Claims 17, 21, 22, 28, 42, 57)

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary<br><br>*See* construction of "inner side of the [first/second] section" (Indefiniteness Term 5). | "the first inner side [of the first storage panel/section] is brought together with the second inner side [of the second storage panel/section]" |

### 1.      Targus' Opening Position

This claim term is clear and does not require construction.  Victorinox stated during the meet-and-confer that it interprets "brought together" in its proposed construction as requiring contact.  The Court should reject Victorinox's attempt to narrow "approximated" to "brought together" because "approximated" does not require contact.  A jury would have no difficulty understanding "approximated," and the Court need not construe it.

The plain meaning of "approximated" is "close together" or "near."  *See* Amer. Heritage, 122 (approximated: "3. Close together; near"); Webster's Unabridged, 104 (approximated: "3. near; close together").  The claims use "approximated" consistent with its plain meaning to describe the relative positions of the first and second inner sides when the bag is closed.  *See, e.g.*, '578 Patent, 22:7-8 ("wherein in the folded configuration, the first inner side is approximated to the second inner side …").  Nowhere do the claims require contact.

The specification uses the term consistent with its plain meaning, stating: "[w]hen the case is in the folded configuration, the inner side 1205 of the first section may be approximated to the inner side 1209 of the second storage section 1208."  *Id.*, 13:39-42.  Victorinox's narrowing construction is unwarranted and should be rejected.

### 2.      Victorinox's Opening Position

This claim term requires construction because "approximated" is used in an uncommon way. The more common meaning of "approximate"—"nearly correct or exact," Ex. 10 (Merriam-Webster.com Dictionary) at VSAI00027113 or "nearly exact; not perfectly accurate or correct," Ex. 4 (Webster's Unabridged), 104—could distract from its use in the claims.  As used in the claims and specification, "approximated" means that the two sides are brought together, requiring contact or nothing else between the "first inner side" and "second inner side."

The claims state that "in the folded configuration, the first inner side *is approximated to* the second inner side." The specification uses "folded" and "closed" interchangeably. *See*, *e.g.*, '578 Patent, 9:30-32 ("when the case **1000** is in the closed, folded configuration"), 15:28-30 ("When in the closed configuration, the first storage section **1304** and the second, computer storage section **1308** are approximated as shown in FIG. 13A.). Each embodiment of a bi-fold case in the folded (closed) position shows two sides brought together. *See* '578 Patent, Figs. 5A, 13A.



In its opening brief, Targus mischaracterizes Victorinox's statement in the meet and confer regarding whether "brought together" requires contact. JBr. at 39. At the meet and confer, Targus stated it would agree to Victorinox's construction only if Victorinox would not argue at any point that the claim required contact. Victorinox did not agree to that restriction. Victorinox contends that "approximated" requires contact or nothing in between, as shown above in Figs. 5A and 13A. The specification also states that "[w]hen the case **500** is closed, the sections **502**, **504** *abut one another*." '578 Patent, 4:58-59 (emphasis added).

### 3. Targus' Reply Position

Victorinox argues the Court should construe "approximated" because the claim uses it in "an uncommon way." JBr. 39. The online dictionary definition Victorinox submitted shows otherwise. *See* Ex. 10, 2 (approximate: "2a: to bring near or close"). So do the two dictionaries Targus submitted. *See* Amer. Heritage, 122 (approximated: "3. Close together; near"); Webster's

Unabridged, 104 (approximated: "3 near; close together"). "Approximated" does not require construction.

Victorinox nevertheless asks the Court to narrow "approximated" to mean "contact or nothing else" between two sides because "[e]ach embodiment of a bi-fold case in the folded (closed) position shows two sides brought together." JBr. 40. Victorinox's argument fails as a matter of law: the Federal Circuit "expressly reject[s] the contention that if a patent describes only a single embodiment, the claims of the patent must be construed as being limited to that embodiment." *Phillips*, 415 F.3d at 1323. Victorinox also ignores the specification's disclosure of attaching pockets to the inner sides of non-computer sections, which could prevent the two inner sides from making contact and which would impose a structure between the two sides. *See* '578 Patent, 7:25-26. Victorinox has not established Targus clearly and unmistakably limited this term to one of the disclosed embodiments. *Phillips*, 415 F.3d at 1316.

### 4. **Victorinox's Sur-Reply Position**

Targus points only to an embodiment that is not bi-fold to dispute that "approximated" requires contact or nothing else in between. Even if the pocket on the inner side of the non-computer section is between the sides, it does not necessarily prevent contact between the entirety of the sides.

### H. **Term 5: "indicia indicat[es/ing] [that] the [computer] case complies with a standard of a scanning authority" (Claims 13, 23, 38)**

| Targus' Proposed Construction | Victorinox's Proposed Construction |
| --- | --- |
| "identifying mark(s) indicat[es/ing] [that] the [computer] case complies with a standard of a scanning authority" | Not entitled to patentable weight.<br><br>[*Victorinox's Pre-Briefing Position – No Longer Asserted*] *Alternatively: "an indicia signifying that the case complies with a standard (not a guideline or regulation) promulgated by a scanning authority"* |

41

### 1.   **Targus' Opening Position**

The Court should construe "indicia" to mean "identifying mark(s)" because that is how the specification uses "indicia." The Court should reject Victorinox's construction because Targus did not disclaim claim scope. Targus' construction is consistent with the specification, which uses "indicia" to broadly refer to identifying marks, stating:

> The indicia 1322 may be disposed on the inner side 1309 of the second computer storage section 1308…. The indicia 1322 may comprise visible and non-visible portions… [and] the ***indicia 1320 and/or 1322*** may comprise authentication means, such as a ***watermark, hologram, or other graphical information***.



'578 Patent, 15:61-16:6, Fig. 13B (annotated). The specification describes various other embodiments, including "a metal shape that is sewn within a panel, lining, or the like. The identifier may comprise a logo, symbol, or graphic …." *Id.,* 18:52-54. The Court should adopt Targus' construction because it is consistent with the specification.

[*Addresses Victorinox's Pre-Briefing Alternative Position*] Victorinox improperly imports a limitation from the specification that the recited standard is "not a guideline or regulation." The Court should reject Victorinox's addition to the claim because Targus did not "clear[ly] and unmistakabl[y] disclaim[]" guidelines or regulations in the specification. *Thorner*, 669 F.3d at 1367. Victorinox's sole alleged support is the following: "In some of the embodiments disclosed herein, the computer case (e.g., cases 100-1300) may include an indicia showing that the case

meets a security screening regulation, standard, and/or guideline, such as a TSA screening standard." '578 Patent, 17:54-58; *see also id.*, 18:61-67.  Victorinox's proposed reading of these three items as mutually exclusive conflicts with the ordinary meaning of "and" and "or," both of which are inclusive.  *See* Section IV.A.  The Court should reject Victorinox's proposed construction because Victorinox cannot establish disavowal.

### 2.    <u>Victorinox's Opening Position</u>

"Claim limitations directed to printed matter are not entitled to patentable weight unless the printed matter is functionally related to the substrate on which the printed matter is applied." *Praxair Distribution, Inc. v. Mallinckrodt Hosp. Prods. IP Ltd.*, 890 F.3d 1024, 1031-32 (Fed. Cir. 2018).  "[A] claim limitation is directed to printed matter 'if it claims the content of information.'" *Id.* at 1032 (quoting *In re DiStefano*, 808 F.3d 845, 848 (Fed. Cir. 2015)).  "[P]rinted matter encompasses any information claimed for its communicative content."  *CR Bard Inc. v. AngioDynamics, Inc.*, 979 F.3d 1372, 1381 (Fed. Cir. 2020).  "Claim limitations directed to the content of information and lacking a requisite functional relationship are not entitled to patentable weight because such information is not patent eligible subject matter under 35 U.S.C. § 101." *Praxair*, 890 F.3d at 1032.  "If a claim limitation is directed to printed matter, then the next step is to ascertain whether the printed matter is functionally related to its 'substrate.'  Printed matter that is functionally related to its substrate is given patentable weight."  *Id.*  "Where the printed matter is not functionally related to the substrate, the printed matter will not distinguish the invention from the prior art in terms of patentability*.*"  *In re Ngai*, 367 F.3d 1336, 1339 (Fed. Cir. 2004). "[T]he printed matter  must be interrelated with the rest of the claim."  *Praxair*, 890 F.3d at 1032.

Here, the limitation satisfies the first step of the printed matter doctrine test.  It is directed to printed matter because it requires "indicia indicating the case complies with a standard of a

scanning authority."   Claim 13.[5]   The specification describes indicia as "such as a watermark, hologram, or other graphical ***information***" ('578 Patent, 15:61-16:6) (emphasis added), or "a logo, symbol, or graphic" (id. at 18:52-54).   This clearly claims the content of "information" and is "communicative content."

The second step is to ascertain whether the printed matter is functionally related to its substrate.   Thus the question here is whether "indicia"—a graphic indication that the computer bag complies with a scanning authority standard—is functionally related to the bag on which the indicia is printed.   The answer can only be "no."   The claimed indicia is a graphical notice to a person (such as a baggage screener) that the bag complies with a scanning authority standard.   The indicia is not *functionally related* to the claimed "case"; instead, it *provides notice of functionality* of the bag.   As such, this case is on all fours with the Federal Circuit's recent *CR Bard* case.   The claims asserted there required one or more markers "identifying" or "confirming" that an implanted access port is suitable for power injection.   *CR Bard*, 979 F.3d at 1382.   The Federal Circuit held that "the asserted claims contain printed matter that is not functionally related to the remaining elements of the claims."   *Id.* at 1381.   The court rejected the argument that "information conveyed by the markers provides new functionality to the port because it makes the port 'self-identifying.'"   *Id*. at 1382.   As the court explained, "[a] conclusion that mere identification of a device's own functionality is sufficient to constitute new functionality for purposes of the printed matter doctrine would eviscerate our established case law that 'simply adding new instructions to a known product' does not create a functional relationship."   *Id*. (citations omitted).   The court recognized that "the mere marking  of  products … with information concerning the product, does

---

[5]      Claims 23 and 38 use substantially similar language except the "indicia" must be "non-unique."

not create a functional relationship between the printed information and the substrate." *Id; see also AstraZeneca LP v. Apotex, Inc.*, 633 F.3d 1042, 1065 (Fed. Cir. 2010) (holding that FDA-required instructions did not create functional relationship to drug); *King Pharm., Inc. v. Eon Labs, Inc.*, 616 F.3d 1267, 1279 (Fed. Cir. 2010) (holding that step of informing about a property fell within the printed matter doctrine); *Ngai*, 367 F.3d at 1339 (no functional relationship between claimed instructions and a diagnostic kit, as the instructions "in no way depend[ed] on the kit, and the kit [did] not depend on the" instructions).

Accordingly, the printed matter doctrine applies, and this limitation carries no patentable weight. A ruling in this regard is appropriate at the claim construction stage. *See CR Bard*, 979 F.3d at 1377 n.1.

### 3.   **Targus' Reply Position**

Victorinox did not dispute Targus' construction, and dropped its own construction upon serving its answering brief, thus conceding Targus' construction should be adopted. *Compare* D.I. 68 at 5 *with* JBr. 41. The sole dispute is whether this term has patentable weight. JBr. 43-45. It does.

A limitation is not entitled to patentable weight if it covers "(a) printed matter that (b) is not functionally or structurally related to the physical substrate holding the printed matter." *In re Distefano*, 808 F.3d 845, 848 (Fed. Cir. 2015). Even if the indicia were printed matter, there is a functional relationship between the indicia and the bag. A security screener must decide on the fly whether to allow a bag through an x-ray machine without removing the computer based on the bag's observable structural features and the indicia. *See, e.g.*, '578 Patent, 15:41-51. The indicia thus improves the chances that the screener will approve allowing the computer to remain in the bag. Unlike the instructions and labels in the decisions Victorinox cites, JBr. 43-45, the indicia affects whether the bag's structural features perform their functions and thus has patentable weight.

Additionally, because this term is the only limitation in Claim 13 and makes up the bulk of Claims 23 and 38, Victorinox's printed matter argument effectively seeks summary judgment that these claims are invalid.  Summary judgment is improper because whether the indicia makes it more likely a bag will pass through security without removal of a laptop is a factual dispute for a jury to decide.  Fed. R. Civ. P. 56(a).  There is no basis to find here that no reasonable jury could conclude the indicia improves the bag's performance because Victorinox has presented no such evidence.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

### 4. <u>Victorinox's Sur-Reply Position</u>

Targus incorrectly argues that "the indicia affects whether the bag's structural features perform their functions and thus has patentable weight."  JBr. at 45.  The indicia does not participate in the bag's functionality, i.e., in its ability to isolate a computer so it can be scanned while in the case.  The indicia merely ***communicates*** to a person that the labeled case purportedly has certain functionality.  This is precisely what the printed matter doctrine precludes from having patentable weight.  *See CR Bard*, 979 F.3d at 1381 ("[P]rinted matter encompasses any information claimed for its communicative content.").

Targus also argues that a ruling that the "indicia" limitation has no patentable weight would effectively constitute summary judgment.  First, this is not true; the claims that have the "indicia" limitation (13, 23, 38) are dependent claims and have many additional incorporated limitations.  Second, even if it were the sole limitation, that would not be a basis to make this issue one of disputed fact.  *See Praxair*, 890 F.3d at 1033 ("The Board's printed matter analysis here only required analyzing and interpreting the meaning of the claim language.  That is claim construction, which is ultimately a legal inquiry.").

V.        **INDEFINITENESS**

Indefiniteness requires Victorinox to prove the '578 Patent claims, "read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus v. Biosig Instr.*, 572 U.S. 898, 901 (2014).   Victorinox must prove any supporting facts by clear and convincing evidence. *Biosig Instr. v. Nautilus*, 783 F.3d 1374, 1377 (Fed. Cir. 2015).   Because Victorinox bears the burden on indefiniteness, Targus' opening remarks are brief.

A.    **Term 1: "an object in the first [storage] [section/panel] is removed from interfering with a scanner" (Claims 1, 17, 21, 22, 28, 42, 50, 54, 57)**

| Targus' Proposed Construction of Term 1 | Victorinox's Proposed Construction of Term 1 |
|---|---|
| No construction necessary | Indefinite.<br><br>Alternatively: No construction necessary |

1.    **Targus' Opening Position**

This term is not indefinite because it describes a structural feature of the claimed case.

Claim 1, for example, states:

> wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, ***an object in the first storage section is removed from interfering with a scanner*** positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section.

'578 Patent, 20:51-57.  Because the two storage sections of the claimed bi-fold case do not overlap when the case is unfolded, objects placed in a first storage section or panel are not positioned above or below a computer in a second storage section or panel as shown, for example, in Figure 5B:



*Id.*, Fig. 5B (annotated); *see also id.*, 4:48-67.  The claimed structure thus removes objects in the

first storage section or panel from interfering with x-rays passing vertically through the second

storage section or panel.  This limitation reasonably informs skilled artisans of its scope, and

Victorinox cannot meet its burden to prove this term is indefinite.

### 2.   <u>Victorinox's Opening Position</u>

This limitation causes each claim in which it appears to be invalid as indefinite under §

112, ¶ 2, as being a hybrid claim prohibited by *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430

F.3d 1377, 1383–84 (Fed. Cir. 2005).

A single claim that "recites both a system and the method for using that system" is

indefinite under § 112, ¶ 2. *IPXL*, 430 F.3d at 1384.  "The *IPXL Holdings* rule exists because such

a claim makes it impossible for a person of ordinary skill in the art to tell if the system or apparatus

itself would infringe or if the system or apparatus would have to be used in a certain way to

infringe." *TQ Delta, LLC v. 2WIRE, Inc.*, C.A. No. 13-1835-RGA, 2017 WL 6435334, at *9 (D.

Del. Dec. 18, 2017).  "[T]wo types of system and apparatus claims are indefinite under *IPXL*

*Holdings*. First, system and apparatus claims are indefinite if they also 'claim activities performed

by the user.'" *Acceleration Bay LLC v. Activision Blizzard, Inc.*, C.A. Nos. 16–453– RGA, 16-

454-RGA, 16-455-RGA, 2017 WL 6508715, (D. Del. Dec. 20, 2017) (quoting *Mastermine Software, Inc. v. Microsoft Corp.*, 874 F.3d 1307, 1316 (Fed. Cir. 2017)). "Second, system and apparatus claims are indefinite if they use 'functional language' that is not 'specifically tied to structure,' but instead 'appear[s] in isolation.'" *Id.* (quoting *Mastermine*, 874 F.3d at 1316).

In *Courtesy Products, LLC. v. Hamilton Beach Brands, Inc.*, C.A. No. 13-2012-SLR, 2015 WL 7295436 (D. Del. Nov. 18, 2005), the Court determined that the limitation "the brew baskets being inserted into the location in the beverage brewing machine" was a method step rendering a system claim indefinite under *IPXL*. *Id.* at *5. This Court subsequently commented that "the language at issue [in *Courtesy Prods.*] suggested the need for user action." *Edgewell Pers. Care Brands, LLC v. Albaad Massuot Yitzhak, Ltd.*, C.A. No. 15-1188-RGA, 2017 WL 1900736, at *5 (D. Del. May 9, 2017); *see also Aventis Pharma S.A. v. Hospira, Inc.*, 743 F. Supp. 2d 305, 328–31 (D. Del. 2010), *aff'd*, 675 F.3d 1324 (Fed. Cir. 2012) (finding claims indefinite for combining composition and process limitations where the claims stated a stock solution "forms or is used to form" an injectable solution); *Bayer Pharma AG v. Watson Labs., Inc.*, C.A. No. 12-1726-LPS-CJB, 2014 WL 4954617, at *7 (D. Del. Sept. 30, 2014) ("[C]ourts engaging in this type of inquiry have tended to find a claim indefinite under the meaning of *IPXL* when the explicit language of a claim purportedly covering an apparatus was, on its face, directed to the actual use of such product.").

The claim language here similarly suggests—indeed, requires—user action, *i.e.,* use of the product. Claim 1 (an apparatus claim) recites:

> wherein ***in the unfolded configuration*** with the outer sides of both the first and second storage sections laid flat upon a same planar surface, ***an object in the first storage section is removed from interfering with a scanner***….

Claim 1 (emphasis added). This comprises the method step of ***removal of an object from interfering with a scanner***. The claim language makes clear that an ***action*** is required by

mandating that "**an object … is removed from interfering**." The fact that the action involves removal of "an object"—an unclaimed element presumably inserted and later removed by the user—further shows that user action is required. The specification confirms that this "removal" is accomplished by user action:

> The case 700 may allow **a user** to quickly move through a screening process, such as TSA security Screening. **A user may unfold the case** 700 (e.g., as shown in FIGS. 7C and 7D). **The unfolding may expose a computer (not shown) disposed within the case.**

'578 Patent, 7:37-41 (emphasis added).

In *LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1326-27 (2016), the Federal Circuit indicated that an apparatus claim requiring "removal" of something is a method limitation. In that case, the apparatus claim had a "non-removal limitation," which stated that an element was **not** removed from the claimed apparatus, and the court held that it was not an invalid hybrid claim. *Id*. at 1327. The court explained that "the non-removal limitation defines a property of the recited plasticizer in that the plasticizer is biocompatible and **does not need to be removed** from the internal matrix before transplantation in the context of apparatus claims 1–4, **so no later action by a user** of the tissue graft is necessary." *Id*. (emphasis added). The implication is that if a claim requires removal of something, it is a method step. Each claim of the '578 patent requires removal of an object (by someone) from interfering with a scanner, thus this method-of- use step results in invalidity of each claim.

Importantly, the claim language requires more than the "capability" of removal of an object from interfering with a scanner. The claims require that "an object … **is removed** from interfering with a scanner." Claim 1 (emphasis added). The limitation requires **action**, and thus is a method-of-use claim limitation. The removal limitation is not written in functional format, wherein a property of the apparatus is described with respect to its function. Elsewhere in the claims, the

applicants claimed structural configuration by reference to functional aspects of the apparatus. For example, claim 21 requires:

> wherein the first pouch opening is disposed on the first storage panel and the second pouch opening is disposed on the second storage panel *such that when the case is in the unfolded configuration* with the outer sides of both the first and second storage panels laid flat upon the same planar surface, *the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface*.

Claim 21 (emphasis added). Similarly, the claims require "a hinge *configured to enable* a scanning device to scan through the hinge." Claim 21 (emphasis added). This shows that the applicants knew how to use functional language to properly claim a structure. *See Meetrix IP, LLC v. CitrixSys., Inc.*, 2017 WL 5986191, at *9 (W.D. Tex. Dec. 1, 2017) (relying on "[c]omparison with other claims" to show that disputed claim limitation was "directed to user action" and rendered claim indefinite under Section 112, explaining that other claims "contain[ ] functional language indicating system capability, but such language is conspicuously absent from" the disputed limitation); *Lecat's Ventriloscope v. MT Tool & Mfg.*, 351 F. Supp. 3d 1100, 1123 (N.D. Ill. 2018) (holding claim invalid under IPXL and finding it "[t]elling[]" that the claim "does recite a capability limitation elsewhere").

In sum, it is unclear what would constitute infringement of the claims. As this Court has explained, the claim language must make clear "whether infringement [is] triggered by the creation of an infringing 'device' itself or by some infringing use of that 'device.'" *TQ Delta*, 2017 WL 6435334, at *11. Here, the "object in the first section is removed from interfering with a scanner" limitation is directed to *using* the *device* (the claimed bi-fold case).

Moreover, the at-issue language appears in the claims in *isolation*. Here, the limitation at issue appears in the final (or in some claims, the penultimate) limitation clause that does not specify a structural limitation, but instead is a stand-alone (isolated) limitation that describes the

operation of the apparatus as a whole, as opposed to the functionality of a component of the device. The limitation explains ***the use of the device as a whole*** to effect removal of an object from interfering with a scanner.  This is an isolated limitation.  *See Power Integrations, Inc. v.  ON Semiconductor Corp.*, 2018 WL 5603631, at *18 (N.D. Cal. Oct. 26, 2018) (claim invalid under *IPXL* where "the claim recites a function performed by the apparatus itself—a method element among apparatus elements").  Other aspects of the at-issue claim language also show  that the limitation exists in isolation from the rest of the claim: the language pertains to "an object," which is neither a claimed element nor mentioned anywhere else in the claim; the language requires that the object be removed from interfering with a "scanner" (another unclaimed element) so that a computer (yet another unclaimed element) can be subject to "uninhibited scanning."

Accordingly, the claims of the '578 Patent are invalid as indefinite under *IPXL.*[6]

### 3.    <u>Targus' Reply Position</u>

The limitation including this term simply states that when the case is unfolded, any objects in the first storage section do not overlap a computer in the second storage section, and therefore the case is capable of allowing uninhibited scanning of the computer.  *See, e.g.*, '578 Patent, 20:51-57.  Victorinox improperly ignores this context, *Phillips*, 415 F.3d at 1314, and asserts assorted arguments why this term is an improper method step under *IPXL Holdings v. Amazon.com*, 430 F.3d 1377, 1383-84 (Fed. Cir. 2005).  JBr. 48-52.  But "*IPXL* is a narrow rule"

---

[6]    Independent claims 1, 17, 21, 22, 50, 54, and 57 are apparatus claims.  Claims 28 and 42 are method-of-manufacturing claims, and have the same "an object … is removed from interfering" limitation as the apparatus claims.  The method-of-manufacturing claims are likewise invalid as indefinite under *IPXL* because, like the apparatus claims, they have limitations indicative of two statutory classes of patent claims: manufacture and process (method).  *See* 35 U.S.C. § 101 (specifying the four statutory classes as "process, machine, manufacture, or composition of matter").

and does not apply here.  *See Edgewell Pers. Care Brands v. Albaad Massout Yitzhak*, No. 15-1188-RGA, 2017 WL 1900736, at *5 (D. Del. May 9, 2017).

First, Victorinox cites four district court opinions, JBr. 49, none of which support its position.  *Courtesy Products v. Hamilton Beach* held a claim was unclear whether "the brew baskets being inserted into the location" referred to "having brew baskets inserted" or the act of "insert[ing] a brew basket."  2015 WL 7295436, at *5.  *Aventis Pharma v. Hospira* held "forms or is used to form" referred to the act of a user forming a solution and therefore it was unclear when infringement occurred.  743 F. Supp. 2d. at 329-30.  There is no such ambiguity here:  "removed" cannot refer to user action because, when the bag is in the unfolded state, an object is removed from interfering with the scanner and there is nothing for a user to do.  The remaining two cases found that the challenged claims did not include method steps and actually undermine Victorinox's argument.  *See Edgewell*, 2017 WL 1900736, at *4-6 (distinguishing *Courtesy Products*); *Bayer Pharma AG v. Watson Labs., Inc.*, No. 12-1726-LPS-CJB, 2014 WL 4954617, at *12 (D. Del. Sept. 30, 2014).

Second, Victorinox argues that the phrase "an object … is removed from interfering" necessarily requires action by a user.  JBr. 50.  This ignores the rest of the limitation, which states: "wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, ***an object in the first storage section is removed from interfering with a scanner*** positioned above and below the second storage section."  '578 Patent, 20:51-55.  "An object … is removed from interfering" describes the position of objects in an unfolded case, not any action a user must take to practice the claim.  Victorinox asserts that the specification includes a description of a user unfolding a case, but that's like saying a patent claim for a cup is a method claim if the specification describes someone using it to drink.  JBr. 50.

Third, Victorinox argues *LifeNet Health v. LifeCell Corp.*, 837 F.3d 1316, 1326-27 (Fed. Cir. 2016), stands for the proposition that "an apparatus claim requiring 'removal' of something is a method limitation."  JBr. 50.  It does not.  The portions of *Lifenet* Victorinox quotes instead relate to whether or not a claim required divided infringement.  *See* 837 F.3d at 1325-27.

Fourth, Victorinox provides examples of other terms it contends properly claim structures and argues by comparison that this term does not.  JBr. 51.  Victorinox concedes the following term properly claims a structure rather than a method: "such that when the case is in the unfolded configuration … the first and second pouch openings are both oriented in a direction parallel to the planar surface."  *Id.* (quoting Claim 21) (coloring by Targus).  But if that term properly claims a structure, then so does the disputed term: "wherein in the unfolded configuration … *an object in the first [storage] [section/panel] is removed from interfering with a scanner*."  *E.g.*, '578 Patent, 20:51-54 (coloring by Targus with disputed term in bold italics).

Fifth, Victorinox argues the term is indefinite because it is functional language that is not specifically tied to a structure and appears in isolation.  JBr. 51-52.  This contradicts its earlier statement that the term "is not written in functional format."  JBr. 50.  It is also wrong: as discussed above the disputed term describes a feature of the unfolded configuration and is thus tied to that structure.

Sixth, Victorinox argues in a footnote that if the Court concludes the disputed term is a method claim, it should extend *IPXL* to invalidate method Claims 28 and 42.  JBr. 52 n.6.  This does not follow from *IPXL*'s reasoning, which relied on the assumption a person of ordinary skill would not know what infringed a hybrid apparatus-method claim.  *IPXL*, 430 F.3d at 1384.  Victorinox cites no case holding a method-method claim invalid for indefiniteness.

Because Victorinox has not established that the disputed term is actually a method step, much less that a person of ordinary skill would have any difficulty understanding what is meant, Victorinox fails to carry its burden on indefiniteness.

### 4.      Victorinox's Sur-Reply Position

The claims are written such that there can be no infringement if: (a) the user maintains the case in its "folded configuration"; (b) the user does not put an "object" in the first storage section capable of interfering with a scanner; or (c) even if an object is present, it is not placed in a location so that it interferes with the scanning of the laptop in the folded configuration but not in the unfolded configuration. The ***user's action*** determines whether each of these requirements are met. Infringement cannot be determined by examining the as-sold case, but instead it can only be determined by examining ***how the user uses the case***. Thus, the "removed from interfering" limitation a method limitation.

Targus's attempt to recast the claim language as functional language fails. Targus argues that "this term simply states that [i] ***when the case is unfolded***, [iii] ***any objects*** in the first storage section do not overlap a computer in the second storage section, and therefore the case is [iii] ***capable of allowing*** uninhibited scanning of the computer." JBr. at 52. This misrepresents the claim language in at least three regards. The actual claim language [i] ***requires unfolding***, [ii] ***requires an object*** in the second storage section, and [iii] ***requires removal*** of that object from interfering with a scanner (i.e., the object must have interfered in the closed position, and been "removed from interfering" when the bag is opened by the user). These are method steps, not merely functional descriptors. Thus, under *IPXL*, the claims are indefinite as "hybrid" claims.

Targus's other arguments similarly fail. First, Targus points to the separate claim limitation regarding orientation of a feature of the bag. JBr. at 54. Unlike the "removed from interfering" limitation, the ***orientation*** limitation is functionally (or descriptively) claimed; it does

55

not require the three-pronged method assessment described above.  Second, Targus criticizes Victorinox for looking to the specification for guidance on whether user action is required; yet, this Court has done just that.  *See Intermec Techs. Corp. v. Palm Inc.,* 738 F. Supp. 2d 522, 550 (D. Del. 2010) ("the specification teaches that operator intervention is an alternative means").  Third, Targus fails to distinguish *LifeNet Health*—the Federal Circuit was indeed conducting an *IPXL* invalidity analysis. 837 F.3d at 1326-27 (Opinion Section C, indicating that "removal" is a method limitation).  Fourth, Victorinox never concedes that the claim language is functional because it is not.  It is method-of-use language and appears in isolation.  Finally, Targus tries to salvage its patent by referring to claims 28 and 42 as "method-method" claims, but the proper name would be "method-of-manufacture / method-of-use" claims, which is hybrid and thus indefinite.  *Cf. TQ Delta*, 2017 WL 6435334, at *9 ("such a claim makes it impossible for a person of ordinary skill in the art to tell" when infringement occurs).

### B.      Term 2: "in communication with" (Claim 57)

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary<br><br>or<br><br>"providing passage to" | Indefinite. |

### 1.      Targus' Opening Position

"In communication with" indicates which opening provides access to which pouch and is not indefinite.  Claim 57 recites "a first pouch opening … in communication with the first pouch" to indicate the structure named "a first pouch opening" opens to the first pouch, *id.*, 28:66-67, and "a second pouch opening … in communication with the second pouch" to indicate the structure named "a second pouch opening" opens to the second pouch, *id.*, 29:12-14.  This limitation

reasonably informs skilled artisans of its scope, and Victorinox cannot meet its burden to prove this term is indefinite.

If the Court believes a construction would assist the jury, the Court should adopt "providing passage to" because that phrase is consistent with how Claim 57 uses this term and with its plain meaning.  *See* Webster's Unabridged, 414 (communication: "5. passage, or an opportunity or means of passage, between places").

### 2.     **Victorinox's Opening Position**

A POSITA would not understand the claim term "in communication with" with reasonable certainty because the intrinsic evidence does not make the term's meaning clear.

Claim 57 recites "a first pouch opening … in communication with the first pouch" and "a second pouch opening … in communication with the second pouch." It is not clear from this language what type of "communication" is contemplated between the pouch openings and the pouches. The only reference to "communication" in the specification is that "[i]n embodiments including a transmitter or other communication means, the communication means may indicate which portions of the case **100**-**1300** are scannable and which are not."  '578 Patent, 19:50-53.  A POSITA would not know with reasonable certainty whether the pouch openings communicate with the pouches using this communication means, or some other type of communication.

### 3.     **Targus' Reply Position**

No one actually thinks the specification's "communication means," *i.e.*, a transmitter indicating "which portions of the case 100-1300 are scannable and which are not," '578 Patent, 19:50-53, has anything to do with pouches or pouch openings, JBr. 57.  Victorinox has not met its burden to prove this claim is invalid for indefiniteness.

### 4.      Victorinox's Sur-Reply Position

Targus asserts that "communication means" has nothing to do with pouches or pouch

openings, but fails to point to anything in the specification describing "in communication with."

## C.      Term 8: "foldably [attaching/joining]" (Claims 28, 42)

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary. | Indefinite. |

### 1.      Targus' Opening Position

These terms simply mean the hinge connecting the two storage sections is foldable.  Claim

28, for example, states:

> ***foldably joining*** the first storage section to the second storage section at the first
> and second proximal ends to form a hinge …

'578 Patent, 24:50-52 (Claim 28); *id.*, 26:18-20 (Claim 42).  The specification uses the same

language to describe a foldable hinge.  *Id.*, 9:16-19; *see also id.*, 11:25-28, 13:10-12.  Thus

"foldably joined" and "foldably attached" in Claims 28 and 42 refer to a quality of the hinge—that

it is foldable.  This limitation reasonably informs skilled artisans of its scope, and Victorinox

cannot meet its burden to prove this term is indefinite.

### 2.      Victorinox's Opening Position

The claim terms "foldably joining" and "foldably attaching" fail to inform, with reasonable

certainty, a POSITA about the scope of the invention because the adverb "foldably" cannot modify

the actions "joining" and "attaching."

Targus asserts a meaning of "foldably" that changes it to "foldable" (an adjective) and

modifies "hinge" (a noun) instead of "joining" and "attaching."  *See* JBr. at 58.  But this

explanation does not inform a POSITA how to complete the method step of "foldably joining" or

"foldably attaching" the two storage sections—its suggests a result (that the hinge be foldable), but not how to accomplish the actions "foldably."

### 3.   Targus' Reply Position

Victorinox argues "foldably [attaching/joining]" would confuse a person of ordinary skill because "the adverb 'foldably' cannot modify the actions 'joining' and 'attaching.'"  JBr. 58. However, the very purpose of an adverb is to modify a verb, including verbs like "attaching" and "joining."

Victorinox also argues a person of ordinary skill would not know how to construct a foldable hinge.  *Id.*  Victorinox ignores the specification's teaching that storage sections "may be foldably connected using foldable material, a hinge, straps, or the like."  '578 Patent, 5:40-42. Victorinox also proffers no evidence a person of ordinary skill would be ignorant of attaching two halves of a bag with a fabric hinge.  Victorinox has not met its burden to prove these claims are invalid for indefiniteness.

### 4.   Victorinox's Sur-Reply Position

Targus ignores the claim language and argues as if the claims recite a "foldable hinge," rather than the claimed method step.  The issue is not whether a POSITA would "know how to construct a foldable hinge," but that a POSITA would not know whether he or she is performing the claimed step of "foldably joining" (claim 28) or "foldably attaching" (claim 42).  Targus's position attempts to rewrite the claims as (e.g., claim 28):

> ~~foldably~~ joining the first storage section to the second storage section at the first and second proximal ends to form a <u>foldable</u> hinge

Such rewriting would be impermissible.  *See Chef Am., Inc. v. Lamb-Weston, Inc.*, 358 F.3d 1371, 1374 (Fed. Cir. 2004) (holding that "courts may not redraft claims, whether to make them operable or to sustain their validity").

59

### D. Term 11: "[pouch] opening[s] [is/are]…oriented in a direction substantially parallel to the planar surface" (Claims 21, 22, 28, 51, 55, 57)

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary | Indefinite |

#### 1. Targus' Opening Position

This term describes the orientations of the pouch openings when the bag is unfolded.  For example, the first pouch opening and second pouch opening (not shown) of the embodiment depicted in Figures 10A and 10D face perpendicular to a planar surface when the case is folded but substantially parallel to the planar surface when the case is unfolded:



'578 Patent, Figs. 10A, 10D (annotated).  This limitation reasonably informs skilled artisans of its scope, and Victorinox cannot meet its burden to prove this term is indefinite.

#### 2. Victorinox's Opening Position

This claim limitation is indefinite because there is no common understanding or evidence of the direction in which a pouch opening is oriented.

An "opening" does not have an inherent direction in which it is oriented.  Take as examples Figures 10B and 13B (annotated below).  A POSITA would not know whether the pouch openings are oriented in the direction of the red arrow, the purple arrow, or some other direction (e.g., the arrow in Fig. 10B, shown in yellow).

60



'578 Patent, Figs. 10B, 13B (annotated).

In addition, the intrinsic evidence does not teach what direction a pouch opening is oriented. This problem is exacerbated by the scant disclosure of a "pouch opening" in the specification. Targus's argument in its opening brief highlights this in attempting to demonstrate the direction of an ***undisclosed*** opening. *See* JBr. at 60 ("For example, the first pouch opening and second pouch opening (***not shown***) of the embodiment depicted in Figures 10A and 10D face perpendicular to a planar surface when the case is folded but substantially parallel to the planar surface when the case is unfolded[.]" (emphasis added). The '578 Patent description does not use the term "pouch opening," and "opening" only appears as indicating the action of opening the case. '578 Patent, 4:15, 13:35, 14:30-31, 16:1. Indeed, Figure 10B contradicts Targus's argument; the Figure's arrow (see above in yellow) is part of the specification and appears to indicate a direction of the opening ***opposite*** to what Targus argues.

### 3.   Targus' Reply Position

Victorinox argues "there is no common understanding … of the direction in which a pouch opening is oriented." JBr. 60. Victorinox proffers no evidence to support its position and therefore fails to carry its burden to show invalidity.

Victorinox next argues there is no "evidence of the direction in which a pouch opening is oriented." *Id.* This ignores the claim language. Claim 21, for example, describes a "second distal

end including a sidewall with a second pouch opening disposed substantially in the center of the

sidewall." 22:56-58. It continues:

> wherein the first pouch opening is disposed on the first storage panel and the second
> pouch opening is disposed on the second storage panel such that when the case is
> in the unfolded configuration with the outer sides of both the first and second
> storage panels laid flat upon the same planar surface, the first and second pouch
> openings are both oriented in a direction substantially parallel to the planar surface.

'578 Patent, 23:18-25. Since the second pouch opening must be on the distal end of the second

storage section, and since the second pouch opening must be oriented substantially parallel to the

planar surface when the bag is unfolded, a person of ordinary skill would understand a pouch

opening to be oriented as labelled in the third image below:



62



Ex. 12 (Inf. Cont.), Ex. A at 16-17.

Victorinox's diagrams are unhelpful.  JBr. 61.  Figure 13B is irrelevant because it depicts a tray rather than a pouch.  *See* Section IV.B.  As for Figure 10B, nowhere does the '578 Patent state that the arrow Victorinox colored yellow indicates the direction of a pouch opening. Victorinox fails to establish these claims are invalid.

### 4.    <u>Victorinox's Sur-Reply Position</u>

Targus's entire argument presumes that the orientation of a pouch opening is a direction pointing out of the pouch through the opening.  Yet, Targus's presumed direction is no more plausible than the direction parallel to the plane of the pouch's opening.  Indeed, as Victorinox illustrated with arrows on Figure 10B above, a pouch opening could be "oriented" in many directions.  Thus, the intrinsic evidence fails to inform a POSITA with reasonable certainty as to its orientation.

### E.    **Term 12: "uninhibited scanning" (Claims 1, 17, 21, 22, 28, 42, 50, 54, 57)**

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary<br><br>or<br><br>"scanning without interference" | Indefinite. |

### 1.   Targus' Opening Position

"Uninhibited scanning" as used in the claims explains that objects cannot interfere with the scanner above or below the computer section during scanning.  Claim 1, for example, states:

> wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable ***uninhibited scanning*** of a computer in the second pouch of the second storage section.

'578 Patent, 20:51-57.  Claim 1 describes enabling "uninhibited scanning" when the bag is in the unfolded configuration.  There is no interference because, in the unfolded configuration, objects in the first storage section are not above or below the computer.  Figure 5B depicts an unfolded, bi-fold case with this "uninhibited scanning" feature.



*Id.*, Fig. 5B (annotated); *see also id.*, 4:48-67.  This limitation reasonably informs skilled artisans of its scope, and Victorinox cannot meet its burden to prove this term is indefinite.

If the Court believes a construction would be helpful to the jury, the Court should adopt "scanning without interference" because that is what "uninhibited scanning" means here.

2.      **Victorinox's Opening Position**

The phrase "uninhibited scanning" is indefinite because a POSITA would not know what inhibits scanning in an impermissible manner and what does not.

The independent claims recite that "***an object*** in the first storage section ***is removed*** from interfering with a scanner … ***to enable uninhibited scanning*** of a computer in the second pouch of the second storage section."  Claims 1, 17, 28, 42, 50, 54 (emphasis added).  Targus argues this means "[t]here is no interference because, in the folded configuration, objects in the first storage section are not above or below the computer."  JBr. at 64.  However, the claims only state that "***an*** object in the first storage section is removed from interfering."  The claims do not say that ***all*** objects are removed from interfering.  A POSITA would not know with reasonable certainty whether removing "an object" enables "uninhibited scanning" if there are ***other*** objects in the first storage section that are not removed from interfering.  According to Targus's alternative construction of "scanning without interference," it would not because the other objects interfere and thus inhibit scanning.  But the claim language suggests that removing "an object" results in (enables) "uninhibited scanning."  This impermissible uncertainty is not resolved by the intrinsic or extrinsic evidence.

As noted above, the claim language implies a cause and effect relationship between the removal of "an object" from interfering and enabling "uninhibited scanning."  If not, requiring that all objects in the first storage section be removed from interference would conflict with the limitation that only "an object … is removed from interfering" and render it meaningless.  "A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so."  *Merck & Co., Inc. v. Teva Pharm. USA, Inc.*, 395 F.3d 1364, 1372 (Fed. Cir. 2005) (citation omitted).  Thus, a POSITA could conclude that the effect of removing "an object in the first storage section" from interfering is "to enable uninhibited scanning."

65

It also would not be unreasonable for a POSITA to conclude that *all* objects in the first storage section must be removed in order to enable "uninhibited scanning." Although this conflicts with the claim language, it finds support in the specification. The specification states that "a computer (not shown) may be screened by quickly *removing* the computer from proximity to *objects* in a storage section." '578 Patent, 4:66-67 (emphasis added). So alternatively, a POSITA could conclude that *all* objects in the first storage section must be removed in order to "enable uninhibited scanning." Thus the claim language and specification lead to alternate, conflicting constructions, and the claim fails to inform with reasonable certainty those skilled in the art about the scope of the invention.

Finally, there is no established meaning of "uninhibited scanning." The dictionary definition of "uninhibited" includes (1) "free from inhibition (*uninhibited exuberance*)" and (2) "boisterously informal (*a festive uninhibited party*)." Ex. 10 (Merriam-Webster.com Dictionary) at 7. Neither meaning sheds light on what type of "scanning" is "uninhibited" as used in the claim.

### 3.   Targus' Reply Position

Victorinox argues this term is indefinite because a person of ordinary skill "would not know with reasonable certainty whether removing 'an object' enables 'uninhibited scanning' if there are *other* objects in the first storage section that are not removed from interfering." JBr. 65 (emphasis original). This is a red herring. The claims state "uninhibited scanning" occurs in the "unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface." '578 Patent, 20:51-53. In that configuration, every object in the first storage section (red) is necessarily "removed from interfering with a scanner positioned above and below the second storage section" (white) because the two storage sections do not overlap. *Id.*, 20:54-55.



*Id.*, Figs 10C, 10D (annotated).  A person of ordinary skill would have no difficulty understanding

what "uninhibited scanning" means.

Victorinox weakly argues indefiniteness because the claims refer to a singular object but a

person of ordinary skill would conclude that "all objects" must be removed to enable uninhibited

scanning.  JBr. 66.  But the claims do not require that an object be placed in the first storage section

and then removed; the claims require a case having an unfolded configuration such that if there is

an object in the first storage section, the object does not interfere with a scanner when the case is

unfolded.  *See* Section IV.A.  Even accepting Victorinox's argument at face value, however, there

is no inconsistency between "an object" and "all objects" because "[a]s a general rule, the words

'a' or 'an' in a patent claim carry the meaning of 'one or more.'"  *01 Communique Lab., Inc. v.*

*LogMeIn, Inc.*, 687 F.3d 1292, 1297 (Fed. Cir. 2012).

Finally, Victorinox argues that "there is no established meaning of 'uninhibited scanning.'"

JBr. 66.  The claim context provides a meaning.  Claim 1, for example, recites "in the unfolded

configuration … an object in the first storage section is removed from interfering with a scanner

positioned above and below the second storage section to enable uninhibited scanning of a

computer."  '578 Patent, 20:51-56.  Victorinox offers no evidence that a skilled artisan could not

understand the scope of uninhibited scanning in this context.  Indeed, Victorinox itself had no

difficulty understanding similar scanning language in Disputed Term 2.  *See* JBr. 29.  Victorinox has not met its burden to prove indefiniteness.

### 4.   Victorinox's Sur-Reply Position

Targus's argument is based on an incorrect premise: that "the claims do not require that an object be placed in the first storage section ***and then removed***," but instead the claims merely require "that ***if there*** is an object in the first storage section, the object does not interfere with a scanner when the case is unfolded."  This contradicts the claim language, which ***requires*** both an object and its removal.  *See* Indefiniteness Term 1, *supra*.

Targus further argues that "uninhibited scanning" "occurs in the 'unfolded configuration'" because "every object in the first storage section (red) is necessarily 'removed from interfering with a scanner positioned above and below the storage section' (white)," and shows annotated Figures 10C and 10D.  JBr. at 66-67.  But the very next figure, 10E, shows possible interference from a "foldable container **1030**" with "personal items **1040**" (purple).



Fig. 10E

'578 Patent, Fig. 10E; *see also id.*, 10:43-53.  Because an object in the "foldable container **1030**" (purple) may not be "removed from interfering with a scanner positioned above and below the storage section" (white), it is unclear what "uninhibited scanning" means.

### F.   Terms 3, 4, 5, 6, 7, 9, and 10: Dispute Over Indefiniteness Due To Alleged Lack Of Antecedent Basis

#### 1.   Targus' Position

Victorinox argues this next group of terms is indefinite "due to lack of antecedent basis." Antecedent basis may be express or "present by implication."  *Energizer Holdings v. Int'l Trade Comm'n*, 435 F.3d 1366, 1371 (Fed. Cir. 2006).  Even if a term lacks antecedent basis, the claim is not necessarily indefinite.  *Id.* at 1370-71.  Victorinox must still prove by clear and convincing evidence that the claim, "read in light of the specification delineating the patent, and the prosecution history, fail[s] to inform, with reasonable certainty, those skilled in the art about the scope of the invention."  *Nautilus*, 572 U.S. at 901.

#### 2.   Victorinox's Position

"The lack of antecedent basis signals a potential indefiniteness problem but does not end the inquiry."  *Bushnell Hawthorne, LLC v. Cisco Sys., Inc.*, 813 F. App'x 522, 526 (Fed. Cir. 2020) (nonprecedential) (citing *Energizer Holdings, Inc. v. Int'l Trade Comm'n*, 435 F.3d 1366, 1370 (Fed. Cir. 2006)).  Where a claim lacks antecedent basis, whether the term "nonetheless has a reasonably ascertainable meaning must be decided in context."  *Energizer Holdings*, 435 F.3d  at 1370.  If a defendant meets its burden of showing that the term is not subject to a reasonably certain construction, the term is indefinite.  *RetailMeNot, Inc. v. Honey Sci. Corp.*, C.A. No. 18- 937-CFC-MPT, 2019 WL 6337719, at *23 (D. Del. Nov. 27, 2019).

#### 3.   Term 3: "the inner side of the second pouch" (Claims 4, 5, 6, 32)

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary<br><br>*See* constructions of "pouch" (Disputed Term 7) and "inner side of the [first/second] section" (Indefiniteness Term 5). | Indefinite (due to lack of antecedent basis). |

### a)   **Targus' Opening Position**

This term is not indefinite because the claims, specification, and prosecution history reasonably inform skilled artisans of its scope.  "[I]nner side of the second pouch" means the side of the second pouch that is on the interior, rather than the exterior of the bag.  The specification provides examples of this structure and describes it as a "cover":

> As shown in FIGS. 11C and 11D, in some embodiments, the cover 1109 may be substantially transparent to allow the computer 1106 to be visually inspected and/or screened …. In other embodiments, the cover 1109 may be comprised of a material in a mesh configuration.

'578 Patent, 12:1-8.  This description of a cover tracks the language of Claims 4-6 and 32, which require the inner side of the second pouch to be configured for visual inspection of the computer, transparent, and/or made of mesh.  *See id.*, 20:63-21:6 (Claims 4, 5, and 6), 25:24-26 (Claim 32). Indeed, Targus changed terminology from "cover" to "inner side of second pouch" during prosecution.  *See* '578 File History, TCP0028428-29.  Figure 11C (annotated) depicts the transparent cover 1109 forming the inner side of a pouch containing a computer:



The cover is the inner side of the second pouch, specifically, because the second pouch is the pouch "configured to receive a computer."  *Id.*, 20:29-30 (Claim 1).  Victorinox cannot meet its burden to prove this term is indefinite.

### b)    Victorinox's Opening Position

Claims 1 and 28 introduce a "second pouch" and do not recite any "side" of the "second pouch."  A POSITA would not know with reasonable certainty which unstated "side" of the "second pouch" is "**the** inner side."

Targus's argument that the "cover" is the "inner side of the section pouch," (JBr. at 70), highlights the lack of antecedent basis because the "cover" is actually **an** inner side of the second **storage section** (rather than **the** inner side of the second **pouch**).  The specification states that "[t]he second storage section **1108** may comprise an outer side and an inner side **1109**" and that "[t]he inner side **1109** of the second storage section **1108** may comprise a cover …." '578 Patent, 11:48-49, 11:54-55.  The prosecution history cited by Targus affirms this.  In the same amendment in which "cover" was deleted, a limitation stating "wherein the second inner side **of the second storage section** comprises a cover" was also deleted.  Ex. 2 at TCP0028428  (emphasis added).  After removing "cover," Targus may not ask the Court to "re-introduce what the applicant affirmatively removed during prosecution."   *RetailMeNot*, 2019 WL 6337719, at *23 n.144 (claim lacking antecedent basis held indefinite).

In fact, the '578 Patent's specification lacks any recitation of an "inner side" of the second pouch.  *See generally* '578 Patent.  Where a claim term lacks antecedent basis and there  is no other phrase that the term could be referring to, it is indefinite.  *Truinject Corp. v. Galderma, S.A.*, C.A. No. 19-592-LPS-JLH, 2020 WL 3287047, at *9 (D. Del. June 18, 2020), *R&R adopted*, 2020 WL 6817088 (D. Del. Nov. 20, 2020).  This is especially true when a pouch could have many sides, and a POSITA has no guidance on which is "the inner side."

### c)    Targus' Reply Position

As discussed in Targus' Opening Position, the '578 Patent reasonably informs persons of ordinary skill of the term's scope, including by providing examples of the inner side of the second

71

pouch and describing it as a "cover."  JBr. 70.  Moreover, the phrase "inner side" has an ordinary meaning that a skilled artisan would readily understand as Targus explained with respect to "first inner side."  JBr. 36.

Victorinox argues the cover cannot be an example of the inner side of the second pouch because it is actually the inner side of the second storage section.  JBr. 71.  There is no reason why the cover cannot be both.  In fact, that is to be expected in embodiments where the second pouch and the second storage section are coextensive.

Victorinox also argues Targus deleted "cover" from Claim 1 during prosecution and thus "may not ask the Court to 're-introduce what the applicant affirmatively removed during prosecution.'"  JBr. 71.  First, there can be no prosecution disclaimer because Targus did not remove "cover" to overcome prior art.  *Computer Docking Station v. Dell, Inc.*, 519 F.3d 1366, 1375 (Fed. Cir. 2008).  Second, regardless of whether Targus removed "cover" from Claim 1, it ***replaced*** "cover" with the inner side of the second storage section in other claims.  *See* '578 File History, TCP0028428-29.  A person of ordinary skill would correctly understand that references to "cover" in the specification provide examples of the inner side of the second pouch.  Victorinox has not met its burden to prove indefiniteness.

### d)      Victorinox's Sur-Reply Position

Targus's attempt to save its "cover" argument fails.  First, it leaves unstated whether the "cover"—an inner side of the second storage section—is the same as or different than the "second inner side" of the second storage section.  Second, the "cover" as disclosed in the specification has two sides.  The "inner" side could be inner with respect to the pouch, or the computer case.

### 4. Term 4: "the inner side of the first storage section" (Claims 12, 21, 28, 57)

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary<br><br>or<br><br>"interior surface of the first storage section" | Indefinite (due to lack of antecedent basis). |

#### a)   Targus' Opening Position

Victorinox's argument fails because there is antecedent basis for "the first storage section."

Claim 12. Claim 12 draws antecedent basis from its independent claim (Claim 1), which refers to "a first storage section comprising … a first inner side."  '578 Patent, 20:7-8.

Claim 21.  This term does not appear in Claim 21.  Instead, Claim 21 refers to "the inner side of the first storage panel."  *Id.*, 23:2.  The claim provides antecedent basis for this limitation directly after the Claim 21 preamble: "a first storage panel comprising a first inner side…"  *Id.*, 22:42.

Claims 28.  This claim provides antecedent basis directly after the preamble: "a first storage section including a first inner side…."  *Id.*, 24:26.

Claim 57.  This claim provides antecedent basis directly after the preamble: "a first storage section comprising, a first inner side…."  *Id.*, 28:60-61.

#### b)   Victorinox's Opening Position

The claim term "the inner side of the first storage section" lacks antecedent basis because only "a ***first*** inner side" is introduced, making the term "inner side" (without "first") ambiguous.  A POSITA could not know with reasonable certainty whether "the inner side of the first storage section" is "the first inner side" or a different "inner side" of the first second storage section.

**c)**     **Targus' Reply Position**

Victorinox argues the "first inner side" of the first storage section might not be the same structure as "the inner side of the first storage section." JBr. 73.  There is no mystery here because they are the same:  Claim 1 names only one inner side of the first storage section, and Claim 12 refers to the inner side of the first storage section introduced in Claim 1.  '578 Patent, 20:7-21, 21:25-29.

**d)**     **Victorinox's Sur-Reply Position**

Targus argues that "a *first* inner side" is necessarily the same as "the inner side of the first storage section" because it is the only one introduced.  However, Targus does not deny that there are other (unintroduced) inner sides.  A POSITA would not know with  reasonable certainty that it is not one of these other inner sides.

**5.**     **Term 5: "the inner side of the [first/second] section" (Claim 22)**

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary<br><br>or<br><br>"[first/second] interior surface" | Indefinite (due to lack of antecedent basis). |

**a)**     **Targus' Opening Position**

Victorinox's argument fails because Claim 22 recites "a first section comprising a first inner side" and "a second section comprising a second inner side."  *Id.*, 23:27, 23:35.  These limitations provide antecedent basis for "the inner side" limitations.  If the Court believes a construction would be helpful, the Court should adopt "[first/second] interior surface" for the same reasons stated in Section IV.F.

### b)   Victorinox's Opening Position

Like Term 4 above, "the inner side of the [first/second] section," is indefinite because only "a *first* inner side" and "a *second* inner side" are introduced, and a POSITA would not know with reasonable certainty what side "the inner side" is.

### c)   Targus' Reply Position

Victorinox argues "a first section comprising a first inner side" and "a second section comprising a second inner side" might not be the same structures as "the inner side of the first section" and "the inner side of the second section."  JBr. 75.  Again, the claim only names one inner side for each section and then refers back to "the inner side" of each section.  '578 Patent, 23:27, 23:35, 23:58-60.  They are the same.

### d)   Victorinox's Sur-Reply Position

For the same reason as Indefiniteness Term 4, a POSITA would not know which inner side is referenced.

### 6.   Term 6: "the folded configuration" (Claims 1, 2, 17, 21, 28, 29, 42, 46, 48, 49, 50, 54, 57)

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary | Indefinite (due to lack of antecedent basis). |

### a)   Targus' Opening Position

There is antecedent basis for this limitation.  The independent claims recite "[a] bi-fold case," '578 Patent, 20:5 (Claim 1), 27:1 (Claim 50), 27:63 (Claim 54), and "[a] bi-fold computer case," *id.* at 21:39 (Claim 17), 22:38 (Claim 21), 24:24 (Claim 28), 25:59 (Claim 42), 28:56 (Claim 57).  "A bi-fold case" and "a bi-fold computer case" provide antecedent basis for "the folded configuration" because a case that folds necessarily has a folded and an unfolded configuration.  *See Energizer*, 435 F.3d at 1371 ("an antecedent basis can be present by implication").

Even if this term lacked antecedent basis, Victorinox could not establish it is indefinite because a person of ordinary skill would have no difficulty understanding what is meant in view of the specification, which states: "the folded configuration of case 1000 is shown in FIGS. 10A-C."



'578 Patent, 9:20-22, Figs. 10A-C.

### b)    <u>Victorinox's Opening Position</u>

This claim term lacks antecedent basis and is indefinite. Targus acknowledges the lack of antecedent basis but argued "a case that folds necessarily has a folded and unfolded configuration." JBr. at 75. However, a bi-fold case could fold more than one way, and without antecedent basis, a POSITA could not know which "folded configuration" is claimed with reasonable certainty.

### c)    <u>Targus' Reply Position</u>

Victorinox erroneously asserts "Targus acknowledges the lack of antecedent basis." JBr. 76. Targus identified the antecedent basis and stated "[t]here is antecedent basis for this limitation." JBr. 75.

Victorinox argues "the folded configuration" could confuse a person of ordinary skill because "a bi-fold case could fold more than one way." JBr. 76. Victorinox does not explain why the specification's depiction of "the folded configuration of case 1000 [that] is shown in FIGS. 10A-C" would not resolve any alleged confusion. '578 Patent, 9:20-22, Figs. 10A-C. Victorinox

has not met its burden to prove these claims are invalid for indefiniteness.

### d)      Victorinox's Sur-Reply Position

Targus's resort to the specification's "the folded configuration" does not solve the problem

that it is not necessarily the claimed "folded configuration."

### 7.      Term 9: "the foldable computer case" (Claims 21, 57)

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary | Indefinite (due to lack of antecedent basis). |

### a)      Targus' Opening Position

Again, there is antecedent basis.  Claims 21 and 57 refer to a "bi-fold computer case," '578

Patent, 22:38, 28:56, which provides antecedent basis for "the foldable computer case" because a

bi-fold computer case necessarily folds.  *See* Section V.F.6.

### b)      Victorinox's Opening Position

The term "the foldable computer case" lacks antecedent basis. There is no "foldable

computer case" introduced in claims 21 and 57.  A POSITA would not necessarily know that this

term is the same as the "bi-fold computer case" because the terms use different words.

### c)      Targus' Reply Position

A person of ordinary skill would understand "bi-fold computer case" to be the same as "the

foldable computer case" because the specification depicts foldable bi-fold computer cases.  For

example:



77

'578 Patent, Figs. 12A-C.  Victorinox also does not argue the term is indefinite and therefore waives the issue.  JBr. 77.

### d)      Victorinox's Sur-Reply Position

Victorinox has not waived indefiniteness, and instead argued it results from lack of antecedent basis.

### 8.      Term 7: "the [first/second] storage panel" (Claim 57)

| Targus' Proposed Construction | Victorinox's Proposed Construction |
|---|---|
| No construction necessary<br><br>or<br><br>"[first/second] storage section" | Indefinite (due to lack of antecedent basis). |

### a)      Targus' Opening Position

There is antecedent basis here.  Claim 57 refers to "a first storage section," '578 Patent, 28:60, and "a second storage section," *id.*, 29:4, which are antecedent basis for the later references to "storage panel[s]," *e.g. id.*, 30:10.  The fact that "panel" and "section" are different words does not show a lack of antecedent basis because one of ordinary skill would understand they mean the same thing in Claim 57.  *See Energizer*, 435 F.3d at 1371 ("anode gel" was antecedent basis for "said zinc anode").

The word panel appears midway through Claim 57 in place of section and is simply a typographical error.  For example, the claim initially refers to "a first storage section comprising… a first pouch opening," '578 Patent, 28:60-66, and then recites "the first pouch opening is disposed on the first storage panel," *id.*, 30:16-17.  Since there is only one "first pouch opening," the "first storage section" is equivalent to the "first storage panel."  The other claims confirm that "panel" and "section" refer to same thing.  For example, Claims 1 and 21 refer to the same structures, the two halves of a bi-fold case, but Claim 1 uses "storage section," *e.g.* '578 Patent, 20:8, and Claim

21 uses "storage panel," *e.g. id.*, 22:42.  The fact that section and panel refer to the same structures in Claims 1 and 21 supports finding the same in Claim 57.

Even if the Court found this typographical error rendered the claim indefinite, it could correct the claim because it is not subject to reasonable debate, and the file history does not suggest a different interpretation.  *CBT Flint Partners v. Return Path*, 654 F.3d 1353, 1358 (Fed. Cir. 2011).

### b)  <u>Victorinox's Opening Position</u>

The Court should not correct Claim 57 because Targus cannot meet its burden to show the correction "is not subject to reasonable debate."   Targus acknowledges that Claim 57 has a "typographical error" and requests that the Court find different terms to mean the same thing or to correct the patent.  JBr. at 79.  The Court should decline to correct claim 57 because the claim language and specification do not indicate that "panel" and "section" are synonymous.

"A 'district court can correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims.'"  *Truinject*, 2020 WL 6817088, at *1 (quoting *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003)).  A correction is unavailable when "other possible corrections appear to be feasible."  *Trusted Knight Corp. v. Int'l Bus. Machines Corp.*, 681 F. App'x 898, 904 (Fed. Cir. 2017) (nonprecedential). Here, Targus cannot meet its burden on the first prong because "storage panel" could reasonably be interpreted under the plain meaning of "panel" as "a flat section in the shape of a rectangle that is part of or fits into something larger."  Ex. 11 (Cambridge Dictionary of American English) at VSAI00027149.  The claim language and specification support this meaning.  Each use of the term "storage panel" in claim 57 is consistent with this plain meaning and a POSITA could interpret it as part of the storage section, *i.e.,* it "is part of or fits into something larger."  The '578 Patent

specification consistently uses "panel" with this meaning.  To point to just a few of many examples of "panel," the specification refers to "first and second flap panels 110 that extend over the computer receiving area."  '578 Patent, 2:47-49.  In the same figure, the specification states that "[t]he liquids section 130 may further include an information panel 136, which is disposed on the back panel 132."  *Id.*, 2:62-63.  These "panels" are shown in the annotated figure below.



Fig. 1C

'578 Patent, Fig. 1C (annotated).

In addition, the specification states that "[t]he foldable container 1130 may comprise ***a plurality of panels*** connected by one or more deformable edges."  *Id.* at 12:20-22 (emphasis added).  The specification makes clear that a "panel" is not synonymous with "section."

### c)      Targus' Reply Position

Victorinox argues the Court should not correct Claim 57 but never argues the claim requires correction in the first place. JBr. 79-80.  Victorinox bears the burden of proving invalidity but makes no argument the term lacks antecedent basis or that it is indefinite.  *Id.*  Victorinox has waived these issues.

In any case, the term is not subject to debate.  Interpreting "panel" as "a flat section in the shape of a rectangle that is part of or fits into something larger" is inconsistent with the fact that these are "storage" panels, unlike the "flap panels," "information panel," or "back panel"

Victorinox cites.  Claim 57 is explicit, for example, that the second storage panel has a pouch.  *See* '578 Patent, 29:10-11 ("the second storage panel configured without an ***additional*** pouch").  The "first storage panel" must likewise be able to hold objects.  *Id.*, 30:11.  Victorinox's examples from the specification are not persuasive because they do not relate to claimed embodiments.  The only reasonable interpretation of "the [first/second] storage panel" in the context of Claim 57 is "the [first/second] storage section."

### d)  Victorinox's Sur-Reply Position

This term clearly lacks antecedent basis as Claim 57 confusingly refers to "***the*** first storage panel" and "***the*** second storage panel," neither of which is introduced (a "typographical error" according to Targus).  The lack of antecedent basis renders the claim indefinite because, as Victorinox demonstrated, "panel" is not synonymous with "section," and thus intrinsic evidence fails to inform a POSITA with reasonable certainty as to what these "storage panels" are.  Targus has not met its burden to show that the term should be corrected.

Targus's argument that "the second storage panel has a pouch" is incorrect (because nowhere does the claim say that), does not apply to the first storage panel, does not save the claim from insoluble ambiguity, and does not provide a basis for correction.

### 9.  Term 10: "the computer secured within the second pouch" (Claim 28)

| Targus' Proposed Construction | Victorinox's Proposed Construction |
| --- | --- |
| No construction necessary | Indefinite (due to lack of antecedent basis).<br><br>Alternatively: "a laptop computer, a notebook computer, a tablet computer, or the like that is held within the second pouch" |

### a)  Targus' Opening Position

Victorinox's indefiniteness argument fails again.  Claim 28 provides: "an interior of the second pouch and ***a computer*** disposed therein."  '578 Patent, 24:48-49.  Because Claim 28

introduces "a computer" in the second pouch before it refers to "the computer" in the second pouch, the term has antecedent basis.

The Court should reject Victorinox's alternative proposed construction, which substitutes "a laptop computer, a notebook computer, a tablet computer, or the like" for "computer," for the reasons stated in Section IV.E.

### b)   Victorinox's Opening Position

Claim 28 is indefinite because a POSITA would not know with reasonable certainty whether the "computer disposed" in the interior of the second pouch is the same computer "secured within the second pouch."

Alternatively, for the reasons discussed above for the claim term "second pouch configured to receive a computer," "computer" should be construed as it is used in the specification to be clear that a tablet computer or the like is encompassed within the term "computer."

### c)   Targus' Reply Position

Victorinox argues a person of ordinary skill would not know that "a computer" and "the computer" refer to the same object in the context of a single claim.   JBr. 82.   They are plainly the same.

The Court should reject Victorinox's alternative proposed construction because "computer" is not confusing and there is no dispute over scope.   A twenty-first century jury knows what a computer is.

### d)   Victorinox's Sur-Reply Position

Targus ignores the claim language in positing that "the computer" is "a computer."   Claim 28 introduces "a computer *disposed*," but later refers to "the computer *secured* within the second pouch."   There is no certainty that the secured computer is the disposed computer.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Anthony D. Raucci*

_____

Jack B. Blumenfeld (#1014)
Anthony D. Raucci (#5948)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899-1347
(302) 658-9200
jblumenfeld@morrisnichols.com
araucci@morrisnichols.com

OF COUNSEL:

Michelle E. Armond
Forrest M. McClellen
ARMOND WILSON LLP
895 Dove Street, Suite 300
Newport Beach, CA 92660
(949) 932-0778

Douglas R. Wilson
ARMOND WILSON LLP
9442 Capital of Texas Highway North
Plaza One, Suite 500
Austin, TX 78759
(512) 267-1663

*Attorneys for Plaintiff*
*Targus International LLC*

February 17, 2021

FAEGRE DRINKER BIDDLE & REATH LLP

*/s/ Francis DiGiovanni*

_____

Francis DiGiovanni (#3189)
Thatcher A. Rahmeier (#5222)
222 Delaware Ave., Ste. 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

Kelly J. Fermoyle
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
kelly.fermoyle@faegredrinker.com

*Attorneys for Defendant/Counterclaim*
*Plaintiff Victorinox Swiss Army, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on February 17, 2021, I caused the foregoing to be electronically filed with the Clerk of the Court using CM/ECF, which will send notification of such filing to all registered participants.

I further certify that I caused copies of the foregoing document to be served on February 17, 2021, upon the following in the manner indicated:

Francis DiGiovanni, Esquire                                  *VIA ELECTRONIC MAIL*
Thatcher A. Rahmeier, Esquire
FAEGRE DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE  19801
*Attorneys for Defendant*

Kelly J. Fermoyle, Esquire                                    *VIA ELECTRONIC MAIL*
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN  55402
*Attorneys for Defendant*

*/s/ Anthony D. Raucci*
_____
Anthony D. Raucci (#5948)