IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TARGUS INTERNATIONAL LLC,

        Plaintiff,

  v.

VICTORINOX SWISS ARMY, INC.,

        Defendant.

Civil Action No. 20-464-RGA

## MEMORANDUM OPINION

Jack B. Blumenfeld, Anthony D. Raucci, MORRIS, NICHOLS, ARSHT & TUNNEL LLP, Wilmington, DE; Michelle E. Armond (argued), Forrest M. McClellen, ARMOND WILSON LLP, Newport Beach, CA; Douglas R. Wilson (argued), ARMOND WILSON LLP, Austin, TX, Attorneys for Plaintiff.

Francis DiGiovanni (argued), Thatcher A. Rahmeier, FAEGRE DRINKER BIDDLE & REATH LLP, Wilmington, DE; Kelly J. Fermoyle (argued), FAEGRE DRINKER BIDDLE & REATH LLP, Minneapolis, MN, Attorneys for Defendant.

May 3, 2021

/s/ Richard G. Andrews
**ANDREWS, U.S. DISTRICT JUDGE:**

Before the Court is the issue of claim construction of multiple terms in U.S. Patent No. 8,567,578 ("the 578 patent"). I have considered the Parties' Joint Claim Construction Brief, letters, and supplemental briefings. (D.I. 100, 115, 116, 123, 126, 132). The Court heard remote oral argument on March 16, 2021. (D.I. 117).

# I. BACKGROUND

The '578 Patent describes bi-fold computer cases which are designed to easily pass through security screening checkpoints. (D.I. 100 at 8; '578 Patent, Cover (57)). The parties briefed eight claim construction disputes and seven indefiniteness disputes, which are addressed below. Per the parties, the following claims are representative, and I have italicized the disputed terms.

**Claim 1**

1. A bi-fold case to allow for convenient security screening of a computer, comprising:
   a first storage section comprising a first outer side, *a first inner side*, a first proximal end, and a first distal end opposite the first proximal end, the first outer side, first inner side, first proximal end, and first distal end defining a first *pouch* with a first *pouch* opening and a first *pouch* fastener coupled to the first *pouch* opening and configured to only secure the first *pouch* opening, wherein the first outer and inner sides are *configured to enable a scanning device to scan through* the first outer and inner sides and scan an interior of the first *pouch*, wherein the first storage section further comprises a third *pouch* including a third *pouch* opening, independent of the first *pouch* opening, and a third fastener to only secure the third *pouch* opening; and
   a second storage section comprising a second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a second proximal end, and a second distal end opposite the second proximal end, the second storage section comprising,
   a second *pouch* and the second storage section configured without an additional *pouch*, the *second pouch configured to receive a computer*, wherein the second storage section and the second outer and inner sides are *configured to enable a scanning device to scan through* the second outer and inner sides and scan an interior of the second *pouch* and a computer disposed therein, and
   *a second pouch fastener configured to substantially enclose only the second pouch and thereby retain a computer therein*,

1

the second storage section foldably joined at the second proximal end to the first
proximal end of the first storage section such that the second proximal end and the
first proximal end are coupled adjacent one another to form a *hinge configured to
enable a scanning device to scan through* the *hinge*,

wherein the first and second inner sides are disposed adjacent one another in the folded
configuration and separated in an unfolded configuration,

wherein the first and second distal ends are disposed adjacent one another in the folded
configuration and separated from one another in the unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second
storage sections laid flat upon a same planar surface, an object in the first storage
section is removed from interfering with a scanner positioned above and below the
second storage section to enable uninhibited scanning of a computer in the second
*pouch* of the second storage section.

**Claim 4**

**4.** The case of claim **1**, wherein the inner side of the second *pouch* is configured to allow for
visual inspection of a computer disposed within the second *pouch* of the second storage section
when the second storage section is in the unfolded configuration.

**Claim 13**

**13.** The case of claim **1**, further comprising *indicia indicating the case complies with a
standard of scanning authority*.

**Claim 17**

**17.** A bi-fold computer case to allow for convenient security screening of a computer
disposed therein, the bi-fold computer case having a folded and an unfolded configuration,
the bi-fold computer case comprising:

a first storage section comprising a first outer side, *a first inner side*, a first proximal end,
and a first distal end opposite the first proximal end, the first outer side, first inner
side, first proximal end, and first distal end defining a first *pouch* with a first *pouch*
opening and a first *pouch* fastener coupled to the first *pouch* opening and configured to
only secure the first *pouch* opening, wherein the first outer and inner sides are
*configured to enable a scanning device to scan through* the first outer and inner sides
and scan an interior of the first *pouch*, wherein the first storage section further
comprises a third *pouch* coupled to the first outer side, the third *pouch* including a
third *pouch* opening, independent of the first *pouch* opening, and a third fastener to
only secure the third *pouch* opening;

a second storage section comprising a second outer side, a second inner side, a second
proximal end, and a second distal end opposite the second proximal end, the second
section comprising a *second pouch configured to receive a computer*, the second
storage section configured without an additional *pouch*, wherein the second storage
section and the second outer and inner sides are *configured to enable a scanning
device to scan through* the second outer and inner sides and scan an interior of the
second *pouch* and a computer disposed therein, the second storage section foldably

2

joined at the second proximal end to the first proximal end of the first storage section such that the first and second proximal ends are coupled adjacent one another, the first and second proximal ends forming a *hinge configured to enable a scanning device to scan through* the *hinge*,

wherein in the folded configuration, *the first inner side is approximated to the second inner side*, and

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration;

a fastener to selectively maintain the computer case in the folded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second *pouch* of the second storage section.

## Claim 22

22. A bi-fold computer case, comprising:

a first section comprising *a first inner side*, a first outer side, a first proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first *pouch*, the first distal end including a first *pouch* opening, wherein the first outer and inner sides are *configured to enable a scanning device to scan through* the first outer and inner sides and scan an interior of the first *pouch*;

a second section comprising a second inner side having a surface area approximately equal to a surface area of the first inner side, a second outer side, a second proximal end, a second distal end opposite the second proximal end, a first sidewall coupled to the second inner side and the second outer side, a second sidewall extending substantially parallel to the first sidewall and coupled to the second inner side and the second outer side, a top wall disposed on the second distal end, a second *pouch* and the second section configured without an additional *pouch*, and a second *pouch* opening extending along the top wall and partially extending along the first and second sidewalls, the *second pouch configured to receive a computer*, wherein the second section and the second outer and inner sides are *configured to enable a scanning device to scan through* the second outer and inner sides and scan an interior of the second *pouch* and a computer disposed therein,

the first proximal end of the first section foldably joined to the second proximal end of the second section such that the first and second proximal ends are coupled adjacent one another, to form a *hinge configured to enable a scanning device to scan through* the *hinge*,

wherein in a folded configuration of the bi-fold computer case, *the inner side of the first section is approximated to the inner side of the second section*,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in an unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second sections laid flat upon a same planar surface, an object in the first section is removed

from interfering with a scanner positioned above and below the second section to enable uninhibited scanning of a computer in the second *pouch* of the second section, wherein the first *pouch* opening is disposed on the first section and the second *pouch* opening is disposed on the second section such that when the case is in the unfolded configuration with the outer sides of both the first and second sections laid flat upon the same planar surface, the first and second *pouch* openings are both oriented in a direction substantially parallel to the planar surface.

## Claim 27

**27.** The computer case of claim 22, wherein the second storage section comprises a retention member configured to secure the computer within the second *pouch*.

## Claim 28

**28.** A method for providing a bi-fold computer case, comprising:

providing a first storage section including *a first inner side*, a first outer side, a proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first *pouch* including a first *pouch* opening and a first fastener to secure the first *pouch* opening, wherein the first outer and inner sides are *configured to enable a scanning device to scan through* the first outer and inner sides and scan an interior of the first *pouch*;

providing a second storage section having a surface area approximately equal to a surface area of the first storage section and including a second inner side, a second outer side, a second proximal end, and a second distal end opposite the second proximal end, the second storage section comprising a second *pouch*, the second distal end including a sidewall with a second *pouch* opening disposed substantially in the center of the sidewall and the second storage section configured without an additional *pouch*, the *second pouch configured to receive a computer*, wherein the second storage section and the second outer and inner sides are *configured to enable a scanning device to scan through* the second outer and inner sides and scan an interior of the second *pouch* and a computer disposed therein;

foldably joining the first storage section to the second storage section at the first and second proximal ends to form a *hinge configured to enable a scanning device to scan through* the *hinge* such that the first and second proximal ends remain adjacent one another in both folded and unfolded configurations, wherein the second inner and outer sides are configured to allow the computer secured within the second *pouch* to be scanned by a scanning device without removing the computer from the second *pouch*,

wherein in the folded configuration of the bi-fold computer case, *the inner side of the first storage section is approximated to the inner side of the second storage section*,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the

second storage section to enable uninhibited scanning of a computer in the second *pouch* of the second storage section,

wherein the first *pouch* opening is disposed on the first storage section and the second *pouch* opening is disposed on the second storage section such that when the case is in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon the same planar surface, the first and second *pouch* openings are both oriented in a direction substantially parallel to the planar surface.

## Claim 42

**42.** A method for manufacturing a bi-fold computer case, comprising:

providing a first storage section including *a first inner side*, a first outer side, a proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first *pouch* including a first *pouch* opening and a first fastener to secure the first *pouch* opening, wherein the first outer and inner sides are *configured to enable a scanning device to scan through* the first outer and inner sides and scan an interior of the first *pouch*, wherein the first storage section further comprises a third *pouch* including a third *pouch* opening, independent of the first *pouch* opening, and a third fastener to only secure the third *pouch* opening;

providing a second storage section including a second inner side, a second outer side, a second proximal end, and a second distal end opposite the second proximal end, the second storage section comprising a second *pouch* and the second storage section configured without an additional *pouch*, the *second pouch configured to receive a computer*, wherein the second storage section and the second outer and inner sides are *configured to enable a scanning device to scan through* the second outer and inner sides and scan an interior of the second *pouch* and a computer disposed therein,

foldably attaching the first proximal end of the first storage section to the second proximal end of the second storage section to form a *hinge configured to enable a scanning device to scan through* the *hinge*,

wherein in a folded configuration of the bi-fold computer case, *the inner side of the first storage section is approximated to the inner side of the second storage section*,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in an unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second *pouch* of the second storage section.

## Claim 57

**57.** A bi-fold computer case to allow for convenient security screening of a computer and having a folded configuration and an unfolded configuration, the computer case comprising:

a first storage section comprising,

*a first inner side*,

a first outer side,

a first proximal end,

a first distal end opposite the first proximal end,

a first *pouch*, and

a first *pouch* opening disposed on the first distal end and in communication with the first *pouch*,

wherein the first outer and inner sides are *configured to enable a scanning device to scan through* the first outer and inner sides and scan an interior of the first *pouch*;

a second storage section comprising,

a second inner side,

a second outer side,

second proximal end,

a second distal end opposite the second proximal end,

a *second pouch configured to receive a computer* and the second storage panel configured without an additional *pouch*, and

a second *pouch* opening at least partially disposed on the second distal end and in communication with the second *pouch*,

wherein the second storage panel and the second outer and inner sides are *configured to enable a scanning device to scan through* the second outer and inner sides and scan an interior of the second *pouch* and a computer disposed therein, the second storage panel foldably joined at the second proximal end to the first proximal end of the first storage panel such that the first and second proximal ends are coupled adjacent one another to form a *hinge configured to enable a scanning device to scan through* the *hinge*,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration,

wherein in the folded configuration of the foldable computer case, *the inner side of the first storage section is approximated to the inner side of the second storage section* and the first *pouch* opening and the second *pouch* opening are configured to be accessible to a user,

wherein in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon a same planar surface, an object in the first storage panel is removed from interfering with a scanner positioned above and below the second storage panel to enable uninhibited scanning of a computer in the second *pouch* of the second storage panel,

wherein the first *pouch* opening is disposed on the first storage panel and the second *pouch* opening is disposed on the second storage panel such that when the case is in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon the same planar surface, the first and second *pouch* openings are both oriented in a direction substantially parallel to the planar surface.

## II.     LEGAL STANDARD

"It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312

(Fed. Cir. 2005) (en banc) (internal quotation marks omitted). "'[T]here is no magic formula or catechism for conducting claim construction.' Instead, the court is free to attach the appropriate weight to appropriate sources 'in light of the statutes and policies that inform patent law.'" *SoftView LLC v. Apple Inc.*, 2013 WL 4758195, at *1 (D. Del. Sept. 4, 2013) (quoting *Phillips*, 415 F.3d at 1324) (alteration in original). When construing patent claims, a court considers the literal language of the claim, the patent specification, and the prosecution history. *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 977–80 (Fed. Cir. 1995) (en banc), *aff'd*, 517 U.S. 370 (1996). Of these sources, "the specification is always highly relevant to the claim construction analysis. Usually, it is dispositive; it is the single best guide to the meaning of a disputed term." *Phillips*, 415 F.3d at 1315 (internal quotation marks omitted).

"[T]he words of a claim are generally given their ordinary and customary meaning. . . . [Which is] the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention, i.e., as of the effective filing date of the patent application." *Id.* at 1312–13 (citations and internal quotation marks omitted). "[T]he ordinary meaning of a claim term is its meaning to [an] ordinary artisan after reading the entire patent." *Id.* at 1321 (internal quotation marks omitted). "In some cases, the ordinary meaning of claim language as understood by a person of skill in the art may be readily apparent even to lay judges, and claim construction in such cases involves little more than the application of the widely accepted meaning of commonly understood words." *Id.* at 1314.

When a court relies solely upon the intrinsic evidence—the patent claims, the specification, and the prosecution history—the court's construction is a determination of law. *See Teva Pharm. USA, Inc. v. Sandoz, Inc.*, 574 U.S. 318, 331 (2015). The court may also make factual findings based upon consideration of extrinsic evidence, which "consists of all evidence

external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." *Phillips*, 415 F.3d at 1317–19 (internal quotation marks omitted). Extrinsic evidence may assist the court in understanding the underlying technology, the meaning of terms to one skilled in the art, and how the invention works. *Id.* Extrinsic evidence, however, is less reliable and less useful in claim construction than the patent and its prosecution history. *Id.*

"A claim construction is persuasive, not because it follows a certain rule, but because it defines terms in the context of the whole patent." *Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1250 (Fed. Cir. 1998). It follows that "a claim interpretation that would exclude the inventor's device is rarely the correct interpretation." *Osram GMBH v. Int'l Trade Comm'n*, 505 F.3d 1351, 1358 (Fed. Cir. 2007) (citation and internal quotation marks omitted).

## III. CONSTRUCTION OF AGREED-UPON TERMS

I adopt the following agreed-upon constructions:

| Claim Term | Construction |
|---|---|
| "accessible to a user [in the folded configuration]" (claims 48, 49, 57) | "user can retrieve items from the first pouch while the bi-fold case is in the folded configuration" |
| "defining a first pouch" (claims 1, 17, 21, 22, 28, 42) | "delineating the boundaries of a first pouch" |
| "distal end" (claims 1, 17, 21, 22, 28, 42, 46, 50, 54, 57) | "the end that is furthest away from the hinge" |
| "disposed adjacent" (claims 1, 17, 21, 22, 28, 42, 46, 50, 54, 57) | "touching, or next to" |
| "proximal end" (claims 1, 17, 21, 22, 28, 42, 50, 54, 57) | "the end that is closest to the hinge" |
| "without an additional pouch" (claims 1, 17, 21, 22, 28, 42, 50, 54, 57) | No construction necessary. |

| | |
|---|---|
| "the outer sides of both the first and second storage [sections/panels] laid flat upon [a/the] same planar surface" (claims 1, 17, 21, 22, 28, 42, 50, 51, 54, 55, 57) | No construction necessary. |
| "handle" (claim 46) | No construction necessary. |
| "sidewall" (claims 21, 22, 28) | No construction necessary. |

## IV.    CONSTRUCTION OF DISPUTED TERMS[1]

1.    **"a hinge" (claims 1, 17, 21, 22, 28, 42, 45, 50, 54, 57)[2]**

    a.    *Plaintiff's proposed construction*: No construction necessary.

    b.    *Defendant's proposed construction*: a structure made only of rigid, non-metallic components which cannot be defined as (a) 'foldable material,' (b) 'deformable material or fabric,' or (c) 'straps,' the structure allowing two sections of the case to fold or pivotally join together.

    c.    *Court's construction*: No construction necessary. (D.I. 117 at 100:9-25, 101:1-3).

2.    **"pouch" (claims 1, 4, 5, 6, 17, 21, 22, 27, 28, 32, 42, 47, 48, 49, 50, 52, 54, 57)**

    a.    *Plaintiff's original proposed construction*: No construction necessary or receptacle resembling a bag in shape

    b.    *Plaintiff's additional proposed construction*: a pocket or enclosed receptacle

    c.    *Defendant's original proposed construction*: a part of a case that can retain an object on at least the bottom and the sides of an object

    d.    *Defendant's additional proposed construction*: a pocket, receptacle, recess, or other structure that is able to hold one or more objects

    e.    *Court's construction*: a pocket or partially enclosed receptacle.

---

[1] I ruled on many of the disputed terms at the claim construction hearing. As to those terms, I recite my decision with no additional explanation.
[2] The terms are numbered and presented in the order in which they were briefed.

The parties submitted supplemental briefing on the term "pouch" (D.I. 123, 126, 132) in which both parties offered additional proposed constructions. The crux of the dispute is whether recesses, such as the one depicted in Figure 13B, are included in the definition of "pouch." (D.I. 123 at 1; D.I. 126 at 1).

Targus relies primarily on the prosecution history in arguing that the patentee "abandoned" the embodiment shown in Figure 13B when the language of claim 24 (issued as claim 22) was changed from "second storage section" to "second pouch." (D.I. 123 at 6). Targus also cites to the specification as distinguishing the term "pouch," described in one embodiment as "a pouch [] that receives, supports, protects, and at least partially covers a portable computer," from the term "extendable tray," which "comprises a recess to receive, support, and protect a portable computer." (*Id*. at 5 (citing '578 Patent at 3:37-39, 5:14-16). Finally, Targus cites to dictionary definitions which align with its proposed construction. (*Id*. at 2; D.I. 100 at 29).

Victorinox argues that claim 27 covers the embodiment depicted in Figure 13B and thus confirms that a "recess" is a pouch. (D.I. 126 at 1). Victorinox arrives at this conclusion because the term "retention member" appears in the patent only twice: once in the specification when describing Figure 13B and the second time in claim 27. (*Id*. at 2). In addition, Victorinox cites to a portion of the prosecution history where the patentees appear to explicitly identify the contents of Figure 13 as covered by the claimed invention. (*Id*. at 5 (citing D.I. 126-2, Ex. D at 2)).

"[W]here claims can reasonably [be] interpreted to include a specific embodiment, it is incorrect to construe the claims to exclude that embodiment, absent probative evidence [to] the contrary." *Oatey Co. v. IPS Corp*., 514 F.3d 1271, 1277 (Fed. Cir. 2008). Targus has not cited to any evidence of explicit disclaimer of the embodiment described in Figure 13B. Targus does cite, however, to a portion of the prosecution history where a claim that would have disclosed the

recess embodiment[3] was amended to include a second pouch. (*See* D.I. 123 at 6).  Additionally, the language of dependent claim 27 must be considered in the context of the limitations in claim 22, which specifies that the second pouch opening "extend[s] along the top wall and partially extend[s] along the first and second sidewalls." (D.I. 100 at 25).  This language appears to exclude the "recess" disclosed by Figure 13B.[4]

Victorinox also argues that Targus' construction would exclude the embodiments pictured in Figures 10-12. (D.I. 126 at 3-4).  Yet, Victorinox does not address which claims cover these embodiments, so it remains unclear how Targus' construction would change the scope of what is actually claimed.

While I agree with Targus' argument that Victorinox's construction sweeps too broadly (*see* D.I. 123 at 4), I do not agree that the term "pouch" is so limited that it encompasses only pockets and "enclosed receptacles."  Certain claims disclose pouches with the addition of a "pouch fastener" and pouches without a fastener. (*See* '578 Patent at 21:47-48, 61) (describing "a first pouch with a first pouch opening and a first pouch fastener coupled only to the first pouch opening" and "a second pouch configured to receive a computer").  Targus argues that the "second pouch fastener" limitation is evidence that a pouch encompasses an enclosed receptable (D.I. 123 at 2), but does not address those pouches claimed without the additional fastener limitation.

---

[3] The claim does not use the term "recess" but describes a "storage section" that "is configured to receive a computer" and "a computer retention member configured to selectively secure a computer within the second storage section." (D.I. 123 at 6).

[4] Victorinox argues that is does not, but does not explain how Figure 13B can meet the limitation.

As such, I will adopt Targus' proposed construction with the slight modification that "enclosed" is changed to "partially enclosed" to better account for the claim language and the specification's description of a pouch. '578 Patent at 3:37-39.

3.   **"configured to enable a scanning device to scan through" (claims 1, 17, 21, 22, 28, 42, 47, 50, 54, 57)**

    a.   *Plaintiff's proposed construction*: made of materials that do not interfere with a scanning device.

    b.   *Defendant's proposed construction*: having a structure, design, arrangement, shape, and made of materials that enable a scanning device to scan through

    c.   *Court's construction*: made in such a way that a scanning device can scan through. (D.I. 117 at 80:14-18).

4.   **"a second pouch fastener configured to substantially enclose only the second pouch and thereby retain a computer therein" (claim 1)**

    a.   *Plaintiff's proposed construction*: No construction necessary.

    b.   *Defendant's proposed construction*: a second pouch fastener that has a structure, design, arrangement or shape that substantially encloses only the second pouch and thereby retain the computer therein

    c.   *Court's construction*: No construction necessary. (*Id.* at 101:8-17).

5.   **"second pouch configured to receive a computer" (claims 1, 17, 21, 22, 28, 42, 50, 54, 57)**

    a.   *Plaintiff's proposed construction*: No construction necessary.

    b.   *Defendant's proposed construction*: a second pouch (as defined herein) having a structure, design, arrangement, or shape that enables it to receive a laptop computer, a notebook computer, a tablet computer, or the like

    c.   *Court's construction*: No construction necessary. (*Id.* at 81:3-16).

6.   **"a first inner side" (claims 1, 17, 21, 22, 28, 42, 50, 54, 57)**

    a.   *Plaintiff's proposed construction*: No construction necessary or first interior side

    b.   *Defendant's proposed construction*: a side of the first storage section that faces the second storage section when the case is in the folded position

 c.  *Court's construction*: No construction necessary. (*Id*. at 87:19-25, 88:1-3).

7. **"the first inner side [of the first storage panel/section] is approximated to the second inner side [of the second storage panel/section]" (claims 17, 21, 22, 28, 42, 57)**

 a.  *Plaintiff's proposed construction*: No construction necessary.

 b.  *Defendant's proposed construction*: the first inner side [of the first storage panel/section] is brought together with the second inner side [of the second storage panel/section]

 c.  *Court's construction*: the first inner side [of the first storage panel/section] is close to the second inner side [of the second storage panel/section] (*Id*. at 101:22-25, 102:1-6).

8. **"indicia indicat[es/ing] [that] the [computer] case complies with a standard scanning authority" (claims 13, 23, 38)**

 a.  *Plaintiff's proposed construction*: identifying mark(s) indicat[es/ing] that the [computer] case complies with a standard of scanning authority.

 b.  *Defendant's proposed construction*: not entitled to patentable weight.

 c.  *Court's construction*: not entitled to patentable weight. (*Id*. at 41:17-25).

## V. INDEFINITENESS

1. **"an object in the first [storage] [section/panel] is removed from interfering with a scanner" (claims 1, 17, 21, 22, 28, 42, 50, 54, 57)**

 a.  *Plaintiff's proposed construction*: No construction necessary.

 b.  *Defendant's proposed construction*: Indefinite.

 c.  *Court's construction*: Not indefinite, no construction necessary.

Victorinox argues that the language above constitutes a "hybrid claim" in violation of *IPXL Holdings*. (D.I. 100 at 48). Specifically, the parties dispute whether the language "is removed from interfering with a scanner" comprises a method step requiring user action inside of an apparatus claim. (*Id*. at 49). Victorinox likens the language at issue to the claims held indefinite in *Courtesy Prods., LLC v. Hamilton Beach Brands, Inc*., 2015 WL 7295436 (D. Del.

Nov. 18, 2015).  There, the Court found that the claim language "brew baskets being inserted into the location in the beverage brewing machine" recited a method step as part of a system claim. (*Id*. at *5).

Targus argues that Victorinox's position ignores the surrounding language, which states "wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon the same planar surface, ***an object . . . is removed from interfering with a scanner***." '578 Patent 20:51-54 (emphasis added).  Targus also asserts that this claim language is indistinguishable from that present in claim 21,[5] which Victorinox cites as an example of a properly claimed structure. (*Id*. at 54).

The scope of the *IPXL* doctrine is narrow. *See Bayer Pharma AG v. Watson Labs., Inc.*, 2014 WL 4954617, at *6 (D. Del. Sept. 30, 2014) (citing cases).  The Court in *IPXL* found that, when a claim recited "a system and the method for using the system, it does not apprise a person of ordinary skill in the art of its scope," and is thus invalid as indefinite under 35 U.S.C. § 112. *IPXL Holdings, L.L.C. v. Amazon.com, Inc.*, 430 F.3d 1377, 1384 (Fed. Cir. 2005).  However, when a claim is "simply describing a system as well as the capabilities of the claimed system," the rule does not apply. *Bayer Pharma*, 2014 WL 4954617, at *6; *see also Microprocessor Enhancement Corp. v. Tex. Instruments Inc.*, 520 F.3d 1367, 1375 (Fed. Cir. 2008) (stating that "apparatus claims are not necessarily indefinite for using functional language").

Here, I agree that the disputed language is referring to the capabilities of the bag when it is in the unfolded position. (D.I. 100 at 52).  As Targus argues, the surrounding claim language clarifies that the term is describing "the position of objects in an unfolded case" rather than a

---

[5] The cited language is "such that when the case is in the unfolded configuration . . . the first and second pouch openings are both oriented in a direction parallel to the planar surface." '578 Patent 23:20-25.

required action by a user. (*Id*. at 53). The claim language at issue here is similar to that upheld in the face of an *IPXL* challenge in *3G Licensing, S.A. v. Blackberry Ltd*. and *Edgewell Personal Care Brands v. Albaad Massout Yitzhak, Ltd. See 3G Licensing, S.A. v. Blackberry Ltd*., 2018 WL 4375091, at *10 (D. Del. Sept. 13, 2018); *Edgewell Personal Care Brands, LLC v. Albaad Massout Yitzhak, Ltd.*, 2017 WL 1900736, at *5 (D. Del. May 9, 2017). Therefore, I find that the claim language adequately informs a person of ordinary skill in the art of the claim scope and is not indefinite under the rule set forth in *IPXL*.

2. **"in communication with" (claim 57)**

    a.     *Plaintiff's proposed construction*: No construction necessary.

    b.     *Defendant's proposed construction*: Indefinite.

    c.     *Court's construction*: providing passage to. (D.I. 117 at 102:13-19).

3. **"foldably [attaching/joining]" (claims 28, 42)**

    a.     *Plaintiff's original proposed construction*: No construction necessary.

    b.     *Plaintiff's additional proposed construction*: attaching/joining so that the joint is foldable.

    c.     *Defendant's proposed construction*: Indefinite.

    d.     *Court's construction*: Not indefinite (*Id.* at 102:20-25, 103:1-5), attaching/joining so that the joint is foldable

At oral argument, I concluded that the term "foldably [attaching/joining]" was not indefinite. (D.I. 117 at 102:20-23). After additional consideration, I will adopt Targus' proposed construction that "foldably [attaching/joining]" means "attaching/joining so that the joint is foldable." (D.I. 116 at 1).[6]

---

[6] This construction was submitted in response to the Court's request. (D.I. 114).

I do not understand Victorinox to have expressed any objection to the proposed construction aside from, as expressed in their original briefing, that the Court would be redrafting the claims to retain their validity. (D.I. 100 at 59). As I ruled on the validity of the original claim language, this is no longer an issue.

4. **"[pouch] opening[s] [is/are] . . . oriented in a direction substantially parallel to the planar surface" (claims 21, 22, 28, 51, 55, 57)**

    a. *Plaintiff's original proposed construction*: No construction necessary.

    b. *Plaintiff's additional proposed construction*: "pouch opening" does not require construction, or alternatively means "pouch gap," "oriented in a direction substantially parallel" means "substantially parallel," and this limitation means: when the case in in the unfolded configuration laid flat on a planar surface, the pouch opening (or gap) is oriented such that a direction pointing out of the pouch through the opening is substantially parallel to the planar surface.

    c. *Defendant's proposed construction*: Indefinite.

    d. *Court's construction*: Unable to construe.

Victorinox argues that this term is indefinite because there is no common understanding among persons of ordinary skill in the art about which direction a pouch opening is "oriented." (D.I. 100 at 60). Victorinox also offers several examples of pouches from drawings included in the specification which, plausibly, depict pouch openings with several possible orientations. (*Id*. at 61).

Targus argues that Claim 21 provides sufficient guidance as to the orientation of a pouch opening. The claim specifies that the pouch opening must be on the distal end of the storage section and that the pouch opening must be "substantially parallel" to the planar surface upon which the bag is unfolded. (*Id*. at 62). From this language, Targus asserts that a person of ordinary skill in the art would view the orientation of the pouch opening as the direction pointing out of the pouch through its opening. (D.I. 116 at 1).

In *Nautilus*, the Supreme Court explained that "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus, Inc. v. Biosig Instruments, Inc.*, 572 U.S. 898, 901 (2014). The burden of establishing an invalidity defense, such as indefiniteness, is clear and convincing evidence and rests with the party asserting the defense. *Microsoft Corp. v. i4i Ltd.*, 564 U.S. 91, 95 (2011).

At oral argument, Victorinox contended that it is impossible to choose between two plausible views as to how to identify the orientation of the pouch opening; the "planar view" articulated by Victorinox and the direction pointing out of the pouch through its opening asserted by Targus. (D.I. 117 at 63:12-17). Upon my review of the specification and claim language,[7] I agree with Victorinox's position. The specification is no help. It does not use "orient" or "oriented" or any similar word. It does not use "parallel," "pouch opening," or "direction" anywhere but in the claims. It offers no indication of how to identify the orientation of the pouch opening. It might be simple enough to identify the orientation of the pouch itself, or the objects contained therein, but, at oral argument, Targus rejected the view that the orientation of the pouch or its contents determined the orientation of the pouch opening. (*See id*. at 67:9-17). Despite Targus' proffered explanation, I cannot identify any language in the claims or anything else that indicates that a POSA would understand "oriented" in this context to mean the view of "an observer sitting inside the bag looking out through the opening." (*Id*. at 67:19-20).

Thus, despite helpful oral argument and my review of the intrinsic evidence, I am unable to construe the term. We can address the consequences of this ruling in connection with summary judgment.

---

[7] Neither party cited to the prosecution history or extrinsic evidence.

5. **"uninhibited scanning" (claims 1, 17, 21, 22, 28, 42, 50, 54, 57)**

    a.    *Plaintiff's proposed construction*: No construction necessary or scanning without interference.

    b.    *Defendant's proposed construction*: Indefinite.

    c.    *Court's construction*: Not indefinite, scanning without interference

At oral argument, I ruled that the term "uninhibited scanning" was not indefinite. (D.I. 117 at 103:10-14). Upon further review, I will adopt Targus' construction of "scanning without interference" for clarity. (D.I. 100 at 64).

In its briefing, Victorinox addresses this alternative construction only briefly as part of its indefiniteness argument. (*Id*. at 65). I do not understand Victorinox to have expressed an objection to Targus' proposed definition as a matter of claim construction.

6. **"the inner side of the second pouch" (claims 4, 5, 6, 32)**

    a.    *Plaintiff's proposed construction*: No construction necessary.

    b.    *Defendant's proposed construction*: Indefinite (due to lack of antecedent basis).

    c.    *Court's construction*: Not indefinite. (D.I. 117 at 103:22-25).

7. **"the inner side of the first storage section" (claims 12, 21, 28, 57)**

    a.    *Plaintiff's proposed construction*: No construction necessary.

    b.    *Defendant's proposed construction*: Indefinite (due to lack of antecedent basis).

    c.    *Court's construction*: Not indefinite. (*Id.*).

8. **"the inner side of the [first/second] section" (claim 22)**

    a.    *Plaintiff's proposed construction*: No construction necessary.

    b.    *Defendant's proposed construction*: Indefinite (due to lack of antecedent basis).

    c.    *Court's construction*: Not indefinite. (*Id.*).

9. **"the folded configuration" (claims 1, 2, 17, 21, 28, 29, 42, 46, 48, 49, 50, 54, 57)**

   a. *Plaintiff's proposed construction*: No construction necessary.

   b. *Defendant's proposed construction*: Indefinite (due to lack of antecedent basis).

   c. *Court's construction*: Not indefinite. (*Id*.).

10. **"the foldable computer case" (claims 21, 57)**

    a. *Plaintiff's proposed construction*: No construction necessary.

    b. *Defendant's proposed construction*: Indefinite (due to lack of antecedent basis).

    c. *Court's construction*: Not indefinite. (*Id*.).

11. **"the [first/second] storage panel" (claim 57)**

    a. *Plaintiff's proposed construction*: No construction necessary.

    b. *Defendant's proposed construction*: Indefinite (due to lack of antecedent basis).

    c. *Court's construction*: Indefiniteness not proved.

The parties dispute two related issues with respect to this claim term: (1) whether "the [first/second] storage panel" is indefinite, and (2) whether the Court should correct the claim language to substitute the term "storage section" for "storage panel." (*See* D.I. 100 at 78-79).

"A district court can correct a patent only if (1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Indus., L.P. v. Micro Molds Corp.*, 350 F.3d 1348, 1357 (Fed. Cir. 2003). Generally, a district court may only correct an error "if the error is evident from the face of the patent." *See Grp. One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1303 (Fed. Cir. 2005).

Targus argues that the use of the term "storage panel" in claim 57 is a typographical error and that the claim should be corrected to read "storage section." (D.I. 100 at 78). In support,

Targus argues that the terms "panel" and "storage section" are interchangeable and cites to claim 1, which claims a bifold case with two storage sections, and claim 21, which claims a bifold case with two storage panels, as evidence. (*Id*. at 78-79).

Victorinox argues that Targus cannot meet the burden to obtain a correction because the term "storage panel" as used in claim 57 could be interpreted to be part of the "storage section." (*Id*. at 79). Citing to a dictionary definition of "panel," Victorinox asserts that the plain meaning of panel includes the fact that it "is part of or fits into something larger." (*Id*.). Thus, a reasonable reading of claim 57 is a storage section, which further includes a storage panel. (*Id*.). At oral argument, Victorinox further argued that even if the Court accepted that an error had occurred, it would be impossible to determine whether "panel" or "storage section" would be the correct substitution. (D.I. 117 at 92:17-22).

I do not agree that the terms "storage panel" and "storage section" are necessarily synonymous. Two embodiments described in the specification include both panels and storage sections, indicating, at a minimum, that these terms may vary in scope. '578 Patent at 2:33-3:35. Targus has not pointed to any portion of the prosecution history that clarifies this discrepancy or otherwise explains why the language in claim 57 may have been changed. Victorinox is correct in arguing that, as briefed, it is impossible to decide whether the correct substitution is "storage panel" or "storage section." (D.I. 117 at 92:17-22). It is apparent that some error was made, but it is not apparent from the face of the patent what was intended and which term's usage was the mistake. Thus, a correction substituting "storage section" is subject to reasonable debate. *See Novo Indus*., 350 F.3d at 1357. I cannot correct the claim. Plaintiff may not argue to the jury that "storage panel" is a mistake.

But, is the term "storage panel" indefinite? I agree with Victorinox that the term "[first/second] storage panel" lacks an antecedent basis, but I will not now find the term indefinite based on Victorinox's conclusory assertions that the term suffers from "insoluble ambiguity."[8] (D.I. 100 at 81). A term that lacks an antecedent basis "may, but does not necessarily, render a claim indefinite." *In re Downing*, 754 F. App'x 988, 996 (Fed. Cir. 2018). At this time, I cannot say that Victorinox has satisfied its burden of demonstrating by clear and convincing evidence that the claim as written is indefinite.

12. **"the computer secured within the second pouch" (claim 28)**

    a.    *Plaintiff's proposed construction*: No construction necessary.

    b.    *Defendant's proposed construction*: Indefinite (due to lack of antecedent basis).

    c.    *Court's construction*: Not indefinite. (D.I. 117 at 103:22-25).

## IV.   CONCLUSION

Within five days the parties shall submit a proposed order consistent with this Memorandum Opinion suitable for submission to the jury.

---

[8] The "insoluble ambiguity" standard was replaced in 2014 in *Nautilus*: "a patent is invalid for indefiniteness if its claims, read in light of the specification delineating the patent, and the prosecution history, fail to inform, with reasonable certainty, those skilled in the art about the scope of the invention." *Nautilus*, 572 U.S. at 901.