IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TARGUS INTERNATIONAL, LLC,<br><br>Plaintiff,<br><br>v.<br><br>VICTORINOX SWISS ARMY, INC.,<br><br>Defendant. | ) | C.A. No. 20-464-RGA<br><br>**JURY TRIAL DEMANDED** |

**DEFENDANT VICTORINOX SWISS ARMY, INC.'S AMENDED ANSWER, AFFIRMATIVE DEFENSES, AND COUNTERCLAIMS**

Defendant Victorinox Swiss Army, Inc. ("Victorinox" or "Defendant") hereby files its Amended Answer and Counterclaims to Plaintiff Targus International, LLC's ("Targus's" or "Plaintiff's") Complaint (D.I. 1).

**AMENDED ANSWER**

As set forth below, Victorinox answers the allegations in Plaintiff's Complaint (D.I. 1) by reproducing each of the pertinent headings therein and the corresponding paragraph numbering, if any, with the text of each of the pertinent paragraphs within the Complaint, immediately followed by Victorinox's answer(s) thereto. Victorinox's reproduction herein of any material set forth in Plaintiff's Complaint is solely for the purpose of convenience and is not, and should not be construed as, an admission by Victorinox that any allegations or other statements in Complaint, whether explicit or implied, are true, correct, or admitted by Victorinox. All allegations in Plaintiff's Complaint that Victorinox does not expressly admit or deny, below, are hereby denied.

## PARTIES

**1. Targus is a limited liability company under the laws of the state of Delaware with its principal address being 1211 N. Miller Street, Anaheim, California 92806.**

**ANSWER:** Defendant lacks sufficient knowledge to form a belief as to the truth or falsity of the allegations in Paragraph 1 and therefore denies them.

**2. On information and belief, Defendant Victorinox Swiss Army, Inc. is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 7 Victorinox Dr., Monroe, Connecticut 06468, and operates and owns the website located at wenger.ch.**

**ANSWER:** Defendant admits that it is a corporation organized and existing under the laws of the State of Delaware. Defendant denies that its principal place of business is at 7 Victorinox Dr., Monroe, Connecticut 06468 but admits that it has place of business at 7 Victoria Dr., Monroe, Connecticut 06468. Defendant denies that it operates and owns the website located at wenger.ch.

## JURISDICTION AND VENUE

**3. This is an action for patent infringement arising under the patent laws of the United States, 35 U.S.C. §§101, et seq.**

**ANSWER:** Defendant admits that the Complaint purports to allege claims for patent infringement arising under 35 U.S.C. § 101, *et seq.*, but expressly denies any liability for patent infringement. The question of subject matter jurisdiction is a conclusion of law, rather than a statement of fact, to which no response is required. To the extent that a response is required, Defendant admits that the Court has subject matter jurisdiction over Plaintiff's Patent Act claims, for the purposes of this action only; however, Defendant denies any liability for patent infringement related in any way to Plaintiff's claims. Defendant denies any remaining allegations in Paragraph 3.

**4. The Court has subject matter jurisdiction over the matters asserted herein under 28 U.S.C. §§ 1331 and 1338(a).**

**ANSWER:**     The question of subject matter jurisdiction is a conclusion of law, rather

than a statement of fact, to which no response is required.  To the extent that a response is required,

Defendant admits that the Court has subject matter jurisdiction over Plaintiff's Patent Act claims,

for the purposes of this action only; however, Defendant denies any liability for patent

infringement related in any way to Plaintiff's claims.  Defendant denies any remaining allegations

in Paragraph 4.

**5.     The Court has personal jurisdiction over Defendant because: (1) Defendant is incorporated in Delaware; (2) Defendant regularly and continuously conducts business in this District and throughout Delaware, including by providing, selling, and offering to sell products, including the Accused Products described below, to residents of this District; and (3) Defendant has committed, and continues to commit, acts of patent infringement in this District and throughout this State.**

**ANSWER:**     The question of personal jurisdiction is a conclusion of law, rather than a

statement of fact, to which no response is required.  To the extent a response is required, Defendant

admits that the Court has personal jurisdiction over it for purposes of this action only, but

Defendant denies the merit and validity of any of Plaintiff's infringement allegations for which

personal jurisdiction may be had.  Defendant admits that it is a corporation organized and existing

under the laws of the State of Delaware.  Except as expressly admitted herein, Defendant denies

the remaining allegations in Paragraph 5.

**6.     Venue is proper in this judicial district pursuant to 28 U.S.C. §§ 1391(b) and (c), and 1400 (b), because Defendant resides in this District, and, upon information and belief, has committed acts of infringement in this District.**

**ANSWER:**     The question of venue is a conclusion of law, rather than a statement of

fact, to which no response is required.  To the extent a response is required, Defendant admits that

venue is proper in this judicial district, except that Defendant denies the merit and validity of any

of Plaintiff's infringement allegations for which venue may be had.  Defendant denies that it has

committed any "acts of infringement." Except as expressly admitted herein, Defendant denies any remaining allegations in Paragraph 6.

## FACTUAL BACKGROUND

### The '578 Patent

**7. For more than three decades, the Targus group of companies, headquartered in Anaheim, has been internationally recognized as an innovative creator and distributor of quality laptop bags and cases. Targus has developed and introduced highly successful laptop bags and cases, including "checkpoint friendly" laptop bags and cases designed to allow travelers to pass through security checkpoints without removing their laptops from the case. For example, Targus offers numerous travel briefcases and backpacks that are checkpoint friendly, including the Checkpoint-Friendly Air Traveler Backpack (model TBB012US), Corporate Traveler Briefcases (model CUCT02UA15S, CUCT02UA14S), Spruce™ EcoSmart® Checkpoint-Friendly Backpacks (model TBB013Us, TBB019US), Revolution Checkpoint-Friendly Backpacks (model TEB005US, TEB012US), Mobile ViP Checkpoint-Friendly Backpack (model PSB862), Blacktop Deluxe Checkpoint-Friendly Briefcase (model TBT275), and many others. Targus and Defendant are competitors in the market for checkpoint friendly bags, backpacks, and cases. Targus has successfully obtained patent protection for its innovations.**

**ANSWER:** Defendant lacks sufficient knowledge to form a belief as to the truth or falsity of the allegations in Paragraph 7 and therefore denies them.

**8. Targus is the legal owner by assignment of U.S. Patent No. 8,567,578 entitled "Portable Computer Case" ("the '578 patent"), which the U.S. Patent and Trademark Office lawfully and duly issued on October 29, 2013. A true and correct copy of the '578 patent is attached hereto as Exhibit A. The '578 patent relates to "checkpoint-friendly" bags and cases.**

**ANSWER:** Defendant admits that the '578 patent is entitled "Portable Computer Case" and states that it was issued on October 29, 2013. Defendant admits that what purports to be a copy of the '578 Patent is attached as Exhibit A to the Complaint. Defendant lacks sufficient knowledge to form a belief as to the truth or falsity of the remaining allegations in Paragraph 8 and therefore denies them.

**9. Targus has complied with the provisions of 35 U.S.C. § 287, for example, by selling checkpoint friendly travel products with packaging listing the '578 patent and/or referring consumers to its website, which lists the '578 patent as covering its checkpoint friendly products.**

**ANSWER:** Defendant denies the allegations in Paragraph 9.

**Defendant's [Allegedly] Infringing Products**

**10. Defendant markets or has marketed numerous products as checkpoint friendly, including those shown in the chart below and others that contain the same claimed features as those listed below, that infringe the claims of the '578 patent ("Accused Products"). The Accused Products are non-limiting examples identified based on publicly available information.**

| Accused Product Name | Item No. |
|---|---|
| Wenger Legacy 16 Briefcase | 67652140 |
| Wenger Legacy 17 Slimcase | 67444140 |
| Wenger Algorithm Backpack | 604972 |
| Wenger Buffer Backpack | 604970 |
| Wenger Cyberwork Backpack | 604969 |
| Wenger Flywalk Backpack | 601204 |
| Wenger Legacy 16 Backpack | 67329140 |
| Wenger Odyssey Pro-Check 17" Computer Backpack | - |
| Wenger Pro-Check 17" Computer Backpack | - |

**ANSWER:** Defendant denies the allegations in Paragraph 10.

**11. As just one non-limiting example, a description of how Defendant's representative checkpoint friendly Legacy 17 Slimcase (Item No. 67444140) infringes exemplary claim 1 of the '578 patent is set forth below. Claim language is indicated by italics. This description is based on publicly available information, and the exemplary infringement description is based on publicly available information, and the exemplary infringement description is not exhaustive of the ways in which the Legacy 17 Slimcase infringes claim 1 or of the claims that it infringes.**

**[purported exemplary infringement description omitted]**

**ANSWER:** Defendant denies the allegations in Paragraph 11.

**12. On information and belief, Defendant makes, uses, sells, offers for sale, and/or imports the Accused Products. Wenger's website, wenger.ch, that sells the Accused**

**Products identifies that the "Responsible legal entity for the United States [is] Victorinox Swiss Army, Inc."**

**ANSWER:** Defendant denies that it makes the Accused Products. Defendant admits that it uses, sells, offers for sale, and/or imports the Accused Products. Defendant admits only that the website at wenger.ch speaks for itself and denies the allegations to the extent they misquote or misrepresent the website. However, Defendant denies any infringement allegations based on its conduct. Defendant denies any remaining allegations in Paragraph 12.

**13. On information and belief, Defendant has infringed, is currently infringing, and/or unless enjoined will continue to infringe, various claims of the '578 patent in this District and elsewhere in the United States by making, using, selling, offering for sale and/or importing the Accused Products.**

**ANSWER:** Defendant denies the allegations in Paragraph 13.

**14. On information and belief, Defendant sells and has sold the Accused Products directly to consumers via its Internet website, wenger.ch, and through various third-party distributors including, for example, amazon.com, officedepot.com, and staples.com.**

**ANSWER:** Defendant denies that the website wenger.ch is "its" Internet website and that it sells and has sold Accused Products via wenger.ch. Defendant admits that it sells and has sold at least some of the Accused Products directly to consumers via wenger.ch/US and through various third-party distributors including, for example, amazon.com, officedepot.com, and staples.com. Defendant denies any remaining allegations in Paragraph 14.

**Defendant's [Alleged] Willful Infringement**

**15. Defendant was aware of the '578 patent at least by March 23, 2020 when Targus sent a letter to Defendant notifying it that Defendant's "checkpoint friendly" products infringed the '578 patent and requesting a prompt response. The March 23, 2020 letter specifically identified the following Wenger "checkpoint friendly" products names in this Complaint as infringing the '578 patent: Wenger Legacy 16 Briefcase (Item No. 67652140), Wenger Legacy 17 Slimcase (Item No. 67444140), Wenger Algorithm Backpack (Item No. 604972), Wenger Buffer Backpack (Item No. 604970), Wenger Legacy 16 Backpack (Item No. 67329140), Wenger Odyssey Pro-Check 17" Computer Backpack, and Wenger Pro-Check 17" Computer Backpack. To date, Defendant has not responded. Despite its actual knowledge of the '578 patent and its infringement since at least 2020, Defendant nonetheless kept its products on the market and has continued to willfully and**

**deliberately infringe that '578 patent, and encouraged others, including its distributors, to infringe. Defendant's conduct was egregious in the face of its actual notice of the '578 patent, especially considering Defendant's conduct showed a disregard for Targus' patent rights as a direct competitor.**

**ANSWER:** Defendant admits that it received a letter from Targus dated March 23, 2020; the contents of the letter speak for themselves. Defendant denies the remaining allegations in Paragraph 15.

**CAUSE OF ACTION**
**([Alleged] Infringement of U.S. Patent No. 8,567,578)**

**16. Plaintiff realleges and incorporates herein by reference the allegations states in paragraphs 1-Error! Reference source not found. [sic] of this Complaint as if fully set forth herein.**

**ANSWER:** Defendant incorporates by reference herein its response to paragraphs 1 through 15, above.

**17. Defendant has directly infringed and is directly infringing, either literally or under the doctrine of equivalents, the '578 patent under 35 U.S.C. § 271 *et seq.*, by making, using, selling, offering for sale, and/or importing into the United States the Accused Products, that infringe at least claims 1-3, 12-14, 42, and 47 of the '578 patent. Defendant has directly infringed and is directly infringing at least claim 42 by making, using, selling, offering for sale, and/or importing into the United States the Accused Products that are made by a patented process under 35 U.S.C. § 271 (g).**

**ANSWER:** Defendant denies the allegations in paragraph 17.

**18. On information and belief, Defendant has induced infringement and continues to induce infringement of one or more claims of the '578 patent by its distributors. Defendant had actual knowledge of the '578 patent and its applicability to its products, and nonetheless intentionally actively induced direct infringement by third parties, including its distributors of the Accused Products, and knew or should have known that these third parties would directly infringe one or more of the claims of the '578 patent. Defendant has and continues to actively induce third parties, including its distributors, of the Accused Products, to make, use, sell, offer, for sale, and/or import into the United States the Accused Products in violation of 35 U.S.C. § 271(b). For example, on information and belief, Defendant encouraged and instructed its distributors to sell or offer for sale the Accused Products in the United States that directly infringe at least claim 1-3, 12-14, 42 and 47 of the '578 patent, and to sell or offer for sale the Accused Products that mare made by patented process that infringes at least claim 42.**

**ANSWER:** Defendant denies the allegations in paragraph 18.

**19. Targus has sustained and will continue to sustain damages as a result of Defendant's infringement of the '578 patent.**

**ANSWER:** Defendant denies the allegations in paragraph 19.

**20. Targus is entitled to recover damages sustained as a result of Defendant's infringement in an amount to be proven at trial.**

**ANSWER:** Defendant denies the allegations in paragraph 20.

**21. Unless Defendant is enjoined, Targus has also suffered and will continue to suffer irreparable injury for which Targus has non adequate remedy at law.**

**ANSWER:** Defendant denies the allegations in paragraph 21.

**22. Defendant has willfully infringed and continues to willfully infringe the '578 patent despite its pre-suit, actual knowledge of the '578 patent.**

**ANSWER:** Defendant denies the allegations in paragraph 22.

## GENERAL DENIAL

Defendant denies each and every allegation, express or implied, contained in Plaintiff's Complaint that is not specifically admitted.

## RESPONSE TO RELIEF REQUESTED

The paragraphs in Plaintiff's Complaint titled "Prayer for Relief" do not require a response. To the extent that these paragraphs do require a response, Defendant denies them and denies that Plaintiff is entitled to any relief whatsoever, including, without limitation, the relief listed in its Prayer for Relief.

## DEFENSES

In support of the following defenses, Defendant incorporates all of its Answers listed above, undertaking the burden of proof only as to those defenses deemed affirmative defenses by law, regardless of how such defenses are denominated herein. Defendant reserves all other defenses at law or in equity that may exist now or in the future based upon discovery and further factual investigation in this case.

**First Defense:  Noninfringement**

Defendant does not infringe, and has never infringed, in any way, any valid claim of the '578 patent, whether literally, directly, indirectly, jointly with any other person or entity, contributorily, by inducement, under the doctrine of equivalents, or otherwise under any section of 35 U.S.C. § 271, and, as such, is without any liability to Plaintiff.

**Second Defense:  Invalidity**

All claims of the '578 patent are invalid for failure to meet and/or comply with one or more of the conditions and requirements of the patent laws and regulations, including, but not limited to, the conditions and requirements set forth in 35 U.S.C. §§ 101, 102, 103, and 112; and 37 C.F.R. §§ 1.1 *et seq.*

**Third Defense:  Inequitable Conduct/Unclean Hands**

For the reasons set forth in Defendant's Counterclaim Count III for Declaratory Judgment of Unenforceability of the '578 Patent, Plaintiff's claims for relief are barred, in whole or in part, because all claims of the '578 patent are unenforceable based on the doctrines of inequitable conduct and unclean hands.  The allegations of Paragraphs 24 through 70 of the Counterclaim are repeated, re-alleged, and incorporated herein by reference.

**Fourth Defense:  Invalidity Due to Derivation**

All claims of the '578 patent are invalid under pre-AIA 35 U.S.C. § 102(f) because the named inventors of the '578 patent, Cuong, Gormick, and Shortt, did not invent the subject matter claimed in the patent, but instead derived the alleged inventions from others.  As set forth in Defendant's Counterclaim Count III for Declaratory Judgment of Unenforceability of the '578 Patent, person(s) at the Transportation Security Administration of the United States Department of Homeland Security whose inventions are described in the TSA RFI published on March 3, 2008,

are the true inventors. The allegations of Paragraphs 24 through 49 of the Counterclaim are repeated, re-alleged, and incorporated herein by reference.

**Fifth Defense: Limitation on Damages**

Some or all of Plaintiff's claims for relief concerning the '578 patent are limited or barred as a consequence of failing to comply with the requirements of 35 U.S.C. §§ 286, 287, and/or 288. Included within this defense is the limitation on damages imposed by 35 U.S.C. § 287 due to Plaintiff's failure to provide notice by patent marking of bi-fold cases alleged by Targus to be encompassed by one or more claims of the '578 patent.

**Sixth Defense: Equitable Defenses**

Some or all of Plaintiff's claims for relief concerning the '578 patent are barred, in whole or in part, under the principles of equity, including, without limitation, misconduct, unclean hands, patent misuse, and/or other equitable defenses.

**Seventh Defense: Failure to State a Claim**

Plaintiff has failed to state any claim upon which relief can be granted.

**Eighth Defense: Unavailability of Injunctive Relief**

Plaintiff is not entitled to injunctive relief or any other equitable relief at least because any alleged injury to Plaintiff is not irreparable and because, had Plaintiff been injured, it would have an adequate remedy at law.

**Ninth Defense: Disclaimer/Disavowal of Claim Scope**

By virtue of statements, arguments, and/or amendments made, or positions taken, during the prosecution of one or more of the applications for the '578 patent, and/or by virtue of statements made within one or more of the specifications thereof, Plaintiff has disclaimed and/or disavowed the full scope of any allegedly infringed claim of the '578 patent and, as such, is estopped from

construing any such claim to cover or include, either literally or under the doctrine of equivalents, any product, system, or service of, or any method performed in whole or in part by, Defendant.

**Tenth Defense: Prosecution History Estoppel**

By virtue of statements, arguments, and/or amendments made, or positions taken, during the prosecution of one or more of the applications for the '578 patent, Plaintiff is estopped, under the doctrine of prosecution history estoppel, from construing any allegedly infringed claim of the '578 patent to cover or include under the doctrine of equivalents any product, system, or service of, or any method performed in whole or in part by, Defendant.

**Eleventh Defense: No Willful Infringement**

Plaintiff is not entitled to enhanced or increased damages for willful infringement because Defendant has not engaged in any conduct that meets the applicable standard for willful infringement.

**Twelfth Defense: No Exceptional Case**

Plaintiff is not entitled to relief pursuant to 35 U.S.C. § 285 because Defendant has not engaged in any conduct that meets the applicable standard to render this case exceptional.

**JURY DEMAND**

Defendant hereby respectfully requests a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedures, on all issues so triable.

**VICTORINOX SWISS ARMY, INC.'S AMENDED COUNTERCLAIMS**

Pursuant to Federal Rule of Civil Procedure 13, Victorinox Swiss Army, Inc. ("Victorinox" or "Counterclaimant") asserts the following Amended Counterclaims against Targus Group International LLC ("Targus" or Counterclaim-Defendant) as follows:

## PARTIES

1. Counterclaimant Victorinox is a corporation organized and existing under the laws of the State of Delaware, with its principal place of business at 7 Victoria Dr., Monroe, Connecticut 06468.

2. Upon information and belief, Counterclaim-Defendant Targus is a limited liability company under the laws of the state of Delaware with its principal address being 1211 N. Miller Street, Anaheim, California 92806.

## JURISDICTION AND VENUE

3. Targus has consented to personal jurisdiction in this district by filing the Complaint in this action in this Court.

4. Counts I through III of these Counterclaims arise under the patent laws of the United States, 35 U.S.C. § 1 *et seq.*, and the Declaratory Judgment Act, 28 U.S.C. §§ 2201-2202. The Court has subject matter jurisdiction over these Counterclaims pursuant to 28 U.S.C. §§ 1331, 1338, and 2201-2202.

5. As to Counts I through III of these Counterclaims, venue is based on 28 U.S.C. §§ 1391(b), 1391(c), and 1400(b). Targus has consented to venue in this Court by bringing this action against Victorinox and thus venue for Victorinox's Counterclaims may be proper in this district, although a different venue may be more convenient to hear this dispute.

6. Count IV of these Counterclaims arises under the antitrust laws of the United States, 15 U.S.C. §§ 2 and 15. The Court has subject matter jurisdiction over this Counterclaim pursuant to 28 U.S.C. §§ 1331 and 1337 and 15 U.S.C. § 4.

7. As to Count IV of these Counterclaims, venue is based on 15 U.S.C. §§ 15 and 22 and 28 U.S.C. § 1391(b) and 1391(c).

## BACKGROUND

8. Targus has filed suit alleging that Victorinox infringes or has infringed U.S. Patent No. 8,567,578 ("the '578 Patent").

9. Victorinox has denied that it infringes or has infringed any valid claim of the '578 Patent and has asserted that the '578 Patent is invalid.

10. Based on the foregoing, there is an actual, immediate, and justiciable controversy between Targus and Victorinox as to the infringement, validity, and enforceability of the '578 Patent.

## COUNTERCLAIM COUNT I
## DECLARATORY JUDGMENT OF NONINFRINGEMENT OF THE '578 PATENT

11. Victorinox incorporates by reference the allegations contained in Paragraphs 1 to 10 of its Counterclaims.

12. An actual controversy exists with respect to the alleged infringement of the '578 Patent.

13. Although Targus alleges in its Complaint that Victorinox has infringed the claims of the '578 Patent, Victorinox has not infringed and does not infringe any valid claim of the '578 Patent.

14. Victorinox does not infringe any valid claim of the '578 Patent at least because none of the products or methods Targus has accused of infringement contain, and/or Victorinox does not "remove[] from interfering with a scanner," "an object in the first storage section" as claimed in the '578 Patent.

15. Victorinox does not infringe, either directly or indirectly, any valid claim of the ’578 Patent at least because none of the products Targus has accused of infringement contain “a hinge” as claimed in the ’578 Patent.

16. A judicial determination of the respective rights of the parties with respect to the infringement of the claims of the ’578 Patent is now necessary and appropriate under 28 U.S.C. § 2201.

**COUNTERCLAIM COUNT II**
**DECLARATORY JUDGMENT OF INVALIDITY OF THE ’578 PATENT**

17. Victorinox incorporates by reference the allegations contained in Paragraphs 1 to 16 of its Counterclaims.

18. An actual controversy exists with respect to the invalidity of the ’578 Patent.

19. Although Targus alleges in its Complaint that the ’578 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code, each and every claim of the ’578 patent is invalid because they fail to satisfy one or more conditions for patentability set forth in 35 U.S.C. § 101 *et seq.*, including but not limited to Sections 102, 103, and 112.

20. Further, by way of example, one or more of the following references in combination with the skill of one of ordinary skill in the art at the time of the alleged invention of the ’578 Patent render the ’578 Patent obvious under 35 U.S.C. § 103:

- “Request for Information Checkpoint Friendly Laptop Bag” (“the TSA RFI,” attached hereto as Exhibit A), published on March 3, 2008 under Solicitation Number HSTS04-08-RFI-MC;
- U.S. Patent No. 5,706,992;
- EVERKI Ascend Guru Laptop Backpack; and

- Samsonite L35 Notebook Case, which was on sale more than one year prior to the priority date of the ’578 patent.

21. Further, the claims of the ’578 Patent are invalid under 35 U.S.C. § 112 because they are indefinite in that they purport to claim both an apparatus and a method or use (or manufacture and a method of use). By way of example, the limitation of claim 1 that provides for “wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section” renders the claim invalid under 35 U.S.C. § 112 because it results in a claim that purports to claim both an apparatus and a method of use.

22. Victorinox served detailed contentions regarding invalidity of the ’578 Patent after receiving detailed contentions from Targus regarding how Victorinox’s products allegedly infringe the claims of the ’578 Patent in accordance with the Court’s standard scheduling order for patent cases. Victorinox reserves the right to supplement its invalidity contentions as discovery progresses.

23. A judicial determination of the respective rights of the parties with respect to the invalidity of the claims of the ’578 Patent is now necessary and appropriate under 28 U.S.C. § 2201.

**COUNTERCLAIM COUNT III**
**DECLARATORY JUDGMENT OF UNENFORCEABILITY OF THE ’578 PATENT**

24. Victorinox incorporates by reference the allegations contained in Paragraphs 1 to 23 of its Counterclaims.

25. Although Targus alleges in its Complaint that the '578 Patent was duly issued by the U.S. Patent and Trademark Office ("PTO"), an actual controversy exists with respect to the enforceability of the '578 Patent. A judicial determination of the respective rights of the parties with respect to the unenforceability of the '578 Patent is now necessary and appropriate under 28 U.S.C. § 2201 for at least the following reasons.

26. In particular, the '578 Patent is unenforceable due to inequitable conduct committed by the applicant and named inventors, Bui Phu Cuong, Todd Gormick, and Robert Shortt, and/or their representatives involved in the prosecution of these patents before the PTO. By committing fraud during prosecution of the '578 Patent, Cuong, Gormick, Shortt, and/or their representatives violated the duty of good faith, candor, and disclosure they owed to the PTO, rendering this patent unenforceable. The specific facts supporting this defense are as follows.

27. On March 3, 2008, the Transportation Security Administration of the United States Department of Homeland Security ("TSA") announced plans to implement security procedures allowing travelers to pass through airport security checkpoints without being required to remove laptop computers from their bags.

28. On March 3, 2008, TSA also announced guidelines and specifications for a laptop bag to be TSA compliant or checkpoint friendly. Specifically, TSA published the TSA RFI, "Request for Information Checkpoint Friendly Laptop Bag," on March 3, 2008, under Solicitation Number HSTS04-08-RFI-MC.[1] Ex. A hereto.

29. The TSA RFI described "performance criteria" and provided "illustrative examples of possible solutions" for "bag designs that would allow passengers to not remove their laptops

[1] The TSA RFI is available at https://beta.sam.gov/opp/cf201053453821c8191e436af111d9b0/view?keywords=HSTS04-08-RFI-MC (last visited May 22, 2020).

from carry-on bags for security screening."  One exemplary solution disclosed in the TSA RFI was:  "A bag that would open completely so that each side of the bag would lie horizontally on the x-ray belt.  One side of the bag would be designed to hold the laptop and nothing else."  The TSA RFI further disclosed:  "A bag that would contain the laptop in a separate compartment from other equipment like chargers and cables.  The accessories would be in a separate compartment."

30.    Targus employees were aware of the TSA RFI no later than March 6, 2008.  On or about March 6, 2008, Targus's head of marketing Al Giazzon referred to the TSA RFI as setting "the standard" for travelers' bags.  Ex. B hereto.

31.    The TSA RFI stated that "[r]esponders to this RFI will submit sample/prototype bags and designs to TSA.  TSA will then review the sample/prototype bags and designs and use the submittals to evaluate whether it can eliminate the requirement to remove laptops from bags for certain types of bags."

32.    Over the course of several months, TSA collaborated with laptop bag manufacturers, including Targus, to design and develop laptop bags that comply with TSA guidelines and specifications, such as:  (1) a laptop-only section; (2) bag sections, including the laptop-only section, that each lie flat on an X-ray belt; (3) no straps, zippers, pockets, handles, or closures that interfere with an X-ray image of the laptop; and (4) no items packed in the laptop-only section such that an X-ray image of the laptop is interfered with.[2]

33.    TSA established three pilot airport sites, Austin, Texas (AUS), Washington Dulles area (IAD), and Ontario, California (ONT), where bag manufacturers, including Plaintiff, made appointments to test bags and receive direct feedback from TSA to refine and modify bag designs

---

[2] Press Release, TSA, *TSA ready for 'checkpoint friendly' laptop bags* (Aug. 5, 2008), https://www.tsa.gov/news/press/releases/2008/08/05/tsa-ready-checkpoint-friendly-laptop-bags

to comply with the March 2008 TSA guidelines and specifications for checkpoint friendly laptop bags.

34. On information and belief, named inventors of the ’578 Patent Bui Phu Cuong, Todd Gormick, and Robert Shortt were Targus employees in at least 2008.

35. On information and belief, Cuong, Gormick, and Shortt were aware of the TSA RFI no later than March 6, 2008 and prior to February 13, 2009. The TSA RFI was the impetus of and motivation for the alleged invention; the TSA RFI was published and was widely reported; Targus, the inventors, and Thompson all participated in the filing of two provisional applications referenced in the application filed on February 13, 2009; the patent application makes reference to “the policy under the Transportation Security Administration (TSA),” “screening policies of the TSA,” and “expedited procedures” to “allow screening of the case 700 using the scanning device 750 without requiring the user to unpack the case 700”; and Targus participated in TSA’s program related to the TSA RFI for nearly a year prior to the filing of the provisional application on February 13, 2009.

36. On information and belief, during the collaboration with TSA, Plaintiff Targus employees and named inventors of the ’578 Patent received guidance and participated in discussions and meetings with representatives from TSA, including on June 11, 2008 and June 13, 2008, in designing, developing, and refining laptop bags that are encompassed by the claims of the ’578 Patent.

37. On information and belief, Cuong, Gormick, and Shortt participated in conference calls with TSA representatives in which TSA provided further guidance regarding acceptable checkpoint friendly laptop bag designs, including specific bag features, materials, fasteners, and enclosures required to be qualified as checkpoint friendly.

38.     Further, on information and belief, Cuong, Gormick, and Shortt met with TSA representatives at a pilot airport site to receive input and feedback from TSA regarding specific laptop bag designs that are covered by the subject matter of the '578 Patent.

39.     On February 13, 2009, attorney John R. Thompson filed a U.S. patent application on behalf of Plaintiff Targus seeking to cover subject matter resulting from the disclosure by TSA in the TSA RFI and the subsequent collaboration with TSA, naming Cuong, Gormick, and Shortt as inventors.

40.     On information and belief, attorney Thompson was aware of the TSA RFI no later than February 13, 2009. The TSA RFI was the impetus of and motivation for the alleged invention; the TSA RFI was published and was widely reported; Targus, the inventors, and Thompson all participated in the filing of two provisional applications referenced in the application filed on February 13, 2009; the patent application makes reference to "the policy under the Transportation Security Administration (TSA)," "screening policies of the TSA," and "expedited procedures" to "allow screening of the case 700 using the scanning device 750 without requiring the user to unpack the case 700"; and Targus participated in TSA's program related to the TSA RFI for nearly a year prior to the filing of the provisional application on February 13, 2009.

41.     The application filed by attorney Thompson on behalf of Targus issued as the '578 Patent on October 29, 2013.

42.     The TSA RFI is prior art under pre-AIA 35 U.S.C. § 102(a) because the purported invention of the '578 Patent, or material aspects of it, was known by persons at TSA and described in the TSA RFI, which is a printed publication in the United States, before the purported invention thereof by the named inventors on the '578 Patent.

43.     At least the following information was material to the patentability of the subject

matter claimed in the application that resulted in the issuance of the ’578 Patent, and the issued claims of the ’578 Patent: (1) the disclosures of the TSA RFI, including: “A bag that would open completely so that each side of the bag would lie horizontally on the x-ray belt. One side of the bag would be designed to hold the laptop and nothing else. . . . A bag that would contain the laptop in a separate compartment from other equipment like chargers and cables. The accessories would be in a separate compartment.”; (2) Cuong, Gormick, and Shortt’s participation in a collaboration with TSA to conceive of, design, and develop the subject matter claimed in the ’578 Patent; (3) TSA’s specific guidelines, requirements, and restrictions for checkpoint friendly laptop bags; and (4) TSA’s contributions to the laptop bag designs that are covered by the ’578 Patent.

44. But for Cuong, Gormick, Shortt, and prosecuting attorney Thompson’s failure to disclose at least this material information to the United States Patent and Trademark Office (“PTO”), the ’578 Patent would not have issued.

45. The materiality of these disclosures is demonstrated by the claims of the ’578 Patent and supported by the prosecution history of the ’578 Patent. The applicants, for the purpose of patentability and to overcome a rejection made by the examiner, amended the application’s claims to add the limitation that “the second storage section” has a pouch having “a computer disposed therein” that is “configured without an additional pouch.” Ex. C hereto, at 6. Additionally, the applicants, for the for the purpose of patentability and to overcome a rejection made by the examiner, amended the application’s claims to add the limitation that “wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section.” *Id*. at 7. The applicants distinguished

prior art cited by the patent examiner by stating that "the purpose" of the design of the purported invention of the '578 Patent "is to isolate the computer in the second storage section to facilitate scanning." *Id*. at 25; *see also id.* at 32.  The applicants distinguished additional prior art cited by the patent examiner because the prior art was purportedly "not concerned with isolating a computer to facilitate scanning," and distinguished additional prior art cited by the patent examiner because it purportedly had "additional components [that] provide obstructions to scanning a computer in a storage section and defeat the purpose of isolating the computer." *Id*. at 25, 32.  The applicants further distinguished additional prior art by representing:  "The claim limitations reflect the purpose of the pending application which is to isolate a computer in the second storage section to facilitate scanning." *Id*. at 65; *see also id.* at 68.  Yet, applicants withheld the prior art disclosures made by TSA, including in the TSA RFI, that disclosed a bag design that isolated the computer in a storage section, and that was to be opened and laid horizontally during screening so as to allow uninhibited screening of a computer.

46.     Further, this withholding constituted egregious misconduct.

47.     On information and belief, Cuong, Gormick, and Shortt, and prosecuting attorney Thompson, knowingly withheld this material information with the specific intent to deceive the PTO, because they failed to disclose to the PTO the TSA RFI, and Cuong, Gormick, Shortt, and Plaintiff's collaboration with TSA in designing and developing the subject matter of the '578 Patent.  The TSA RFI issued seven (7) days prior to applicants' initial provisional patent application referenced in the '578 Patent, and on information and belief was the material impetus for the purported invention claimed in the '578 Patent in that it provided a "standard" (as conceded by Targus) for allowing laptop computers to remain within bags during airport screening and provided examples of such bags that included material characteristics that were subsequently

included by the '578 Patent applicants in claims and arguments to the PTO.  Yet, the '578 Patent applicants represented to the PTO that "[w]hen traveling through airport security, it is the policy under the Transportation Security Administration (TSA) to remove portable computers from luggage, cases, and the like" ('578 Patent at 2:16-18), which is a misrepresentation in view of TSA's public pronouncement that it would allow laptop computers to remain in bags during screening as part of the program announced in the TSA RFI.

48.    Targus itself stated, in a press release, that:  "The [Targus] Zip-Thru case is designed to meet guidelines established by Transportation Security Administration (TSA), which focus on the screeners' ability to get a clear image of the laptop when properly secured in the bag. In developing the Zip-Thru case, Targus worked in conjunction with TSA authorities to test the product through an actual airport screening device."  Ex. D hereto.

49.    In addition to knowingly withholding the TSA RFI, Targus intentionally withheld from the PTO its prior art products that anticipate one or more claims of the '578 Patent and are otherwise material prior art references that, had any of them been known by the Patent Office, would have resulted in the Patent Office rejecting one or more claims of the patent as unpatenable.

50.    Specifically, Targus withheld from the PTO its products model numbers (1) CCB1, (2) CDB1, and (3) CFP3 (collectively, the "Targus Material Prior Art Products").

**CCB1:**



UNFOLDED CONFIGURATION                    FOLDED CONFIGURATION

**CDB1:**



UNFOLDED CONFIGURATION                    FOLDED CONFIGURATION

**CFP3:**



UNFOLDED CONFIGURATION

FOLDED CONFIGURATION

51. Targus has admitted that it began selling each of the Targus Material Prior Art Products in the United States in 1999, and thus each qualifies as prior art under 35 U.S.C. § 102(b).

52. Each of the Targus Material Prior Art Products teaches a bifold computer case that isolates the computer on one side of the case, and permits a user to lay the case flat on a scanner such that the computer can be scanned without interference from an object in the other side of the case. For at least that reason, each of the Targus Material Prior Art Products is a material prior art reference.

53. The materiality of each of the Targus Material Prior Art Products is demonstrated in the claim charts attached hereto as Exs. E, F, and G for the CCB1, CDB1, and CFP3, respectively. These charts demonstrate that the Targus Material Prior Art Products anticipate multiple claims of the ’578 Patent and are otherwise material because they form a substantial part of obvious combinations of prior art that invalidate multiple claims of the ’578 Patent. The Targus Material Prior Art Products are not cumulative to the prior art considered by the Patent Office

during prosecution.  But for the withholding of these prior art references from the Patent Office, the Patent Office would have held multiple claims of the '578 Patent unpatentable under 35 U.S.C. § 102 based on these withheld prior art references and under 35 U.S.C. § 103 based on these withheld prior art references in combination with other prior art.

54.     Todd Gormick had knowledge of each of the Targus Material Prior Art Products.

55.     Todd Gormick was the Director Product Management for the Soft Goods/Bags department from 2002-2011, and thus would be aware of each of the products developed and sold within his department during that time, including the Targus Material Prior Art Products.

56.     In addition, during the time when the '578 Patent was in prosecution, Todd Gormick possessed documents and/or emails specifically listing each of the Targus Material Prior Art Products, and thus had actual knowledge of each of them.

57.     Todd Gormick withheld the Targus Material Prior Art Products from the PTO.

58.     Robert Shortt had actual knowledge of each of the Targus Material Prior Art Products.

59.     Robert Shortt was a senior executive in sales and product development at Targus from 2007-2015, and thus would be aware of each of the products developed and sold within his department during that time, including the Targus Material Prior Art Products.

60.     In addition, during the time when the '578 Patent was in prosecution, Robert Shortt possessed documents and/or emails specifically listing each of the Targus Material Prior Art Products, and thus had actual knowledge of each of them.

61.     Robert Shortt withheld the Targus Material Prior Art Products from the PTO.

62.     Bui Cuong had knowledge of at least the CDB1.

63.     Bui Cuong was the Director of Cut and Sew (Soft Goods), Product Management

beginning in 2007, and thus would be aware of products developed and sold within his department during that time, including at least the CDB1.

64. In addition, during the time when the ’578 Patent was in prosecution, Bui Cuong possessed documents and/or emails specifically listing the CDB1, and thus had actual knowledge of it.

65. Bui Cuong withheld at least the CDB1 from the PTO.

66. But for Gormick, Shortt, and Cuong’s failure to disclose at least the Targus Material Prior Art Products to the PTO, the ’578 Patent would not have issued.

67. The materiality of the Targus Material Prior Art Products is further demonstrated by the claims of the ’578 Patent and supported by the prosecution history of the ’578 Patent. The applicants, for the purpose of patentability and to overcome a rejection made by the examiner, amended the application’s claims to add the limitation that “the second storage section” has a pouch having “a computer disposed therein” that is “configured without an additional pouch.” Ex. C hereto, at 6. Additionally, the applicants, for the for the purpose of patentability and to overcome a rejection made by the examiner, amended the application’s claims to add the limitation that “wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section.” *Id*. at 7. The applicants distinguished prior art cited by the patent examiner by stating that “the purpose” of the design of the purported invention of the ’578 Patent “is to isolate the computer in the second storage section to facilitate scanning.” *Id*. at 25; *see also id.* at 32. The applicants distinguished additional prior art cited by the patent examiner because the prior art was purportedly “not

concerned with isolating a computer to facilitate scanning," and distinguished additional prior art cited by the patent examiner because it purportedly had "additional components [that] provide obstructions to scanning a computer in a storage section and defeat the purpose of isolating the computer." *Id*. at 25, 32.  The applicants further distinguished additional prior art by representing: "The claim limitations reflect the purpose of the pending application which is to isolate a computer in the second storage section to facilitate scanning." *Id*. at 65; *see also id.* at 68.  Yet, applicants withheld the Targus Material Prior Art Products, which were computer bags that isolated the computer in a storage section, and that can be opened and laid horizontally during screening so as to allow uninhibited screening of a computer.

68.     Further, this withholding constituted egregious misconduct.

69.     On information and belief, Cuong, Gormick, and Shortt, knowingly withheld this material information with the specific intent to deceive the PTO, because they failed to disclose to the PTO the Targus Material Prior Art Products, which were computer bags that isolated the computer in a storage section, and that was to be opened and laid horizontally during screening so as to allow uninhibited screening of a computer.  Because the examiner was not informed of this highly material prior art, the examiner examined the patent application that led to the '578 Patent using references not even directed to computer bags.  *See, e.g.*, Ex. C hereto at 25 (noting that Schell "does not even consider a portable computer as this technology did not exist at this time"), 65 (noting that Cline "does not even consider a portable computer as this technology did not exist at the time").  Had the examiner been apprised of the Targus Material Prior Art Products, the examiner would not have allowed the '578 Patent.  Each of Cuong, Gormick, and Shortt possessed documents and/or emails listing the Targus Material Prior Art Products during the prosecution of the patent application that led to the '578 Patent, but did not disclose them to the PTO.  Upon

information and belief, each of Cuong, Gormick, and Shortt knew that the withheld Targus Material Prior Art Products were material and made a deliberate decision to withhold it from the Patent Office.

70. For at least these reasons, the claims of the '578 Patent are rendered unenforceable under the doctrines of inequitable conduct and unclean hands.

**COUNTERCLAIM COUNT IV**

***Walker Process* Fraud and Attempted Monopolization in Violation of the Sherman Act, 15 U.S.C. § 2**

71. Victorinox incorporates by reference the allegations contained in Paragraphs 1 to 70 of its Counterclaims.

72. Plaintiff and Counterclaim-Defendant Targus makes and sells laptop bags and cases, including "checkpoint friendly" laptop bags and cases that allow travelers to pass through security checkpoints without removing their laptops from the case. (D.I. 1 at ¶¶ 7, 9).

73. On April 2, 2020, Targus filed its Complaint (D.I. 1) against Victorinox for patent infringement.

74. In its Complaint, Targus accuses Victorinox of infringing various claims of the '578 Patent, allegedly arising due to the manufacture, use, sale, offer for sale, or importation of several of Victorinox's products that Targus describes as "checkpoint friendly."

75. Targus knew that the '578 Patent was unenforceable before filing its patent infringement claims against Victorinox. The unenforceability and Targus's knowledge of the unenforceability is demonstrated by, inter alia, *Targus Group International, Inc. v. CODi, Inc.*, No. SACV 15-00353-CJC(Ex), ECF Nos. 32, 39 (Sept. 17, 2015 C.D. Cal.).

76. Targus filed its lawsuit against Victorinox because Targus recognized the competitive threat posed by Victorinox's products to Targus's market position. Targus filed and

has continued to maintain baseless patent infringement claims against Victorinox in an effort to prevent and/or hinder Victorinox's market entry and growth, and thereby reduce competition.

77. Targus's fraudulent conduct has harmed Victorinox and competition, in violation of antitrust laws, and, pursuant to the Clayton Antitrust Act, Victorinox is entitled to injunctive relief, damages, treble damages, and its attorneys' fees.

78. As fully set forth in Count III of Victorinox's Counterclaims (Paragraphs 24-70), which are incorporated by reference as though fully set forth herein, Targus[3] and named inventors, Bui Phu Cuong, Todd Gormick, and Robert Shortt, and/or their counsel made material misrepresentations and omissions in procuring the '578 Patent. These misrepresentations and omissions were made with the intent of misleading the PTO into issuing a patent that, but for the misrepresentations and omissions, would not have been issued. Targus's, the inventors', and/or attorney Thompson's fraudulent acts before the PTO constitute inequitable conduct that renders the '578 Patent unenforceable.

79. Targus filed this action knowing that the '578 Patent is invalid and unenforceable and continues to maintain its patent infringement claims against Victorinox despite clear evidence establishing the invalidity and unenforceability of the '578 Patent.

80. By fraudulently procuring the '578 Patent through deliberate misrepresentations and material omissions to the PTO, Cuong, Gormick, Shortt, and Targus have harmed competition in the relevant product market for checkpoint-friendly laptop bags and cases as described below. As a participant in the relevant market, Victorinox is directly affected by Targus's violations and

[3] On information and belief, the Plaintiff and Counterclaim Defendant Targus is the successor-in-interest to the assignee on the face of the '578 Patent, Targus Group International, Inc. For the purpose of these Counterclaims and Victorinox's defenses, "Targus" shall include both Targus International, LLC and Targus Group International, Inc.

has suffered direct antitrust injury as a result of these acts.  The net result of Targus's anticompetitive actions is injury to both competition and consumers.

81.    The relevant product market at issue in this case is checkpoint-friendly (TSA compliant) laptop bags and cases sold to end-user consumers.  Checkpoint-friendly laptop bags and cases are purchased by consumers who wish to pass through airport security checkpoints without being required to remove their laptop computers from their bags.  For consumers, laptop bags and cases without a TSA compliant mechanism for a consumer to pass a security checkpoint without removing his or her laptop computer are not readily interchangeable with TSA compliant checkpoint-friendly laptop bags or cases.

82.    The relevant geographic market is the United States.  Targus sells and has sold its checkpoint-friendly laptop bags and cases in interstate commerce throughout the United States.  (*See* D.I. 1 at ¶¶ 7, 9.)

83.    There are significant barriers to entry into the market for checkpoint-friendly laptop bags and cases that would allow Targus to achieve market power.  Such barriers include Targus's enforcement of the fraudulently-obtained claims of the '578 Patent and the limited design options for checkpoint-friendly laptop bags and cases that do not infringe the '578 Patent under Targus's asserted scope of the '578 Patent's claims.

84.    As demonstrated by its unlawful conduct described above in Count III, Targus has the specific intent to monopolize the market for checkpoint-friendly laptop bags and cases, through, inter alia, Targus's enforcement of the fraudulently-obtained '578 Patent, which is directed to a computer case that can be scanned at an airport security checkpoint without removing a computer from the case and methods of using and manufacturing such a bag.

85.     Targus's enforcement of the fraudulently-obtained '578 Patent includes, at least, filing seven lawsuits alleging infringement of the '578 Patent.

86.     Unless Targus's predatory and anticompetitive conduct is stopped, Targus will continue to maintain and enforce its predatory, exclusionary and unfairly anti-competitive practices that are intended to and, if not checked, will monopolize, or will have a dangerous probability of success in monopolizing, the U.S. market for checkpoint-friendly laptop bags and cases.

87.     On information and belief, Targus currently controls a significant portion of this market.  Targus has either already eliminated or is currently attempting to eliminate competitors through various lawsuits asserting the '578 Patent and by asserting a scope of patent claim coverage that would result in driving other competitors out of the market.  This current lawsuit is part of this same effort and is designed to eliminate Victorinox as a competitor, use the '578 Patent as a barrier to competition, and monopolize the market for checkpoint-friendly laptop bags and cases.

88.     Targus's anticompetitive conduct amounts to unlawful attempted monopolization in violation of Section 2 of the Sherman Act, 15 U.S.C. § 2.

89.     Targus's unlawful conduct, as set forth in Count III of these Counterclaims and in the allegations above in this Count IV, has harmed competition in the market for checkpoint-friendly laptop bags and cases by, inter alia, Targus's prior and current assertions of the '578 Patent and/or the stipulated injunctions entered in prior litigation.  *See Targus Int'l LLC v. SwissDigital USA Co., Ltd.*, 8-20-cv-00782 (C.D. Cal. filed Apr. 22, 2020) (pending); *Targus Int'l LLC v. Everki USA, Inc.*, 8-20-cv-00641 (C.D. Cal. filed Apr. 2, 2020) (pending); *Targus Int'l LLC v. Grp. III Int'l, Inc.*, 1-20-cv-21435 (S.D. Fla. filed Apr. 2, 2020) (pending); *Targus Grp. Int'l, Inc v.*

*Timbuk2 Designs, Inc*, 8-17-cv-00972 (C.D. Cal. dismissed Se. 25, 2018) (dismissed pursuant to settlement agreement); *Targus Grp. Int'l, Inc. v. CODi, Inc.*, No. SACV 15-00353-CJC-RNB, ECF No. 51 (Feb. 13, 2017 C.D. Cal.) (stipulated injunction entered); *Targus Grp. Int'l, Inc. v. Fairhaven Grp., Inc.*, 8-15-cv-00465-CJC-JCG, ECF No. 29 (Jan. 6, 2016 C.D. Cal.) (stipulated injunction entered). Targus's unlawful conduct has caused Victorinox to suffer injury by impeding and/or slowing, and/or attempting to impede or slow, Victorinox's participation in the same market, thereby causing it lost sales and profits, and by forcing it to incur significant costs to defend Targus's meritless lawsuit.

90. Victorinox has been directly harmed by Targus's misconduct in violation of the antitrust laws and is entitled to injunctive relief, damages, treble damages and attorneys' fees under 15 U.S.C. § 15.

**PRAYER FOR RELIEF**

WHEREFORE, Defendant and Counterclaimant Victorinox prays for the following relief:

A. That Targus's claims against Victorinox be dismissed with prejudice and that Targus take nothing by way of its Complaint;

B. That judgment be rendered in favor of Victorinox;

C. For a declaration that Victorinox has not infringed any claim of the '578 Patent, either directly, indirectly, or willfully;

D. For a declaration that each and every claim of the '578 Patent is invalid;

E. For a declaration that the '578 Patent is unenforceable due to inequitable conduct;

F. That Victorinox's damages be trebled in accordance with the antitrust laws, including an award of any other remedy provided by 15 U.S.C. § 15;

G. For an order finding this case exceptional pursuant to 35 U.S.C. § 285 and awarding Victorinox its reasonable attorneys' fees;

H. That Victorinox be awarded its actual damages, including pre- and post- judgment interest as permitted by law;

I. That Victorinox be awarded its reasonable attorneys' fees and costs of suit as allowed by law; and

J. For such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Defendant and Counterclaimant Victorinox hereby respectfully demands a trial by jury, pursuant to Rule 38 of the Federal Rules of Civil Procedure, on all issues so triable.

Dated: January 15, 2021

*/s/ Francis DiGiovanni*
Francis DiGiovanni (No. 3189)
Thatcher A. Rahmeier (No. 5222)
FAEGRE DRINKER BIDDLE & REATH LLP
222 Delaware Avenue, Suite 1410
Wilmington, DE 19801
(302) 467-4200
francis.digiovanni@faegredrinker.com
thatcher.rahmeier@faegredrinker.com

Kelly J. Fermoyle
FAEGRE DRINKER BIDDLE & REATH LLP
2200 Wells Fargo Center
90 South Seventh Street
Minneapolis, MN 55402
(612) 766-7000
kelly.fermoyle@faegredrinker.com

*Attorneys for Defendant / Counterclaim Plaintiff*

# EXHIBIT A

# Request for Information
# Checkpoint Friendly Laptop Bag

## 1. General Information
Document: Request for Information (RFI)

## 2. Contracting Office Address
Department of Homeland Security, Transportation Security Administration (TSA), 601 South 12th Street, Arlington, VA 22202

## 3. Background

Over a quarter of all air travelers now carry laptops with them when they pass through the TSA screening checkpoint. The TSA requirement to remove the laptop from the computer bag is a common complaint heard by TSA. Despite the inconvenience it poses to passengers, it is a necessary requirement in order to ensure that the x-ray image of the laptop is not further complicated by the superimposed images of the rest of the bags contents. If TSA was able to eliminate this requirement, it could lower passenger stress levels, increase checkpoint throughput, and reduce the number of claims TSA receives for laptops that have been damaged during screening[1].

## 4. Objectives

The overall objective of this RFI is to make the screening process for laptops more efficient for both passengers and TSOs. TSA is seeking prototype laptop computer bags and designs that would reduce, if not eliminate altogether, the unloading and repacking time of laptops at security checkpoints in airports. Specifically, TSA would like industry to create bag designs that would allow passengers to **not** remove their laptops from carry-on bags for security screening. By allowing passengers to keep their laptops in their computer or carry-on bags, TSA can further reduce wait times at the checkpoint and improve the overall passenger security experience.

Responders to this RFI will submit sample/prototype bags and designs to TSA. TSA will then review the sample/prototype bags and designs and use the submittals to evaluate whether it can eliminate the requirement to remove laptops from bags for certain types of bags.

## 5. Performance Criteria

TSA is seeking innovative prototypes for laptop bags that would accomplish the following performance criteria:

---

1. The bag and laptop can be viewed by the TSO in a single x-ray image (i.e., the laptop bag in scanning configuration would not exceed any one of the following dimension, 16in. H by 24in. W by 36in. L whereby the laptop will not need to be placed in a separate TSA bin.)
2. The bag allows for effective x-ray visualization and screening of the laptop by ensuring the following in its design:
    a. Transmission X-ray Image quality attainable by current TSA x-ray equipment shall not be degraded by the materials used in the bag design as measured in accordance with American Society of Testing and Materials (ASTM) F792-01 standard.
    b. The laptop image is clear and distinguishable from the bag (i.e., there can be no straps, pockets, zippers, handles, closures that interfere with the image of the laptop); and
    c. The laptop image is not shielded by the contents of the bag (i.e.., there can be no electronics, chargers, battery, stationary, wires, paper products and pens that interfere with the image of the laptop).
3. The bag has distinguishing, self-evident features that allow the TSO to identify that the laptop does not need to be removed from the bag. These features would include the physical design characteristics of the bag itself and not symbols or labeling.
4. Minimize the possibility that laptops could be damaged during the screening process or during normal handling.

TSA has internally discussed a few high-level design concepts. They are provided below as illustrative examples of possible solutions.

1. A bag that would open completely so that each side of the bag would lie horizontally on the x-ray belt. One side of the bag would be designed to hold the laptop and nothing else.
2. A bag that would open completely so that each side of the bag would lie horizontally on the x-ray belt. Opening both sides of the bag would expose the laptop in the middle of the bag being held vertically by clips.
3. A bag that would contain the laptop in a separate compartment from other equipment like chargers and cables. The accessories would be in a separate compartment.

## 6. Evaluation Process

There will be seven steps to the Checkpoint Friendly Laptop Bag development process.

1. No later than 45 days after the posting of this RFI interested companies shall submit a white paper detailing company's intention to provide TSA with prototype bags. The white paper shall include high-level descriptions of the types of bags that the company plans to submit, contact information, an expected timeline for submitting the bags, and how the contractor will meet criteria 1 through 4 listed in Section 5 (Performance Criteria) of this public

announcement.  The white paper should also identify the company's desire to meet with TSA to discuss technical issues associated with bag development.

2.  The TSA will review the white paper submissions and evaluate each vendor against the four criteria listed in Section 5 (Performance Criteria).  The TSA will select those vendors who have satisfactorily met the requirements to submit prototype bags for review.  Companies will be notified in writing within two weeks after submission if the bag concepts are acceptable or not acceptable for testing.  If the bag concepts are acceptable for testing, TSA will invite the company to TSA headquarters to have a technical discussion around TSA screening equipment and TSO needs associated with laptop bags.

3.  No later than 90 days after the posting of this RFI companies shall submit no more than three (3) bag prototypes to the TSA.  The bag prototypes should be accompanied by written explanations verifying how all four of the performance criteria are met.

4.  TSA officials will conduct initial reviews of the prototypes to evaluate if the criteria are met. Companies will be notified in writing of eligibility approximately two business weeks after the prototype bags are received by the TSA.

5.  If the criteria are met, the prototype bags will be further tested using both single view, multi-view, and computed tomography x-ray screening equipment to determine if the images of the computers have sufficient resolution, clarity and are not shielded by the other contents of the bag.

6.  TSA will use the results of the tests to evaluate whether it can eliminate the requirement to remove laptops from bags for certain types of bags.

## 7.  Point of Contact

Responses shall be prepared using 12 pt. font, 1 inch margin and 8.5" x 11" paper, and shall not exceed ten (10) pages in length, including all images, data displays, charts, graphs, and tables. Offerors must submit either a hard- copy or electronic version.  The electronic version must be submitted in PDF format or in read-only Word documents.  Responses must be received by Melissa Conley no later than April 17, 2008 3:00 P.M. EST (Eastern Standard Time) (see note).

This announcement is for information purposes only and shall not be construed as a commitment or a promise of a contract by the Government.  This announcement does not commit the Government to pay any costs incurred in the submission of responses.

Those companies having questions regarding this Request for Information must submit them no later than ten (10) business days after the posting date of this notice via email to: melissa.conley@dhs.gov.

Melissa Conley
Office of Acquisitions
Melissa.Conley@dhs.gov

Mailing Address:
Transportation Security Administration
601 South 12th Street, TSA 25
Attn: Melissa Conley
Arlington, Virginia 22202

*Note: Priority and "express" mail delivery times ( to include FedEx, UPS, DHL, and others) to the TSA are usually 3-4 days longer than standard delivery times for these types of mail. Standard USPS mail generally arrives as fast, if not faster, than all other types of mail.*

# EXHIBIT B

NewsRoom

3/7/08 USA TODAY 1A
2008 WLNR 4541755

USA Today (USA)
Copyright © 2008 USA TODAY

March 7, 2008

Section: NEWS

TSA is looking for laptop case that can clear security
Aim is to cut hassle of taking computer out

Thomas Frank

WASHINGTON

WASHINGTON -- The Transportation Security Administration is taking aim at one of the biggest airport-security hassles: It's trying to find a way to let travelers leave laptops in their cases at checkpoints.

The agency is searching for a "checkpoint friendly" case that would give screeners a clear view as it goes through an X-ray machine. One possible design is a case that unfolds like a book, with a laptop on one side and gear on the other side.

Prototypes are being solicited from companies. New cases could ease security for the 250 million travelers who bring laptops on airplanes each year and speed lines for everyone, TSA technology chief Mike Golden said.

"The key is the laptop is separate from any other items," Golden said.

The business of designing laptops could be revolutionized as manufacturers roll out TSA-compliant bags, said Al Giazzon, head of marketing for casemaker Targus. "The vast majority of people who travel are going to look for a bag that complies with the standard," Giazzon said. His California company has worked on checkpoint-friendly cases.

The TSA will begin prototype testing in June. It could eventually set standards for checkpoint-friendly cases and require unique features that would signal to airport screeners that the bags can go through X-rays with laptops inside.

Laptops must be removed because they are so dense that they could block X-ray machines from illuminating weapons hidden in cases.

Peter Troccoli, a 250,000-mile-a-year traveler from Portland, Ore., said checkpoint-friendly cases would help a little when he goes through security and removes his shoes, belt, coins and cellphone and pulls liquids from his bag.

"I end up with so many little containers and stuff, if I didn't have to take my computer out, that's one less thing," he said.

**---- Index References ----**

Company: ACI WORLDWIDE INCORPORATION

TSA is looking for laptop case that can clear security, 2008 WLNR 4541755

Industry: (Transportation (1TR48); I.T. (1IT96); Air Transportation (1AI53); Physical Security (1PH53); I.T. in Transportation (1IT48); Airport Security (1AI57); Computer Equipment (1CO77); Air Safety (1AI68); Security (1SE29); Passenger Transportation (1PA35); PC (1PC82))

Language: EN

Other Indexing: (TRANSPORTATION SECURITY ADMINISTRATION; TSA) (Al Giazzon; Giazzon; Golden; Mike Golden; Peter Troccoli)

Word Count: 360

**End of Document**

© 2020 Thomson Reuters. No claim to original U.S. Government Works.

NewsRoom

WESTLAW © 2020 Thomson Reuters. No claim to original U.S. Government Works. 2

# EXHIBIT C

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)
PTO/SB/30EFS (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

# REQUEST FOR CONTINUED EXAMINATION(RCE)TRANSMITTAL
## (Submitted Only via EFS-Web)

| Application Number | 12/370,824 | Filing Date | 2009-02-13 | Docket Number (if applicable) | 52253/290 | Art Unit | 3781 |
|---|---|---|---|---|---|---|---|
| First Named Inventor | Bui Phu Cuong | | | Examiner Name | Collado, Cynthia Francisca | | |

**This is a Request for Continued Examination (RCE) under 37 CFR 1.114 of the above-identified application.**
Request for Continued Examination (RCE) practice under 37 CFR 1.114 does not apply to any utility or plant application filed prior to June 8, 1995, or to any design application. The Instruction Sheet for this form is located at WWW.USPTO.GOV

SUBMISSION REQUIRED UNDER 37 CFR 1.114

Note: If the RCE is proper, any previously filed unentered amendments and amendments enclosed with the RCE will be entered in the order in which they were filed unless applicant instructs otherwise. If applicant does not wish to have any previously filed unentered amendment(s) entered, applicant must request non-entry of such amendment(s).

☐ Previously submitted. If a final Office action is outstanding, any amendments filed after the final Office action may be considered as a submission even if this box is not checked.

- ☐ Consider the arguments in the Appeal Brief or Reply Brief previously filed on ____________
- ☐ Other ____________

☒ Enclosed

- ☒ Amendment/Reply
- ☐ Information Disclosure Statement (IDS)
- ☐ Affidavit(s)/ Declaration(s)
- ☐ Other ____________

MISCELLANEOUS

☐ Suspension of action on the above-identified application is requested under 37 CFR 1.103(c) for a period of months ____________ (Period of suspension shall not exceed 3 months; Fee under 37 CFR 1.17(i) required)

☐ Other ____________

FEES

☒ **The RCE fee under 37 CFR 1.17(e) is required by 37 CFR 1.114 when the RCE is filed.**
The Director is hereby authorized to charge any underpayment of fees, or credit any overpayments, to Deposit Account No 502375

SIGNATURE OF APPLICANT, ATTORNEY, OR AGENT REQUIRED

☒ Patent Practitioner Signature
☐ Applicant Signature

Doc code: RCEX
Doc description: Request for Continued Examination (RCE)

PTO/SB/30EFS (07-09)
Approved for use through 07/31/2012. OMB 0651-0031
U.S. Patent and Trademark Office; U.S. DEPARTMENT OF COMMERCE
Under the Paperwork Reduction Act of 1995, no persons are required to respond to a collection of information unless it contains a valid OMB control number.

| Signature of Registered U.S. Patent Practitioner | | | |
|---|---|---|---|
| Signature | /John R. Thompson/ | Date (YYYY-MM-DD) | 2013-03-27 |
| Name | John R. Thompson | Registration Number | 40842 |

This collection of information is required by 37 CFR 1.114. The information is required to obtain or retain a benefit by the public which is to file (and by the USPTO to process) an application. Confidentiality is governed by 35 U.S.C. 122 and 37 CFR 1.11 and 1.14. This collection is estimated to take 12 minutes to complete, including gathering, preparing, and submitting the completed application form to the USPTO. Time will vary depending upon the individual case. Any comments on the amount of time you require to complete this form and/or suggestions for reducing this burden, should be sent to the Chief Information Officer, U.S. Patent and Trademark Office, U.S. Department of Commerce, P.O. Box 1450, Alexandria, VA 22313-1450.

*If you need assistance in completing the form, call 1-800-PTO-9199 and select option 2.*

2

EFS - Web 2.1.15

# Privacy Act Statement

The Privacy Act of 1974 (P.L. 93-579) requires that you be given certain information in connection with your submission of the attached form related to a patent application or patent.  Accordingly, pursuant to the requirements of the Act, please be advised that:  (1) the general authority for the collection of this information is 35 U.S.C. 2(b)(2); (2) furnishing of the information solicited is voluntary; and (3) the principal purpose for which the information is used by the U.S. Patent and Trademark Office is to process and/or examine your submission related to a patent application or patent.  If you do not furnish the requested information, the U.S. Patent and Trademark Office may not be able to process and/or examine your submission, which may result in termination of proceedings or abandonment of the application or expiration of the patent.

The information provided by you in this form will be subject to the following routine uses:

1. The information on this form will be treated confidentially to the extent allowed under the Freedom of Information Act (5 U.S.C. 552) and the Privacy Act (5 U.S.C. 552a).  Records from this system of records may be disclosed to the Department of Justice to determine whether the Freedom of Information Act requires disclosure of these records.

2. A record from this system of records may be disclosed, as a routine use, in the course of presenting evidence to a court, magistrate, or administrative tribunal, including disclosures to opposing counsel in the course of settlement negotiations.

3. A record in this system of records may be disclosed, as a routine use, to a Member of Congress submitting a request involving an individual, to whom the record pertains, when the individual has requested assistance from the Member with respect to the subject matter of the record.

4. A record in this system of records may be disclosed, as a routine use, to a contractor of the Agency having need for the information in order to perform a contract.  Recipients of information shall be required to comply with the requirements of the Privacy Act of 1974, as amended, pursuant to 5 U.S.C. 552a(m).

5. A record related to an International Application filed under the Patent Cooperation Treaty in this system of records may be disclosed, as a routine use, to the International Bureau of the World Intellectual Property Organization, pursuant to the Patent Cooperation Treaty.

6. A record in this system of records may be disclosed, as a routine use, to another federal agency for purposes of National Security review (35 U.S.C. 181) and for review pursuant to the Atomic Energy Act (42 U.S.C. 218(c)).

7. A record from this system of records may be disclosed, as a routine use, to the Administrator, General Services, or his/her designee, during an inspection of records conducted by GSA as part of that agency's responsibility to recommend improvements in records management practices and programs, under authority of 44 U.S.C. 2904 and 2906.  Such disclosure shall be made in accordance with the GSA regulations governing inspection of records for this purpose, and any other relevant (i.e., GSA or Commerce) directive.  Such disclosure shall not be used to make determinations about individuals.

8. A record from this system of records may be disclosed, as a routine use, to the public after either publication of the application pursuant to 35 U.S.C. 122(b) or issuance of a patent pursuant to 35 U.S.C. 151.  Further, a record may be disclosed, subject to the limitations of 37 CFR 1.14, as a routine use, to the public if the record was filed in an application which became abandoned or in which the proceedings were terminated and which application is referenced by either a published application, an application open to public inspections or an issued patent.

9. A record from this system of records may be disclosed, as a routine use, to a Federal, State, or local law enforcement agency, if the USPTO becomes aware of a violation or potential violation of law or regulation.

**CERTIFICATE OF EFS TRANSMISSION**

| **Applicant:** Bui Phu Cuong et al. | | | | **Docket No.: 52253/290** |
|---|---|---|---|---|
| **Application No.:** 12/370,824 | **Filing Date:** 02/13/2009 | **Examiner:** Cynthia Francisca Collado | **Group Art Unit:** 3781 | **Confirmation No.** 6417 |

**Invention: PORTABLE COMPUTER CASE**

I hereby certify that the following papers are being transmitted to the United States Patent and Trademark Office via the EFS-Web electronic filing system on the date set forth below:

Amendment and Response
Request for Continued Examination

☒ Fees being paid for:

Request for Continued Examination and additional claim fees

The Director is hereby authorized to charge payment of the following fees associated with this communication or credit any overpayment to Deposit Account No. 502375:

☒ Any additional filing fees required under 37 CFR 1.16.
☒ Any patent application processing fees under 37 CFR 1.17.

☒ Payment by credit card.

**Signature: /John R. Thompson/** **Dated: March 27, 2013**

**Printed Name: John R. Thompson** **Attorney Registration No.: 40,842**

**Stoel Rives, LLP**
**One Utah Center**
**201 S. Main Street, Suite 1100**
**Salt Lake City, Utah 84111**
**Phone: (801) 328-3131**
**Facsimile: (801) 578-6999**

**Certificate of Mailing or Transmission**

I hereby certify that this paper (along with any referred to as being attached or enclosed) is being transmitted to the USPTO via the EFS-Web electronic filing system or Facsimile (571-273-8300) on the date set forth below, or being deposited with the USPS as First Class Mail in an envelope addressed to Mail Stop ________________________, Commissioner for Patents, P.O. Box 1450, Alexandria, VA 22313-1450, on the date set forth below.

/Janet L. Wilson/ Date: March 27, 2013
Janet L. Wilson

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of

**Bui Phu Cuong et al.**

Confirmation No. 6417

Application No. 12/370,824

Filed: February 13, 2009

For: Portable Computer Case

Group Art Unit: 3781

Examiner: COLLADO, CYNTHIA FRANCISCA

Attorney Docket No. 52253/290

Date: March 27, 2013

AMENDMENT AND RESPONSE

TO THE COMMISSIONER FOR PATENTS:

In response to the Final Office Action mailed on January 4, 2013, please amend the above-identified patent application as follows.

**Amendments to the Claims** are reflected in the listing of claims that begins on page 2 of this paper.

**Remarks** begin on page 20 of this paper.

Listing of Claims:

1. (Currently Amended) A bi-fold case to allow for convenient security screening of a computer, comprising:

a first storage section comprising a first outer side, a first inner side, a first proximal end, and a first distal end opposite the first proximal end, the first outer side, first inner side, first proximal end, and first distal end defining a first pouch, wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch; and

a second storage section comprising a second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a second proximal end, and a second distal end opposite the second proximal end, the ~~second outer side, second inner side, second proximal end, and second distal end defining~~ second storage section comprising,

a second pouch and the second storage section configured without an additional pouch, the second pouch configured to receive a computer, wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein, and

a second pouch fastener configured to substantially enclose only the second pouch and thereby retain a computer therein,

the second storage section foldably joined at the second proximal end to the first proximal end of the first storage section such that the second proximal end and the first

proximal end are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge,

wherein the first and second inner sides are disposed adjacent one another in [[a]] the folded configuration and separated in an unfolded configuration,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in [[an]] the unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section

~~wherein the second inner side of the second storage section comprises a cover configured to allow a computer disposed within the second storage section to be scanned by a scanning device when the case is in the unfolded configuration~~.

2. (Cancelled)

3. (Currently Amended) The case of claim 1, further comprising a fastener to selectively secure the first storage section and the second storage section in the folded configuration.

4. (Original) The case of claim 1, wherein the scanning device is an X-ray scanner.

5. (Currently Amended) The case of claim 1, wherein the inner side of the second

pouch ~~cover~~ is configured to allow for visual inspection of a computer disposed within the second pouch of the second storage section when second storage section is in the unfolded configuration.

6.  (Currently Amended)  The case of claim 1, wherein the outer side of the second storage section is substantially opaque and the inner side of the second pouch comprises ~~cover is comprised of~~ a substantially transparent material.

7.  (Currently Amended)  The case of claim 6, wherein the inner side of the second pouch comprises ~~cover is comprised of~~ a mesh material.

8.  (Previously Presented)  The case of claim 1, further comprising a foldable container disposed between the first storage section and the second storage section.

9.  (Previously Presented)  The case of claim 8, wherein the foldable container is configured to fold between the first storage section and the second storage section when the second storage section is in the folded configuration, and wherein the foldable container is configured to open to form a container when the second storage section is in the unfolded configuration.

10.  (Currently Amended)  The case of claim 9, wherein the foldable container is configured to receive one or more personal items when the first storage section is in the unfolded configuration.

11. (Original) The case of claim 10, wherein the foldable container is configured to allow the one or more personal items disposed therein to be scanned by the scanning device.

12. (Original) The case of claim 10, wherein the foldable container is configured to allow the one or more personal items disposed therein to be visually inspected.

13. (Cancelled)

14. (Previously presented) The case of claim 1, wherein the inner side of the first storage section comprises a pocket container, and wherein the pocket container is configured to receive one or more personal items and to allow the one or more personal items received therein to be scanned by a scanning device.

15. (Currently Amended) The case of claim 1, further comprising indicia, non-unique to the computer case, indicating the case complies with a standard of a scanning authority.

16. (Original) The case of claim 15, wherein a portion of the indicia is visible.

17. (Currently Amended) The case of claim 15, wherein ~~a portion of~~ the indicia is embedded in the case and only visible through the use of a scanning device.

18. (Original) The case of claim 15, wherein the indicia comprises authentication means.

19. (Currently Amended) A bi-fold computer case to allow for convenient security screening of a computer disposed therein, the bi-fold computer case having a folded and an unfolded configuration, the bi-fold computer case comprising:

a first storage section comprising a first outer side, a first inner side, a first proximal end, and a first distal end opposite the first proximal end, the first outer side, first inner side, first proximal end, and first distal end defining a first pouch, wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch;

a second storage section comprising a second outer side, a second inner side, a second proximal end, and a second distal end opposite the second proximal end, the second section comprising a second pouch configured to receive a computer, the second storage section configured without an additional pouch, wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein, the second storage section foldably joined at the second proximal end to the first proximal end of the first storage section such that the first and second proximal ends are coupled adjacent one another, the first and second proximal ends forming a hinge configured to enable a scanning device to scan through the hinge,

wherein in the folded configuration, the first inner side is approximated to the second inner side, and

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in [[an]] the unfolded configuration;

a fastener to selectively maintain the computer case in the folded configuration; and

indicia, non-unique to the computer case, indicating that the computer case complies with a standard of a scanning authority, wherein the second inner side comprises a cover configured to allow a computer disposed within the second storage section to be scanned by a scanning device,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section.

20. (Currently amended) The ~~foldable~~ bi-fold computer case of claim 19, wherein the scanning device is an X-ray scanner.

21. (Currently amended) The ~~foldable~~ bi-fold computer case of claim 19, wherein the second outer side of the second storage section is substantially opaque and the second inner side of the second storage section includes a ~~cover is~~ substantially transparent

material to allow a computer disposed within the second storage section to be visually inspected.

22.  (Currently Amended)  The ~~foldable~~ bi-fold computer case of claim 19, further comprising a foldable container, wherein the foldable container is configured to fold between the first and second inner sides when the computer case is in the folded configuration and to open to form a container disposed between the first and second storage sections when the ~~foldable~~ computer case is in the unfolded configuration, and wherein the foldable container is configured to receive one or more personal items when in the open configuration.

23.  (Currently Amended)  A bi-fold computer case to allow for convenient security screening of a computer and having a folded configuration and an unfolded configuration, the computer case comprising:

a first storage panel comprising a first inner side, a first outer side, a first proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch, wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch;

a second storage panel comprising a second inner side, a second outer side, second proximal end, and a second distal end opposite the second proximal end, the ~~second inner side, second outer side, second proximal end, and second distal end defining~~ second storage panel comprising a second pouch and the second storage

panel configured without an additional pouch, the second pouch configured to receive a computer, wherein the second storage panel and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein, the second storage panel foldably joined at the second proximal end to the first proximal end of the first storage panel such that the first and second proximal ends are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge,

wherein in the folded configuration of the foldable computer case, the inner side of the first storage panel is approximated to the inner side of the second storage panel,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in [[an]] the unfolded configuration;

~~a cover comprising the second inner side of the second storage panel,~~

~~the cover configured to allow a computer disposed within the second storage panel to be scanned by a scanning device when the computer case is in the unfolded configuration;~~

a fastener to selectively maintain the bi-fold computer case in the folded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon a same planar surface, an object in the first storage panel is removed from interfering with a scanner positioned above and below

the second storage panel to enable uninhibited scanning of a computer in the second pouch of the second storage panel~~;~~

~~a foldable container disposed between the first inner side of the first storage panel and the second inner side of the second storage panel, wherein the foldable container is configured to fold between the first storage panel and the second storage panel when the bi-fold computer case is in the folded configuration and to open to form a container when the foldable container is in the unfolded configuration~~.

24. (Currently Amended) A bi-fold computer case, comprising:

a first section comprising a first inner side, a first outer side, a first proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch, wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch;

a second section comprising a second inner side having a surface area approximately equal to a surface area of the first inner side, a second outer side, a second proximal end, and a second distal end opposite the second proximal end, the ~~second inner side, second outer side, second proximal end, and second distal end defining~~ second section comprising a second pouch and the second section configured without an additional pouch, the second pouch configured to receive a computer, wherein the second section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein,

the first proximal end of the first section foldably joined to the second proximal end of the second ~~storage~~ section such that the first and second proximal ends are coupled adjacent one another, to form a hinge configured to enable a scanning device to scan through the hinge ~~wherein the second storage section is configured to receive a computer~~,

wherein in a folded configuration of the bi-fold computer case, the inner side of the first section ~~storage panel~~ is approximated to the inner side of the second section ~~storage panel~~,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in an unfolded configuration

wherein in the unfolded configuration with the outer sides of both the first and second sections laid flat upon a same planar surface, an object in the first section is removed from interfering with a scanner positioned above and below the second section to enable uninhibited scanning of a computer in the second pouch of the second section; and

a computer retention member configured to selectively secure a computer within the second ~~storage~~ section, wherein the second ~~storage~~ section is configured to allow the computer within the second ~~storage~~ section to be scanned by a scanning device without removing the computer from the second ~~storage~~ section.

25. (Currently Amended) The computer case of claim 24, further comprising indicia, non-unique to the computer case, wherein the indicia indicates that the computer case complies with a standard of a scanning authority.

26. (Original) The computer case of claim 25, wherein a portion of the indicia is visible to scanning personnel.

27. (Currently Amended) The computer case of claim 25, wherein ~~a portion of~~ the indicia is embedded in the case and is visible only through the use of a scanning device.

28. (Original) The computer case of claim 25, wherein the indicia comprises means for authenticating the indicia.

29. (Original) The computer case of claim 24, wherein the second storage section comprises a recess configured to receive the computer, and wherein the retention member comprises a strap configured to secure the computer within the recess.

30. (Currently Amended) A method for providing a bi-fold computer case, comprising:

providing a first storage section including a first inner side, a first outer side, a proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch, wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch;

providing a second storage section having a surface area approximately equal to a surface area of the first storage section and including a second inner side, a second outer side, a second proximal end, and a second distal end opposite the second

proximal end, ~~the second inner side, second outer side, second proximal end, and second distal end defining a second pouch~~ the second storage section comprising a second pouch and the second storage section configured without an additional pouch, the second pouch configured to receive a computer, wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein;

foldably joining the first storage section to the second storage section at the first and second proximal ends to form a hinge configured to enable a scanning device to scan through the hinge such that the first and second proximal ends remain adjacent one another in both [[a]] folded and unfolded configurations, ~~wherein the second pouch is configured to receive a computer,~~ wherein the second inner and outer sides are configured to allow the computer secured within the second pouch to be scanned by a scanning device without removing the computer from the second pouch,

wherein in the folded configuration of the bi-fold computer case, the inner side of the first storage section is approximated to the inner side of the second storage section,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in [[an]] the unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below

the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section.

31. (Previously Presented) The method of claim 30, further comprising attaching a fastener to the first storage section and to the second storage section, wherein the fastener is configured to selectively secure the first storage section and the second storage section in the folded configuration.

32. (Original) The method of claim 30, wherein the scanning device is an X-ray scanner.

33. (Previously Presented) The method of claim 30, wherein the second inner side is configured to allow for visual inspection of the computer disposed within the second storage section.

34. (Currently Amended) The method of claim 33, wherein the second outer side is opaque and the second inner side of the second pouch comprises a ~~the second inner side is~~ substantially transparent material.

35. (Previously Presented) The method of claim 34, wherein the second inner side is comprised of a mesh material.

36. (Currently Amended) The method of claim 30, further comprising attaching a

foldable container to the first storage section and to the second storage section, wherein the foldable container is configured to fold between the first storage section and the second storage section when the first storage section and the second storage section are in [[a]] <u>the</u> folded configuration, and wherein the foldable container is configured to open to form a container when the first storage section and the second storage section are in [[an]] <u>the</u> unfolded configuration.

37. (Previously Presented) The method of claim 36, wherein the foldable container is configured to receive one or more personal items when the first storage section and the second storage section are in the unfolded configuration.

38. (Original) The method of claim 37, wherein the foldable container is configured to allow the one or more personal items disposed therein to be scanned by the scanning device.

39. (Original) The method of claim 37, wherein the foldable container is configured to allow the one or more personal items disposed therein to be visually inspected.

40. (Currently Amended) The method of claim 30, further comprising attaching indicia to the computer case, wherein the indicia <u>is non-unique to the computer case and</u> indicates that the computer case complies with a standard of a scanning authority.

41. (Original) The method of claim 40, wherein a portion of the indicia is visible.

42. (Currently Amended) The method of claim 40, wherein ~~a portion of~~ the indicia is embedded in the computer case and is only visible through the use of a scanning device.

43. (Original) The method of claim 40, further comprising including an authentication credential in the indicia.

44. (Currently Amended) A method for manufacturing a bi-fold computer case, comprising:

providing a first storage section including a first inner side, a first outer side, a proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch, wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch;

providing a second storage section including a second inner side, a second outer side, a second proximal end, and a second distal end opposite the second proximal end, ~~the second inner side, second outer side, second proximal end, and second distal end defining a second pouch to receive a computer~~ the second storage section comprising a second pouch and the second storage section configured without an additional pouch, the second pouch configured to receive a computer, wherein the second storage section and the second outer and inner sides are configured to enable a

scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein,

~~wherein the second inner and outer sides are configured to allow the computer to be scanned by a scanning device without removing the computer from the second pouch;~~

foldably attaching the first proximal end of the first storage section to the second proximal end of the second storage section to form a hinge configured to enable a scanning device to scan through the hinge,

wherein in a folded configuration of the bi-fold computer case, the inner side of the first storage section is approximated to the inner side of the second storage section,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in an unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section; and

attaching a foldable container to the first storage section and to the second storage section, wherein the foldable container is configured to fold between the first storage section and the second storage section when the first storage section and the second storage section are in a folded configuration, and wherein the foldable container is configured to open to form a container when the first storage section and the second storage section are in an unfolded configuration.

45. (New)  The case of claim 1, wherein the case is configured as a backpack and further comprising first and second shoulder straps coupled to the first outer side of the first storage section, the first and second straps configured to receive a user's shoulders to support the case.

46. (New)  The case of claim 1, wherein the case is configured as a backpack and further comprising first and second shoulder straps coupled to the second outer side of the second storage section, the first and second straps configured to receive a user's shoulders to support the case.

47.  (New)  The case of claim 1, further comprising a handle coupled to the hinge and configured to support the case.

48.  (New)  The case of claim 1, further comprising:

a first handle coupled to the first distal end of the first storage section; and

a second handle coupled to the second distal end of the second storage section,

wherein in the folded configuration the first and second handles are disposed adjacent each other.

49.  (New)  The case of claim 1, wherein the second storage section comprises:

a first cushion disposed on an interior side of the second pouch, and

a second cushion disposed on an opposing interior side of the second pouch, the first and second cushions configured to enable a scanning device to scan through the first and second cushions.

**REMARKS**

The Applicants wish to express appreciation for the interview of February 7, 2013, in which the present amendments were discussed.

This paper is being filed in response to the Final Office Action mailed on January 4, 2013 (the "Office Action"). A Request for Continued Examination is filed concurrently herewith. Claims 1, 3-44 are pending in the application. Claims 1, 19, 23, 24, 30, and 44 are in independent form. By this paper, claims 1, 3, 5-7, 10, 15, 17, 19, 20-22, 23, 24, 25, 27, 30, 34, 36, 40, 42, and 44 are amended. Claims 2 and 13 are cancelled. Entry of new claims 45-49 is requested. No new matter has been entered with the amendments.

In the Office Action, claims 1 and 3–44 stand rejected with claim 2 having been withdrawn from consideration. Claims 1, 3, 8-14, and 22-24 stand rejected under 35 U.S.C. § 102(b) as being anticipated by U.S. Patent No. 2,554,215 to Schell. Claims 4, 19-21, and 25-28 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Schell in view of U.S. Patent No. 7,207,154 to Araujo. Claims 6, 7, 15-17, and presumably 18 and 29 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Schell in view of U.S. Patent No. 5,971,148 to Jackson. However, reference is made to Araujo rather than Jackson in addressing the respective claim limitations. Claims 30-44 stand rejected as being directed to methods necessarily preformed by a prior art device.

The Applicants appreciate the Examiner's thorough examination of the Application, and respectfully request reconsideration of the claims in view of these

amendments and remarks.

35 U.S.C. § 102(b)

The Applicants respectfully submit that independent claims 1, 23, 24, 30, and 44, as amended, are not anticipated by Schell, because Schell fails to disclose all claimed elements.

Claim 1, as currently amended, recites:

> a second pouch and the second storage section configured without an additional pouch . . .
>
> a second pouch fastener configured to substantially enclose only the second pouch and thereby retain a computer therein; and
>
> the second storage section foldably joined at the second proximal end to the first proximal end of the first storage section such that the second proximal end and the first proximal end are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge…

Schell teaches that each panel of the case includes at least two pockets 17, as shown in Figure 2, with four pockets in all. All independent claims are amended herein to include the limitation of the second storage section being without an additional pouch. The application teaches a second storage section is limited to only having a second pouch. If the second storage section includes an additional pouch, then objects in the additional pouch would interfere with the scanning of the computer in the second pouch. The purpose is to isolate the computer in the second storage section to facilitate scanning.

Schell is not concerned with isolating a computer to facilitate scanning and does not even consider a portable computer as this technology did not exist at the time. Schell simply teaches multiple pockets to carry paper (Column 2, lines 36-39).

Claim 1 is amended herein to included the limitation of a “second pouch fastener configured to substantially enclose only the second pouch and thereby retain a

computer therein."  Support is found for this limitation in Figures 10A-10E and the accompanying text.  The second pouch fastener has the benefit of securing the computer in the second pouch when the bi-fold case is folded and unfolded.  The four pockets 17 of Schell each have an exposed opening without a corresponding fastener. The fastener element 16 of Schell is used to enclose the entire case and all four pockets 17 while securing the panels to each other.  Schell does not teach a second pouch fastener to only enclose a second pouch.

All independent claims include the limitation of first and second storage sections forming a hinge which is configured to enable a scanning device to scan through the hinge.  Schell teaches the use of a metal strip or plate 19 and 37 in a back portion which functions as the hinge for the panels.  The metal strip or plate obstructs a scanning device's ability to scan through and view objects.  This substantial obstruction to scanning is not considered to be a problem since Schell is not concerned with security screening whatsoever.

It is well-settled law that a claim is anticipated under 35 U.S.C. §102(b) only if each and every element as set forth in the claim is either expressly or inherently described in a single prior art reference.  *See* MPEP § 2131. The reference must show the identical invention in as complete detail as is contained in the claim.  *Id*. Accordingly, all of the features must be arranged or combined in the same way as recited in the claim.  *Net MoneyIN Inc. v. VeriSign Inc.*, 88 USPQ2d 1751 (Fed. Cir. 2008).  Because all elements of the claims are not disclosed, the 102 rejection should be reconsidered and withdrawn.

As independent claims 23, 24, 30, and 44 all include limitations similar to claim 1, including a second storage section including a second storage pouch and without an additional pouch and a scannable hinge, they likewise represent patentable subject matter.

The respective dependent claims include every limitation of the claim from which they depend.  *See* MPEP § 608.01(n).  In other words, the dependent claims are not conceivably anticipated by anything which would not also anticipate the base claim. *See id*.  Because independent claims 1, 23, 24, 30, and 44 are not anticipated by Schell, the respective dependent claims also represent patentable subject matter.

Dependent claims 8-12, 22, 36-39 further include the limitations of a foldable container disposed between the first and second storage sections.  In reference to claim 8, the Office Action refers to Figures 1 and 2 of Schell and indicates that the cover strip 29 corresponds to the claimed limitation.  Claim 9 states that the "foldable container is configured to fold between the first storage section and the second storage section when the second storage section is in the folded configuration, and wherein the foldable container is configured to open to form a container when the second storage section is in the unfolded configuration."  For this claim, the Office Action refers to Figures 1 and 2 of Schell and Col 3, lines 11-15 which states:

> As shown in Fig. 3, an inner cover or cover strip 29 of leather or the like covers the metal strip on the inside of the case.  The flanges of the metal strip hold the cover strip 29 away from the rivet heads.

The cover strip 29 serves to cover a rigid metal strip, does not serve as a container, and does not fold as required by claim 8.  The cover strip of Schell does not fold when the case is in a folded configuration and does not open to form a container

when the case is in the unfolded configuration as required by claims 9, 22, 36. Instead the cover strip 29 remains in a fixed relationship with the metal strip. The cover strip 29 is incapable of receiving one or more personal items when the first storage section is in the unfolded configuration. Instead, the cover strip 29 serves as a protective barrier against the metal strip, flanges, and rivet heads and is not designed to fold or receive personal items when unfolded. As the cover strip 29 does not open, it is not possible to visually inspect items disposed therein as required by claims 12 and 37.

35 U.S.C. § 103

Claims 4, 19-21, and 25-28 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Schell in view of U.S. Patent No. 7,207,154 to Araujo.

Independent claim 19 stands rejected as being unpatentable over Schell in view of Araujo. Independent claim 19, as amended, includes the limitations of a second storage section including a second pouch and without an additional pouch and first and second storage sections forming a hinge that is scannable. The addition of Araujo fails to cure the deficiencies of Schell. Araujo does not teach a bi-fold case with first and second storage sections and a scannable hinge.

Claim 19 further recites “indicia, non-unique to the computer case, indicating that the computer case complies with a standard of a scanning authority.” Araujo teaches “unique identification including, but not limited to, at least one barcode (reference numeral 80), personal identification number (PIN) and/or serial number (e.g., an International Air Transport Association number), smart card, transmitter/transponder (reference numeral 90), such as an RFID card or Global Positioning System transmitter/transponder, special design shape, or any combination thereof.” Araujo,

column 7, lines 17-24. Araujo teaches the unique identification of the case itself rather than compliance to a standard. As amended claim 19 requires that the indicia be non-unique to the case and therefore cannot function as a unique identifier, rather the indicia serves as an indication of compliance to a standard. This is in contrast to Araujo which teaches “means for identity authentication.” Column 7, lines 39-40. Thus, Araujo would provide for tracking of the case while in transit whereas the indicia of claim 19 would not. The indicia of claim 19 serves to “allow scanning personnel to use expedited scanning procedures on the computer case 1300.” Paragraph [0113].

With respect to claim 21, the Office Action states that “Schell discloses, wherein the cover is substantially transparent to allow a computer disposed within the second section to be visually inspected (the examiner notes that the pocket has an opening, allowing it to be transparent to whomever is inspecting the apparatus).” Page 9, third paragraph to page 10, first paragraph. Claim 21, as amended, recites that the “second inner side of the second storage section includes a substantially transparent material.” Material forming a side of a case may be transparent or opaque, however, an opening is always transparent. The pockets 17 of Schell are opaque notwithstanding that the pockets 17 define openings. A pocket is not reasonably characterized as being transparent simply because it includes an opening as an opening is a common feature of a pocket. The opaque pockets 17 necessarily limit visual inspection of any object located within a pocket even though it may be possible to view a portion of an object, depending on the object size, through an opening. Schell does not teach or suggest that an inner side of the pocket 17 includes a transparent material.

Araujo fails to cure the deficiencies of Schell. Araujo teaches a luggage

protection pouch that "fully surrounds luggage." Abstract.  Araujo is not intended to allow visual inspection of an object contained within one section of the luggage itself. Rather, Araujo teaches an additional layer to the luggage itself for added protection. Claim 21 allows for the limited viewing of the interior of one storage section by providing one substantially transparent inner side and an opaque outer side.  Claim 21, from its base claim 20, requires that the "in the folded configuration, the first inner side is approximated to the second inner side."  As such, the claimed case must be opened in order to access and view the substantially transparent inner side.  A transparent inner side is not taught or suggested by the cited references.  Araujo teaches a protection pouch exterior to the luggage itself and this added layer does not enable viewing objects within the luggage interior.

Claim 25 includes the limitation of "indicia, non-unique to the computer case, wherein the indicia indicates that the computer case complies with a standard of a scanning authority" and represents patentable subject matter for the reasons discussed above with respect to claim 19.

Claim 27 depends from claim 25 and further recites that "the indicia is embedded in the case and is visible only through the use of a scanning device." (emphasis added) Araujo has no teachings or suggestion of the bar code 80 or transmitter/transponder 90 being only visible to a scanning device.  In Figure 1, elements 80 and 90 are shown as being visibly located on the pouch and the Office Action, in reference to claim 6, asserts that Araujo teaches a transparent pouch.  The elements 80 and 90 must therefore be visible.

Depending claims 4, 20, 26, and 28 include every limitation of the claim from

which they depend and are also patentable over Schell in view of Araujo.

Claims 6, 7, and 15-17, and presumably 18 and 29, stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Schell in view of U.S. Patent No. 5,971,148 to Jackson.  However, in the Office Action in pages 10-12, reference is made to Araujo rather than Jackson in addressing the respective claim limitations.

Claim 6 represents patentable subject matter for the reasons discussed above as being dependent on claim 1.  Claim 6 includes limitations similar to claim 21 and represent patentable subject matter for the same reasons.

Claim 7 recites that the inner side of the second pouch comprises a mesh material.  A mesh material is commonly understood to be knit, woven, or knotted fabric of open texture.  Araujo teaches a "flexible, contiguous pouch body 5 having a contained interior space 8 adapted to hold a piece of luggage (not shown). Pouch body 5 is preferably substantially continuous and uninterrupted to prevent inadvertent loss of the contents from the interior space 8."  Column 3, lines 20-25.  Araujo further teaches that "preferred materials for a bag according to the present invention include polymeric materials."  There is no teaching or suggestion in Araujo of using a mesh material.

Claims 15-18 require the limitation of "indicia, non-unique to the computer case, indicating the case complies with a standard of a scanning authority" and represent patentable subject matter for the same reasons as claim 19.

Claim 17 further recites that the "indicia is embedded in the case and only visible through the use of a scanning device."  The Office Action refers to column 7, lines 16-44 for this teaching.  However, if one accepts that the protection pouch is transparent, although this is not specifically taught by Araujo, then the barcode 80, PIN, serial

number, smart card, transmitter/transponder 90 (referenced in column 7, lines 16-44) are visible to an observer.

Depending claim 29 includes every limitation of the claim from which it depends and is also patentable over Schell in view of Araujo

Jackson is referenced in the Office Action but also fails to cure the deficiencies of Schell and further teaches obstructions to scanning a computer in a storage section. Jackson teaches that the computer storage section may include rigid pull-out panels 340, on either or both sides, (Column 4, lines 23-25) and may also include a flip-up document holder 350 (Column 4, lines 28-29). Jackson also teaches that the front panel 223 of the computer storage section "may be sized to hold papers or other materials with the addition of a user accessible pouch." Column 4, lines 11-13. These additional components provide obstructions to scanning a computer in a storage section and defeat the purpose of isolating the computer.

Claims 30-44

As discussed above in reference to claim 1, independent claims 30 and 44 represent patentable subject matter. Depending claims 31-43 also represent patentable subject matter in view of their base claim and also include the limitations discussed above.

In view of the amendments and remarks above, reconsideration of all pending claims is respectfully requested.

New Claims

Claims 45 and 46 include the limitation of the case being configured as a backpack.  Support is found for this limitation in paragraph [0133] of the pending application.

Claim 47 includes the limitation of a handle coupled to the hinge.  Support is found for this limitation in Figures 11A-B and the accompanying text.

Claim 48 includes the limitation of first and second handles coupled to first and second storage sections.  Support is found for this limitation in Figures 10A-E and the accompanying text.

Claim 49 includes the limitation of first and second cushions disposed on opposing interior sides of the second storage section.  Schell has no teaching or suggestion of cushions because Shell teaches the storage of paper rather than fragile objects.  Cushions on opposing interior sides is also not taught in Araujo or Jackson.

CONCLUSION

For the reasons discussed above, the Applicants submit that the claims are in proper condition for allowance, and a Notice of Allowance is respectfully requested. If the Examiner notes any further matters that may be resolved by a telephone interview, the Examiner is encouraged to contact the undersigned.


Respectfully submitted,


By /**John R. Thompson**/
John R. Thompson
Registration No. 40,842

STOEL RIVES LLP
One Utah Center Suite 1100
201 S Main Street
Salt Lake City, UT 84111-4904
Telephone: (801) 328-3131
Facsimile: (801) 578-6999
Docket No. 52253/290

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of

**Bui Phu Cuong et al.** Confirmation No. 6417

Application No. 12/370,824

Filed: February 13, 2009

For: **PORTABLE COMPUTER CASE**

Group Art Unit: 3781

Examiner: Cynthia Francisca Collado

Date: July 3, 2013

SUPPLEMENTAL INFORMATION DISCLOSURE STATEMENT

TO THE COMMISSIONER FOR PATENTS:

1. Pursuant to the duty of disclosure, documents listed on the accompanying Form PTO-1449 (or equivalent) are presented for the Examiner's consideration.

☐ Copies of listed U.S. patents and U.S. patent application publications are not required for submission. (37 C.F.R. § 1.98(a)(2)(ii))

☒ Copies of listed foreign patent documents and/or non-patent literature are enclosed. (37 C.F.R. § 1.98(a)(2))

☐ Copies of the documents listed at (sheet/cite no.) ______ of the attached Form PTO-1449 (or equivalent) are omitted because (1) they are already of record in U.S. Patent Application No. __________, filed ___________, on which this application relies for an earlier filing date under 35 U.S.C. § 120; and (2) any information disclosure statement filed in the prosecution of Application No. ___________, complies with 37 CFR §§ 1.98(a) through (c). (37 C.F.R. § 1.98(d))

☐ A copy of copending U.S. Patent Application No. ___________, filed ___________, for _____________, listed at (sheet/cite no.) ______ of the attached Form PTO-1449 (or equivalent), ☐ is enclosed / ☐ is omitted. (Copy not required if available via IFW. 1287 OG 163 (Oct. 19, 2004).).

2. This information disclosure statement is being submitted (check box a., b., or c.):

a. ☐ Within three months of the filing date of a national application or entry of the national stage in an international application; or before the mailing of a first Office action on the merits; or before the mailing of a first Office action after the filing of a request for continued examination under 37 CFR 1.114. (No statement under 37 CFR 1.97(e) is required.); or

      b.   ☒   After the period set forth in paragraph 2a, but before the mailing date of either a final action, a notice of allowance, or an action that otherwise closes prosecution in the application.  (Check box i. or ii.)

            i.   ☐   A $180.00 information disclosure statement submission fee set forth in 37 CFR 1.17(p) is enclosed, or

            ii.   ☒   A statement specified by 37 CFR 1.97(e) is set forth below; or

      c.   ☐   After the mailing date of a final action or notice of allowance and on or before payment of the issue fee.  A statement specified by 37 CFR 1.97(e) is set forth below.  Enclosed is a $180.00 information disclosure statement processing fee set forth in 37 CFR 1.17(p).

3.   If a statement specified by 37 CFR 1.97(e) is required, the attorney or agent signing below hereby states that:

    ☐   each item of information contained in this information disclosure statement was first cited in any communication from a foreign patent office in a counterpart foreign application not more than three months prior to the filing of the information disclosure statement; or

    ☒   no item of information contained in this information disclosure statement was cited in a communication from a foreign patent office in a counterpart foreign application, and, to the knowledge of the person signing the certification after making reasonable inquiry, no item of information contained in this information disclosure statement was known to any individual designated in 37 CFR 1.56(c) more than three months prior to the filing of the information disclosure statement.

4.   ☐   A concise explanation of the relevance of each document not in the English language and/or selected documents in the English language is set forth below.

                Respectfully submitted,

                **Targus Group International, Inc.**

                By  /**John R. Thompson**/
                    John R. Thompson
                    Registration No. 40,842

STOEL RIVES LLP
One Utah Center Suite 1100
201 S Main Street
Salt Lake City, UT  84111-4904
Telephone:  (801) 328-3131
Facsimile:  (801) 578-6999
Attorney Docket No.  52253/290

IN THE UNITED STATES PATENT AND TRADEMARK OFFICE

In re application of

**Bui Phu Cuong et al.**

Confirmation No. 6417

Application No. 12/370,824

Filed: February 13, 2009

For: Portable Computer Case

Group Art Unit: 3781

Examiner: COLLADO, CYNTHIA FRANCISCA

Attorney Docket No. 52253/290

Date: August 22, 2013

AMENDMENT AND RESPONSE

TO THE COMMISSIONER FOR PATENTS:

In response to the Office Action mailed on May 20, 2013, please amend the above-identified patent application as follows.

**Amendments to the Claims** are reflected in the listing of claims that begins on page 2 of this paper.

**Remarks** begin on page 27 of this paper.

Listing of Claims:

1. (Currently Amended) A bi-fold case to allow for convenient security screening of a computer, comprising:

a first storage section comprising a first outer side, a first inner side, a first proximal end, and a first distal end opposite the first proximal end, the first outer side, first inner side, first proximal end, and first distal end defining a first pouch with a first pouch opening and a first pouch fastener coupled to the first pouch opening and configured to only secure the first pouch opening, wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch, wherein the first storage section further comprises a third pouch including a third pouch opening, independent of the first pouch opening, and a third fastener to only secure the third pouch opening; and

a second storage section comprising a second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a second proximal end, and a second distal end opposite the second proximal end, the second storage section comprising,

a second pouch and the second storage section configured without an additional pouch, the second pouch configured to receive a computer, wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein, and

a second pouch fastener configured to substantially enclose only the second pouch and thereby retain a computer therein,

the second storage section foldably joined at the second proximal end to the first proximal end of the first storage section such that the second proximal end and the first proximal end are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge,

wherein the first and second inner sides are disposed adjacent one another in the folded configuration and separated in an unfolded configuration,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section.

2.  (Cancelled)


3.  (Previously Presented)  The case of claim 1, further comprising a fastener to selectively secure the first storage section and the second storage section in the folded configuration.


4.  (Original)  The case of claim 1, wherein the scanning device is an X-ray scanner.


5.  (Previously Presented)  The case of claim 1, wherein the inner side of the second pouch is configured to allow for visual inspection of a computer disposed within the

second pouch of the second storage section when second storage section is in the unfolded configuration.

6.  (Previously Presented)  The case of claim 1, wherein the outer side of the second storage section is substantially opaque and the inner side of the second pouch comprises  a substantially transparent material.

7.  (Previously presented)  The case of claim 6, wherein the inner side of the second pouch comprises a mesh material.

8.  (Previously Presented)  The case of claim 1, further comprising a foldable container disposed between the first storage section and the second storage section.

9.  (Previously Presented)  The case of claim 8, wherein the foldable container is configured to fold between the first storage section and the second storage section when the second storage section is in the folded configuration, and wherein the foldable container is configured to open to form a container when the second storage section is in the unfolded configuration.

10.  (Previously Presented)  The case of claim 9, wherein the foldable container is configured to receive one or more personal items when the first storage section is in the unfolded configuration.

11. (Original) The case of claim 10, wherein the foldable container is configured to allow the one or more personal items disposed therein to be scanned by the scanning device.

12. (Original) The case of claim 10, wherein the foldable container is configured to allow the one or more personal items disposed therein to be visually inspected.

13. (Cancelled)

14. (Previously Presented) The case of claim 1, wherein the inner side of the first storage section comprises a pocket container, and wherein the pocket container is configured to receive one or more personal items and to allow the one or more personal items received therein to be scanned by a scanning device.

15. (Currently Amended) The case of claim 1, further comprising indicia~~, non-unique to the computer case,~~ indicating the case complies with a standard of a scanning authority.

16. (Original) The case of claim 15, wherein a portion of the indicia is visible.

17. (Previously presented) The case of claim 15, wherein the indicia is embedded in the case and only visible through the use of a scanning device.

18. (Original) The case of claim 15, wherein the indicia comprises authentication

means.

19.  (Currently Amended)  A bi-fold computer case to allow for convenient security screening of a computer disposed therein, the bi-fold computer case having a folded and an unfolded configuration, the bi-fold computer case comprising:

a first storage section comprising a first outer side, a first inner side, a first proximal end, and a first distal end opposite the first proximal end, the first outer side, first inner side, first proximal end, and first distal end defining a first pouch with a first pouch opening and a first pouch fastener coupled to the first pouch opening and configured to only secure the first pouch opening, wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch, wherein the first storage section further comprises a third pouch coupled to the first outer side, the third pouch including a third pouch opening, independent of the first pouch opening, and a third fastener to only secure the third pouch opening;

a second storage section comprising a second outer side, a second inner side, a second proximal end, and a second distal end opposite the second proximal end, the second section comprising a second pouch configured to receive a computer, the second storage section configured without an additional pouch, wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein, the second storage section foldably joined at the second proximal end to the first proximal end of the first storage

section such that the first and second proximal ends are coupled adjacent one another, the first and second proximal ends forming a hinge configured to enable a scanning device to scan through the hinge,

wherein in the folded configuration, the first inner side is approximated to the second inner side, and

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration;

a fastener to selectively maintain the computer case in the folded configuration~~; and~~

~~indicia, non-unique to the computer case, indicating that the computer case complies with a standard of a scanning authority, wherein the second inner side comprises a cover configured to allow a computer disposed within the second storage section to be scanned by a scanning device~~,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section.

20. (Previously Presented) The bi-fold computer case of claim 19, wherein the scanning device is an X-ray scanner.

21. (Previously Presented) The bi-fold computer case of claim 19, wherein the second

outer side of the second storage section is substantially opaque and the second inner side of the second storage section includes a substantially transparent material to allow a computer disposed within the second storage section to be visually inspected.

22.  (Previously Presented)  The bi-fold computer case of claim 19, further comprising a foldable container, wherein the foldable container is configured to fold between the first and second inner sides when the computer case is in the folded configuration and to open to form a container disposed between the first and second storage sections when the computer case is in the unfolded configuration, and wherein the foldable container is configured to receive one or more personal items when in the open configuration.

23.  (Currently Amended)  A bi-fold computer case to allow for convenient security screening of a computer and having a folded configuration and an unfolded configuration, the computer case comprising:

a first storage panel comprising a first inner side, a first outer side, a first proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch, the first distal end having a first pouch opening, wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch;

a second storage panel comprising a second inner side, a second outer side, second proximal end, ~~and~~ a second distal end opposite the second proximal end, ~~the second storage panel comprising~~  and a second pouch and the second storage panel

configured without an additional pouch, the second pouch configured to receive a computer, the second distal end including a sidewall with a second pouch opening disposed substantially in the center of the sidewall, wherein the second storage panel and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein, the second storage panel foldably joined at the second proximal end to the first proximal end of the first storage panel such that the first and second proximal ends are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge,

wherein in the folded configuration of the foldable computer case, the inner side of the first storage panel is approximated to the inner side of the second storage panel,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration;

a fastener to selectively maintain the bi-fold computer case in the folded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon a same planar surface, an object in the first storage panel is removed from interfering with a scanner positioned above and below the second storage panel to enable uninhibited scanning of a computer in the second pouch of the second storage panel,

wherein the first pouch opening is disposed on the first storage panel and the second pouch opening is disposed on the second storage panel such that when the case is in the unfolded configuration with the outer sides of both the first and second

storage panels laid flat upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface.

24. (Currently Amended) A bi-fold computer case, comprising:

a first section comprising a first inner side, a first outer side, a first proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch, the first distal end including a first pouch opening, wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch;

a second section comprising a second inner side having a surface area approximately equal to a surface area of the first inner side, a second outer side, a second proximal end, ~~and~~ a second distal end opposite the second proximal end, a first sidewall coupled to the second inner side and the second outer side, a second sidewall extending substantially parallel to the first sidewall and coupled to the second inner side and the second outer side, a top wall disposed on the second distal end, ~~the second section comprising~~ a second pouch and the second section configured without an additional pouch, and a second pouch opening extending along the top wall and partially extending along the first and second sidewalls, the second pouch configured to receive a computer, wherein the second section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein,

the first proximal end of the first section foldably joined to the second proximal end of the second section such that the first and second proximal ends are coupled adjacent one another, to form a hinge configured to enable a scanning device to scan through the hinge,

wherein in a folded configuration of the bi-fold computer case, the inner side of the first section is approximated to the inner side of the second section,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in an unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second sections laid flat upon a same planar surface, an object in the first section is removed from interfering with a scanner positioned above and below the second section to enable uninhibited scanning of a computer in the second pouch of the second section,

wherein the first pouch opening is disposed on the first section and the second pouch opening is disposed on the second section such that when the case is in the unfolded configuration with the outer sides of both the first and second sections laid flat upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface~~; and~~

~~a computer retention member configured to selectively secure a computer within the second section, wherein the second section is configured to allow the computer within the second section to be scanned by a scanning device without removing the computer from the second section~~.

25.  (Previously Presented)  The computer case of claim 24, further comprising indicia, non-unique to the computer case, wherein the indicia indicates that the computer case complies with a standard of a scanning authority.

26.  (Original)  The computer case of claim 25, wherein a portion of the indicia is visible to scanning personnel.

27.  (Previously Presented)  The computer case of claim 25, wherein the indicia is embedded in the case and is visible only through the use of a scanning device.

28.  (Original)  The computer case of claim 25, wherein the indicia comprises means for authenticating the indicia.

29.  (Currently Amended)  The computer case of claim 24, wherein the second storage section comprises a ~~recess configured to receive the computer, and wherein the~~ retention member ~~comprises a strap~~ configured to secure the computer within the second pouch ~~recess~~.

30.  (Currently Amended)  A method for providing a bi-fold computer case, comprising:

providing a first storage section including a first inner side, a first outer side, a proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch including a first pouch opening and a first fastener to secure the first pouch opening, wherein the

first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch;

providing a second storage section having a surface area approximately equal to a surface area of the first storage section and including a second inner side, a second outer side, a second proximal end, and a second distal end opposite the second proximal end, the second storage section comprising a second pouch, the second distal end including a sidewall with a second pouch opening disposed substantially in the center of the sidewall and the second storage section configured without an additional pouch, the second pouch configured to receive a computer, wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein;

foldably joining the first storage section to the second storage section at the first and second proximal ends to form a hinge configured to enable a scanning device to scan through the hinge such that the first and second proximal ends remain adjacent one another in both folded and unfolded configurations, wherein the second inner and outer sides are configured to allow the computer secured within the second pouch to be scanned by a scanning device without removing the computer from the second pouch,

wherein in the folded configuration of the bi-fold computer case, the inner side of the first storage section is approximated to the inner side of the second storage section,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section,

wherein the first pouch opening is disposed on the first storage section and the second pouch opening is disposed on the second storage section such that when the case is in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface.

31. (Previously Presented)  The method of claim 30, further comprising attaching a fastener to the first storage section and to the second storage section, wherein the fastener is configured to selectively secure the first storage section and the second storage section in the folded configuration.

32. (Original)  The method of claim 30, wherein the scanning device is an X-ray scanner.

33. (Previously Presented)  The method of claim 30, wherein the second inner side is configured to allow for visual inspection of the computer disposed within the second storage section.

34.  (Previously Presented)  The method of claim 33, wherein the second outer side is opaque and the second inner side of the second pouch comprises a substantially transparent material.

35.  (Previously Presented)  The method of claim 34, wherein the second inner side is comprised of a mesh material.

36.  (Previously Presented)  The method of claim 30, further comprising attaching a foldable container to the first storage section and to the second storage section, wherein the foldable container is configured to fold between the first storage section and the second storage section when the first storage section and the second storage section are in the folded configuration, and wherein the foldable container is configured to open to form a container when the first storage section and the second storage section are in the unfolded configuration.

37.  (Previously Presented)  The method of claim 36, wherein the foldable container is configured to receive one or more personal items when the first storage section and the second storage section are in the unfolded configuration.

38.  (Original)  The method of claim 37, wherein the foldable container is configured to allow the one or more personal items disposed therein to be scanned by the scanning device.

39. (Original) The method of claim 37, wherein the foldable container is configured to allow the one or more personal items disposed therein to be visually inspected.

40. (Previously Presented) The method of claim 30, further comprising attaching indicia to the computer case, wherein the indicia is non-unique to the computer case and indicates that the computer case complies with a standard of a scanning authority.

41. (Original) The method of claim 40, wherein a portion of the indicia is visible.

42. (Previously Presented) The method of claim 40, wherein the indicia is embedded in the computer case and is only visible through the use of a scanning device.

43. (Original) The method of claim 40, further comprising including an authentication credential in the indicia.

44. (Currently Amended) A method for manufacturing a bi-fold computer case, comprising:

providing a first storage section including a first inner side, a first outer side, a proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch including a first pouch opening and a first fastener to secure the first pouch opening, wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch, wherein the first

storage section further comprises a third pouch including a third pouch opening, independent of the first pouch opening, and a third fastener to only secure the third pouch opening;

providing a second storage section including a second inner side, a second outer side, a second proximal end, and a second distal end opposite the second proximal end, the second storage section comprising a second pouch and the second storage section configured without an additional pouch, the second pouch configured to receive a computer, wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein,

foldably attaching the first proximal end of the first storage section to the second proximal end of the second storage section to form a hinge configured to enable a scanning device to scan through the hinge,

wherein in a folded configuration of the bi-fold computer case, the inner side of the first storage section is approximated to the inner side of the second storage section,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in an unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section~~; and~~

~~attaching a foldable container to the first storage section and to the second storage section, wherein the foldable container is configured to fold between the first storage section and the second storage section when the first storage section and the second storage section are in a folded configuration, and wherein the foldable container is configured to open to form a container when the first storage section and the second storage section are in an unfolded configuration~~.

45. (Previously Presented) The case of claim 1, wherein the case is configured as a backpack and further comprising first and second shoulder straps coupled to the first outer side of the first storage section, the first and second straps configured to receive a user's shoulders to support the case.

46. (Previously Presented) The case of claim 1, wherein the case is configured as a backpack and further comprising first and second shoulder straps coupled to the second outer side of the second storage section, the first and second straps configured to receive a user's shoulders to support the case.

47. (Previously Presented) The case of claim 1, further comprising a handle coupled to the hinge and configured to support the case.

48. (Previously Presented) The case of claim 1, further comprising:

a first handle coupled to the first distal end of the first storage section; and

a second handle coupled to the second distal end of the second storage section, wherein in the folded configuration the first and second handles are disposed adjacent each other.

49.  (Previously Presented)  The case of claim 1, wherein the second storage section comprises:

a first cushion disposed on an interior side of the second pouch, and

a second cushion disposed on an opposing interior side of the second pouch, the first and second cushions configured to enable a scanning device to scan through the first and second cushions.

50.  (New)  The computer case of claim 23, wherein the first pouch opening and the second pouch opening are accessible to a user in the folded configuration.

51.  (New)  The computer case of claim 24, wherein the first pouch opening and the second pouch opening are accessible to a user in the folded configuration.

52.  (New)  A bi-fold case to allow for convenient security screening of a computer, comprising:

a first storage section comprising,

a first outer side,

a first inner side,

a first proximal end,

a first distal end opposite the first proximal end,

a first pouch including a first opening and a first fastener, wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch, and

a third pouch coupled to the first outer side and including a third pouch opening independent of the first pouch opening and a third fastener to only secure the third pouch opening; and

a second storage section comprising,

a second outer side,

a second inner side having a surface area approximately equal to a surface area of the first inner side,

a second proximal end, and

a second distal end opposite the second proximal end, the second storage section comprising,

a second pouch including a second opening and coupled to the second inner side, and the second storage section configured without an additional pouch, the second pouch configured to receive a computer,

wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein, and

wherein the second storage section is foldably joined at the second proximal end to the first proximal end of the first storage section such that the second proximal end

and the first proximal end are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge,

wherein the first inner side and the second pouch are disposed adjacent one another in the folded configuration and separated in an unfolded configuration,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section.

53.  (New)  The case of claim 52, wherein the second opening is disposed on the second storage section such that when the case is in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon the same planar surface, the second opening is oriented in a direction substantially parallel to the planar surface.

54.  (New)  The case of claim 52, wherein the second pouch extends less than a length of the second inner side.

55.  (New)  The case of claim 52, wherein the second storage section further includes a strap member extending over the second opening.

56.  (New)  A bi-fold case to allow for convenient security screening of a computer, comprising:

a first storage section comprising,

a first outer side,

a first inner side,

a first proximal end,

a first distal end opposite the first proximal end, and

a first pouch including a first opening and a first fastener, wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch; and

a second storage section comprising,

a second outer side,

a second inner side having a surface area approximately equal to a surface area of the first inner side,

a second proximal end, and

a second distal end opposite the second proximal end, the second storage section comprising,

a second pouch including a second opening and coupled to the second inner side, and the second storage section configured without an additional pouch, the second pouch extending less than a length of the second inner side, the second pouch configured to receive a computer,

wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein, and

wherein the second storage section is foldably joined at the second proximal end to the first proximal end of the first storage section such that the second proximal end and the first proximal end are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge,

wherein the first inner side and the second pouch are disposed adjacent one another in the folded configuration and separated in an unfolded configuration,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration,

wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section.

57. (New)  The case of claim 56, wherein the second opening is disposed on the second storage section such that when the case is in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon the same planar surface, the second opening is oriented in a direction substantially parallel to the planar surface.

58.  (New)  The case of claim 56, wherein the second storage section further includes a strap member extending over the second opening.

59.  (New)  A bi-fold computer case to allow for convenient security screening of a computer and having a folded configuration and an unfolded configuration, the computer case comprising:

    a first storage section comprising,

        a first inner side,

        a first outer side,

        a first proximal end,

        a first distal end opposite the first proximal end,

        a first pouch, and

        a first pouch opening disposed on the first distal end and in communication with the first pouch,

    wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch;

    a second storage section comprising,

        a second inner side,

        a second outer side,

        second proximal end,

        a second distal end opposite the second proximal end,

a second pouch configured to receive a computer and the second storage panel configured without an additional pouch, and

a second pouch opening at least partially disposed on the second distal end and in communication with the second pouch,

wherein the second storage panel and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein, the second storage panel foldably joined at the second proximal end to the first proximal end of the first storage panel such that the first and second proximal ends are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge,

wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration,

wherein in the folded configuration of the foldable computer case, the inner side of the first storage section is approximated to the inner side of the second storage section and the first pouch opening and the second pouch opening are configured to be accessible to a user,

wherein in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon a same planar surface, an object in the first storage panel is removed from interfering with a scanner positioned above and below the second storage panel to enable uninhibited scanning of a computer in the second pouch of the second storage panel,

wherein the first pouch opening is disposed on the first storage panel and the second pouch opening is disposed on the second storage panel such that when the case is in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface.

**REMARKS**

The Applicants wish to express appreciation for the interview of July 18, 2013 in which the present amendments were discussed.

This paper is being filed in response to the Office Action mailed on May 20, 2013 (the “Office Action”). Claims 1, 3-12, and 14-49 are pending in the application. Claims 1, 19, 23, 24, 30, and 44 are in independent form. By this paper, claims 1, 15, 19, 23, 24, 29, 30, and 44 are amended. Entry of new claims 50-59 is requested. No new matter has been entered with the amendments.

In the Office Action, claims 1 and 3-12, and 14-49 stand rejected. Claim 15 is objected to under 35 USC § 112. Claims 1, 3, 5, 8, 9-12, 19, 23, 24, 29, 45-47 stand rejected under 35 U.S.C. § 102(b) as being anticipated by U.S. Patent No. 2,556,066 to Cline. Claims 4, 15-18, 20, 30-44 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Cline in view of U.S. Patent No. 7,207,154 to Araujo. Claim 14 stands rejected under 35 U.S.C. § 103(a) as being unpatentable over Cline in view of U.S. Patent No. 2,554,215 to Schell. Claims 6, 7, and 21 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Cline in view of U.S. Patent No. 5,971,148 to Jackson. Claims 48-49 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Cline in view of U.S. Patent No. 7,451,872 to Allen. Claims 30-44 stand rejected as being directed to methods necessarily preformed by a prior art device.

The Applicants appreciate the Examiner’s thorough examination of the Application, and respectfully request reconsideration of the claims in view of these amendments and remarks.

35 U.S.C. § 112

By this paper, claim 15 is amended to overcome the objection. Reconsideration is requested.

35 U.S.C. § 102(b)

The Applicants respectfully submit that independent claim 1 as amended is not anticipated by Cline, because Cline fails to disclose all claimed elements.

Claim 1, as currently amended, recites:

> [A] first storage section with a first pouch opening and a first pouch fastener coupled to the first pouch opening and configured to only secure the first pouch opening…a third pouch including a third pouch opening, independent of the first pouch opening, and a third fastener to only secure the third pouch opening…a second pouch and the second storage section configured without an additional pouch… a second pouch fastener configured to substantially enclose only the second pouch…

Support for this amendment is found in Figures 10A-10C and the accompanying text.

Cline teaches a toilet kit "having a pair of receptacle-shaped compartment sections" with "each of said sections having a hinged lid provided with releasable fastening means so that the articles in the respective sections will not spill out when the kit is opened." Column 1, lines 3-22. Cline only teaches a kit with two compartments and additional compartments are not suggested. Claim 1 recites three pouches with each pouch having a corresponding opening and a corresponding fastener which only secures the corresponding opening. Claim 1 further requires that the first storage section includes the first and third pouch. The second storage section includes the

second pouch without an additional pouch. The claim limitations reflect the purpose of the pending application which is to isolate a computer in the second storage section to facilitate scanning. If the second storage section includes an additional pouch, then objects in the additional pouch would interfere with the scanning of the computer in the second pouch. The first storage section is not limited to a single pouch and does include at least the third, additional pouch for user convenience. Pouches in either storage section are independently accessed with separate openings and fasteners. Cline is not concerned with isolating a computer to facilitate scanning and does not even consider a portable computer as this technology did not exist at the time. Cline has no teaching or suggestion of a bi-fold case with a third pouch located on a storage section and with independent access.

Independent claims 19 and 44 recite similar limitations and likewise represent patentable subject matter.

By this paper, claim 23 is amended to include the limitation of:

> the second distal end including a sidewall with a second pouch opening disposed substantially in the center of the sidewall and the second storage panel configured without an additional pouch… wherein the first pouch opening is disposed on the first storage panel and the second pouch opening is disposed on the second storage panel such that when the case is in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface.

Support for this limitation is found in Figures 10A-C and the accompanying text.

Cline teaches "a toilet kit having a pair of compartment sections hinged together so that they may be opened like a book." Column 1, lines 2-4. This is illustrated in Figures 2-4. In an open configuration, it is convenient to have a toilet kit with both compartment openings oriented perpendicular to the planar surface. It is in the open configuration that items are retrieved from the kit as the openings are inaccessible in the closed configuration shown in Figure 1. With the openings vertically accessible, a user is able to see, identify, and retrieve the appropriate item while a user attends to various personal needs. It is inconvenient for a user to reach into a compartment from an opening parallel to the planar surface as a user would not be able to see the various items and would likely need to identify the items by touch. As a user requires several toiletry items in a normal routine, such a design for a toilet kit would be ergonomically flawed.

In contrast to Cline, the pending application teaches an unfolded configuration for scanning contents of the case. It is in the folded configuration, that objects are commonly retrieved. As recited, the openings of the first and second pouches are parallel to the planar surface when the case is laid flat upon the planar surface. Cline does not teach or suggest openings configured with this orientation as the intended purpose is for access rather than scanning in the unfolded configuration.

Independent claim 30 recites limitations similar to claim 23 and likewise represents patentable subject matter.

As with claim 23, independent claim 24 recites that the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface. Claim 24 also recites "a second pouch opening extending along the top wall and

partially extending along the first and second sidewalls." The second pouch opening only extends partially along the sidewalls to assist in retaining a computer within the second pouch. Cline teaches that both compartments have openings that extend completely along three sides which allows for increased access to small items.

It is well-settled law that a claim is anticipated under 35 U.S.C. §102(b) only if each and every element as set forth in the claim is either expressly or inherently described in a single prior art reference. *See* MPEP § 2131. The reference must show the identical invention in as complete detail as is contained in the claim. *Id*. Accordingly, all of the features must be arranged or combined in the same way as recited in the claim. *Net MoneyIN Inc. v. VeriSign Inc.*, 88 USPQ2d 1751 (Fed. Cir. 2008). Because all elements of the claims are not disclosed, the 102 rejection should be reconsidered and withdrawn.

The respective dependent claims include every limitation of the claim from which they depend. *See* MPEP § 608.01(n). In other words, the dependent claims are not conceivably anticipated by anything which would not also anticipate the base claim. *See id*. As independent claims 1, 19, 23, 24, 30, and 44 are not anticipated by Cline, the respective dependent claims also represent patentable subject matter.

<u>35 U.S.C. § 103</u>

Claims 4, 15-18, 20, 30-44 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Cline in view of U.S. Patent No. 7,207,154 to Araujo. The addition of Araujo fails to cure the deficiencies of Cline as Araujo does not teach a bi-fold case with the recited limitations of the independent claims.

Claim 14 is rejected under 35 U.S.C. § 103(a) as being unpatentable over Cline

in view of U.S. Patent No. 2,554,215 to Schell.  Schell teaches a brief case that provides a single fastener to a single pouch with multiple pockets disposed on the interior panels.  The pockets do not include corresponding fasteners and, accordingly, access is available to all pockets through a single fastener.  Furthermore, when the brief case is laid flat on a planar surface, the case opening is substantially perpendicular to the planar surface.  Schell does not cure the deficiencies of Cline.

Claims 6, 7, and 21 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Cline in view of U.S. Patent No. 5,971,148 to Jackson.  Jackson also fails to cure the deficiencies of Cline and further teaches obstructions to scanning a computer in a storage section.  Jackson teaches that the computer storage section may include rigid pull-out panels 340, on either or both sides, (Column 4, lines 23-25) and may also include a flip-up document holder 350 (Column 4, lines 28-29).  Jackson also teaches that the front panel 223 of the computer storage section "may be sized to hold papers or other materials with the addition of a user accessible pouch."  Column 4, lines 11-13.  These additional components provide obstructions to scanning a computer in a storage section and defeat the purpose of isolating the computer in a single storage section.

Claims 48-49 stand rejected under 35 U.S.C. § 103(a) as being unpatentable over Cline in view of U.S. Patent No. 7,451,872 to Allen.  Allen teaches a bi-fold case with handles but fails to cure the deficiencies of Cline in view of the additional limitations noted above.

<u>New Claims</u>

Depending claims 50 and 51 are further distinguished from Cline in that the

compartment openings of Cline are not accessible in the folded, closed configuration as shown in Figure 1.  As illustrated in Cline, the openings are obstructed by opposing compartments and respective compartment fasteners may not be unlocked.

Claims 52 through 58 are directed to the embodiments shown in Figures 12A-12C.  Independent claim 52 recites the limitation of the first storage section including the first and third pouches with corresponding first and third fasteners, that the third pouch is located on the first outer side, and the second storage section includes a second pouch without an additional pouch.  Similar limitations are found in claims 1, 19, and 44. Claim 52 further recites that the second pouch is coupled to the second inner side and that the first inner side and the second pouch are disposed adjacent one another in the folded configuration.  Independent claim 56 recites that the second pouch is coupled to the second inner side, the second storage section does not include an additional pouch, that the first inner side and the second pouch are disposed adjacent one another in the folded configuration, and that the second pouch extends less than a length of the second inner side.

Claim 59 recites that the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface.  Claim 59 further requires that "in the folded configuration of the foldable computer case, the inner side of the first storage section is approximated to the inner side of the second storage section and the first pouch opening and the second pouch opening are configured to be accessible to a user."  As shown in Figure 1 of Cline, the compartments are not accessible when pivoted together.  The respective lids 17, 18 are retained in a closed position and the reinforcing wire 34 retains the side walls 5, 6 into position.  Accordingly, claim 59

represents patentable subject matter. Consideration of new claims 50-59 is respectfully requested.

Conclusion

For the reasons discussed above, the Applicants submit that the claims are in proper condition for allowance, and a Notice of Allowance is respectfully requested. If the Examiner notes any further matters that may be resolved by a telephone interview, the Examiner is encouraged to contact the undersigned.

Respectfully submitted,

By /**John R. Thompson**/
John R. Thompson
Registration No. 40,842

STOEL RIVES LLP
One Utah Center Suite 1100
201 S Main Street
Salt Lake City, UT 84111-4904
Telephone: (801) 328-3131
Facsimile: (801) 578-6999
Docket No. 52253/290

# EXHIBIT D

NewsRoom

7/29/08 Bus. Wire 12:30:00

Business Wire
Copyright © 2008 Business Wire

July 29, 2008

Targus Announces Checkpoint-Friendly Laptop Cases

Business Editors/Travel Writers/Retail Writers/Technology Editors

ANAHEIM, Calif.--(BUSINESS WIRE)--July 29, 2008--Targus ® Inc., maker of the world's top-selling laptop computer cases and accessories, announced today its Zip-Thru TM 15.4" Corporate Traveler Laptop Case, the first in Targus' line of checkpoint-friendly laptop cases. As a derivative of Targus' award-winning Corporate Traveler line, this case is designed to help business travelers eliminate the hassle of having to remove their laptop from their laptop case when passing through airport security, thereby minimizing the possibility of the laptop being lost, stolen or damaged during the security screening process.

As a leader in the laptop case category, Targus is proactively designing solutions to make the traveler's airport security screening experience more stress-free. The Zip-Thru case is designed to meet guidelines established by Transportation Security Administration (TSA), which focus on the screeners' ability to get a clear image of the laptop when properly secured in the bag. In developing the Zip-Thru case, Targus worked in conjunction with TSA authorities to test the product through an actual airport screening device.

"Our Corporate Traveler line is already a favorite case among business travelers, and adding the new Zip-Thru feature makes it a must-have for anyone who travels with a laptop," said Al Giazzon, vice president of marketing at Targus. "The new Zip-Thru Corporate Traveler laptop case is the lightest in its class, and features our patented SafePort® Air Cushion System, which helps to prevent laptop damage if the bag is dropped or bumped. The unique combination of features emphasizes our dedication to delivering unsurpassed solutions, making the traveling experience smoother and more efficient for travelers."

Designed with the same features as the lightweight and durable Corporate Traveler laptop bags, the Zip-Thru cases' patent-pending design splits the case down the middle, thereby isolating the laptop on one side to allow for clear x-ray scanning. The bag also provides ample space for accessories, files and other devices needed by today's frequent flyer. For maximum comfort during travel, the Zip-Thru 15.4" Corporate Travel laptop case includes a padded ergonomic shoulder strap with non-slip coating to keep the case in place. The first Zip-Thru case will be available in black and made of durable ballistic 1680 denier nylon. It measures 16.93" x 6.5" x 13.98", weighs 3.74 pounds and has an MSRP of $99.99.

Backed by a limited lifetime warranty, the Targus Zip-Thru™ 15.4" Corporate Traveler Laptop Case (Model Number: CUCT02UA15SUS) will be available in October through Targus Commercial Distribution, Resellers, DMRs and at Targus.com.

About Targus

Celebrating its 25 th anniversary, Targus invented the laptop case and continues to advance the mobile accessories category with innovative and relevant solutions for today's mobile lifestyle. Targus products enhance productivity, connectivity, and security, liberating users to work in any and all environments with the utmost convenience and comfort. Founded in 1983, Targus headquarters are located in Anaheim, Calif., with offices worldwide and distribution agreements in more than 100

countries. For more information on Targus visit targus.com.

Editor's Note: For additional information, evaluation units, high-resolution images or executive interviews, please contact Kelly Reeves at 949-509-1888 or kelly@klrcommunications.com.

Targus and the Targus logo are registered trademarks of Targus Group International. All rights reserved. All other marks may be the property of their respective titleholders.

KLR Communications, Inc.
Kelly Reeves, 949-509-1888
kelly@klrcommunications.com

State Keywords: California
Industry Keywords: Technology; Consumer Electronics; Hardware; Travel; Transportation; Retail; Specialty
Source: Targus(R) Inc.

**---- Index References ----**

Company: RETAIL AND RESTAURANT GROWTH CAPITAL LP; TRANSACTION SYSTEMS ARCHITECTS INC

Industry: (Electronics (1EL16); Computer Equipment (1CO77); Portable Computing Components (1PO12); I.T. (1IT96); Air Safety (1AI68); Transportation (1TR48); Portable PCs (1PO56); Passenger Transportation (1PA35); I.T. in Transportation (1IT48); PC Retailing (1PC68); Physical Security (1PH53); PC (1PC82); Consumer Electronics (1CO61); Computer Accessories (1CO04); Home & Multimedia PCs (1HO36); Retail (1RE82); Computer Peripherals (1CO58); Air Transportation (1AI53); Airport Security (1AI57); Portable PC Technology (1PO05); Security (1SE29); Visual Display (1VI97))

Region: (Americas (1AM92); USA (1US73); California (1CA98); North America (1NO39))

Language: EN

Other Indexing: (AIR CUSHION SYSTEM; CONSUMER ELECTRONICS; HARDWARE; KLR COMMUNICATIONS INC; RETAIL; SAFEPORT; SPECIALTYSOURCE; STATE KEYWORDS; TARGUS; TARGUS ANNOUNCES CHECKPOINT; TARGUS GROUP INTL; TRANSPORTATION; TRANSPORTATION SECURITY ADMINISTRATION; TRAVEL; TSA) (Al Giazzon; Celebrating; Corporate Traveler; DMRs; Editor) (North America)

Keywords: Technology; Consumer Electronics; Hardware; Travel; Transportation; California; Retail; Specialty (Product/Service)

Word Count: 782

**End of Document** © 2020 Thomson Reuters. No claim to original U.S. Government Works.

NewsRoom

# EXHIBIT E

# Invalidity Chart Comparing ’578 Patent to Targus CCB1 Backpack

- This chart is based on claim constructions asserted by plaintiff, defendant, or otherwise assertable and nothing herein shall be an admission that an element or configuration meets the limitation as properly construed.

| Claim | Limitation from ’578 Patent | Targus CCB1 Backpack (“CCB1”) | |
|---|---|---|---|
| 1(A) | A bi-fold case to allow for convenient security screening of a computer, comprising: | The CCB1 backpack is a bi-fold backpack that allows for convenient security screening of a computer. | UNFOLDED CONFIGURATION<br>FOLDED CONFIGURATION |

| | | | |
|---|---|---|---|
| 1(B) | a first storage section comprising a first outer side, a first inner side, a first proximal end, and a first distal end opposite the first proximal end | The CCB1 backpack has a first storage section with a first outer side, a first inner side, a first proximal end, and a first distal end that is opposite to the first proximal end. | FIRST STORAGE SECTION<br>FIRST DISTAL END<br>UNFOLDED CONFIGURATION<br>FIRST INNER SIDE<br>FIRST OUTER SIDE<br>FIRST PROXIMAL END |
| 1(C) | the first outer side, first inner side, first proximal end, and first distal end defining a first pouch with a first pouch opening | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CCB1 backpack has an exterior first pouch with an opening on its first storage section. | |

| | | | |
|---|---|---|---|
| 1(D) | and a first pouch fastener coupled to the first pouch opening and configured to only secure the first pouch opening | The CCB1 backpack has a first pouch fastener in the form of a Single Release Buckle and flap along with a zippered closure on its first pouch coupled to the first pouch opening and configured to only secure the first pouch opening. | FIRST OUTER SIDE<br>FIRST POUCH FASTENER<br>ZIPPERED CLOSURE FOR OPENING OF FIRST POUCH<br>OPENING |
| 1(E) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | outer and inner sides and scan an interior of the first pouch | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CCB1 backpack is made of a material which is non-metallic and would not block X-rays during a scanning process. | |
| 1(F) | wherein the first storage section further comprises a third pouch including a third pouch opening, independent of the first pouch opening, | The CCB1 backpack has a first storage section with a third pouch including a third pouch opening that is independent of the first pouch opening. The third pouch is within the first pouch or on the exterior side of the first storage section. | THIRD POUCH FASTENER AND OPENING<br>FOLDED CONFIGURATION<br>FIRST PROXIMAL END<br>FIRST DISTAL END<br>FIRST STORAGE SECTION |

| | | | |
|---|---|---|---|
| 1(G) | and a third fastener to only secure the third pouch opening | The CCB1 backpack has a fastener in the form of a Velcro closure on its third pouch for securing items within the pouch. | FOLDED CONFIGURATION<br>THIRD POUCH FASTENER AND OPENING<br>FIRST DISTAL END<br>FIRST PROXIMAL END<br>VELCRO CLOSURE<br>FIRST STORAGE SECTION |
| 1(H) | and a second storage section comprising a second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a first inner side, a second proximal end, and a second distal end opposite the second proximal end | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CCB1 backpack has a second storage section with a second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a second proximal end, and a second distal end opposite the second proximal end. | |

| | | | |
|---|---|---|---|
| 1(I) | the second storage section comprising, a second pouch | The second storage section of the CCB1 backpack comprises a second pouch, with a Velcro strap, that can hold a computer. | SECOND STORAGE SECTION<br>SECOND DISTAL END<br>VELCRO CLOSURE and STRAP<br>SECOND POUCH<br>SECOND INNER SIDE<br>SECOND OUTER SIDE<br>HOLDS A COMPUTER<br>SECOND PROXIMAL END<br>UNFOLDED CONFIGURATION |

| | | | |
|---|---|---|---|
| 1(J) | and the second storage section configured without an additional pouch, | The CCB1 backpack second storage section is configured without an additional pouch. | SECOND STORAGE SECTION<br>SECOND DISTAL END<br>SECOND PROXIMAL END<br>NO ADDITIONAL POUCH<br>UNFOLDED CONFIGURATION |
| 1(K) | the second pouch configured to receive a computer | The CCB1's second pouch is configured to receive a computer. | SECOND POUCH<br>VELCRO CLOSURE and STRAP<br>PROTECTIVE COMPUTER COMPARTMENT WITH FOAM PADDING |

| | | | |
|---|---|---|---|
| 1(L) | wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CCB1 backpack is made of a material which is non-metallic and would not block X-rays during a scanning process. | |
| 1(M) | and a second pouch fastener configured to substantially enclose only the second pouch and thereby retain a computer therein | The CCB1 backpack has a pouch and a strap with a Velcro strap that is configured to substantially enclose the second pouch and thereby would retain a computer within the second pouch and allow for adjustability. |  |

| | | | |
|---|---|---|---|
| 1(N) | the second storage section foldably joined at the second proximal end to the first proximal end of the first storage section such that the second proximal end and the first proximal end are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CCB1 backpack has material that foldably joins the first and second section to one another.<br><br>Defendant is unable to determine the meaning of "configured to enable a scanning device to scan through the hinge." However, the CCB1 backpack is made with a material which would not block X-rays. | THE CCB1 OUTER PANELS ARE MANUFACTURED WITH A POLYESTER FABRIC |
| 1(O) | wherein the first and second inner sides are disposed adjacent one another in the folded configuration and separated in an unfolded configuration | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CCB1 backpack discloses its first and second inner sides being disposed adjacent one another in | FIRST INNER SIDE<br>SECOND INNER SIDE<br>UNFOLDED CONFIGURATION<br>FIRST OUTER SIDE<br>FOLDED CONFIGURATION |

| | | | |
|---|---|---|---|
| | | the folded configuration and separated in an unfolded configuration. | |
| 1(P) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | The CCB1 backpack has its first and second distal ends being disposed adjacent one another in the folded configuration and separated in an unfolded configuration. | FIRST DISTAL END<br>SECOND DISTAL END<br>FIRST DISTAL END<br>SEPERATED IN UNFOLDED CONFIGURATION<br>ADJACENT ONE ANOTHER IN FOLDED CONFIGURATION |

**EXHIBIT E** **Targus CCB1 Backpack**

| | | | |
|---|---|---|---|
| 1(Q) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section. | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CCB1 backpack has an adjoining fabric portion that allow the two sides to pivot towards and away from each other. In the unfolded configuration, with the outer sides of both the first and second storage sections laid flat upon a same planar surface, scanning waves would be able to scan the computer in the second section of the CCB1 backpack without being inhibited by the first section. |  |

| | | | |
|---|---|---|---|
| 2 | The case of claim 1, further comprising a fastener to selectively secure the first storage section and the second storage section in the folded configuration. | The CCB1 backpack has a zipper that secures the first storage section and the second storage section in the folded configuration. | FLAP WITH SR BUCKLES and ZIPPERED CLOSURE SECURES FIRST AND SECOND STORAGE SECTIONS<br>FIRST STORAGE SECTION UNZIPPED<br>SECOND STORAGE SECTION UNZIPPED<br>FOLDED CONFIGURATION<br>UNFOLDED CONFIGURATION |
| | | | |
| 3 | The case of claim 1, wherein the scanning device is an X-ray scanner. | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. An X-ray scanner is not claimed in claim 1 as part of the case.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CCB1 | |

| | | | |
|---|---|---|---|
| | | backpack is made with a material which would not block X-rays during a scanning process. | |
| | | | |
| 4 | The case of claim 1, wherein the inner side of the second pouch is configured to allow for visual inspection of a computer disposed within the second pouch of the second storage section when second storage section is in the unfolded configuration. | The CCB1 backpack has a strap that allows the computer to be visible, leaving the computer available for visual inspection. | VELCRO STRAP TO HOLD COMPUTER<br>COMPUTER VISIBLE FOR INSPECTION<br>SECOND STORAGE SECTION |
| | | | |
| 5 | The case of claim 1, wherein the outer side of the second storage section is substantially | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | opaque and the inner side of the second pouch comprises a substantially transparent material. | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, to the extent this limitation is not explicitly disclosed, use of transparent materials to allow for visual inspection is routine and obvious in this field and would be readily combined by a POSITA, including one or more of the Transparent Material References set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |
| | | | |
| 6 | The case of claim 5, wherein the inner side of the second pouch comprises a mesh material. | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, to the extent this limitation is not explicitly disclosed, use of mesh materials is routine and obvious and would have been readily combined by a POSITA, including one or more of the Mesh Material References set forth in the cover | |

| | | | |
|---|---|---|---|
| | | pleading to Victorinox's Supplemental Invalidity Contentions. | |
| | | | |
| 12 | The case of claim 1, wherein the inner side of the first storage section comprises a pocket container, and wherein the pocket container is configured to receive one or more personal items and to allow the one or more personal items received therein to be scanned by a scanning device. | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CCB1's inner side of the first storage section has multiple pocket containers that can receive and hold personal items.<br><br>The CCB1 backpack is made with a material which would not block X-rays during a scanning process. | OUTER BODY FABRIC IS POLYESTER<br>INNER SIDE OF FIRST STORAGE SECTION<br>FIRST STORAGE SECTION |
| | | | |
| 13 | The case of claim 1, further comprising indicia indicating the case complies with a standard of a scanning authority. | The limitation "indicia indicating the case complies with a standard of a scanning authority" is not entitled to patentable weight because it is printed matter that is not functionally related to the substrate on which it is applied. *See Praxair Distribution, Inc. v.* | |

| | | | |
|---|---|---|---|
| | | *Mallinckrodt Hosp. Prod. IP Ltd.*, 890 F.3d 1024, 1031 (Fed. Cir. 2018) ("Claim limitations directed to printed matter are not entitled to patentable weight unless the printed matter is functionally related to the substrate on which the printed matter is applied."); *Bard Peripheral Vascular, Inc. v. AngioDynamics, Inc.*, CV 15-218-JFB-SRF, 2019 WL 1996022, at *5 (D. Del. Feb. 11, 2019), *report and recommendation adopted sub nom. C R Bard Inc. v. AngioDynamics*, 115-CV-218-JFB-SRF, 2019 WL 981700 (D. Del. Feb. 28, 2019) ("[T]he presence or absence of the radiographic letters on the claimed access port in the present case does not change the port's power injection capabilities. Instead, the radiographic letters explain to the medical practitioner that the port may be used for power injection.").<br><br>Alternatively, and without conceding that this limitation is entitled to patentable weight and to the extent this limitation is not explicitly disclosed, visual indicators of special features on products is routine and obvious in this field and for one of ordinary skill in the art. A POSITA would readily combine the CCB1 with one or more of the Indicia of Scanning | |

| | | | |
|---|---|---|---|
| | | Authority Compliance References set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |
| | | | |
| 14 | The case of claim 13, wherein a portion of the indicia is visible. | As described in claim 13, the "indicia" limitation is not entitled to patentable weight.<br><br>Alternatively, and without conceding that this limitation is entitled to patentable weight and to the extent this limitation is not explicitly disclosed, visual indicators of special features on products is routine and obvious in this field and for one of ordinary skill in the art. A POSITA would readily combine the CCB1 with one or more of the Indicia of Scanning Authority Compliance References set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |
| | | | |

| | | | |
|---|---|---|---|
| 17(A) | A bi-fold computer case to allow for convenient security screening of a computer disposed therein, the bi-fold computer case having a folded and an unfolded configuration, the bi-fold computer case comprising: | See limitations A and N of Claim 1. | |
| 17(B) | a first storage section comprising a first outer side, a first inner side, a first proximal end, and a first distal end opposite the first proximal end, the first outer side, first inner side, first proximal end, and first distal end defining a first pouch with a first pouch opening and a first pouch fastener coupled to the first | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B, C, and D of Claim 1. | |

| | | | |
|---|---|---|---|
| | pouch opening and configured to only secure the first pouch opening, | | |
| 17(C) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 17(D) | wherein the first storage section further comprises a third pouch coupled to the first outer side, the third pouch including a third pouch opening, independent of the first pouch opening | See limitation F of Claim 1. | |
| 17(E) | and a third fastener to only secure the third pouch opening | See limitation G of Claim 1. | |

| | | | |
|---|---|---|---|
| 17(F) | a second storage section comprising a second outer side, a second inner side, a second proximal end, and a second distal end opposite the second proximal end | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation H of Claim 1. | |
| 17(G) | the second section comprising a second pouch configured to receive a computer, the second storage section configured without an additional pouch | See limitations J and K of Claim 1. | |
| 17(H) | wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second | See limitation L of Claim 1. | |

| | | | |
|---|---|---|---|
| | pouch and a computer disposed therein | | |
| 17(I) | the second storage section foldably joined at the second proximal end to the first proximal end of the first storage section such that the first and second proximal ends are coupled adjacent one another | See limitation N of Claim 1. | |
| 17(J) | the first and second proximal ends forming a hinge configured to enable a scanning device to scan through the hinge | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |
| 17(K) | wherein in the folded configuration, the first inner side is approximated to the second inner side | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |
| 17(L) | and wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | See limitation P of Claim 1. | |
| 17(M) | a fastener to selectively maintain the computer case in the folded configuration | See Claim 2. | |
| 17(N) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface | See limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| 17(O) | an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |
| | | | |
| 18 | The bi-fold computer case of claim 17, wherein the scanning device is an X-ray scanner. | See Claim 3. | |
| | | | |
| 19 | The bi-fold computer case of claim 17, wherein the second outer side of the second storage section is substantially opaque | See claims 4 and 5. | |

| | | | |
|---|---|---|---|
| | and the second inner side of the second storage section includes a substantially transparent material to allow a computer disposed within the second storage section to be visually inspected. | | |
| | | | |
| 21(A) | A bi-fold computer case to allow for convenient security screening of a computer and having a folded configuration and an unfolded configuration, the computer case comprising: | See limitations A and N of Claim 1. | |
| 21(B) | a first storage panel comprising a first inner side, a first outer side, a first proximal | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover | |

| | | | |
|---|---|---|---|
| | end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch | pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B and C of Claim 1. | |
| 21(C) | the first distal end having a first pouch opening, | See limitation C of Claim 1. | |
| 21(D) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 21(E) | a second storage panel comprising a second inner side, a second outer side, second proximal end, a second distal end | See limitation H of Claim 1. | |

| | | | |
|---|---|---|---|
| | opposite the second proximal end | | |
| 21(F) | and a second pouch and the second storage panel configured without an additional pouch, the second pouch configured to receive a computer | See limitations I, J, and K of Claim 1. | |
| 21(G) | the second distal end including a sidewall with a second pouch opening disposed substantially in the center of the sidewall | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>To the extent the second pouch opening being disposed substantially in the center of the sidewall is not explicitly disclosed, it is routine and obvious in this field and for one of ordinary skill in the art to move the opening already shown in the proximal end to the distal end.<br><br>**Obvious Combinations:** | |

| | | | |
|---|---|---|---|
| | | To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with the one or more of the Center of the Sidewall References set forth following this chart. | |
| 21(H) | wherein the second storage panel and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | See limitation L of Claim 1. | |
| 21(I) | the second storage panel foldably joined at the second proximal end to the first proximal end of the first storage panel such that the first and second proximal ends are coupled adjacent | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |

| | | | |
|---|---|---|---|
| | one another to form a hinge configured to enable a scanning device to scan through the hinge | | |
| 21(J) | wherein in the folded configuration of the foldable computer case, the inner side of the first storage panel is approximated to the inner side of the second storage panel | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |
| 21(K) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | See limitation P of Claim 1. | |
| 21(L) | a fastener to selectively maintain the bi-fold computer | See Claim 2. | |

| | | | |
|---|---|---|---|
| | case in the folded configuration | | |
| 21(M) | wherein in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon a same planar surface, an object in the first storage panel is removed from interfering with a scanner positioned above and below the second storage panel to enable uninhibited scanning of a computer in the second pouch of the second storage panel | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |
| 21(N) | wherein the first pouch opening is disposed on the first storage panel and the second pouch opening is disposed on | See limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| | the second storage panel such that when the case is in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface. | | |
| | | | |
| 22(A) | A bi-fold computer case, comprising: | See limitation A of Claim 1. | |
| 22(B) | a first section comprising a first inner side, a first outer side, a first proximal end, and a first distal end opposite the first proximal end, | See limitation B of Claim 1. | |

| | | | |
|---|---|---|---|
| 22(C) | the first inner side, first outer side, first proximal end, and first distal end defining a first pouch, the first distal end including a first pouch opening, | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation C of Claim 1. | |
| 22(D) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch; | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation E of Claim 1. | |
| 22(E) | a second section comprising a second inner side having a surface area approximately equal to a surface area of the first inner side, a second outer side, a | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | second proximal end, a second distal end opposite the second proximal end, | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation H of Claim 1. | |
| 22(F) | a first sidewall coupled to the second inner side and the second outer side, a second sidewall extending substantially parallel to the first sidewall and coupled to the second inner side and the second outer side, a top wall disposed on the second distal end, | The CCB1 Backpack has a first sidewall that is coupled to the second inner side and second outer side. The second sidewall is coupled to the second inner side and second outer side. Both sidewalls extend parallel to each other. A top wall is disposed on the second distal end. | SECOND INNER SIDE<br>FIRST SIDEWALL<br>TOP WALL<br>SECOND DISTAL END<br>SECOND OUTER SIDE<br>SECOND SIDEWALL |
| 22(G) | a second pouch and the second section configured without an additional pouch, | See limitations I and J of Claim 1. | |

| | | | |
|---|---|---|---|
| 22(H) | and a second pouch opening extending along the top wall and partially extending along the first and second sidewalls, | The CCB1 backpack has a second pouch opening that extends along the top wall and partially extends along the first and second sidewalls. | FIRST SIDEWALL<br>SECOND POUCH OPENING<br>TOP WALL<br>SECOND SIDEWALL |
| 22(I) | the second pouch configured to receive a computer, | See limitation K of Claim 1. | |
| 22(J) | wherein the second section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | inner sides and scan an interior of the second pouch and a computer disposed therein, | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation L of Claim 1. | |
| 22(K) | the first proximal end of the first section foldably joined to the second proximal end of the second section such that the first and second proximal ends are coupled adjacent one another, to form a hinge configured to enable a scanning device to scan through the hinge, | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |
| 22(L) | wherein in a folded configuration of the bi-fold computer case, the inner side of the first section is approximated to the inner side of the second section, | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |

| | | | |
|---|---|---|---|
| 22(M) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in an unfolded configuration, | See limitation P of Claim 1. | |
| 22(N) | wherein in the unfolded configuration with the outer sides of both the first and second sections laid flat upon a same planar surface, an object in the first section is removed from interfering with a scanner positioned above and below the second section to enable uninhibited scanning of a computer in the second pouch of the second section, | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| 22(O) | wherein the first pouch opening is disposed on the first section and the second pouch opening is disposed on the second section such that when the case is in the unfolded configuration with the outer sides of both the first and second sections laid flat upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface. | The CCB1 backpack has a first pouch opening disposed on the first section and also a second pouch disposed on the second section. When the CCB1 backpack is unfolded, the outer sides of the first and second sections can be laid flat upon the same planar surface and the first and second pouch openings are then both oriented in a direction substantially parallel to the planar surface. |  |
| | | | |
| 23 | The computer case of claim 22, further comprising indicia, non-unique to the computer case, wherein the indicia | The limitation "indicia indicating the case complies with a standard of a scanning authority" is not entitled to patentable weight because it is printed matter that is not functionally related to the substrate on which it is applied. *See Praxair Distribution, Inc. v.* | |

| | | | |
|---|---|---|---|
| | indicates that the computer case complies with a standard of a scanning authority. | *Mallinckrodt Hosp. Prod. IP Ltd.*, 890 F.3d 1024, 1031 (Fed. Cir. 2018) ("Claim limitations directed to printed matter are not entitled to patentable weight unless the printed matter is functionally related to the substrate on which the printed matter is applied."); *Bard Peripheral Vascular, Inc. v. AngioDynamics, Inc.*, CV 15-218-JFB-SRF, 2019 WL 1996022, at *5 (D. Del. Feb. 11, 2019), *report and recommendation adopted sub nom. C R Bard Inc. v. AngioDynamics*, 115-CV-218-JFB-SRF, 2019 WL 981700 (D. Del. Feb. 28, 2019) ("[T]he presence or absence of the radiographic letters on the claimed access port in the present case does not change the port's power injection capabilities. Instead, the radiographic letters explain to the medical practitioner that the port may be used for power injection.").<br><br>Alternatively, and without conceding that this limitation is entitled to patentable weight, see claim 13. | |
| | | | |
| 24 | 24. The computer case of claim 23, wherein a | As described in claim 23, the "indicia" limitation is not entitled to patentable weight. | |

| | | | |
|---|---|---|---|
| | portion of the indicia is visible to scanning personnel. | Alternatively, and without conceding that this limitation is entitled to patentable weight, see claim 14. | |
| | | | |
| 27 | The computer case of claim 22, wherein the second storage section comprises a retention member configured to secure the computer within the second pouch. | The CCB1 backpack has within the second storage section a Velcro strap that retains and secures the computer within the second pouch. |  |
| | | | |
| 28(A) | A method for providing a bi-fold | Bringing the bi-fold computer case of the CCB1into existence, i.e., making it, would | |

| | | | |
|---|---|---|---|
| | computer case, comprising: | meet the requirement of "a method for providing." | |
| 28(B) | providing a first storage section including a first inner side, a first outer side, a proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch including a first pouch opening and a first fastener to secure the first pouch opening | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B, C, and D of Claim 1. | |
| 28(C) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation L of Claim 1. | |

| | | | |
|---|---|---|---|
| 28(D) | providing a second storage section having a surface area approximately equal to a surface area of the first storage section and including a second inner side, a second outer side, a second proximal end, and a second distal end opposite the second proximal end, the second storage section comprising a second pouch | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation H of Claim 1. | |
| 28(E) | the second distal end including a sidewall with a second pouch opening disposed substantially in the center of the sidewall and the second storage section configured without an additional pouch | See limitations J of Claim 1 and G of Claim 21. | |

| | | | |
|---|---|---|---|
| 28(F) | the second pouch configured to receive a computer | See limitation K of Claim 1. | |
| 28(G) | wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | See limitation L of Claim 1. | |
| 28(H) | foldably joining the first storage section to the second storage section at the first and second proximal ends to form a hinge configured to enable a scanning device to scan through the hinge such that the first and second proximal ends remain adjacent one | See limitation N of Claim 1. | |

| | | | |
|---|---|---|---|
| | another in both folded and unfolded configurations | | |
| 28(I) | wherein the second inner and outer sides are configured to allow the computer secured within the second pouch to be scanned by a scanning device without removing the computer from the second pouch | See limitation E of Claim 1. | |
| 28(J) | wherein in the folded configuration of the bi-fold computer case, the inner side of the first storage section is approximated to the inner side of the second storage section | See limitation K of Claim 17. | |
| 28(K) | wherein the first and second distal ends are disposed adjacent one another in the folded | See limitation P of Claim 1. | |

| | | | |
|---|---|---|---|
| | configuration and separated from one another in the unfolded configuration | | |
| 28(L) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| 28(M) | wherein the first pouch opening is disposed on the first storage section and the second pouch opening is disposed on the second storage section such that when the case is in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface. | See limitation N of Claim 21. | |
| | | | |
| 29 | The method of claim 28, further comprising attaching a fastener to the first storage section and to the | See Claim 2. | |

| | | | |
|---|---|---|---|
| | second storage section, wherein the fastener is configured to selectively secure the first storage section and the second storage section in the folded configuration. | | |
| | | | |
| 30 | The method of claim 28, wherein the scanning device is an X-ray scanner. | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. An X-ray scanner is not claimed in claim 1 as part of the case.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see Claim 3. | |
| | | | |
| 31 | The method of claim 28, wherein the second inner side is configured to allow for visual inspection of the computer disposed | See Claim 4. | |

| | | | |
|---|---|---|---|
| | within the second storage section. | | |
| | | | |
| 32 | The method of claim 31, wherein the second outer side is opaque and the second inner side of the second pouch comprises a substantially transparent material. | See Claim 5. | |
| | | | |
| 33 | The method of claim 32, wherein the second inner side is comprised of a mesh material. | See Claim 6. | |
| | | | |
| 38 | The method of claim 28, further comprising attaching indicia to the computer case, wherein the indicia is non-unique to the | See Claim 13. | |

| | | | |
|---|---|---|---|
| | computer case and indicates that the computer case complies with a standard of a scanning authority. | | |
| | | | |
| 39 | The method of claim 38, wherein a portion of the indicia is visible. | See Claim 14. | |
| | | | |
| 42(A) | A method for manufacturing a bi-fold computer case, comprising: | Bringing the CCB1 backpack into existence, i.e., making it, would meet the requirement of "a method for providing." | |

| | | | |
|---|---|---|---|
| 42(B) | providing a first storage section including a first inner side, a first outer side, a proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch including a first pouch opening and a first fastener to secure the first pouch opening | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations of E and D of Claim 1. | |
| 42(C) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 42(D) | wherein the first storage section further | See limitations F and G of Claim 1. | |

|  |  |  |  |
|---|---|---|---|
|  | comprises a third pouch including a third pouch opening, independent of the first pouch opening, and a third fastener to only secure the third pouch opening |  |  |
| 42(E) | providing a second storage section including a second inner side, a second outer side, a second proximal end, and a second distal end opposite the second proximal end, the second storage section comprising a second pouch and the second storage section configured without an additional pouch, the second pouch configured to receive a computer, | See limitations H, I, J, and K of Claim 1. |  |

| | | | |
|---|---|---|---|
| 42(F) | wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | See limitation L of Claim 1. | |
| 42(G) | foldably attaching the first proximal end of the first storage section to the second proximal end of the second storage section to form a hinge configured to enable a scanning device to scan through the hinge | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |
| 42(H) | wherein in a folded configuration of the bi-fold computer case, the inner side of the first storage section is | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | approximated to the inner side of the second storage section | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation K of Claim 17. | |
| 42(I) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in an unfolded configuration | See limitation O of Claim 1. | |
| 42(J) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| | second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section. | | |
| | | | |
| 44 | The case of claim 1, wherein the case is configured as a backpack and further comprising first and second shoulder straps coupled to the second outer side of the second storage section, the first and second straps configured to receive a user's shoulders to support the case. | The CCB1 is configured as a backpack with a first and second shoulder straps coupled to the outer side of the second storage section, and is configured to receive a user's shoulders. | FIRST SHOULDER STRAP<br>SECOND SHOULDER STRAP<br>SECOND OUTER SIDE<br>SECOND STORAGE SECTION |

| | | | |
|---|---|---|---|
| 46 | The case of claim 1, further comprising: a first handle coupled to the first distal end of the first storage section; and a second handle coupled to the second distal end of the second storage section, wherein in the folded configuration the first and second handles are disposed adjacent each other. | The CCB1 backpack has a single handle on the distal end of the second storage section. A second handle is unnecessary in the CCB1 backpack.<br><br>To the extent a second handle is not present in the CCB1 case, it is routine and obvious in this field and for one of ordinary skill in the art to add a second handle to the first storage section, and a POSITA would have readily combined the CCB1 case with one or more of the Dual Handle References set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. |   |

| | | | |
|---|---|---|---|
| 47 | The case of claim 1, wherein the second storage section comprises: a first cushion disposed on an interior side of the second pouch, and a second cushion disposed on an opposing interior side of the second pouch, the first and second cushions configured to enable a scanning device to scan through the first and second cushions. | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CCB1 backpack comprises: a first cushion disposed on an interior side of the second pouch, and a second panel disposed on an opposing interior side of the second pouch, the first cushion and second pouch are configured to enable a scanning device to scan through the first and second pouch.<br><br>Defendant is unable to determine the meaning of "configured to enable a scanning device to scan through the first and second cushions." However, the CCB1 backpack is made with a material which would not block X-rays during a scanning process. Therefore, the first cushion and second pouch of the CCB1 backpack are configured to enable a scanning device to scan through the first cushion and second pouch. |  |

| | | | |
|---|---|---|---|
| 48 | The computer case of claim 21, wherein the first pouch opening and the second pouch opening are accessible to a user in the folded configuration. | The CCB1's first pouch opening is on the exterior of the first storage section and is accessible to be used in the folded configuration.<br><br>The CCB1's second pouch opening is on the interior of the second storage section and is accessible to be used in the folded configuration; for example, when the zipper that secures the first storage section to the second storage section is unzipped. | FIRST AND SECOND STORAGE SECTIONS CLOSED<br>FIRST STORAGE SECTION UNZIPPED<br>SECOND STORAGE SECTION UNZIPPED<br>FOLDED CONFIGURATION<br>UNFOLDED CONFIGURATION |
| 49 | The computer case of claim 21, wherein the first pouch opening and the second pouch opening are accessible to a user in the folded configuration. | See claim 48. | |

| | | | |
|---|---|---|---|
| 50(A) | A bi-fold case to allow for convenient security screening of a computer, comprising: | See limitation A of Claim 1. | |
| 50(B) | a first storage section comprising, a first outer side, a first inner side, a first proximal end, a first distal end opposite the first proximal end, a first pouch including a first opening and a first fastener | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B, C, and D of Claim 1. | |
| 50(C) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 50(D) | and a third pouch coupled to the first outer side and including a third | See limitations F and G of Claim 1. | |

| | | | |
|---|---|---|---|
| | pouch opening independent of the first pouch opening and a third fastener to only secure the third pouch opening | | |
| 50(E) | and a second storage section comprising, a second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a second proximal end, and a second distal end opposite the second proximal end | See limitation H of Claim 1. | |
| 50(F) | the second storage section comprising, a second pouch including a second opening and coupled to the second inner side, and the second storage section | See limitations I and J of Claim 1. | |

| | | | |
|---|---|---|---|
| | configured without an additional pouch | | |
| 50(G) | the second pouch configured to receive a computer, wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | See limitations K and L of Claim 1. | |
| 50(H) | and wherein the second storage section is foldably joined at the second proximal end to the first proximal end of the first storage section such that the second proximal end and the first proximal end are | See limitation N of Claim 1. | |

| | | | |
|---|---|---|---|
| | coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge | | |
| 50(I) | wherein the first inner side and the second pouch are disposed adjacent one another in the folded configuration and separated in an unfolded configuration | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |
| 50(J) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | See limitation P of Claim 1. | |
| 50(K) | wherein in the unfolded | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under | |

| | | | |
|---|---|---|---|
| | configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section | 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |
| | | | |
| 51 | The case of claim 50, wherein the second opening is disposed on the second storage section such that when the case is in the unfolded | See limitation N of Claim 21. | |

| | | | |
|---|---|---|---|
| | configuration with the outer sides of both the first and second storage sections laid flat upon the same planar surface, the second opening is oriented in a direction substantially parallel to the planar surface. | | |
| | | | |

| | | | |
|---|---|---|---|
| 52 | The case of claim 50, wherein the second pouch extends less than a length of the second inner side. | The CCB1 backpack discloses a second pouch with a length that spans from the inner surface of one of its side walls to an inner surface of an opposing side wall. The length of the second pouch is limited by the thickness of the first and second pouch fasteners, which are located between the second proximal end and the second distal end inner walls and thereby, necessarily, create a second pouch that has a smaller length than the second inner side.<br><br>(*see, e.g.*, Hollingsworth 754 Col. 4, ll. 14-18; 30-34 ("Front and back walls 11 and 13, left and right side walls 15 and 17, and top and bottom side walls 19 and 21 can have any desired configuration defining a compartment suitable in size for holding a notebook computer or the like. . .Mating strap members 30 and 31...of the type known in the art for holding a notebook computer within a carrying case, and extend respectively from left and right side walls 15 and 17 to surround the suspension system 33"; Fig. 7). |  |

| | | | |
|---|---|---|---|
| 53 | The case of claim 50, wherein the second storage section further includes a strap member extending over the second opening. | The CCB1 backpack discloses a strap member that secures the computer within the second storage section. Mating strap members are preferably nylon belts with cooperating strips of hook-and-loop fasteners, of the type known in the art for holding a notebook computer within a carrying case, and extend respectively from left and right side walls to surround the suspension system.<br><br>To the extent that this limitation is not met by the VNC-216 case, a POSITA would readily combine the VNC-216 case with prior art with a strap member extending over the second opening, including one or more of the Strap Member Over Second Opening References set forth following this chart. |  |
| | | | |
| 54(A) | A bi-fold case to allow for convenient security screening of a computer, comprising: | See limitation A of Claim 1. | |
| 54(B) | a first storage section comprising, a first outer side, a first inner | See limitation B of Claim 1. | |

| | | | |
|---|---|---|---|
| | side, a first proximal end, a first distal end opposite the first proximal end | | |
| 54(C) | and a first pouch including a first opening and a first fastener | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations C and D of Claim 1. | |
| 54(D) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 54(E) | and a second storage section comprising, a second outer side, a second inner side having a surface area | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | approximately equal to a surface area of the first inner side, a second proximal end, and a second distal end opposite the second proximal end | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation H of Claim 1. | |
| 54(F) | the second storage section comprising, a second pouch including a second opening and coupled to the second inner side, and the second storage section configured without an additional pouch | See limitations I and J of Claim 1. | |
| 54(G) | the second pouch extending less than a length of the second inner side, the second pouch configured to receive a computer | See claim 52. | |
| 54(H) | wherein the second storage section and the second outer and inner | See limitation L of Claim 1. | |

| | | | |
|---|---|---|---|
| | sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | | |
| 54(I) | and wherein the second storage section is foldably joined at the second proximal end to the first proximal end of the first storage section such that the second proximal end and the first proximal end are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |
| 54(J) | wherein the first inner side and the second | See limitation O of Claim 1. | |

| | | | |
|---|---|---|---|
| | pouch are disposed adjacent one another in the folded configuration and separated in an unfolded configuration | | |
| 54(K) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | See limitation P of Claim 1. | |
| 54(L) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| | removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section | | |
| | | | |
| 55 | The case of claim 54, wherein the second opening is disposed on the second storage section such that when the case is in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon the same planar surface, the second opening is oriented in a direction | See limitation N of Claim 21. | |

|  |  |  |  |
|---|---|---|---|
|  | substantially parallel to the planar surface. |  |  |
|  |  |  |  |
| 56 | The case of claim 54, wherein the second storage section further includes a strap member extending over the second opening. | See Claim 53. |  |
|  |  |  |  |
| 57(A) | A bi-fold computer case to allow for convenient security screening of a computer and having a folded configuration and an unfolded configuration, the computer case comprising: | See limitations A and O of Claim 1. |  |

| | | | |
|---|---|---|---|
| 57(B) | a first storage section comprising, a first inner side, a first outer side, a first proximal end, a first distal end opposite the first proximal end, a first pouch, and a first pouch opening disposed on the first distal end and in communication with the first pouch | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B and C of Claim 1. | |
| 57(C) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 57(D) | a second storage section comprising, a second inner side, a second outer side, second proximal end, | See limitation H of Claim 1. | |

| | | | |
|---|---|---|---|
| | a second distal end opposite the second proximal end | | |
| 57(E) | a second pouch configured to receive a computer | See limitation K of Claim 1. | |
| 57(F) | and the second storage panel configured without an additional pouch | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation J of Claim 1. | |
| 57(G) | and a second pouch opening at least partially disposed on the second distal end and in communication with the second pouch | See limitation K of Claim 1. | |
| 57(H) | wherein the second storage panel and the | See limitation L of Claim 1. | |

| | | | |
|---|---|---|---|
| | second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | | |
| 57(I) | the second storage panel foldably joined at the second proximal end to the first proximal end of the first storage panel such that the first and second proximal ends are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |
| 57(J) | wherein the first and second distal ends are disposed adjacent one | See limitation P of Claim 1. | |

| | | | |
|---|---|---|---|
| | another in the folded configuration and separated from one another in the unfolded configuration | | |
| 57(K) | wherein in the folded configuration of the foldable computer case, the inner side of the first storage section is approximated to the inner side of the second storage section and the first pouch opening and the second pouch opening are configured to be accessible to a user | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |
| 57(L) | wherein in the unfolded configuration with the outer sides of both the first and second storage panels laid flat | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | upon a same planar surface, an object in the first storage panel is removed from interfering with a scanner positioned above and below the second storage panel to enable uninhibited scanning of a computer in the second pouch of the second storage panel | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |
| 57(M) | wherein the first pouch opening is disposed on the first storage panel and the second pouch opening is disposed on the second storage panel such that when the case is in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon the same planar | See limitation N of Claim 21. | |

| | | | |
|---|---|---|---|
| | surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface | | |

For convenience, prior art references that disclose, discuss, or relate to the same or related technologies, or are otherwise related, may be discussed herein collectively.

Referring to the items listed in **Appendix 1 and Appendix 2**[1]:

- "Multiple Pocket References": TSA RFI; Hollingsworth '754; Hillman; Arnwine; Moor; Chen; Kearl; Hollingsworth '266; Miller; Latshaw; Pelican; Lee; Samsonite L35; Ruckh; Shuttle; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Pouch Fastener References": Bosma; Hollingsworth; Hillman; Barnes; Arnwine; Moor; Chen; Kearl; Hollingsworth '266; Miller; Latshaw; Pelican; Lee; Samsonite L35; Ruckh; Shuttle; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Third Pouch References": Hollingsworth '266; Pelican 1495 CC1; Willard; Bosma; Moor; Samsonite L35; Shuttle; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Chloe; 62563

- "Second Pouch Substantially Enclosed to Retain Computer References": Hollingsworth '754; Hillman; Moor; Kearl; Hollingsworth '266; Miller; Latshaw; Samsonite L35; Ruckh; Shuttle; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; CDB1; Case Tek; Chloe; 62563

- "No Additional Pouch References": TSA RFI; Bosma; Hollingsworth; Hillman; Barnes; Moor; Chen; Hollingsworth '266; Miller; Latshaw; Pelican; Lee; Shuttle; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

[1] For these groupings concerning computer case structure or functionality, the absence of a particular reference from a group is not intended to suggest in any way that the reference lacks that or any other limitation of the Asserted Claims. The listed references in the groups are exemplary.

- “Both Sections Flat on Same Surface References”: TSA RFI; Bosma; Hollingsworth; Hillman; Barnes; Arnwine; Moor; Kearl; Hollingsworth ’266; Miller; Latshaw; Lee Samsonite L35; Willard; Shuttle; PNC-15; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- “Direction Substantially Parallel to Planar Surface References”: Samsonite L35; Hollingsworth ’266; Bosma; Moor; PNC-15; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- “Inner Section Configured for Visual Inspection of Computer References”: Bosma; Hollingsworth; Hillman; Moor; Chen; Kearl; Hollingsworth ’266; Godshaw; Latshaw; Pelican; Lee; Samsonite L35; Ruckh; Shuttle; PNC-15; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- “Transparent Material References”: Bosma; Hillman; Moor; Kearl; Godshaw; Latshaw; Ruckh; CDB1

- “Mesh Material References”: Moor; Kearl; Godshaw; Latshaw; Case Logic VNC-216; Mastermind; Saddlebag; Shuttle; CDB1

- “Indicia of Scanning Authority Compliance References”: Travel Sentry Locks; TSA RFI; Tropp 1; Tropp 2

- “Center of Sidewall References”: Bosma; Hollingsworth ’266; Miller; Latshaw; Lee; Samsonite L35; Shuttle; Samsonite L45; CDB1; Chloe; 62563

- “Openings Oriented Parallel to Surface References”: Bosma; Barnes; Kearl; Hollingsworth ’266; Miller; Latshaw; Lee; Samsonite L35; Samsonite L45; PNC-15; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- “Cushion References”: Barnes; Golenz; Hollingsworth ’266; Pelican; Timberland; Contour Pro; Saddlebag; Samsonite L35; Samsonite L45; Mastermind; CCB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- “Opening Accessible in Folded Configuration References”: Bosma; Moor; Hollingsworth ’266; Miller; Latshaw; Lee; Samsonite L35; Samsonite L45; Shuttle; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; CDB1; Chloe; 62563

- “Strap Member Over Second Opening References”: Bosma; Hollingsworth; Moor; Chen; Hollingsworth ’266; Miller; Latshaw; Lee; Samsonite L35; Shuttle; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- “Shoulder Strap References”: Kearl; Godshaw; Samsonite L35; Samsonite L45; Moor; Mastermind; Saddlebag; Modem; CityGear; Timberland; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Pocket Container References": Samsonite L35; Samsonite L45; Willard; Pelican 1495 CC1; Hollingsworth '754; Shuttle; PNC-15; Contour Pro; Case Logic VNC-216; Saddlebag; Mastermind; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Dual Handle References": Hillman; Bosma; Arnwine; Moor; Latshaw; Modem; Contour; Hollingsworth '754; Chloe; 62563

- "Second Pouch Less than Length of Second Side References": Pelican 1945 CC1; Hollingsworth '266; Willard; Hollingsworth '754; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Samsonite L35; Samsonite L45; CDB1; Case Tek; Chloe; 62563

**APPENDIX 1**

**LIST OF PRIOR ART PATENTS AND PRINTED PUBLICATIONS CITED IN INITIAL INVALIDITY CONTENTIONS**

| No. | Patent or Printed Publication Prior Art | Prior Art Under | Bates Nos. |
|---|---|---|---|
| 1 | U.S. Patent No. 6,213,266 to Hollingsworth ("Hollingsworth '266") | 102(a), (b), (e) | VSAI00026805 - VSAI00026818 |
| 2 | U.S. Patent No. 5,524,754 to Hollingsworth ("Hollingsworth '754") | 102(a), (b), (e) | VSAI00026894 - VSAI00026907 |
| 3 | Transportation Security Administration Solicitation No. HSTS04-08-FRI-MC, March 3, 2008, "Checkpoint Friendly Laptop Bag" | 102(a), (f) | TSA0000004-TSA0000011 |
| 4 | U.S. Provisional Patent App. No. 61/068,722 to Bosma ("Bosma") | 102(a), (e), (g) | VSAI00026819 - VSAI00026837 |
| 5 | U.S. Patent No. 5,706,992 to Moor ("Moor") | 102(a), (b), (e) | VSAI00026729 - VSAI00026736 |
| 6 | U.S. Patent No. 6,637,563 to Ruckh ("Ruckh") | 102(a), (b), (e) | VSAI00026948 - VSAI00026953 |
| 7 | U.S. Patent No. D360,978 to Willard et al. ("Willard") | 102(a), (b), (e) | VSAI00026934 - VSAI00026938 |
| 8 | PCT App. No. PCT/US99/26445 to Samsonite ("Samsonite 1") | 102(a), (b), (e) | VSAI00026908 - VSAI00026933 |
| 9 | Pelican Introduces a Mobile Workstation for 17" Laptops, November 20, 2006, *available at* https://www.pelican.com/us/en/about/press-releases/article/pelican-introduces-a-mobile-workstation-for-17-laptops/ ("Pelican 1495 CC2") | 102(a), (b) | VSAI00026881 - VSAI00026882 |
| 10 | U.S. Patent No. 5,547,052 to Latshaw ("Latshaw") | 102(a), (b), (e) | VSAI00026769 - VSAI00026796 |
| 11 | Pelican 1495 CC2, Feb. 27, 2007, *available at* http://web.archive.org/web/20070227043738/http://www.pelican.com/cases_detail.php?Case=1495CC2 ("Pelican 1495 CC2") | 102(a), (b) | VSAI00026737 - VSAI00026737 |
| 12 | Samsonite Computer Cases L35 Notebook Case, June 29, 2003, *available at* https://web.archive.org/web/20030629203049/http://us.samsonite.com/webapp/us/servlet/SPrintableProductView?storeId=10001&langId=-1&productId=46014 ("Samsonite L35") | 102(a), (b) | VSAI00026958 - VSAI00026958 |
| 13 | Travel Sentry Press Release, Sept. 16, 2004, *available at* https://www.prweb.com/releases/2004/09/prweb158830.htm ("Travel Sentry") | 102(a), (b) | VSAI00026996 - VSAI00026998 |
| 14 | U.S. Patent No. D500,597 to Hillman ("Hillman") | 102(a), (b), (e) | VSAI00026758 - VSAI00026761 |
| 15 | U.S. Patent Pub. No. 2005/0189188 to Barnes ("Barnes") | 102(a), (b), (e) | VSAI00026939 - VSAI00026947 |
| 16 | U.S. Patent No. 5,494,157 to Golenz et al. ("Golenz") | 102(a), (b), (e) | VSAI00026762 - VSAI00026768 |
| 17 | U.S. Patent No. 5,544,792 to Arnwine ("Arnwine") | 102(a), (b), (e) | VSAI00026873 - VSAI00026880 |

| | | | |
|---|---|---|---|
| 18 | U.S. Patent No. 5,960,952 to Chen ("Chen") | 102(a), (b), (e) | VSAI00026797 - VSAI00026804 |
| 19 | U.S. Patent No. 6,193,118 to Kearl ("Kearl") | 102(a), (b), (e) | VSAI00026838 - VSAI00026851 |
| 20 | U.S. Patent No. 6,213,267 to Miller ("Miller") | 102(a), (b), (e) | VSAI00026863 - VSAI00026872 |
| 21 | U.S. Patent No. 6,655,565 to Godshaw et al. ("Godshaw") | 102(a), (b), (e) | VSAI00026739 - VSAI00026750 |
| 22 | U.S. Patent No. D338,104 to Lee ("Lee") | 102(a), (b), (e) | VSAI00026751 - VSAI00026757 |
| 23 | TUAW Review: Higher Ground Shuttle (noting case on display at MacWorld in January 2007), *available at* https://www.engadget.com/2007-06-18-tuaw-review-higher-ground-shuttle.html ("Shuttle") | 102(a), (b) | VSAI00026691 - VSAI00026696 |
| 24 | U.S. Patent No. 7,021,537 to Tropp ("Tropp 1") | 102(a), (b), (e) | VSAI00026883 - VSAI00026892 |
| 25 | U.S. Patent No. 7,036,728 to Tropp ("Tropp 2") | 102(a), (b), (e) | VSAI00026852 - VSAI00026862 |
| 26 | Case Logic PNC-15 15.4-Inch Slimline Laptop Case, Amazon (noting first available Jan. 26, 2007), *available at* https://www.amazon.com/Case-Logic-PNC-15-15-4-Inch-Slimline/dp/B000MY2JBC/ref=cm_cr_arp_d_product_top?ie=UTF8 ("PNC-15") | 102(a), (b) | VSAI00026646 - VSAI00026650 |
| 27 | Eastpak Mastermind, Amazon (product reviewed Dec. 18, 2003), *available at* https://www.amazon.com/Eastpak-Mastermind/dp/B0000732QU/ref=cm_cr_arp_d_product_top?ie=UTF8 ("Mastermind") | 102(a), (b) | VSAI00026683 - VSAI00026686 |
| 28 | Kensington Contour Pro 17" Carrying Case ("Contour Pro") | 102(a), (b) | VSAI00026706 - VSAI00026706 |
| 29 | Kensington Saddlebag Sport Computer Backpack ("Saddlebag") | 102(a), (b) | VSAI00026707 - VSAI00026707 |
| 30 | Tip Sheet, 9/27/04 Newsweek 73 (reviewing The North Face Modem), *available at* 2004 WLNR 3641938 ("Modem") | 102(a), (b) | VSAI00026721 - VSAI00026725 |
| 31 | The North Face Modem, eBags, April 6, 2005, *available at* https://web.archive.org/web/20050406040539/http://www.ebags.com/the_north_face/modem/product_detail/index.cfm?modelid=20153 ("Modem") | 102(a), (b) | VSAI00026712 - VSAI00026714 |
| 32 | Targus 15.4" CityGear Chicago Notebook Backpack Review, Dec. 15, 2006, *available at* http://www.notebookreview.com/review/targus-15-4-citygear-chicago-notebook-backpack-review/ ("CityGear") | 102(a), (b) | VSAI00026980 - VSAI00026984 |
| 33 | Case Logic VNC-216 16-Inch Laptop Briefcase, Amazon (noting first available June 17, 2003), *available at* https://www.amazon.com/Case-Logic-VNC-216-16- | 102(a), (b) | VSAI00026663 - VSAI00026673 |

| | | | |
|---|---|---|---|
| | Inch-Briefcase/dp/B001LXMF80/ref=cm_cr_arp_d_product_top?ie=UTF8 ("VNC-216") | | |
| 34 | Samsonite Computer Cases L45 Notebook Plus Case, June 29, 2003, *available at* https://web.archive.org/web/20030629212623/http://us.samsonite.com/webapp/us/servlet/SProductDisplay?productId=46016&storeId=10001&langId=-1&pc=C30 ("L45") | 102(a), (b) | VSAI00026975 - VSAI00026975 |
| 35 | Kensington K62563US SP40 15.6-Inch Classic Notebook Computer Case, Amazon (noting date first available June 15, 2008) *available at* https://www.amazon.com/Kensington-K62563US-15-6-Inch-Notebook-Computer/dp/B0019TZRTA ("62563") | 102(a), (b) | VSAI00026999 – VSAI00027004 |
| 36 | Kensington Introduces 24 Innovative Notebook Accessories for School, Work, and Play, June 16, 2008, *available at* https://www.kensington.com/news/news-press-center/2008-news--press-center/kensington-introduces-24-innovative-notebook-accessories-for-school-work-and-play/ | 102(a), (b) | VSAI00027010 – VSAI00027015 |
| 37 | Targus Cases: Nylon/Ballistic, Nov. 2, 2001, *available at* https://web.archive.org/web/20011102234549/http://www.targus.com/case_nylon.asp?pos=6 ("CCB1") | 102(a), (b) | VSAI00027025 – VSAI00027026 |
| 38 | Targus Cases: Nylon/Ballistic, Targus Notebook Backpack, Nov. 21, 2001 *available at* https://web.archive.org/web/20011121055402/http://www.targus.com:80/case_nylon_specific.asp?title=TARGUS+NOTEBOOK+BACKPACK&sku=CCB1 | 102(a), (b) | VSAI00027028 |
| 39 | Targus CDB1 Deluxe Backpack – Black (High Density Nylon) (noting Date First Available October 2, 2001), *available at* https://www.amazon.com/Targus-CDB1-Deluxe-Backpack-Density/dp/B000034D6K ("CDB1") | 102(a), (b) | VSAI00027041 – VSAI00027047 |
| 40 | Targus Cases: Nylon/Ballistic, Targus FolioPac3, Dec. 30, 2001 *available at* https://web.archive.org/web/20011230040041/http://www.targus.com:80/case_nylon_specific.asp?title=TARGUS+FOLIOPAC3&sku=CFP3 ("CFP3") | 102(a), (b) | VSAI00027059 |
| 41 | Targus Cases: Nylon/Ballistic, Dec. 18, 2001, *available at* https://web.archive.org/web/20011218081225/http://www.targus.com/case_nylon.asp | 102(a), (b) | VSAI00027061 – VSAI00027062 |

| | | | |
|---|---|---|---|
| 42 | Chloe Dao and Pacific Design Launch the Chloe Dao Collection, Aug. 15, 2007, *available at* https://www.24-7pressrelease.com/press-release/32112/chloe-dao-and-pacific-design-launch-the-chloe-dao-collection ("Chloe") | 102(a), (b) | VSAI00027064 – VSAI00027069 |
| 43 | Kensington 62148 SureCheck Associate Notebook Case (noting date first available Feb. 18, 2003), *available at* https://www.amazon.com/Kensington-62148-SureCheck-Associate-Notebook/dp/B00008MOPH ("SureCheck") | 102(a), (b) | VSAI00027086 – VSAI00027093 |

**APPENDIX 2**

**LIST OF NON-PATENT OR NON-PRINTED PUBLICATION PRIOR ART CITED IN INITIAL INVALIDITY CONTENTIONS**

| No. | Non-Patent or Non-Printed Publication Prior Art | Prior Art Under | Bates Nos. |
|---|---|---|---|
| 1 | Case Logic PNC-15 (“PNC-15”) | 102(a), (b), (g) | VSAI00026645 - VSAI00026658 |
| 2 | Case Logic VNC-216 (“VNC-216”) | 102(a), (b), (g) | VSAI00026659 - VSAI00026681 |
| 3 | Samsonite L35 Laptop Case (“L35” or “Samsonite L35”) | 102(a), (b), (g) | VSAI00026954 - VSAI00026966 |
| 4 | Samsonite L45 Laptop Case (“L45” or “Samsonite L45”) | 102(a), (b), (g) | VSAI00026967 - VSAI00026978 |
| 5 | The North Face Modem (“Modem”) | 102(a), (b), (g) | VSAI00026711 - VSAI00026726 |
| 6 | Eastpak Mastermind (“Mastermind”) | 102(a), (b), (g) | VSAI00026682 - VSAI00026688 |
| 7 | Timberland Backpack (“Timberland”) | 102(a), (b), (g) | VSAI00026989 - VSAI00026995 |
| 8 | Kensington Countour 62340 Laptop Case (“Contour Laptop Case”) | 102(a), (b), (g) | VSAI00026703 - VSAI00026706 |
| 9 | Kensington Saddlebag Sport Computer Backpack (“Saddlebag Backpack”) | 102(a), (b), (g) | VSAI00026707 - VSAI00026710 |
| 10 | Pelican 1495 CC2 Laptop Case (“Pelican 1495 CC2”) | 102(a), (b), (g) | VSAI00026728, VSAI00026738, VSAI00026893, VSAI00026727, VSAI00026737 |
| 11 | Higher Ground Shuttle Laptop Case (“Shuttle”) | 102(a), (b), (g) | VSAI00026689 - VSAI00026702 |
| 12 | Targus City Gear Chicago Backpack (“City Gear”) | 102(a), (b), (g) | VSAI00026979 - VSAI00026988 |
| 13 | Targus CCB1 (“CCB1”) | 102(a), (b), (g) | VSAI00027024 – VSAI00027034 |
| 14 | Targus CDB1 (“CDB1”) | 102(a), (b), (g) | VSAI00027035 – VSAI00027052 |
| 15 | Targus CFP3 (“CFP3”) | 102(a), (b), (g) | VSAI00027053 – VSAI00027063 |
| 16 | Targus TBC01301-01 (“TBC01301”) | 102(a), (b), (g) | VSAI00027094 – VSAI00027101 |
| 17 | Kensington K62148[B] The Associate SureCheck (“SureCheck”) | 102(a), (b), (g) | VSAI00027080 – VSAI00027093 |
| 18 | Case Tek 9900383 (“Case Tek”) | 102(a), (b), (g) | VSAI00027017 – VSAI00027023 |
| 19 | Pacific Designs PD0090 Chloe (“Chloe”) | 102(a), (b), (g) | VSAI00027064 – VSAI00027079 |
| 20 | Kensington 62563 SP40 15.6-Inch Classic Notebook Computer Case (“62563”) | 102(a), (b), (g) | VSAI00026999 – VSAI00027016 |

# EXHIBIT F

**Invalidity Chart Comparing ’578 Patent to Targus CDB1 Backpack**

- This chart is based on claim constructions asserted by plaintiff, defendant, or otherwise assertable and nothing herein shall be an admission that an element or configuration meets the limitation as properly construed.

| Claim | Limitation from ’578 Patent | Targus CDB1 Backpack (“CDB1”) | |
|---|---|---|---|
| 1(A) | A bi-fold case to allow for convenient security screening of a computer, comprising: | The CDB1 backpack is a bi-fold backpack that allows for convenient security screening of a computer. | UNFOLDED CONFIGURATION FOLDED CONFIGURATION |

| | | | |
|---|---|---|---|
| 1(B) | a first storage section comprising a first outer side, a first inner side, a first proximal end, and a first distal end opposite the first proximal end | The CDB1 backpack has a first storage section with a first outer side, a first inner side, a first proximal end, and a first distal end that is opposite to the first proximal end. | FIRST STORAGE SECTION<br>FIRST DISTAL END<br>UNFOLDED CONFIGURATION<br>FIRST INNER SIDE<br>FIRST OUTER SIDE<br>FIRST PROXIMAL END |
| 1(C) | the first outer side, first inner side, first proximal end, and first distal end defining a first pouch with a first pouch opening | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CDB1 backpack has an exterior first pouch with an opening on its first storage section. | |

| | | | |
|---|---|---|---|
| 1(D) | and a first pouch fastener coupled to the first pouch opening and configured to only secure the first pouch opening | The CDB1 backpack has a first pouch fastener in the form of a zipper on its first pouch coupled to the first pouch opening and configured to only secure the first pouch opening. |  |
| 1(E) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CDB1 backpack is made of a material which | |

| | | | |
|---|---|---|---|
| | | is non-metallic and would not block X-rays during a scanning process. | |
| 1(F) | wherein the first storage section further comprises a third pouch including a third pouch opening, independent of the first pouch opening, | The CDB1 backpack has a first storage section with a third pouch including a third pouch opening that is independent of the first pouch opening. The third pouch is within the first pouch or on the exterior side of the first storage section. | FIRST OUTER SIDE<br>FIRST DISTAL END<br>THIRD POUCH FASTENER<br>FIRST STORAGE SECTION<br>FOLDED CONFIGURATION<br>FIRST PROXIMAL END |

| | | | |
|---|---|---|---|
| 1(G) | and a third fastener to only secure the third pouch opening | The CDB1 backpack has a fastener in the form of a zippered closure on its third pouch for securing items within the pouch. | FIRST OUTER SIDE<br>FIRST DISTAL END<br>THIRD POUCH FASTENER<br>FIRST STORAGE SECTION<br>FOLDED CONFIGURATION<br>FIRST PROXIMAL END |
| 1(H) | and a second storage section comprising a second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a second proximal end, and a second distal end opposite the second proximal end | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CDB1 backpack has a second storage section with a second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a second | |

**EXHIBIT F** **Targus CDB1 Backpack**

| | | | |
|---|---|---|---|
| | | proximal end, and a second distal end opposite the second proximal end. | |
| 1(I) | the second storage section comprising, a second pouch | The second storage section of the CDB1 backpack comprises a second pouch that can hold a computer. | SECOND STORAGE SECTION<br>SECOND DISTAL END<br>SECOND INNER SIDE<br>COMPUTER POUCH<br>SECOND OUTER SIDE<br>HOLDS A COMPUTER<br>SECOND PROXIMAL END<br>UNFOLDED CONFIGURATION |

7

| | | | |
|---|---|---|---|
| 1(J) | and the second storage section configured without an additional pouch, | The CDB1 backpack second storage section is configured without an additional pouch. | SECOND STORAGE SECTION<br>SECOND DISTAL END<br>SECOND PROXIMAL END<br>NO ADDITIONAL POUCH<br>UNFOLDED CONFIGURATION |
| 1(K) | the second pouch configured to receive a computer | The CDB1's second pouch is configured to receive a computer. | SECOND POUCH HOLDS COMPUTER |

| | | | |
|---|---|---|---|
| 1(L) | wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CDB1 backpack is made of a material which is non-metallic and would not block X-rays during a scanning process. | |
| 1(M) | and a second pouch fastener configured to substantially enclose only the second pouch and thereby retain a computer therein | The CDB1 backpack has a computer pouch with a zippered closure that is configured to substantially enclose the second pouch and thereby would retain a computer within the second pouch. |  |

| | | | |
|---|---|---|---|
| 1(N) | the second storage section foldably joined at the second proximal end to the first proximal end of the first storage section such that the second proximal end and the first proximal end are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CDB1 backpack has material that foldably joins the first and second section to one another.<br><br>Defendant is unable to determine the meaning of "configured to enable a scanning device to scan through the hinge." However, the CDB1 backpack is made with a material which would not block X-rays. | THE CDB1 OUTER PANELS ARE MANUFACTURED WITH A POLYESTER FABRIC |

**EXHIBIT F** **Targus CDB1 Backpack**

| | | | |
|---|---|---|---|
| 1(O) | wherein the first and second inner sides are disposed adjacent one another in the folded configuration and separated in an unfolded configuration | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CDB1 backpack discloses its first and second inner sides being disposed adjacent one another in the folded configuration and separated in an unfolded configuration. | FIRST INNER SIDE<br>SECOND INNER SIDE<br>FIRST OUTER SIDE<br>UNFOLDED CONFIGURATION<br>FOLDED CONFIGURATION |
| 1(P) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | The CDB1 backpack has its first and second distal ends being disposed adjacent one another in the folded configuration and separated in an unfolded configuration. | FIRST DISTAL END<br>SECOND DISTAL END<br>FIRST DISTAL END<br>SEPERATED IN UNFOLDED CONFIGURATION<br>ADJACENT ONE ANOTHER IN FOLDED CONFIGURATION |

| | | | |
|---|---|---|---|
| 1(Q) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section. | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CDB1 backpack has an adjoining fabric portion that allow the two sides to pivot towards and away from each other. In the unfolded configuration, with the outer sides of both the first and second storage sections laid flat upon a same planar surface, scanning waves would be able to scan the computer in the second section of the CDB1 backpack without being inhibited by the first section. |  |

| | | | |
|---|---|---|---|
| 2 | The case of claim 1, further comprising a fastener to selectively secure the first storage section and the second storage section in the folded configuration. | The CDB1 backpack has a zipper that secures the first storage section and the second storage section in the folded configuration. | ZIPPERED POCKET SECURING FIRST AND SECOND STORAGE SECTIONS<br>FIRST STORAGE SECTION PARTIALLY UNZIPPED<br>SECOND STORAGE SECTION UNZIPPED<br>FOLDED CONFIGURATION<br>UNFOLDED CONFIGURATION |
| | | | |
| 3 | The case of claim 1, wherein the scanning device is an X-ray scanner. | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. An X-ray scanner is not claimed in claim 1 as part of the case.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the | |

| | | | |
|---|---|---|---|
| | | CDB1 backpack is made with a material which would not block X-rays during a scanning process. | |
| | | | |
| 4 | The case of claim 1, wherein the inner side of the second pouch is configured to allow for visual inspection of a computer disposed within the second pouch of the second storage section when second storage section is in the unfolded configuration. | The CDB1 backpack has a pouch with mesh that allows the computer to be visible, leaving the computer available for visual inspection. | SECOND STORAGE SECTION<br>COMPUTER VISIBLE THRU MESH PANEL FOR INSPECTION |
| | | | |
| 5 | The case of claim 1, wherein the outer side of the second storage section is substantially opaque | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | and the inner side of the second pouch comprises a substantially transparent material. | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the outer side of the CDB1's second storage section is substantially opaque and the inner side of the second pouch comprises a substantially transparent material, i.e. mesh. | |
| | | | |
| 6 | The case of claim 5, wherein the inner side of the second pouch comprises a mesh material. | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the inner side of the CDB1's second pouch is a mesh material. | |
| | | | |

| | | | |
|---|---|---|---|
| 12 | The case of claim 1, wherein the inner side of the first storage section comprises a pocket container, and wherein the pocket container is configured to receive one or more personal items and to allow the one or more personal items received therein to be scanned by a scanning device. | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the inner side of the CDB1 backpack has multiple pocket containers configured to receive one or more personal items and to allow the one or more personal items received therein to be scanned by a scanning device.<br><br>The CDB1 backpack is made with a material which would not block X-rays during a scanning process. | OUTER BODY FABRIC IS POLYESTER<br>INNER SIDE OF FIRST STORAGE SECTION<br>FIRST STORAGE SECTION |
| | | | |
| 13 | The case of claim 1, further comprising indicia indicating the case complies with a standard of a scanning authority. | The limitation "indicia indicating the case complies with a standard of a scanning authority" is not entitled to patentable weight because it is printed matter that is not functionally related to the substrate on which it is applied. *See Praxair Distribution, Inc. v.* | |

| | | | |
|---|---|---|---|
| | | *Mallinckrodt Hosp. Prod. IP Ltd.*, 890 F.3d 1024, 1031 (Fed. Cir. 2018) ("Claim limitations directed to printed matter are not entitled to patentable weight unless the printed matter is functionally related to the substrate on which the printed matter is applied."); *Bard Peripheral Vascular, Inc. v. AngioDynamics, Inc.*, CV 15-218-JFB-SRF, 2019 WL 1996022, at *5 (D. Del. Feb. 11, 2019), *report and recommendation adopted sub nom. C R Bard Inc. v. AngioDynamics*, 115-CV-218-JFB-SRF, 2019 WL 981700 (D. Del. Feb. 28, 2019) ("[T]he presence or absence of the radiographic letters on the claimed access port in the present case does not change the port's power injection capabilities. Instead, the radiographic letters explain to the medical practitioner that the port may be used for power injection.").<br><br>Alternatively, and without conceding that this limitation is entitled to patentable weight and to the extent this limitation is not explicitly disclosed, visual indicators of special features on products is routine and obvious in this field and for one of ordinary skill in the art. | |

| | | | |
|---|---|---|---|
| | | **Obvious Combinations:**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Indicia of Scanning Authority Compliance References set forth following this chart. | |
| | | | |
| 14 | The case of claim 13, wherein a portion of the indicia is visible. | As explained in claim 13, the "indicia" is not entitled to patent weight.<br><br>Alternatively, and without conceding that this limitation is entitled to patentable weight and to the extent this limitation is not explicitly disclosed, visual indicators of special features on products are routine and obvious in this field and for one of ordinary skill in the art.<br><br>**Obvious Combinations:** | |

| | | | |
|---|---|---|---|
| | | To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Indicia of Scanning Authority Compliance References set forth following this chart. | |
| | | | |
| 17(A) | A bi-fold computer case to allow for convenient security screening of a computer disposed therein, the bi-fold computer case having a folded and an unfolded configuration, the bi-fold computer case comprising: | See limitations A and N of Claim 1. | |
| 17(B) | a first storage section comprising a first outer side, a first inner side, a first proximal end, and a first distal end opposite the first | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

|  |  |  |  |
|---|---|---|---|
|  | proximal end, the first outer side, first inner side, first proximal end, and first distal end defining a first pouch with a first pouch opening and a first pouch fastener coupled to the first pouch opening and configured to only secure the first pouch opening, | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B, C, and D of Claim 1. |  |
| 17(C) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. |  |
| 17(D) | wherein the first storage section further comprises a third pouch coupled to the first outer side, the | See limitation F of Claim 1. |  |

| | | | |
|---|---|---|---|
| | third pouch including a third pouch opening, independent of the first pouch opening | | |
| 17(E) | and a third fastener to only secure the third pouch opening | See limitation G of Claim 1. | |
| 17(F) | a second storage section comprising a second outer side, a second inner side, a second proximal end, and a second distal end opposite the second proximal end | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation H of Claim 1. | |
| 17(G) | the second section comprising a second pouch configured to receive a computer, the second storage section configured without an additional pouch | See limitations J and K of Claim 1. | |

| | | | |
|---|---|---|---|
| 17(H) | wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | See limitation L of Claim 1. | |
| 17(I) | the second storage section foldably joined at the second proximal end to the first proximal end of the first storage section such that the first and second proximal ends are coupled adjacent one another | See limitation N of Claim 1. | |
| 17(J) | the first and second proximal ends forming a hinge | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in | |

| | | | |
|---|---|---|---|
| | configured to enable a scanning device to scan through the hinge | the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |
| 17(K) | wherein in the folded configuration, the first inner side is approximated to the second inner side | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |
| 17(L) | and wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | See limitation P of Claim 1. | |
| 17(M) | a fastener to selectively maintain | See Claim 2. | |

| | | | |
|---|---|---|---|
| | the computer case in the folded configuration | | |
| 17(N) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface | See limitation Q of Claim 1. | |
| 17(O) | an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| 18 | The bi-fold computer case of claim 17, wherein the scanning device is an X-ray scanner. | See Claim 3. | |
| | | | |
| 19 | The bi-fold computer case of claim 17, wherein the second outer side of the second storage section is substantially opaque and the second inner side of the second storage section includes a substantially transparent material to allow a computer disposed within the second storage section to be visually inspected. | See claims 4 and 5. | |
| | | | |

| | | | |
|---|---|---|---|
| 21(A) | A bi-fold computer case to allow for convenient security screening of a computer and having a folded configuration and an unfolded configuration, the computer case comprising: | See limitations A and N of Claim 1. | |
| 21(B) | a first storage panel comprising a first inner side, a first outer side, a first proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B and C of Claim 1. | |
| 21(C) | the first distal end having a first pouch opening, | See limitation C of Claim 1. | |

| | | | |
|---|---|---|---|
| 21(D) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 21(E) | a second storage panel comprising a second inner side, a second outer side, second proximal end, a second distal end opposite the second proximal end | See limitation H of Claim 1. | |
| 21(F) | and a second pouch and the second storage panel configured without an additional pouch, the second pouch configured to receive a computer | See limitations I, J, and K of Claim 1. | |
| 21(G) | the second distal end including a sidewall with a second pouch | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in | |

| | | | |
|---|---|---|---|
| | opening disposed substantially in the center of the sidewall | the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the second pouch opening is disposed substantially in the center of the sidewall.<br><br>**Obvious Combinations:**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Center of Sidewall References set forth following this chart. | |
| 21(H) | wherein the second storage panel and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a | See limitation L of Claim 1. | |

| | | | |
|---|---|---|---|
| | computer disposed therein | | |
| 21(I) | the second storage panel foldably joined at the second proximal end to the first proximal end of the first storage panel such that the first and second proximal ends are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |
| 21(J) | wherein in the folded configuration of the foldable computer case, the inner side of the first storage panel is approximated to the inner side of the second storage panel | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |

| | | | |
|---|---|---|---|
| 21(K) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | See limitation P of Claim 1. | |
| 21(L) | a fastener to selectively maintain the bi-fold computer case in the folded configuration | See Claim 2. | |
| 21(M) | wherein in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon a same planar surface, an object in the first storage panel is removed from interfering with a scanner positioned | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| | above and below the second storage panel to enable uninhibited scanning of a computer in the second pouch of the second storage panel | | |
| 21(N) | wherein the first pouch opening is disposed on the first storage panel and the second pouch opening is disposed on the second storage panel such that when the case is in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface. | See limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| 22(A) | A bi-fold computer case, comprising: | See limitation A of Claim 1. | |
| 22(B) | a first section comprising a first inner side, a first outer side, a first proximal end, and a first distal end opposite the first proximal end, | See limitation B of Claim 1. | |
| 22(C) | the first inner side, first outer side, first proximal end, and first distal end defining a first pouch, the first distal end including a first pouch opening, | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation C of Claim 1. | |
| 22(D) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | and scan an interior of the first pouch; | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation E of Claim 1. | |
| 22(E) | a second section comprising a second inner side having a surface area approximately equal to a surface area of the first inner side, a second outer side, a second proximal end, a second distal end opposite the second proximal end, | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation H of Claim 1. | |

| | | | |
|---|---|---|---|
| 22(F) | a first sidewall coupled to the second inner side and the second outer side, a second sidewall extending substantially parallel to the first sidewall and coupled to the second inner side and the second outer side, a top wall disposed on the second distal end, | The CDB1 Backpack has a first sidewall that is coupled to the second inner side and second outer side. The second sidewall is coupled to the second inner side and second outer side. Both sidewalls extend parallel to each other. A top wall is disposed on the second distal end. |  |
| 22(G) | a second pouch and the second section configured without an additional pouch, | See limitations I and J of Claim 1. | |

| | | | |
|---|---|---|---|
| 22(H) | and a second pouch opening extending along the top wall and partially extending along the first and second sidewalls, | The CDB1 backpack has a second pouch opening that extends along the top wall and partially extends along the first and second sidewalls. | FIRST SIDEWALL<br>TOP WALL<br>SECOND POUCH OPENING<br>SECOND SIDEWALL |
| 22(I) | the second pouch configured to receive a computer, | See limitation K of Claim 1. | |
| 22(J) | wherein the second section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | inner sides and scan an interior of the second pouch and a computer disposed therein, | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation L of Claim 1. | |
| 22(K) | the first proximal end of the first section foldably joined to the second proximal end of the second section such that the first and second proximal ends are coupled adjacent one another, to form a hinge configured to enable a scanning device to scan through the hinge, | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |
| 22(L) | wherein in a folded configuration of the bi-fold computer case, the inner side of the first section is approximated to the inner side of the second section, | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |
| 22(M) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in an unfolded configuration, | See limitation P of Claim 1. | |
| 22(N) | wherein in the unfolded configuration with the outer sides of both the first and second sections laid flat upon a same planar surface, an object in the first section is removed from interfering with a scanner positioned above and below the second section to enable uninhibited scanning of a | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| | computer in the second pouch of the second section, | | |
| 22(O) | wherein the first pouch opening is disposed on the first section and the second pouch opening is disposed on the second section such that when the case is in the unfolded configuration with the outer sides of both the first and second sections laid flat upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface. | The CDB1 backpack has a first pouch opening disposed on the first section and also a second pouch disposed on the second section. When the CDB1 backpack is unfolded, the outer sides of the first and second sections can be laid flat upon the same planar surface and the first and second pouch openings are then both oriented in a direction substantially parallel to the planar surface. | FIRST SECTION<br>SECOND OUTER SIDE<br>SECOND POUCH OPENING<br>FIRST POUCH OPENING<br>SECOND SECTION<br>FIRST OUTER SIDE<br>UNFOLDED CONFIGURATION LAID FLAT |
| | | | |
| 23 | The computer case of claim 22, further | The limitation "indicia indicating the case complies with a standard of a scanning | |

| | | | |
|---|---|---|---|
| | comprising indicia, non-unique to the computer case, wherein the indicia indicates that the computer case complies with a standard of a scanning authority. | authority" is not entitled to patentable weight because it is printed matter that is not functionally related to the substrate on which it is applied. *See Praxair Distribution, Inc. v. Mallinckrodt Hosp. Prod. IP Ltd.*, 890 F.3d 1024, 1031 (Fed. Cir. 2018) ("Claim limitations directed to printed matter are not entitled to patentable weight unless the printed matter is functionally related to the substrate on which the printed matter is applied."); *Bard Peripheral Vascular, Inc. v. AngioDynamics, Inc.*, CV 15-218-JFB-SRF, 2019 WL 1996022, at *5 (D. Del. Feb. 11, 2019), *report and recommendation adopted sub nom. C R Bard Inc. v. AngioDynamics*, 115-CV-218-JFB-SRF, 2019 WL 981700 (D. Del. Feb. 28, 2019) ("[T]he presence or absence of the radiographic letters on the claimed access port in the present case does not change the port's power injection capabilities. Instead, the radiographic letters explain to the medical practitioner that the port may be used for power injection.").<br><br>Alternatively, and without conceding that this limitation is entitled to patentable weight, see claim 13. | |

| | | | |
|---|---|---|---|
| 24 | 24. The computer case of claim 23, wherein a portion of the indicia is visible to scanning personnel. | As described in claim 23, the "indicia" limitation is not entitled to patentable weight.<br><br>Alternatively, and without conceding that this limitation is entitled to patentable weight, see claim 14. | |
| | | | |
| 27 | The computer case of claim 22, wherein the second storage section comprises a retention member configured to secure the computer within the second pouch. | The CDB1 backpack has within the second storage section a computer pouch that retains and secures the computer within the second pouch. | SECOND STORAGE SECTION<br>COMPUTER POUCH WITH ZIPPER CLOSURE |

| | | | |
|---|---|---|---|
| 28(A) | A method for providing a bi-fold computer case, comprising: | Bringing the bi-fold computer case of the CDB1into existence, i.e., making it, would meet the requirement of "a method for providing." | |
| 28(B) | providing a first storage section including a first inner side, a first outer side, a proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch including a first pouch opening and a first fastener to secure the first pouch opening | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B, C, and D of Claim 1. | |
| 28(C) | wherein the first outer and inner sides are configured to enable a scanning device to | See limitation L of Claim 1. | |

| | | | |
|---|---|---|---|
| | scan through the first outer and inner sides and scan an interior of the first pouch | | |
| 28(D) | providing a second storage section having a surface area approximately equal to a surface area of the first storage section and including a second inner side, a second outer side, a second proximal end, and a second distal end opposite the second proximal end, the second storage section comprising a second pouch | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation H of Claim 1. | |
| 28(E) | the second distal end including a sidewall with a second pouch opening disposed substantially in the center of the sidewall | See limitations J of Claim 1 and G of Claim 21. | |

| | | | |
|---|---|---|---|
| | and the second storage section configured without an additional pouch | | |
| 28(F) | the second pouch configured to receive a computer | See limitation K of Claim 1. | |
| 28(G) | wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | See limitation L of Claim 1. | |
| 28(H) | foldably joining the first storage section to the second storage section at the first and second proximal ends to form a hinge configured to enable a | See limitation N of Claim 1. | |

| | | | |
|---|---|---|---|
| | scanning device to scan through the hinge such that the first and second proximal ends remain adjacent one another in both folded and unfolded configurations | | |
| 28(I) | wherein the second inner and outer sides are configured to allow the computer secured within the second pouch to be scanned by a scanning device without removing the computer from the second pouch | See limitation E of Claim 1. | |
| 28(J) | wherein in the folded configuration of the bi-fold computer case, the inner side of the first storage section is approximated to the | See limitation K of Claim 17. | |

| | | | |
|---|---|---|---|
| | inner side of the second storage section | | |
| 28(K) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | See limitation P of Claim 1. | |
| 28(L) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| | to enable uninhibited scanning of a computer in the second pouch of the second storage section | | |
| 28(M) | wherein the first pouch opening is disposed on the first storage section and the second pouch opening is disposed on the second storage section such that when the case is in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface. | See limitation N of Claim 21. | |

| | | | |
|---|---|---|---|
| 29 | The method of claim 28, further comprising attaching a fastener to the first storage section and to the second storage section, wherein the fastener is configured to selectively secure the first storage section and the second storage section in the folded configuration. | See Claim 2. | |
| | | | |
| 30 | The method of claim 28, wherein the scanning device is an X-ray scanner. | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. An X-ray scanner is not claimed in claim 1 as part of the case.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see Claim 3. | |

| | | | |
|---|---|---|---|
| 31 | The method of claim 28, wherein the second inner side is configured to allow for visual inspection of the computer disposed within the second storage section. | See Claim 4. | |
| | | | |
| 32 | The method of claim 31, wherein the second outer side is opaque and the second inner side of the second pouch comprises a substantially transparent material. | See Claim 5. | |
| | | | |
| 33 | The method of claim 32, wherein the second inner side is | See Claim 6. | |

| | | | |
|---|---|---|---|
| | comprised of a mesh material. | | |
| | | | |
| 38 | The method of claim 28, further comprising attaching indicia to the computer case, wherein the indicia is non-unique to the computer case and indicates that the computer case complies with a standard of a scanning authority. | See Claim 13. | |
| | | | |
| 39 | The method of claim 38, wherein a portion of the indicia is visible. | See Claim 14. | |
| | | | |

| | | | |
|---|---|---|---|
| 42(A) | A method for manufacturing a bi-fold computer case, comprising: | Bringing the CDB1 backpack into existence, i.e., making it, would meet the requirement of "a method for providing." | www.targus.com F.Co TCM - 10 Lot No. TW0207-047 Model CDB1-001 |
| 42(B) | providing a first storage section including a first inner side, a first outer side, a proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch including a first pouch opening and a first fastener to secure the first pouch opening | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations of E and D of Claim 1. | |

| | | | |
|---|---|---|---|
| 42(C) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 42(D) | wherein the first storage section further comprises a third pouch including a third pouch opening, independent of the first pouch opening, and a third fastener to only secure the third pouch opening | See limitations F and G of Claim 1. | |
| 42(E) | providing a second storage section including a second inner side, a second outer side, a second proximal end, and a second distal end opposite the second | See limitations H, I, J, and K of Claim 1. | |

| | | | |
|---|---|---|---|
| | proximal end, the second storage section comprising a second pouch and the second storage section configured without an additional pouch, the second pouch configured to receive a computer, | | |
| 42(F) | wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | See limitation L of Claim 1. | |
| 42(G) | foldably attaching the first proximal end of the first storage section to the second | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in | |

| | | | |
|---|---|---|---|
| | proximal end of the second storage section to form a hinge configured to enable a scanning device to scan through the hinge | the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |
| 42(H) | wherein in a folded configuration of the bi-fold computer case, the inner side of the first storage section is approximated to the inner side of the second storage section | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation K of Claim 17. | |
| 42(I) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in an unfolded configuration | See limitation O of Claim 1. | |
| 42(J) | wherein in the unfolded configuration with the | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in | |

| | | | |
|---|---|---|---|
| | outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section. | the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| 44 | The case of claim 1, wherein the case is configured as a backpack and further comprising first and second shoulder straps coupled to the second outer side of the second storage section, the first and second straps configured to receive a user's shoulders to support the case. | The CDB1 is configured as a backpack with a first and second shoulder straps coupled to the outer side of the second storage section, and is configured to receive a user's shoulders. |  |

| | | | |
|---|---|---|---|
| 46 | The case of claim 1, further comprising: a first handle coupled to the first distal end of the first storage section; and a second handle coupled to the second distal end of the second storage section, wherein in the folded configuration the first and second handles are disposed adjacent each other. | The CDB1 backpack has a single handle on the distal end of the second storage section. A second handle is unnecessary on the CDB1 backpack.<br><br>To the extent a second handle is not present in the CDB1 backpack, it is routine and obvious in this field and for one of ordinary skill in the art to add a second handle to the first storage section, and a POSITA would have readily combined the CDB1 backpack with prior art models having two handles.<br><br>**<u>Obvious Combinations:</u>**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Dual Handle References set forth following this chart. |  |

| | | | |
|---|---|---|---|
| 47 | The case of claim 1, wherein the second storage section comprises: a first cushion disposed on an interior side of the second pouch, and a second cushion disposed on an opposing interior side of the second pouch, the first and second cushions configured to enable a scanning device to scan through the first and second cushions. | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CDB1 backpack comprises: a first cushion disposed on an interior side of the second pouch, and a second panel disposed on an opposing interior side of the second pouch, the first cushion and second pouch are configured to enable a scanning device to scan through the first and second pouch.<br><br>Defendant is unable to determine the meaning of "configured to enable a scanning device to scan through the first and second cushions." However, the CDB1 backpack is made with a material which would not block X-rays during a scanning process. Therefore, the first cushion and second pouch of the CDB1 backpack are configured to enable a |  |

| | | | |
|---|---|---|---|
| | | scanning device to scan through the first cushion and second pouch.<br><br>To the extent this limitation is not explicitly disclosed, use of cushions/padded material in computer cases is routine and obvious in this field and for one of ordinary skill in the art.<br><br>**Obvious Combinations:**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Cushion References set forth following this chart. | |

| | | | |
|---|---|---|---|
| 48 | The computer case of claim 21, wherein the first pouch opening and the second pouch opening are accessible to a user in the folded configuration. | The CDB1's first pouch opening is on the exterior of the first storage section and is accessible to be used in the folded configuration.<br><br>The CDB1's second pouch opening is on the interior of the second storage section and is accessible to be used in the folded configuration; for example, when the zipper that secures the first storage section to the second storage section is unzipped. | FIRST AND SECOND STORAGE SECTIONS CLOSED<br>FIRST STORAGE SECTION PARTIALLY UNZIPPED<br>SECOND STORAGE SECTION UNZIPPED<br>FOLDED CONFIGURATION<br>UNFOLDED CONFIGURATION |
| | | | |
| 49 | The computer case of claim 21, wherein the first pouch opening and the second pouch opening are accessible to a user in the folded configuration. | See claim 48. | |
| | | | |

| | | | |
|---|---|---|---|
| 50(A) | A bi-fold case to allow for convenient security screening of a computer, comprising: | See limitation A of Claim 1. | |
| 50(B) | a first storage section comprising, a first outer side, a first inner side, a first proximal end, a first distal end opposite the first proximal end, a first pouch including a first opening and a first fastener | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B, C, and D of Claim 1. | |
| 50(C) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 50(D) | and a third pouch coupled to the first outer side and | See limitations F and G of Claim 1. | |

| | | | |
|---|---|---|---|
| | including a third pouch opening independent of the first pouch opening and a third fastener to only secure the third pouch opening | | |
| 50(E) | and a second storage section comprising, a second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a second proximal end, and a second distal end opposite the second proximal end | See limitation H of Claim 1. | |
| 50(F) | the second storage section comprising, a second pouch including a second opening and coupled to the second inner side, and the second | See limitations I and J of Claim 1. | |

| | | | |
|---|---|---|---|
| | storage section configured without an additional pouch | | |
| 50(G) | the second pouch configured to receive a computer, wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | See limitations K and L of Claim 1. | |
| 50(H) | and wherein the second storage section is foldably joined at the second proximal end to the first proximal end of the first storage section such that the second | See limitation N of Claim 1. | |

| | | | |
|---|---|---|---|
| | proximal end and the first proximal end are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge | | |
| 50(I) | wherein the first inner side and the second pouch are disposed adjacent one another in the folded configuration and separated in an unfolded configuration | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |
| 50(J) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | See limitation P of Claim 1. | |

| | | | |
|---|---|---|---|
| 50(K) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |
| | | | |
| 51 | The case of claim 50, wherein the second opening is disposed on the second storage section such that when | See limitation N of Claim 21. | |

| | | | |
|---|---|---|---|
| | the case is in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon the same planar surface, the second opening is oriented in a direction substantially parallel to the planar surface. | | |
| | | | |

| | | | |
|---|---|---|---|
| 52 | The case of claim 50, wherein the second pouch extends less than a length of the second inner side. | The CDB1 backpack second pouch comprises a cushioned member that extends less than a length of the second inner side. | FULL LENGTH OF SECOND INNER SIDE<br>LENGTH OF COMPUTER POUCH EXTENDS LESS THAN THE LENGTH OF SECOND INNER SIDE |
| | | | |

| | | | |
|---|---|---|---|
| 53 | The case of claim 50, wherein the second storage section further includes a strap member extending over the second opening. | The CDB1 backpack has a zippered closure that, secures the computer within the computer pouch. | SECOND STORAGE SECTION<br>ZIPPERED CLOSURE ON COMPUTER POUCH |
| | | | |
| 54(A) | A bi-fold case to allow for convenient security screening of a computer, comprising: | See limitation A of Claim 1. | |

| | | | |
|---|---|---|---|
| 54(B) | a first storage section comprising, a first outer side, a first inner side, a first proximal end, a first distal end opposite the first proximal end | See limitation B of Claim 1. | |
| 54(C) | and a first pouch including a first opening and a first fastener | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations C and D of Claim 1. | |
| 54(D) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 54(E) | and a second storage section comprising, a | This claim lacks sufficient written description and/or is indefinite and/or is not | |

| | | | |
|---|---|---|---|
| | second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a second proximal end, and a second distal end opposite the second proximal end | enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation H of Claim 1. | |
| 54(F) | the second storage section comprising, a second pouch including a second opening and coupled to the second inner side, and the second storage section configured without an additional pouch | See limitations I and J of Claim 1. | |
| 54(G) | the second pouch extending less than a length of the second inner side, the second pouch configured to receive a computer | See claim 52. | |

| | | | |
|---|---|---|---|
| 54(H) | wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | See limitation L of Claim 1. | |
| 54(I) | and wherein the second storage section is foldably joined at the second proximal end to the first proximal end of the first storage section such that the second proximal end and the first proximal end are coupled adjacent one another to form a hinge configured to enable a scanning | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |

| | | | |
|---|---|---|---|
| | device to scan through the hinge | | |
| 54(J) | wherein the first inner side and the second pouch are disposed adjacent one another in the folded configuration and separated in an unfolded configuration | See limitation O of Claim 1. | |
| 54(K) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | See limitation P of Claim 1. | |
| 54(L) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |
| ████████████████████████████████████████████████████████████████ |
| 55 | The case of claim 54, wherein the second opening is disposed on the second storage section such that when the case is in the unfolded configuration with the outer sides of both the first and second storage sections laid | See limitation N of Claim 21. | |

| | | | |
|---|---|---|---|
| | flat upon the same planar surface, the second opening is oriented in a direction substantially parallel to the planar surface. | | |
| | | | |
| 56 | The case of claim 54, wherein the second storage section further includes a strap member extending over the second opening. | See Claim 53. | |
| | | | |
| 57(A) | A bi-fold computer case to allow for convenient security screening of a computer and having a folded configuration and an unfolded configuration, the computer case comprising: | See limitations A and O of Claim 1. | |

| | | | |
|---|---|---|---|
| 57(B) | a first storage section comprising, a first inner side, a first outer side, a first proximal end, a first distal end opposite the first proximal end, a first pouch, and a first pouch opening disposed on the first distal end and in communication with the first pouch | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B and C of Claim 1. | |
| 57(C) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 57(D) | a second storage section comprising, a second inner side, a second outer side, second proximal end, | See limitation H of Claim 1. | |

| | | | |
|---|---|---|---|
| | a second distal end opposite the second proximal end | | |
| 57(E) | a second pouch configured to receive a computer | See limitation K of Claim 1. | |
| 57(F) | and the second storage panel configured without an additional pouch | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation J of Claim 1. | |
| 57(G) | and a second pouch opening at least partially disposed on the second distal end and in communication with the second pouch | See limitation K of Claim 1. | |
| 57(H) | wherein the second storage panel and the | See limitation L of Claim 1. | |

|  |  |  |  |
|---|---|---|---|
|  | second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein |  |  |
| 57(I) | the second storage panel foldably joined at the second proximal end to the first proximal end of the first storage panel such that the first and second proximal ends are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. |  |
| 57(J) | wherein the first and second distal ends are | See limitation P of Claim 1. |  |

| | | | |
|---|---|---|---|
| | disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | | |
| 57(K) | wherein in the folded configuration of the foldable computer case, the inner side of the first storage section is approximated to the inner side of the second storage section and the first pouch opening and the second pouch opening are configured to be accessible to a user | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |
| 57(L) | wherein in the unfolded configuration with the outer sides of both the first and second | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | storage panels laid flat upon a same planar surface, an object in the first storage panel is removed from interfering with a scanner positioned above and below the second storage panel to enable uninhibited scanning of a computer in the second pouch of the second storage panel | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |
| 57(M) | wherein the first pouch opening is disposed on the first storage panel and the second pouch opening is disposed on the second storage panel such that when the case is in the unfolded configuration with the outer sides of both the first and second storage panels laid flat | See limitation N of Claim 21. | |

| | | | |
|---|---|---|---|
| | upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface | | |

For convenience, prior art references that disclose, discuss, or relate to the same or related technologies, or are otherwise related, may be discussed herein collectively.

Referring to the items listed in **Appendix 1 and Appendix 2**[1]:

- "Multiple Pocket References": TSA RFI; Hollingsworth '754; Hillman; Arnwine; Moor; Chen; Kearl; Hollingsworth '266; Miller; Latshaw; Pelican; Lee; Samsonite L35; Ruckh; Shuttle; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Pouch Fastener References": Bosma; Hollingsworth; Hillman; Barnes; Arnwine; Moor; Chen; Kearl; Hollingsworth '266; Miller; Latshaw; Pelican; Lee; Samsonite L35; Ruckh; Shuttle; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Third Pouch References": Hollingsworth '266; Pelican 1495 CC1; Willard; Bosma; Moor; Samsonite L35; Shuttle; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Chloe; 62563

- "Second Pouch Substantially Enclosed to Retain Computer References": Hollingsworth '754; Hillman; Moor; Kearl; Hollingsworth '266; Miller; Latshaw; Samsonite L35; Ruckh; Shuttle; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; CDB1; Case Tek; Chloe; 62563

- "No Additional Pouch References": TSA RFI; Bosma; Hollingsworth; Hillman; Barnes; Moor; Chen; Hollingsworth '266; Miller; Latshaw; Pelican; Lee; Shuttle; PNC-15;

[1] For these groupings concerning computer case structure or functionality, the absence of a particular reference from a group is not intended to suggest in any way that the reference lacks that or any other limitation of the Asserted Claims. The listed references in the groups are exemplary.

Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Both Sections Flat on Same Surface References": TSA RFI; Bosma; Hollingsworth; Hillman; Barnes; Arnwine; Moor; Kearl; Hollingsworth '266; Miller; Latshaw; Lee Samsonite L35; Willard; Shuttle; PNC-15; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563
- "Direction Substantially Parallel to Planar Surface References": Samsonite L35; Hollingsworth '266; Bosma; Moor; PNC-15; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563
- "Inner Section Configured for Visual Inspection of Computer References": Bosma; Hollingsworth; Hillman; Moor; Chen; Kearl; Hollingsworth '266; Godshaw; Latshaw; Pelican; Lee; Samsonite L35; Ruckh; Shuttle; PNC-15; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563
- "Transparent Material References": Bosma; Hillman; Moor; Kearl; Godshaw; Latshaw; Ruckh; CDB1
- "Mesh Material References": Moor; Kearl; Godshaw; Latshaw; Case Logic VNC-216; Mastermind; Saddlebag; Shuttle; CDB1
- "Indicia of Scanning Authority Compliance References": Travel Sentry Locks; TSA RFI; Tropp 1; Tropp 2
- "Center of Sidewall References": Bosma; Hollingsworth '266; Miller; Latshaw; Lee; Samsonite L35; Shuttle; Samsonite L45; CDB1; Chloe; 62563
- "Openings Oriented Parallel to Surface References": Bosma; Barnes; Kearl; Hollingsworth '266; Miller; Latshaw; Lee; Samsonite L35; Samsonite L45; PNC-15; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563
- "Cushion References": Barnes; Golenz; Hollingsworth '266; Pelican; Timberland; Contour Pro; Saddlebag; Samsonite L35; Samsonite L45; Mastermind; CCB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563
- "Opening Accessible in Folded Configuration References": Bosma; Moor; Hollingsworth '266; Miller; Latshaw; Lee; Samsonite L35; Samsonite L45; Shuttle; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; CDB1; Chloe; 62563
- "Strap Member Over Second Opening References": Bosma; Hollingsworth; Moor; Chen; Hollingsworth '266; Miller; Latshaw; Lee; Samsonite L35; Shuttle; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Shoulder Strap References": Kearl; Godshaw; Samsonite L35; Samsonite L45; Moor; Mastermind; Saddlebag; Modem; CityGear; Timberland; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Pocket Container References": Samsonite L35; Samsonite L45; Willard; Pelican 1495 CC1; Hollingsworth '754; Shuttle; PNC-15; Contour Pro; Case Logic VNC-216; Saddlebag; Mastermind; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Dual Handle References": Hillman; Bosma; Arnwine; Moor; Latshaw; Modem; Contour; Hollingsworth '754; Chloe; 62563

- "Second Pouch Less than Length of Second Side References": Pelican 1945 CC1; Hollingsworth '266; Willard; Hollingsworth '754; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Samsonite L35; Samsonite L45; CDB1; Case Tek; Chloe; 62563

**APPENDIX 1**

**LIST OF PRIOR ART PATENTS AND PRINTED PUBLICATIONS CITED IN INITIAL INVALIDITY CONTENTIONS**

| No. | Patent or Printed Publication Prior Art | Prior Art Under | Bates Nos. |
|---|---|---|---|
| 1 | U.S. Patent No. 6,213,266 to Hollingsworth ("Hollingsworth '266") | 102(a), (b), (e) | VSAI00026805 - VSAI00026818 |
| 2 | U.S. Patent No. 5,524,754 to Hollingsworth ("Hollingsworth '754") | 102(a), (b), (e) | VSAI00026894 - VSAI00026907 |
| 3 | Transportation Security Administration Solicitation No. HSTS04-08-FRI-MC, March 3, 2008, "Checkpoint Friendly Laptop Bag" | 102(a), (f) | TSA0000004-TSA0000011 |
| 4 | U.S. Provisional Patent App. No. 61/068,722 to Bosma ("Bosma") | 102(a), (e), (g) | VSAI00026819 - VSAI00026837 |
| 5 | U.S. Patent No. 5,706,992 to Moor ("Moor") | 102(a), (b), (e) | VSAI00026729 - VSAI00026736 |
| 6 | U.S. Patent No. 6,637,563 to Ruckh ("Ruckh") | 102(a), (b), (e) | VSAI00026948 - VSAI00026953 |
| 7 | U.S. Patent No. D360,978 to Willard et al. ("Willard") | 102(a), (b), (e) | VSAI00026934 - VSAI00026938 |
| 8 | PCT App. No. PCT/US99/26445 to Samsonite ("Samsonite 1") | 102(a), (b), (e) | VSAI00026908 - VSAI00026933 |
| 9 | Pelican Introduces a Mobile Workstation for 17" Laptops, November 20, 2006, *available at* https://www.pelican.com/us/en/about/press-releases/article/pelican-introduces-a-mobile-workstation-for-17-laptops/ ("Pelican 1495 CC2") | 102(a), (b) | VSAI00026881 - VSAI00026882 |
| 10 | U.S. Patent No. 5,547,052 to Latshaw ("Latshaw") | 102(a), (b), (e) | VSAI00026769 - VSAI00026796 |
| 11 | Pelican 1495 CC2, Feb. 27, 2007, *available at* http://web.archive.org/web/20070227043738/http://www.pelican.com/cases_detail.php?Case=1495CC2 ("Pelican 1495 CC2") | 102(a), (b) | VSAI00026737 - VSAI00026737 |
| 12 | Samsonite Computer Cases L35 Notebook Case, June 29, 2003, *available at* https://web.archive.org/web/20030629203049/http://us.samsonite.com/webapp/us/servlet/SPrintableProductView?storeId=10001&langId=-1&productId=46014 ("Samsonite L35") | 102(a), (b) | VSAI00026958 - VSAI00026958 |
| 13 | Travel Sentry Press Release, Sept. 16, 2004, *available at* https://www.prweb.com/releases/2004/09/prweb158830.htm ("Travel Sentry") | 102(a), (b) | VSAI00026996 - VSAI00026998 |
| 14 | U.S. Patent No. D500,597 to Hillman ("Hillman") | 102(a), (b), (e) | VSAI00026758 - VSAI00026761 |
| 15 | U.S. Patent Pub. No. 2005/0189188 to Barnes ("Barnes") | 102(a), (b), (e) | VSAI00026939 - VSAI00026947 |
| 16 | U.S. Patent No. 5,494,157 to Golenz et al. ("Golenz") | 102(a), (b), (e) | VSAI00026762 - VSAI00026768 |
| 17 | U.S. Patent No. 5,544,792 to Arnwine ("Arnwine") | 102(a), (b), (e) | VSAI00026873 - VSAI00026880 |

| | | | |
|---|---|---|---|
| 18 | U.S. Patent No. 5,960,952 to Chen ("Chen") | 102(a), (b), (e) | VSAI00026797 - VSAI00026804 |
| 19 | U.S. Patent No. 6,193,118 to Kearl ("Kearl") | 102(a), (b), (e) | VSAI00026838 - VSAI00026851 |
| 20 | U.S. Patent No. 6,213,267 to Miller ("Miller") | 102(a), (b), (e) | VSAI00026863 - VSAI00026872 |
| 21 | U.S. Patent No. 6,655,565 to Godshaw et al. ("Godshaw") | 102(a), (b), (e) | VSAI00026739 - VSAI00026750 |
| 22 | U.S. Patent No. D338,104 to Lee ("Lee") | 102(a), (b), (e) | VSAI00026751 - VSAI00026757 |
| 23 | TUAW Review: Higher Ground Shuttle (noting case on display at MacWorld in January 2007), *available at* https://www.engadget.com/2007-06-18-tuaw-review-higher-ground-shuttle.html ("Shuttle") | 102(a), (b) | VSAI00026691 - VSAI00026696 |
| 24 | U.S. Patent No. 7,021,537 to Tropp ("Tropp 1") | 102(a), (b), (e) | VSAI00026883 - VSAI00026892 |
| 25 | U.S. Patent No. 7,036,728 to Tropp ("Tropp 2") | 102(a), (b), (e) | VSAI00026852 - VSAI00026862 |
| 26 | Case Logic PNC-15 15.4-Inch Slimline Laptop Case, Amazon (noting first available Jan. 26, 2007), *available at* https://www.amazon.com/Case-Logic-PNC-15-15-4-Inch-Slimline/dp/B000MY2JBC/ref=cm_cr_arp_d_product_top?ie=UTF8 ("PNC-15") | 102(a), (b) | VSAI00026646 - VSAI00026650 |
| 27 | Eastpak Mastermind, Amazon (product reviewed Dec. 18, 2003), *available at* https://www.amazon.com/Eastpak-Mastermind/dp/B0000732QU/ref=cm_cr_arp_d_product_top?ie=UTF8 ("Mastermind") | 102(a), (b) | VSAI00026683 - VSAI00026686 |
| 28 | Kensington Contour Pro 17" Carrying Case ("Contour Pro") | 102(a), (b) | VSAI00026706 - VSAI00026706 |
| 29 | Kensington Saddlebag Sport Computer Backpack ("Saddlebag") | 102(a), (b) | VSAI00026707 - VSAI00026707 |
| 30 | Tip Sheet, 9/27/04 Newsweek 73 (reviewing The North Face Modem), *available at* 2004 WLNR 3641938 ("Modem") | 102(a), (b) | VSAI00026721 - VSAI00026725 |
| 31 | The North Face Modem, eBags, April 6, 2005, *available at* https://web.archive.org/web/20050406040539/http://www.ebags.com/the_north_face/modem/product_detail/index.cfm?modelid=20153 ("Modem") | 102(a), (b) | VSAI00026712 - VSAI00026714 |
| 32 | Targus 15.4" CityGear Chicago Notebook Backpack Review, Dec. 15, 2006, *available at* http://www.notebookreview.com/review/targus-15-4-citygear-chicago-notebook-backpack-review/ ("CityGear") | 102(a), (b) | VSAI00026980 - VSAI00026984 |
| 33 | Case Logic VNC-216 16-Inch Laptop Briefcase, Amazon (noting first available June 17, 2003), *available at* https://www.amazon.com/Case-Logic-VNC-216-16- | 102(a), (b) | VSAI00026663 - VSAI00026673 |

| | | | |
|---|---|---|---|
| | Inch-Briefcase/dp/B001LXMF80/ref=cm_cr_arp_d_product_top?ie=UTF8 ("VNC-216") | | |
| 34 | Samsonite Computer Cases L45 Notebook Plus Case, June 29, 2003, *available at* https://web.archive.org/web/20030629212623/http://us.samsonite.com/webapp/us/servlet/SProductDisplay?productId=46016&storeId=10001&langId=-1&pc=C30 ("L45") | 102(a), (b) | VSAI00026975 - VSAI00026975 |
| 35 | Kensington K62563US SP40 15.6-Inch Classic Notebook Computer Case, Amazon (noting date first available June 15, 2008) *available at* https://www.amazon.com/Kensington-K62563US-15-6-Inch-Notebook-Computer/dp/B0019TZRTA ("62563") | 102(a), (b) | VSAI00026999 – VSAI00027004 |
| 36 | Kensington Introduces 24 Innovative Notebook Accessories for School, Work, and Play, June 16, 2008, *available at* https://www.kensington.com/news/news-press-center/2008-news--press-center/kensington-introduces-24-innovative-notebook-accessories-for-school-work-and-play/ | 102(a), (b) | VSAI00027010 – VSAI00027015 |
| 37 | Targus Cases: Nylon/Ballistic, Nov. 2, 2001, *available at* https://web.archive.org/web/20011102234549/http://www.targus.com/case_nylon.asp?pos=6 ("CCB1") | 102(a), (b) | VSAI00027025 – VSAI00027026 |
| 38 | Targus Cases: Nylon/Ballistic, Targus Notebook Backpack, Nov. 21, 2001 *available at* https://web.archive.org/web/20011121055402/http://www.targus.com:80/case_nylon_specific.asp?title=TARGUS+NOTEBOOK+BACKPACK&sku=CCB1 | 102(a), (b) | VSAI00027028 |
| 39 | Targus CDB1 Deluxe Backpack – Black (High Density Nylon) (noting Date First Available October 2, 2001), *available at* https://www.amazon.com/Targus-CDB1-Deluxe-Backpack-Density/dp/B000034D6K ("CDB1") | 102(a), (b) | VSAI00027041 – VSAI00027047 |
| 40 | Targus Cases: Nylon/Ballistic, Targus FolioPac3, Dec. 30, 2001 *available at* https://web.archive.org/web/20011230040041/http://www.targus.com:80/case_nylon_specific.asp?title=TARGUS+FOLIOPAC3&sku=CFP3 ("CFP3") | 102(a), (b) | VSAI00027059 |
| 41 | Targus Cases: Nylon/Ballistic, Dec. 18, 2001, *available at* https://web.archive.org/web/20011218081225/http://www.targus.com/case_nylon.asp | 102(a), (b) | VSAI00027061 – VSAI00027062 |

| | | | |
|---|---|---|---|
| 42 | Chloe Dao and Pacific Design Launch the Chloe Dao Collection, Aug. 15, 2007, *available at* https://www.24-7pressrelease.com/press-release/32112/chloe-dao-and-pacific-design-launch-the-chloe-dao-collection ("Chloe") | 102(a), (b) | VSAI00027064 – VSAI00027069 |
| 43 | Kensington 62148 SureCheck Associate Notebook Case (noting date first available Feb. 18, 2003), *available at* https://www.amazon.com/Kensington-62148-SureCheck-Associate-Notebook/dp/B00008MOPH ("SureCheck") | 102(a), (b) | VSAI00027086 – VSAI00027093 |

**APPENDIX 2**

**LIST OF NON-PATENT OR NON-PRINTED PUBLICATION PRIOR ART CITED IN INITIAL INVALIDITY CONTENTIONS**

| No. | Non-Patent or Non-Printed Publication Prior Art | Prior Art Under | Bates Nos. |
|---|---|---|---|
| 1 | Case Logic PNC-15 (“PNC-15”) | 102(a), (b), (g) | VSAI00026645 - VSAI00026658 |
| 2 | Case Logic VNC-216 (“VNC-216”) | 102(a), (b), (g) | VSAI00026659 - VSAI00026681 |
| 3 | Samsonite L35 Laptop Case (“L35” or “Samsonite L35”) | 102(a), (b), (g) | VSAI00026954 - VSAI00026966 |
| 4 | Samsonite L45 Laptop Case (“L45” or “Samsonite L45”) | 102(a), (b), (g) | VSAI00026967 - VSAI00026978 |
| 5 | The North Face Modem (“Modem”) | 102(a), (b), (g) | VSAI00026711 - VSAI00026726 |
| 6 | Eastpak Mastermind (“Mastermind”) | 102(a), (b), (g) | VSAI00026682 - VSAI00026688 |
| 7 | Timberland Backpack (“Timberland”) | 102(a), (b), (g) | VSAI00026989 - VSAI00026995 |
| 8 | Kensington Countour 62340 Laptop Case (“Contour Laptop Case”) | 102(a), (b), (g) | VSAI00026703 - VSAI00026706 |
| 9 | Kensington Saddlebag Sport Computer Backpack (“Saddlebag Backpack”) | 102(a), (b), (g) | VSAI00026707 - VSAI00026710 |
| 10 | Pelican 1495 CC2 Laptop Case (“Pelican 1495 CC2”) | 102(a), (b), (g) | VSAI00026728, VSAI00026738, VSAI00026893, VSAI00026727, VSAI00026737 |
| 11 | Higher Ground Shuttle Laptop Case (“Shuttle”) | 102(a), (b), (g) | VSAI00026689 - VSAI00026702 |
| 12 | Targus City Gear Chicago Backpack (“City Gear”) | 102(a), (b), (g) | VSAI00026979 - VSAI00026988 |
| 13 | Targus CCB1 (“CCB1”) | 102(a), (b), (g) | VSAI00027024 – VSAI00027034 |
| 14 | Targus CDB1 (“CDB1”) | 102(a), (b), (g) | VSAI00027035 – VSAI00027052 |
| 15 | Targus CFP3 (“CFP3”) | 102(a), (b), (g) | VSAI00027053 – VSAI00027063 |
| 16 | Targus TBC01301-01 (“TBC01301”) | 102(a), (b), (g) | VSAI00027094 – VSAI00027101 |
| 17 | Kensington K62148[B] The Associate SureCheck (“SureCheck”) | 102(a), (b), (g) | VSAI00027080 – VSAI00027093 |
| 18 | Case Tek 9900383 (“Case Tek”) | 102(a), (b), (g) | VSAI00027017 – VSAI00027023 |
| 19 | Pacific Designs PD0090 Chloe (“Chloe”) | 102(a), (b), (g) | VSAI00027064 – VSAI00027079 |
| 20 | Kensington 62563 SP40 15.6-Inch Classic Notebook Computer Case (“62563”) | 102(a), (b), (g) | VSAI00026999 – VSAI00027016 |

# EXHIBIT G

# Invalidity Chart Comparing '578 Patent to Targus CFP3 Computer Case

- This chart is based on claim constructions asserted by plaintiff, defendant, or otherwise assertable and nothing herein shall be an admission that an element or configuration meets the limitation as properly construed.

| Claim | Limitation from '578 Patent | Targus CFP3 Computer Case (CFP3) | |
|---|---|---|---|
| 1(A) | A bi-fold case to allow for convenient security screening of a computer, comprising: | The CFP3 case is a bi-fold folding case shaped and sized to carry a computer through an airport security screening process. | UNFOLDED CONFIGURATION<br>FOLDED CONFIGURATION |

| | | | |
|---|---|---|---|
| 1(B) | a first storage section comprising a first outer side, a first inner side, a first proximal end, and a first distal end opposite the first proximal end | The CFP3 case has a first storage section with a first outer side, a first inner side, a first proximal end, and a first distal end that is opposite to the first proximal end. | FIRST STORAGE SECTION<br>FIRST DISTAL END<br>FIRST INNER SIDE<br>FIRST OUTER SIDE<br>FIRST PROXIMAL END<br>UNFOLDED CONFIGURATION |
| 1(C) | the first outer side, first inner side, first proximal end, and first distal end defining a first pouch with a first pouch opening | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CFP3 case has an exterior first pouch with an opening on its first storage section. | A FIRST POUCH WITH OPENING<br>FIRST DISTAL END<br>FIRST PROXIMAL END<br>FIRST OUTER SIDE |

| | | | |
|---|---|---|---|
| 1(D) | and a first pouch fastener coupled to the first pouch opening and configured to only secure the first pouch opening | The CFP3 case has a first pouch fastener in the form of zippered closure on its first pouch coupled to the first pouch opening and configured to only secure the first pouch opening. | A FIRST POUCH WITH OPENING<br>ZIPPERED CLOSURE<br>FIRST OUTER SIDE<br>A FIRST POUCH WITH OPENING |
| 1(E) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CFP3 case is made of a material which is non-metallic and would not block X-rays during a scanning process. | |

| | | | |
|---|---|---|---|
| 1(F) | wherein the first storage section further comprises a third pouch including a third pouch opening, independent of the first pouch opening, | The CFP3 case has a first storage section with a third pouch including a third pouch opening that is independent of the first pouch opening. | FIRST POUCH OPENING<br>THIRD POUCH OPENING<br>FIRST STORAGE SECTION<br>FIRST OUTER SIDE<br>UNFOLDED CONFIGURATION |
| 1(G) | and a third fastener to only secure the third pouch opening | The CFP3 is silent on a third fastener to only secure the third pouch opening. To the extent "a third fastener to only secure the third pouch opening" is not explicitly disclosed, provision of fasteners, such as snaps, zippers, Velcro, and the like on pouches in computer cases is routine and obvious in this field and for one of ordinary skill in the art.<br><br>**<u>Obvious Combinations:</u>**<br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Third Pouch References set forth following this chart. | FIRST POUCH OPENING<br>THIRD POUCH OPENING<br>FIRST STORAGE SECTION<br>FIRST OUTER SIDE<br>UNFOLDED CONFIGURATION |

| | | | |
|---|---|---|---|
| 1(H) | and a second storage section comprising a second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a second proximal end, and a second distal end opposite the second proximal end | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CFP3 case has a second storage section with a second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a second proximal end, and a second distal end opposite the second proximal end. | |

| | | | |
|---|---|---|---|
| 1(I) | the second storage section comprising, a second pouch | The second storage section of the CFP3 case comprises a second pouch that includes a strap with a Velcro fastener, that can hold a computer. | SECOND PROXIMAL END<br>SECOND POUCH<br>SECOND OUTER SIDE<br>SECOND DISTAL END<br>VELCRO STRAP<br>SECOND STORAGE SECTION<br>HOLDS A COMPUTER<br>UNFOLDED CONFIGURATION |
| 1(J) | and the second storage section configured without an additional pouch, | There is no additional pouch on the second storage section. | SECOND STORAGE SECTION<br>SECOND OUTER SIDE |

| | | | |
|---|---|---|---|
| 1(K) | the second pouch configured to receive a computer | The second storage section of the CFP3 case comprises a second pouch formed with a strap with a Velcro fastener, that can hold a computer. | VELCRO STRAP<br>PROTECTIVE COMPUTER COMPARTMENT WITH PADDING<br>SECOND POUCH |
| 1(L) | wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CFP3 case is made of a material which is non-metallic and would not block X-rays during a scanning process. | |

| | | | |
|---|---|---|---|
| 1(M) | and a second pouch fastener configured to substantially enclose only the second pouch and thereby retain a computer therein | The CFP3 case has a strap with a Velcro fastener that is configured to substantially enclose the second pouch and thereby would retain a computer within the second pouch.<br><br>To the extent this limitation is not explicitly disclosed, use of fasteners to close and secure pouches is routine and obvious in this field and for one of ordinary skill in the art. (*see, e.g.*, '578 Patent, Claims 6, 16, 19, 20, 23, and 25).<br><br>**Obvious Combinations:**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Second Pouch Substantially Enclosed to Retain Computer References set forth following this chart. |  |

| | | | |
|---|---|---|---|
| 1(N) | the second storage section foldably joined at the second proximal end to the first proximal end of the first storage section such that the second proximal end and the first proximal end are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CFP3 case has material that foldably joins the first and second section to one another.<br><br>Defendant is unable to determine the meaning of "configured to enable a scanning device to scan through the hinge." However, the CFP3 case is made of a material that would not block X-rays. | THE CFP3 OUTER PANELS ARE MANUFACTURED WITH A POLYESTER FABRIC |
| 1(O) | wherein the first and second inner sides are disposed adjacent one another in the folded configuration and separated in an unfolded configuration | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, however the CFP3 discloses its first and second inner sides being disposed adjacent one another in the folded configuration and separated in an unfolded configuration. | FIRST INNER SIDE<br>SECOND INNER SIDE<br>UNFOLDED CONFIGURATION<br>FIRST OUTER SIDE<br>FOLDED CONFIGURATION |

| | | | |
|---|---|---|---|
| 1(P) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | The CFP3 case has its first and second distal ends being disposed adjacent one another in the folded configuration and separated in an unfolded configuration. | FIRST DISTAL END<br>SECOND DISTAL END<br>FIRST DISTAL END<br>SEPERATED IN UNFOLDED CONFIGURATION<br>ADJACENT ONE ANOTHER IN FOLDED CONFIGURATION |
| 1(Q) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section. | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CFP3 case has an adjoining fabric portion that allow the two sides to pivot towards and away from each other. In the unfolded configuration, with the outer sides of both the first and second storage sections laid flat upon a same planar surface, scanning waves would be able to scan the computer in the second section of the CFP3 case without being inhibited by the first section. | SCANNER<br>UNINHIBITED SCANNING IN UNFOLDED CONFIGURATION<br>FIRST STORAGE SECTION<br>SECOND STORAGE SECTION<br>ADJOINING FABRIC PANEL TO ALLOW FOR PIVOT<br>SCANNER |

| | | | |
|---|---|---|---|
| 2 | The case of claim 1, further comprising a fastener to selectively secure the first storage section and the second storage section in the folded configuration. | The CFP3 case has a zipper that secures the first storage section and the second storage section in the folded configuration. | |
| | | | |
| 3 | The case of claim 1, wherein the scanning device is an X-ray scanner. | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. An X-ray scanner is not claimed in claim 1 as part of the case.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CFP3 case is made of a material which is non-metallic and would not block X-rays during a scanning process. | |

| | | | |
|---|---|---|---|
| 4 | The case of claim 1, wherein the inner side of the second pouch is configured to allow for visual inspection of a computer disposed within the second pouch of the second storage section when second storage section is in the unfolded configuration. | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CFP3 case has a strap that allows the computer to be visible, leaving the computer available for visual inspection. | |
| 5 | The case of claim 1, wherein the outer side of the second storage section is substantially opaque and the inner side of the second pouch comprises a substantially transparent material. | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, to the extent opaque and substantially transparent material is not explicitly disclosed, use of see-through materials that allow visual | |

| | | | |
|---|---|---|---|
| | | inspection is routine and obvious in this field and for one of ordinary skill in the art.<br><br>**<u>Obvious Combinations:</u>**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Transparent Material References set forth following this chart. | |
| [redacted] | | | |
| 6 | The case of claim 5, wherein the inner side of the second pouch comprises a mesh material. | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, to the extent mesh material is not explicitly disclosed, use of see-through materials that allow visual inspection is routine and obvious in this field and for one of ordinary skill in the art.<br><br>**<u>Obvious Combinations:</u>**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with | |

| | | | |
|---|---|---|---|
| | | one or more of the Mesh Material References set forth following this chart. | |
| | | | |
| 12 | The case of claim 1, wherein the inner side of the first storage section comprises a pocket container, and wherein the pocket container is configured to receive one or more personal items and to allow the one or more personal items received therein to be scanned by a scanning device. | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, the CFP3 case inner side of the first storage section has multiple pocket containers that can receive and hold personal items.<br><br>The CFP3 case is made with a material which would not block X-rays during a scanning process. | INNER SIDE OF FIRST STORAGE SECTION<br>FIRST STORAGE SECTION<br>OUTER BODY FABRIC IS POLYESTER |
| | | | |
| 13 | The case of claim 1, further comprising indicia indicating the case complies with a standard of a scanning authority. | The limitation "indicia indicating the case complies with a standard of a scanning authority" is not entitled to patentable weight because it is printed matter that is not functionally related to the substrate on which it is applied. *See Praxair Distribution, Inc. v. Mallinckrodt Hosp. Prod. IP Ltd.*, 890 F.3d 1024, 1031 (Fed. Cir. 2018) ("Claim limitations directed to printed matter are | |

| | | | |
|---|---|---|---|
| | | not entitled to patentable weight unless the printed matter is functionally related to the substrate on which the printed matter is applied."); *Bard Peripheral Vascular, Inc. v. AngioDynamics, Inc.*, CV 15-218-JFB-SRF, 2019 WL 1996022, at *5 (D. Del. Feb. 11, 2019), *report and recommendation adopted sub nom. C R Bard Inc. v. AngioDynamics*, 115-CV-218-JFB-SRF, 2019 WL 981700 (D. Del. Feb. 28, 2019) ("[T]he presence or absence of the radiographic letters on the claimed access port in the present case does not change the port's power injection capabilities. Instead, the radiographic letters explain to the medical practitioner that the port may be used for power injection.").<br><br>Alternatively, and without conceding that this limitation is entitled to patentable weight and to the extent this limitation is not explicitly disclosed, visual indicators of special features on products is routine and obvious in this field and for one of ordinary skill in the art.<br><br>**<u>Obvious Combinations:</u>**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Indicia of Scanning Authority Compliance References set forth following this chart. | |

| | | | |
|---|---|---|---|
| 14 | The case of claim 13, wherein a portion of the indicia is visible. | As explained in claim 13, the "indicia" is not entitled to patent weight.<br><br>Alternatively, and without conceding that this limitation is entitled to patentable weight and to the extent this limitation is not explicitly disclosed, visual indicators of special features on products are routine and obvious in this field and for one of ordinary skill in the art.<br><br>**Obvious Combinations:**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Indicia of Scanning Authority Compliance References set forth following this chart. | |
| | | | |
| 17(A) | A bi-fold computer case to allow for convenient security screening of a computer disposed therein, the bi-fold computer case having a folded and an unfolded configuration, the bi-fold | See limitations A and N of Claim 1. | |

| | | | |
|---|---|---|---|
| | computer case comprising: | | |
| 17(B) | a first storage section comprising a first outer side, a first inner side, a first proximal end, and a first distal end opposite the first proximal end, the first outer side, first inner side, first proximal end, and first distal end defining a first pouch with a first pouch opening and a first pouch fastener coupled to the first pouch opening and configured to only secure the first pouch opening, | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B, C, and D of Claim 1. | |
| 17(C) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |

| | | | |
|---|---|---|---|
| 17(D) | wherein the first storage section further comprises a third pouch coupled to the first outer side, the third pouch including a third pouch opening, independent of the first pouch opening | See limitation F of Claim 1. | |
| 17(E) | and a third fastener to only secure the third pouch opening | See limitation G of Claim 1. | |
| 17(F) | a second storage section comprising a second outer side, a second inner side, a second proximal end, and a second distal end opposite the second proximal end | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation H of Claim 1. | |
| 17(G) | the second section comprising a second pouch configured to receive a computer, the second storage section configured without an additional pouch | See limitations I, J, and K of Claim 1. | |

| | | | |
|---|---|---|---|
| 17(H) | wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | See limitation L of Claim 1. | |
| 17(I) | the second storage section foldably joined at the second proximal end to the first proximal end of the first storage section such that the first and second proximal ends are coupled adjacent one another | See limitation N of Claim 1. | |
| 17(J) | the first and second proximal ends forming a hinge configured to enable a scanning device to scan through the hinge | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |

| | | | |
|---|---|---|---|
| 17(K) | wherein in the folded configuration, the first inner side is approximated to the second inner side | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |
| 17(L) | and wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | See limitation P of Claim 1. | |
| 17(M) | a fastener to selectively maintain the computer case in the folded configuration | See Claim 2. | |
| 17(N) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface | See limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| 17(O) | an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |
| | | | |
| 18 | The bi-fold computer case of claim 17, wherein the scanning device is an X-ray scanner. | See Claim 3. | |
| | | | |
| 19 | The bi-fold computer case of claim 17, wherein the second outer side of the second storage section is substantially opaque and the second inner side of the second storage section includes a substantially transparent material to | See claims 4 and 5. | |

| | | | |
|---|---|---|---|
| | allow a computer disposed within the second storage section to be visually inspected. | | |
| ███████████ | ███████████ | ███████████ | ███████████ |
| 21(A) | A bi-fold computer case to allow for convenient security screening of a computer and having a folded configuration and an unfolded configuration, the computer case comprising: | See limitations A and N of Claim 1. | |
| 21(B) | a first storage panel comprising a first inner side, a first outer side, a first proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B and C of Claim 1. | |

| | | | |
|---|---|---|---|
| 21(C) | the first distal end having a first pouch opening, | See limitation C of Claim 1. | |
| 21(D) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 21(E) | a second storage panel comprising a second inner side, a second outer side, second proximal end, a second distal end opposite the second proximal end | See limitation H of Claim 1. | |
| 21(F) | and a second pouch and the second storage panel configured without an additional pouch, the second pouch configured to receive a computer | See limitations I, J, and K of Claim 1. | |
| 21(G) | the second distal end including a sidewall with a second pouch opening | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | disposed substantially in the center of the sidewall | **<u>Obvious Combinations:</u>**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Center of Sidewall References set forth following this chart. | |
| 21(H) | wherein the second storage panel and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | See limitation L of Claim 1. | |
| 21(I) | the second storage panel foldably joined at the second proximal end to the first proximal end of the first storage panel such that the first and second proximal ends are coupled adjacent one | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |

| | | | |
|---|---|---|---|
| | another to form a hinge configured to enable a scanning device to scan through the hinge | | |
| 21(J) | wherein in the folded configuration of the foldable computer case, the inner side of the first storage panel is approximated to the inner side of the second storage panel | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |
| 21(K) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | See limitation P of Claim 1. | |
| 21(L) | a fastener to selectively maintain the bi-fold computer case in the folded configuration | See Claim 2. | |

| | | | |
|---|---|---|---|
| 21(M) | wherein in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon a same planar surface, an object in the first storage panel is removed from interfering with a scanner positioned above and below the second storage panel to enable uninhibited scanning of a computer in the second pouch of the second storage panel | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |
| 21(N) | wherein the first pouch opening is disposed on the first storage panel and the second pouch opening is disposed on the second storage panel such that when the case is in the unfolded configuration with the outer sides of both the first and second storage panels laid flat | | |

| | | | |
|---|---|---|---|
| | upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface. | | |
| | | | |
| 22(A) | A bi-fold computer case, comprising: | See limitation A of Claim 1. | |
| 22(B) | a first section comprising a first inner side, a first outer side, a first proximal end, and a first distal end opposite the first proximal end, | See limitation B of Claim 1. | |
| 22(C) | the first inner side, first outer side, first proximal end, and first distal end defining a first pouch, the first distal end including a first pouch opening, | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation C of Claim 1. | |

| | | | |
|---|---|---|---|
| 22(D) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch; | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation E of Claim 1. | |
| 22(E) | a second section comprising a second inner side having a surface area approximately equal to a surface area of the first inner side, a second outer side, a second proximal end, a second distal end opposite the second proximal end, | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation H of Claim 1. | |
| 22(F) | a first sidewall coupled to the second inner side and the second outer side, a second sidewall extending substantially parallel to the first sidewall and coupled to the second inner side and the second outer side, a top wall | The CFP3 case has a first sidewall that is coupled to the second inner side and second outer side. The second sidewall is coupled to the second inner side and second outer side. Both sidewalls extend parallel to each other. A top wall is disposed on the second distal end. | FIRST SIDEWALL<br>SECOND INNER SIDE<br>TOP WALL<br>SECOND DISTAL END<br>SECOND SIDEWALL<br>SECOND OUTER SIDE |

| | | | |
|---|---|---|---|
| | disposed on the second distal end, | | |
| 22(G) | a second pouch and the second section configured without an additional pouch, | See limitations I and J of Claim 1. | |
| 22(H) | and a second pouch opening extending along the top wall and partially extending along the first and second sidewalls, | The CFP3 case has a second pouch opening that extends along the top wall and partially extends along the first and second sidewalls. | FIRST SIDEWALL<br>SECOND POUCH OPENING<br>TOP WALL<br>SECOND SIDEWALL |
| 22(I) | the second pouch configured to receive a computer, | See limitation K of Claim 1. | |

| | | | |
|---|---|---|---|
| 22(J) | wherein the second section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein, | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation L of Claim 1. | |
| 22(K) | the first proximal end of the first section foldably joined to the second proximal end of the second section such that the first and second proximal ends are coupled adjacent one another, to form a hinge configured to enable a scanning device to scan through the hinge, | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |
| 22(L) | wherein in a folded configuration of the bi-fold computer case, the inner side of the first | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | section is approximated to the inner side of the second section, | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |
| 22(M) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in an unfolded configuration, | See limitation P of Claim 1. | |
| 22(N) | wherein in the unfolded configuration with the outer sides of both the first and second sections laid flat upon a same planar surface, an object in the first section is removed from interfering with a scanner positioned above and below the second section to enable uninhibited scanning of a computer in the second pouch of the second section, | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| 22(O) | wherein the first pouch opening is disposed on the first section and the second pouch opening is disposed on the second section such that when the case is in the unfolded configuration with the outer sides of both the first and second sections laid flat upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface. | The CFP3 case has a first pouch opening disposed on the first section and also a second pouch disposed on the second section. When the CFP3 case is unfolded, the outer sides of the first and second sections can be laid flat upon the same planar surface and the first and second pouch openings are then both oriented in a direction substantially parallel to the planar surface. |  |
| | | | |
| 23 | The computer case of claim 22, further comprising indicia, non-unique to the computer case, wherein the indicia indicates that the computer case complies | The limitation "indicia indicating the case complies with a standard of a scanning authority" is not entitled to patentable weight because it is printed matter that is not functionally related to the substrate on which it is applied. *See Praxair Distribution, Inc. v. Mallinckrodt Hosp. Prod. IP Ltd.*, 890 F.3d 1024, 1031 (Fed. Cir. 2018) ("Claim limitations directed to printed matter are not entitled to patentable weight unless the printed matter | |

| | | | |
|---|---|---|---|
| | with a standard of a scanning authority. | is functionally related to the substrate on which the printed matter is applied."); *Bard Peripheral Vascular, Inc. v. AngioDynamics, Inc.*, CV 15-218-JFB-SRF, 2019 WL 1996022, at *5 (D. Del. Feb. 11, 2019), *report and recommendation adopted sub nom. C R Bard Inc. v. AngioDynamics*, 115-CV-218-JFB-SRF, 2019 WL 981700 (D. Del. Feb. 28, 2019) ("[T]he presence or absence of the radiographic letters on the claimed access port in the present case does not change the port's power injection capabilities. Instead, the radiographic letters explain to the medical practitioner that the port may be used for power injection.").<br><br>Alternatively, and without conceding that this limitation is entitled to patentable weight, see claim 13. | |
| | | | |
| 24 | 24. The computer case of claim 23, wherein a portion of the indicia is visible to scanning personnel. | As described in claim 23, the "indicia" limitation is not entitled to patentable weight.<br><br>Alternatively, and without conceding that this limitation is entitled to patentable weight, see claim 14. | |
| | | | |

| | | | |
|---|---|---|---|
| 27 | The computer case of claim 22, wherein the second storage section comprises a retention member configured to secure the computer within the second pouch. | The CFP3 case has within the second storage section a Velcro strap that retains and secures the computer within the second pouch. | SECOND STORAGE SECTION<br>VELCRO STRAP<br>SECOND POUCH |
| | | | |
| 28(A) | A method for providing a bi-fold computer case, comprising: | Bringing the CFP3 case into existence, i.e., making it, would meet the requirement of "a method for providing." | TARGUS<br>MADE IN KOREA<br>Model CFP3 |

| | | | |
|---|---|---|---|
| 28(B) | providing a first storage section including a first inner side, a first outer side, a proximal end, and a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch including a first pouch opening and a first fastener to secure the first pouch opening | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B, C, and D of Claim 1. | |
| 28(C) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation L of Claim 1. | |
| 28(D) | providing a second storage section having a surface area approximately equal to a surface area of the first | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | storage section and including a second inner side, a second outer side, a second proximal end, and a second distal end opposite the second proximal end, the second storage section comprising a second pouch | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation H of Claim 1. | |
| 28(E) | the second distal end including a sidewall with a second pouch opening disposed substantially in the center of the sidewall and the second storage section configured without an additional pouch | See limitations J of Claim 1 and G of Claim 21. | |
| 28(F) | the second pouch configured to receive a computer | See limitation K of Claim 1. | |
| 28(G) | wherein the second storage section and the second outer and inner sides are configured to | See limitation L of Claim 1. | |

| | | | |
|---|---|---|---|
| | enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | | |
| 28(H) | foldably joining the first storage section to the second storage section at the first and second proximal ends to form a hinge configured to enable a scanning device to scan through the hinge such that the first and second proximal ends remain adjacent one another in both folded and unfolded configurations | See limitation N of Claim 1. | |
| 28(I) | wherein the second inner and outer sides are configured to allow the computer secured within the second pouch to be scanned by a scanning device without removing | See limitation E of Claim 1. | |

| | | | |
|---|---|---|---|
| | the computer from the second pouch | | |
| 28(J) | wherein in the folded configuration of the bi-fold computer case, the inner side of the first storage section is approximated to the inner side of the second storage section | See limitation K of Claim 17. | |
| 28(K) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | See limitation P of Claim 1. | |
| 28(L) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| | interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section | | |
| 28(M) | wherein the first pouch opening is disposed on the first storage section and the second pouch opening is disposed on the second storage section such that when the case is in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially parallel to the planar surface. | See limitation N of Claim 21. | |

| | | | |
|---|---|---|---|
| 29 | The method of claim 28, further comprising attaching a fastener to the first storage section and to the second storage section, wherein the fastener is configured to selectively secure the first storage section and the second storage section in the folded configuration. | See Claim 2. | |
| | | | |
| 30 | The method of claim 28, wherein the scanning device is an X-ray scanner. | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. An X-ray scanner is not claimed in claim 28 as part of the case.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see Claim 3. | |
| | | | |
| 31 | The method of claim 28, wherein the second inner | See Claim 4. | |

| | | | |
|---|---|---|---|
| | side is configured to allow for visual inspection of the computer disposed within the second storage section. | | |
| | | | |
| 32 | The method of claim 31, wherein the second outer side is opaque and the second inner side of the second pouch comprises a substantially transparent material. | See Claim 5. | |
| | | | |
| 33 | The method of claim 32, wherein the second inner side is comprised of a mesh material. | See Claim 6. | |
| | | | |
| 38 | The method of claim 28, further comprising attaching indicia to the computer case, wherein | See Claim 13. | |

| | | | |
|---|---|---|---|
| | the indicia is non-unique to the computer case and indicates that the computer case complies with a standard of a scanning authority. | | |
| | | | |
| 39 | The method of claim 38, wherein a portion of the indicia is visible. | See Claim 14. | |
| | | | |
| 42(A) | A method for manufacturing a bi-fold computer case, comprising: | Bringing the CFP3 case into existence, i.e., making it, would meet the requirement of "a method for providing." | |
| 42(B) | providing a first storage section including a first inner side, a first outer side, a proximal end, and | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | a first distal end opposite the first proximal end, the first inner side, first outer side, first proximal end, and first distal end defining a first pouch including a first pouch opening and a first fastener to secure the first pouch opening | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations of E and D of Claim 1. | |
| 42(C) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 42(D) | wherein the first storage section further comprises a third pouch including a third pouch opening, independent of the first pouch opening, and a third fastener to only secure the third pouch opening | See limitations F and G of Claim 1. | |

| | | | |
|---|---|---|---|
| 42(E) | providing a second storage section including a second inner side, a second outer side, a second proximal end, and a second distal end opposite the second proximal end, the second storage section comprising a second pouch and the second storage section configured without an additional pouch, the second pouch configured to receive a computer, | See limitations H, I, J, and K of Claim 1. | |
| 42(F) | wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | See limitation L of Claim 1. | |

| | | | |
|---|---|---|---|
| 42(G) | foldably attaching the first proximal end of the first storage section to the second proximal end of the second storage section to form a hinge configured to enable a scanning device to scan through the hinge | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |
| 42(H) | wherein in a folded configuration of the bi-fold computer case, the inner side of the first storage section is approximated to the inner side of the second storage section | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation K of Claim 17. | |
| 42(I) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in an unfolded configuration | See limitation O of Claim 1. | |

| | | | |
|---|---|---|---|
| 42(J) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section. | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |
| | | | |
| 44 | The case of claim 1, wherein the case is configured as a backpack and further comprising first and second shoulder straps coupled to the second outer side of the second storage section, the first and second straps | To the extent this limitation is not explicitly disclosed, shoulder straps are routine and obvious in this field and for one of ordinary skill in the art.<br><br>**<u>Obvious Combinations:</u>**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with | |

| | | | |
|---|---|---|---|
| | configured to receive a user's shoulders to support the case. | one or more of the Shoulder Strap References set forth following this chart. | |
| | | | |
| 46 | The case of claim 1, further comprising: a first handle coupled to the first distal end of the first storage section; and a second handle coupled to the second distal end of the second storage section, wherein in the folded configuration the first and second handles are disposed adjacent each other. | The CFP3 case has a single handle on the distal end of the second storage section. A second handle is unnecessary in the CFP3 case.<br><br>To the extent this limitation is not explicitly disclosed, handles are routine and obvious in this field and for one of ordinary skill in the art.<br><br>**Obvious Combinations:**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Dual Handle References set forth following this chart. | DISTAL END<br>SINGLE CARRY HANDLE<br>SECOND STORAGE SECTION |
| | | | |
| 47 | The case of claim 1, wherein the second | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as | |

| | | | |
|---|---|---|---|
| | storage section comprises: a first cushion disposed on an interior side of the second pouch, and a second cushion disposed on an opposing interior side of the second pouch, the first and second cushions configured to enable a scanning device to scan through the first and second cushions. | set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, to the extent this limitation is not explicitly disclosed, use of cushions/padded material in computer cases is routine and obvious in this field and for one of ordinary skill in the art.<br><br>**<u>Obvious Combinations:</u>**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Cushion References set forth following this chart. | |
| | | | |

| | | | |
|---|---|---|---|
| 48 | The computer case of claim 21, wherein the first pouch opening and the second pouch opening are accessible to a user in the folded configuration. | The CFP3's first pouch opening is on the interior of the first storage section and is accessible to a user in the folded configuration.<br><br>The CFP3's second pouch opening is on the interior of the second storage section and is accessible to a user in the folded configuration; for example, when the zipper that secures the first storage section to the second storage section is unzipped. | ZIPPERED POCKET SECURING FIRST AND SECOND STORAGE SECTIONS<br>FIRST STORAGE SECTION UNZIPPED<br>SECOND STORAGE SECTION UNZIPPED<br>FOLDED CONFIGURATION<br>UNFOLDED CONFIGURATION |
| | | | |
| 49 | The computer case of claim 21, wherein the first pouch opening and the second pouch opening are accessible to a user in the folded configuration. | See claim 48. | |
| | | | |
| 50(A) | A bi-fold case to allow for convenient security screening of a computer, comprising: | See limitation A of Claim 1. | |

| | | | |
|---|---|---|---|
| 50(B) | a first storage section comprising, a first outer side, a first inner side, a first proximal end, a first distal end opposite the first proximal end, a first pouch including a first opening and a first fastener | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B, C, and D of Claim 1. | |
| 50(C) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 50(D) | and a third pouch coupled to the first outer side and including a third pouch opening independent of the first pouch opening and a third fastener to only secure the third pouch opening | See limitations F and G of Claim 1. | |
| 50(E) | and a second storage section comprising, a | See limitation H of Claim 1. | |

| | | | |
|---|---|---|---|
| | second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a second proximal end, and a second distal end opposite the second proximal end | | |
| 50(F) | the second storage section comprising, a second pouch including a second opening and coupled to the second inner side, and the second storage section configured without an additional pouch | See limitations I and J of Claim 1. | |
| 50(G) | the second pouch configured to receive a computer, wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner | See limitations K and L of Claim 1. | |

| | | | |
|---|---|---|---|
| | sides and scan an interior of the second pouch and a computer disposed therein | | |
| 50(H) | and wherein the second storage section is foldably joined at the second proximal end to the first proximal end of the first storage section such that the second proximal end and the first proximal end are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge | See limitation N of Claim 1. | |
| 50(I) | wherein the first inner side and the second pouch are disposed adjacent one another in the folded configuration and separated in an unfolded configuration | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |
| 50(J) | wherein the first and second distal ends are disposed adjacent one | See limitation P of Claim 1. | |

| | | | |
|---|---|---|---|
| | another in the folded configuration and separated from one another in the unfolded configuration | | |
| 50(K) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage section to enable uninhibited scanning of a computer in the second pouch of the second storage section | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |
| [redacted] | | | |
| 51 | The case of claim 50, wherein the second opening is disposed on the second storage section | See limitation N of Claim 21. | |

| | | | |
|---|---|---|---|
| | such that when the case is in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon the same planar surface, the second opening is oriented in a direction substantially parallel to the planar surface. | | |
| | | | |
| 52 | The case of claim 50, wherein the second pouch extends less than a length of the second inner side. | The CFP3 case discloses a second pouch with a length that spans from the inner surface of one of its side walls to an inner surface of an opposing side wall. The length of the second pouch is limited by the thickness of the first and second pouch fasteners, which are located between the second proximal end and the second distal end inner walls and thereby, necessarily, create a second pouch that has a smaller length than the second inner side.<br><br>To the extent this limitation is not explicitly disclosed, cases with pouches having differing dimensions are routine and obvious in this field and for one of ordinary skill in the art. |  |

| | | | |
|---|---|---|---|
| | | **Obvious Combinations:**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Second Pouch Less than Length of Second Side References set forth following this chart. | |
| | | | |
| 53 | The case of claim 50, wherein the second storage section further includes a strap member extending over the second opening. | The CFP3 case discloses a strap member that secures the laptop within the second storage section. Mating strap members are preferably nylon belts with cooperating strips of hook-and-loop fasteners, of the type known in the art for holding a notebook computer within a carrying case, and extend respectively from left and right side walls to surround the suspension system.<br><br>**Obvious Combinations:**<br><br>To the extent this limitation is not explicitly or inherently disclosed, it would have been obvious for a person of ordinary skill in the art to combine this reference with one or more of the Strap Member Over Second Opening References set forth following this chart. |  |

| | | | |
|---|---|---|---|
| 54(A) | A bi-fold case to allow for convenient security screening of a computer, comprising: | See limitation A of Claim 1. | |
| 54(B) | a first storage section comprising, a first outer side, a first inner side, a first proximal end, a first distal end opposite the first proximal end | See limitation B of Claim 1. | |
| 54(C) | and a first pouch including a first opening and a first fastener | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations C and D of Claim 1. | |
| 54(D) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides | See limitation E of Claim 1. | |

| | | | |
|---|---|---|---|
| | and scan an interior of the first pouch | | |
| 54(E) | and a second storage section comprising, a second outer side, a second inner side having a surface area approximately equal to a surface area of the first inner side, a second proximal end, and a second distal end opposite the second proximal end | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation H of Claim 1. | |
| 54(F) | the second storage section comprising, a second pouch including a second opening and coupled to the second inner side, and the second storage section configured without an additional pouch | See limitations I and J of Claim 1. | |
| 54(G) | the second pouch extending less than a length of the second inner side, the second pouch | See claim 52. | |

| | | | |
|---|---|---|---|
| | configured to receive a computer | | |
| 54(H) | wherein the second storage section and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | See limitation L of Claim 1. | |
| 54(I) | and wherein the second storage section is foldably joined at the second proximal end to the first proximal end of the first storage section such that the second proximal end and the first proximal end are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |

| | | | |
|---|---|---|---|
| 54(J) | wherein the first inner side and the second pouch are disposed adjacent one another in the folded configuration and separated in an unfolded configuration | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |
| 54(K) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | See limitation P of Claim 1. | |
| 54(L) | wherein in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon a same planar surface, an object in the first storage section is removed from interfering with a scanner positioned above and below the second storage | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |

| | | | |
|---|---|---|---|
| | section to enable uninhibited scanning of a computer in the second pouch of the second storage section | | |
| | | | |
| 55 | The case of claim 54, wherein the second opening is disposed on the second storage section such that when the case is in the unfolded configuration with the outer sides of both the first and second storage sections laid flat upon the same planar surface, the second opening is oriented in a direction substantially parallel to the planar surface. | See limitation N of Claim 21. | |
| | | | |
| 56 | The case of claim 54, wherein the second storage section further | See Claim 53. | |

**EXHIBIT G**

**Targus CFP3 Computer Case**

| | | | |
|---|---|---|---|
| | includes a strap member extending over the second opening. | | |
| ■■■■■ | | | |
| 57(A) | A bi-fold computer case to allow for convenient security screening of a computer and having a folded configuration and an unfolded configuration, the computer case comprising: | See limitations A and O of Claim 1. | |
| 57(B) | a first storage section comprising, a first inner side, a first outer side, a first proximal end, a first distal end opposite the first proximal end, a first pouch, and a first pouch opening disposed on the first distal end and in communication with the first pouch | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.

Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitations B and C of Claim 1. | |

| | | | |
|---|---|---|---|
| 57(C) | wherein the first outer and inner sides are configured to enable a scanning device to scan through the first outer and inner sides and scan an interior of the first pouch | See limitation E of Claim 1. | |
| 57(D) | a second storage section comprising, a second inner side, a second outer side, second proximal end, a second distal end opposite the second proximal end | See limitation H of Claim 1. | |
| 57(E) | a second pouch configured to receive a computer | See limitation K of Claim 1. | |
| 57(F) | and the second storage panel configured without an additional pouch | This claim is indefinite under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation J of Claim 1. | |
| 57(G) | and a second pouch opening at least partially | | |

| | | | |
|---|---|---|---|
| | disposed on the second distal end and in communication with the second pouch | | |
| 57(H) | wherein the second storage panel and the second outer and inner sides are configured to enable a scanning device to scan through the second outer and inner sides and scan an interior of the second pouch and a computer disposed therein | See limitation L of Claim 1. | |
| 57(I) | the second storage panel foldably joined at the second proximal end to the first proximal end of the first storage panel such that the first and second proximal ends are coupled adjacent one another to form a hinge configured to enable a scanning device to scan through the hinge | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation N of Claim 1. | |

| | | | |
|---|---|---|---|
| 57(J) | wherein the first and second distal ends are disposed adjacent one another in the folded configuration and separated from one another in the unfolded configuration | See limitation P of Claim 1. | |
| 57(K) | wherein in the folded configuration of the foldable computer case, the inner side of the first storage section is approximated to the inner side of the second storage section and the first pouch opening and the second pouch opening are configured to be accessible to a user | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions.<br><br>Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation O of Claim 1. | |
| 57(L) | wherein in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon a same planar surface, an | This claim lacks sufficient written description and/or is indefinite and/or is not enabled under 35 U.S.C. § 112 as set forth in the cover pleading to Victorinox's Supplemental Invalidity Contentions. | |

| | | | |
|---|---|---|---|
| | object in the first storage panel is removed from interfering with a scanner positioned above and below the second storage panel to enable uninhibited scanning of a computer in the second pouch of the second storage panel | Alternatively, and without conceding that this claim satisfies 35 U.S.C. § 112, see limitation Q of Claim 1. | |
| 57(M) | wherein the first pouch opening is disposed on the first storage panel and the second pouch opening is disposed on the second storage panel such that when the case is in the unfolded configuration with the outer sides of both the first and second storage panels laid flat upon the same planar surface, the first and second pouch openings are both oriented in a direction substantially | See limitation N of Claim 21. | |

| | parallel to the planar surface | | |
|---|---|---|---|

For convenience, prior art references that disclose, discuss, or relate to the same or related technologies, or are otherwise related, may be discussed herein collectively.

Referring to the items listed in **Appendix 1 and Appendix 2**[1]:

- "Multiple Pocket References": TSA RFI; Hollingsworth '754; Hillman; Arnwine; Moor; Chen; Kearl; Hollingsworth '266; Miller; Latshaw; Pelican; Lee; Samsonite L35; Ruckh; Shuttle; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563
- "Pouch Fastener References": Bosma; Hollingsworth; Hillman; Barnes; Arnwine; Moor; Chen; Kearl; Hollingsworth '266; Miller; Latshaw; Pelican; Lee; Samsonite L35; Ruckh; Shuttle; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563
- "Third Pouch References": Hollingsworth '266; Pelican 1495 CC1; Willard; Bosma; Moor; Samsonite L35; Shuttle; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Chloe; 62563
- "Second Pouch Substantially Enclosed to Retain Computer References": Hollingsworth '754; Hillman; Moor; Kearl; Hollingsworth '266; Miller; Latshaw; Samsonite L35; Ruckh; Shuttle; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; CDB1; Case Tek; Chloe; 62563
- "No Additional Pouch References": TSA RFI; Bosma; Hollingsworth; Hillman; Barnes; Moor; Chen; Hollingsworth '266; Miller; Latshaw; Pelican; Lee; Shuttle; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563
- "Both Sections Flat on Same Surface References": TSA RFI; Bosma; Hollingsworth; Hillman; Barnes; Arnwine; Moor; Kearl; Hollingsworth '266; Miller; Latshaw; Lee Samsonite L35; Willard; Shuttle; PNC-15; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563
- "Direction Substantially Parallel to Planar Surface References": Samsonite L35; Hollingsworth '266; Bosma; Moor; PNC-15; Modem; Timberland; Case Logic VNC-216;

[1] For these groupings concerning computer case structure or functionality, the absence of a particular reference from a group is not intended to suggest in any way that the reference lacks that or any other limitation of the Asserted Claims. The listed references in the groups are exemplary.

CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Inner Section Configured for Visual Inspection of Computer References": Bosma; Hollingsworth; Hillman; Moor; Chen; Kearl; Hollingsworth '266; Godshaw; Latshaw; Pelican; Lee; Samsonite L35; Ruckh; Shuttle; PNC-15; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Transparent Material References": Bosma; Hillman; Moor; Kearl; Godshaw; Latshaw; Ruckh; CDB1

- "Mesh Material References": Moor; Kearl; Godshaw; Latshaw; Case Logic VNC-216; Mastermind; Saddlebag; Shuttle; CDB1

- "Indicia of Scanning Authority Compliance References": Travel Sentry Locks; TSA RFI; Tropp 1; Tropp 2

- "Center of Sidewall References": Bosma; Hollingsworth '266; Miller; Latshaw; Lee; Samsonite L35; Shuttle; Samsonite L45; CDB1; Chloe; 62563

- "Openings Oriented Parallel to Surface References": Bosma; Barnes; Kearl; Hollingsworth '266; Miller; Latshaw; Lee; Samsonite L35; Samsonite L45; PNC-15; Modem; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Cushion References": Barnes; Golenz; Hollingsworth '266; Pelican; Timberland; Contour Pro; Saddlebag; Samsonite L35; Samsonite L45; Mastermind; CCB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Opening Accessible in Folded Configuration References": Bosma; Moor; Hollingsworth '266; Miller; Latshaw; Lee; Samsonite L35; Samsonite L45; Shuttle; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; CDB1; Chloe; 62563

- "Strap Member Over Second Opening References": Bosma; Hollingsworth; Moor; Chen; Hollingsworth '266; Miller; Latshaw; Lee; Samsonite L35; Shuttle; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Timberland; Case Logic VNC-216; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Shoulder Strap References": Kearl; Godshaw; Samsonite L35; Samsonite L45; Moor; Mastermind; Saddlebag; Modem; CityGear; Timberland; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

- "Pocket Container References": Samsonite L35; Samsonite L45; Willard; Pelican 1495 CC1; Hollingsworth '754; Shuttle; PNC-15; Contour Pro; Case Logic VNC-216; Saddlebag; Mastermind; CCB1; CDB1; CFP3; TBC01301-01; SureCheck; Case Tek; Chloe; 62563

**EXHIBIT G** **Targus CFP3 Computer Case**

- "Dual Handle References": Hillman; Bosma; Arnwine; Moor; Latshaw; Modem; Contour; Hollingsworth '754; Chloe; 62563
- "Second Pouch Less than Length of Second Side References": Pelican 1945 CC1; Hollingsworth '266; Willard; Hollingsworth '754; PNC-15; Contour Pro; Saddlebag; CityGear; Mastermind; Modem; Timberland; Samsonite L35; Samsonite L45; CDB1; Case Tek; Chloe; 62563

69

**APPENDIX 1**

**LIST OF PRIOR ART PATENTS AND PRINTED PUBLICATIONS CITED IN INITIAL INVALIDITY CONTENTIONS**

| No. | Patent or Printed Publication Prior Art | Prior Art Under | Bates Nos. |
|---|---|---|---|
| 1 | U.S. Patent No. 6,213,266 to Hollingsworth ("Hollingsworth '266") | 102(a), (b), (e) | VSAI00026805 - VSAI00026818 |
| 2 | U.S. Patent No. 5,524,754 to Hollingsworth ("Hollingsworth '754") | 102(a), (b), (e) | VSAI00026894 - VSAI00026907 |
| 3 | Transportation Security Administration Solicitation No. HSTS04-08-FRI-MC, March 3, 2008, "Checkpoint Friendly Laptop Bag" | 102(a), (f) | TSA0000004-TSA0000011 |
| 4 | U.S. Provisional Patent App. No. 61/068,722 to Bosma ("Bosma") | 102(a), (e), (g) | VSAI00026819 - VSAI00026837 |
| 5 | U.S. Patent No. 5,706,992 to Moor ("Moor") | 102(a), (b), (e) | VSAI00026729 - VSAI00026736 |
| 6 | U.S. Patent No. 6,637,563 to Ruckh ("Ruckh") | 102(a), (b), (e) | VSAI00026948 - VSAI00026953 |
| 7 | U.S. Patent No. D360,978 to Willard et al. ("Willard") | 102(a), (b), (e) | VSAI00026934 - VSAI00026938 |
| 8 | PCT App. No. PCT/US99/26445 to Samsonite ("Samsonite 1") | 102(a), (b), (e) | VSAI00026908 - VSAI00026933 |
| 9 | Pelican Introduces a Mobile Workstation for 17" Laptops, November 20, 2006, *available at* https://www.pelican.com/us/en/about/press-releases/article/pelican-introduces-a-mobile-workstation-for-17-laptops/ ("Pelican 1495 CC2") | 102(a), (b) | VSAI00026881 - VSAI00026882 |
| 10 | U.S. Patent No. 5,547,052 to Latshaw ("Latshaw") | 102(a), (b), (e) | VSAI00026769 - VSAI00026796 |
| 11 | Pelican 1495 CC2, Feb. 27, 2007, *available at* http://web.archive.org/web/20070227043738/http://www.pelican.com/cases_detail.php?Case=1495CC2 ("Pelican 1495 CC2") | 102(a), (b) | VSAI00026737 - VSAI00026737 |
| 12 | Samsonite Computer Cases L35 Notebook Case, June 29, 2003, *available at* https://web.archive.org/web/20030629203049/http://us.samsonite.com/webapp/us/servlet/SPrintableProductView?storeId=10001&langId=-1&productId=46014 ("Samsonite L35") | 102(a), (b) | VSAI00026958 - VSAI00026958 |
| 13 | Travel Sentry Press Release, Sept. 16, 2004, *available at* https://www.prweb.com/releases/2004/09/prweb158830.htm ("Travel Sentry") | 102(a), (b) | VSAI00026996 - VSAI00026998 |
| 14 | U.S. Patent No. D500,597 to Hillman ("Hillman") | 102(a), (b), (e) | VSAI00026758 - VSAI00026761 |
| 15 | U.S. Patent Pub. No. 2005/0189188 to Barnes ("Barnes") | 102(a), (b), (e) | VSAI00026939 - VSAI00026947 |
| 16 | U.S. Patent No. 5,494,157 to Golenz et al. ("Golenz") | 102(a), (b), (e) | VSAI00026762 - VSAI00026768 |
| 17 | U.S. Patent No. 5,544,792 to Arnwine ("Arnwine") | 102(a), (b), (e) | VSAI00026873 - VSAI00026880 |

| | | | |
|---|---|---|---|
| 18 | U.S. Patent No. 5,960,952 to Chen ("Chen") | 102(a), (b), (e) | VSAI00026797 - VSAI00026804 |
| 19 | U.S. Patent No. 6,193,118 to Kearl ("Kearl") | 102(a), (b), (e) | VSAI00026838 - VSAI00026851 |
| 20 | U.S. Patent No. 6,213,267 to Miller ("Miller") | 102(a), (b), (e) | VSAI00026863 - VSAI00026872 |
| 21 | U.S. Patent No. 6,655,565 to Godshaw et al. ("Godshaw") | 102(a), (b), (e) | VSAI00026739 - VSAI00026750 |
| 22 | U.S. Patent No. D338,104 to Lee ("Lee") | 102(a), (b), (e) | VSAI00026751 - VSAI00026757 |
| 23 | TUAW Review: Higher Ground Shuttle (noting case on display at MacWorld in January 2007), *available at* https://www.engadget.com/2007-06-18-tuaw-review-higher-ground-shuttle.html ("Shuttle") | 102(a), (b) | VSAI00026691 - VSAI00026696 |
| 24 | U.S. Patent No. 7,021,537 to Tropp ("Tropp 1") | 102(a), (b), (e) | VSAI00026883 - VSAI00026892 |
| 25 | U.S. Patent No. 7,036,728 to Tropp ("Tropp 2") | 102(a), (b), (e) | VSAI00026852 - VSAI00026862 |
| 26 | Case Logic PNC-15 15.4-Inch Slimline Laptop Case, Amazon (noting first available Jan. 26, 2007), *available at* https://www.amazon.com/Case-Logic-PNC-15-15-4-Inch-Slimline/dp/B000MY2JBC/ref=cm_cr_arp_d_product_top?ie=UTF8 ("PNC-15") | 102(a), (b) | VSAI00026646 - VSAI00026650 |
| 27 | Eastpak Mastermind, Amazon (product reviewed Dec. 18, 2003), *available at* https://www.amazon.com/Eastpak-Mastermind/dp/B0000732QU/ref=cm_cr_arp_d_product_top?ie=UTF8 ("Mastermind") | 102(a), (b) | VSAI00026683 - VSAI00026686 |
| 28 | Kensington Contour Pro 17" Carrying Case ("Contour Pro") | 102(a), (b) | VSAI00026706 - VSAI00026706 |
| 29 | Kensington Saddlebag Sport Computer Backpack ("Saddlebag") | 102(a), (b) | VSAI00026707 - VSAI00026707 |
| 30 | Tip Sheet, 9/27/04 Newsweek 73 (reviewing The North Face Modem), *available at* 2004 WLNR 3641938 ("Modem") | 102(a), (b) | VSAI00026721 - VSAI00026725 |
| 31 | The North Face Modem, eBags, April 6, 2005, *available at* https://web.archive.org/web/20050406040539/http://www.ebags.com/the_north_face/modem/product_detail/index.cfm?modelid=20153 ("Modem") | 102(a), (b) | VSAI00026712 - VSAI00026714 |
| 32 | Targus 15.4" CityGear Chicago Notebook Backpack Review, Dec. 15, 2006, *available at* http://www.notebookreview.com/review/targus-15-4-citygear-chicago-notebook-backpack-review/ ("CityGear") | 102(a), (b) | VSAI00026980 - VSAI00026984 |
| 33 | Case Logic VNC-216 16-Inch Laptop Briefcase, Amazon (noting first available June 17, 2003), *available at* https://www.amazon.com/Case-Logic-VNC-216-16- | 102(a), (b) | VSAI00026663 - VSAI00026673 |

| | | | |
|---|---|---|---|
| | Inch-Briefcase/dp/B001LXMF80/ref=cm_cr_arp_d_product_top?ie=UTF8 ("VNC-216") | | |
| 34 | Samsonite Computer Cases L45 Notebook Plus Case, June 29, 2003, *available at* https://web.archive.org/web/20030629212623/http://us.samsonite.com/webapp/us/servlet/SProductDisplay?productId=46016&storeId=10001&langId=-1&pc=C30 ("L45") | 102(a), (b) | VSAI00026975 - VSAI00026975 |
| 35 | Kensington K62563US SP40 15.6-Inch Classic Notebook Computer Case, Amazon (noting date first available June 15, 2008) *available at* https://www.amazon.com/Kensington-K62563US-15-6-Inch-Notebook-Computer/dp/B0019TZRTA ("62563") | 102(a), (b) | VSAI00026999 – VSAI00027004 |
| 36 | Kensington Introduces 24 Innovative Notebook Accessories for School, Work, and Play, June 16, 2008, *available at* https://www.kensington.com/news/news-press-center/2008-news--press-center/kensington-introduces-24-innovative-notebook-accessories-for-school-work-and-play/ | 102(a), (b) | VSAI00027010 – VSAI00027015 |
| 37 | Targus Cases: Nylon/Ballistic, Nov. 2, 2001, *available at* https://web.archive.org/web/20011102234549/http://www.targus.com/case_nylon.asp?pos=6 ("CCB1") | 102(a), (b) | VSAI00027025 – VSAI00027026 |
| 38 | Targus Cases: Nylon/Ballistic, Targus Notebook Backpack, Nov. 21, 2001 *available at* https://web.archive.org/web/20011121055402/http://www.targus.com:80/case_nylon_specific.asp?title=TARGUS+NOTEBOOK+BACKPACK&sku=CCB1 | 102(a), (b) | VSAI00027028 |
| 39 | Targus CDB1 Deluxe Backpack – Black (High Density Nylon) (noting Date First Available October 2, 2001), *available at* https://www.amazon.com/Targus-CDB1-Deluxe-Backpack-Density/dp/B000034D6K ("CDB1") | 102(a), (b) | VSAI00027041 – VSAI00027047 |
| 40 | Targus Cases: Nylon/Ballistic, Targus FolioPac3, Dec. 30, 2001 *available at* https://web.archive.org/web/20011230040041/http://www.targus.com:80/case_nylon_specific.asp?title=TARGUS+FOLIOPAC3&sku=CFP3 ("CFP3") | 102(a), (b) | VSAI00027059 |
| 41 | Targus Cases: Nylon/Ballistic, Dec. 18, 2001, *available at* https://web.archive.org/web/20011218081225/http://www.targus.com/case_nylon.asp | 102(a), (b) | VSAI00027061 – VSAI00027062 |

| | | | |
|---|---|---|---|
| 42 | Chloe Dao and Pacific Design Launch the Chloe Dao Collection, Aug. 15, 2007, *available at* https://www.24-7pressrelease.com/press-release/32112/chloe-dao-and-pacific-design-launch-the-chloe-dao-collection ("Chloe") | 102(a), (b) | VSAI00027064 – VSAI00027069 |
| 43 | Kensington 62148 SureCheck Associate Notebook Case (noting date first available Feb. 18, 2003), *available at* https://www.amazon.com/Kensington-62148-SureCheck-Associate-Notebook/dp/B00008MOPH ("SureCheck") | 102(a), (b) | VSAI00027086 – VSAI00027093 |

**APPENDIX 2**

**LIST OF NON-PATENT OR NON-PRINTED PUBLICATION PRIOR ART CITED IN INITIAL INVALIDITY CONTENTIONS**

| No. | Non-Patent or Non-Printed Publication Prior Art | Prior Art Under | Bates Nos. |
|---|---|---|---|
| 1 | Case Logic PNC-15 (“PNC-15”) | 102(a), (b), (g) | VSAI00026645 - VSAI00026658 |
| 2 | Case Logic VNC-216 (“VNC-216”) | 102(a), (b), (g) | VSAI00026659 - VSAI00026681 |
| 3 | Samsonite L35 Laptop Case (“L35” or “Samsonite L35”) | 102(a), (b), (g) | VSAI00026954 - VSAI00026966 |
| 4 | Samsonite L45 Laptop Case (“L45” or “Samsonite L45”) | 102(a), (b), (g) | VSAI00026967 - VSAI00026978 |
| 5 | The North Face Modem (“Modem”) | 102(a), (b), (g) | VSAI00026711 - VSAI00026726 |
| 6 | Eastpak Mastermind (“Mastermind”) | 102(a), (b), (g) | VSAI00026682 - VSAI00026688 |
| 7 | Timberland Backpack (“Timberland”) | 102(a), (b), (g) | VSAI00026989 - VSAI00026995 |
| 8 | Kensington Countour 62340 Laptop Case (“Contour Laptop Case”) | 102(a), (b), (g) | VSAI00026703 - VSAI00026706 |
| 9 | Kensington Saddlebag Sport Computer Backpack (“Saddlebag Backpack”) | 102(a), (b), (g) | VSAI00026707 - VSAI00026710 |
| 10 | Pelican 1495 CC2 Laptop Case (“Pelican 1495 CC2”) | 102(a), (b), (g) | VSAI00026728, VSAI00026738, VSAI00026893, VSAI00026727, VSAI00026737 |
| 11 | Higher Ground Shuttle Laptop Case (“Shuttle”) | 102(a), (b), (g) | VSAI00026689 - VSAI00026702 |
| 12 | Targus City Gear Chicago Backpack (“City Gear”) | 102(a), (b), (g) | VSAI00026979 - VSAI00026988 |
| 13 | Targus CCB1 (“CCB1”) | 102(a), (b), (g) | VSAI00027024 – VSAI00027034 |
| 14 | Targus CDB1 (“CDB1”) | 102(a), (b), (g) | VSAI00027035 – VSAI00027052 |
| 15 | Targus CFP3 (“CFP3”) | 102(a), (b), (g) | VSAI00027053 – VSAI00027063 |
| 16 | Targus TBC01301-01 (“TBC01301”) | 102(a), (b), (g) | VSAI00027094 – VSAI00027101 |
| 17 | Kensington K62148[B] The Associate SureCheck (“SureCheck”) | 102(a), (b), (g) | VSAI00027080 – VSAI00027093 |
| 18 | Case Tek 9900383 (“Case Tek”) | 102(a), (b), (g) | VSAI00027017 – VSAI00027023 |
| 19 | Pacific Designs PD0090 Chloe (“Chloe”) | 102(a), (b), (g) | VSAI00027064 – VSAI00027079 |
| 20 | Kensington 62563 SP40 15.6-Inch Classic Notebook Computer Case (“62563”) | 102(a), (b), (g) | VSAI00026999 – VSAI00027016 |